David Sanford (D.C. Bar No. 457933)
Kate Mueting (D.C. Bar No. 988177)
**Sanford Heisler, LLP**
1666 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20009
Telephone: (202) 499-5201
Facsimile:  (202) 499-5119
dsanford@sanfordheisler.com
kmueting@sanfordheisler.com

Deborah Marcuse (NY Bar No. 457933)
Jennifer Siegel (NJ-6110)
**Sanford Heisler, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5656
Facsimile: (646) 402-5650
jsiegel@sanfordheisler.com
dmarcuse@sanfordheisler.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KELLI SMITH, individually and on behalf of a class of similarly situated female employees,**<br><br>**Plaintiff,**<br><br>**-- against --**<br><br>**MERCK & CO., INC,**<br><br>**Defendant.** | **No. _____**<br><br><br>**JURY TRIAL DEMANDED** |

      Plaintiff Kelli Smith, through her attorneys Sanford Heisler, LLP, brings this action in her individual capacity, and on behalf of a class and sub-class of women defined below, to redress gender discrimination in employment.  Defendant Merck & Co., Inc, discriminates against its female employees generally, and its pregnant employees and female employees with children in particular, through: (a) discriminatory policies, practices and procedures in selection, promotion and advancement; (b) disparate pay; (c) differential treatment; (d) hostile work environment; and (e) retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), Title 42 U.S.C. 2000e, *et. seq.* ("Title VII"); the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*; and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq*. Plaintiff sues for declaratory and injunctive relief, back pay, front pay, compensatory, nominal and punitive damages and attorneys' fees, costs and expenses under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e)-5(f), *et seq.* and the New Jersey Law Against Discrimination, N.J. Stat. § 10:5-1, *et. seq*.  Plaintiff requests a jury trial on each of these counts.

1

## I.  INTRODUCTION

1.      This action arises out of Defendant Merck & Co., Inc.'s ("the Company" or "Merck") systematic, company-wide discriminatory treatment of its female employees on the basis of their gender and their taking federal and state-protected pregnancy leave.

### A. Merck's Sales Incentive Plan Creates Incentives to Discriminate Against Female and Pregnant Employees.

2.      Merck's company-wide policies specifically target pregnant women and women with children.  Specifically, Merck's Sales Incentive Plan, developed and implemented on a company-wide level, provides that the compensation of managers and directors is decreased when their employees take legally protected leave.  Through this centralized policy, Merck discourages management from hiring and promoting women in the belief that women will take maternity leave.  Because of this policy, Merck management also attempts to force pregnant women or women they believe may become pregnant to leave the company so that the manager's numbers and compensation will not suffer when the women take maternity leave.

3.      Merck's Sales Incentive Plan further targets women who take pregnancy leave by decreasing the compensation of colleagues of women who take leave.  Specifically, Merck's Sales Incentive Plan makes sales representatives' compensation dependent on the sales of their colleagues assigned to the same products, regardless of whether their colleagues have lower sales numbers due to their taking of pregnancy leave.  By tying representatives' compensation to the sales of particular products and their colleagues' success in selling them, Merck creates incentives for employees to avoid working with women in general and with pregnant women in particular based on the expectation that such women will take protected maternity leave.

4.      Merck's Sales Incentive Plan fails to adjust an employee's target sales goals to account for their pregnancy leave, thus decreasing the compensation of representatives who have

been out of the field on maternity leave.   By compensating managers based on their representatives' performance in relation to their sales target goals, Merck's Sales Incentive Plan also creates incentives for managers to discriminate against women and pregnant employees.

5.     Merck develops and implements this policy at the company's highest levels; the failure to adjust the sales goals to account for representatives' leave stems from Merck's corporate headquarters.

6.     As a result of company-wide policies, managers and employees at Merck discourage female employees from having children and punish those who do.   In March 2011, Merck demoted Ms. Smith and told her it was doing so because of the "timing of [her] baby." Merck managers are openly hostile to pregnant women and women with children, telling female sales representatives that they "can't be both a mother and a Senior Representative."

7.     The negative attitudes toward female employees who become pregnant and have children that are driven at least partly by Merck's incentive compensation policy combine with and contribute to stereotyping of women who have or may have children as less committed to their careers than their male colleagues and their female colleagues who are not pregnant and do not have children.

**B.  Merck Policies Prevent Female and Pregnant Employees from Advancing.**

8.     A substantial majority of Merck management is male.   For example, of the ten-person executive team in the Northeast Region, where Ms. Smith works, only two are women.

9.     Members of the predominantly male management team also foster an environment hostile to the success and advancement of female employees, regardless of their qualifications or merits.   Upon information and belief, Merck golf outings, social events and dinners with senior management are exclusively male.   Male employees explicitly boast of Merck's "boys clubs," in which male junior employee have opportunities to socialize with male

senior management to the exclusion of women.  Female employees are excluded from these events, and thus excluded from opportunities to develop relationships with senior management that provide opportunities for advancement within Merck due to the company's "tap-on-the-shoulder" promotion policies, described further below.

10.     Further, upon information and belief, Merck policy provides that employees on maternity leave are ineligible for important awards at the company.  When Ms. Smith returned from leave, for example, Merck did not give her a prestigious company award, the Vice President's Award, and the Regional Director informed her that she was "ineligible" for the award because she had taken maternity leave.

11.     Merck also has a policy of filling job openings without posting the openings.  As a result, managers routinely award promotions based on personal relationships rather than merit. Through this tap-on-the-shoulder promotion policy, Merck discriminates against its female employees.

12.     Merck's assignment and promotion policies further present managers with opportunities to stall artificially the careers of female employees and accelerate those of male employees.  Because Merck fails to publish or publicize the vast majority of its job openings through formal channels, male managers can award positions to male employees, while female employees are precluded even from applying.  Furthermore, because manager approval is required for representatives to apply for promotions, Merck managers can suppress a female employee's career by failing to give this approval, regardless of the employee's performance.

13.     Even the most high-performing women at Merck are ultimately frustrated in this environment, garnering some recognition but not enough to shatter the glass ceilings that discriminatorily constrain their opportunities.  While Merck management grooms male employees for advancement, female employees who seek promotions or advancement

4

opportunities are denied advancement opportunities based on stereotyped assumptions about who is responsible for supporting a family.  In discussing career options with female employees, Merck managers ask whether female employees want to advance at the company or whether they want to "just continue being a mom."  Female employees are also told, "You don't need the money" (as compared to men, who are assumed to be breadwinners for their households) and "You should just be happy to have a job."

14.     Reflecting and exacerbating these discriminatory development, assignment and promotion policies, Merck's compensation policies also lack sufficient standards, quality controls, implementation metrics, transparency and oversight to compensate employees fairly, resulting in a negative effect on female and pregnant employees.  Despite Merck's claim that a representative's "competencies score" will largely determine her compensation and advancement opportunities, Merck does not disclose to its employees these scores or its method of calculating them.

**B.  Merck Retaliates Against Women Who Raise Complaints of Discrimination.**

15.     Merck has long been on notice regarding its company-wide gender and pregnancy discrimination, but has taken no steps to remedy its discriminatory policies and practices.

16.     Ms. Smith repeatedly complains about the discrimination she experiences, going through the requisite channels including her managers and Human Resources.

17.     However, as illustrated further below, instead of taking action to address the discrimination, Merck managers and Human Resources have discouraged Ms. Smith from making further complaints.

**II.  <u>JURISDICTION AND VENUE</u>**

18.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as

amended ("Title VII"), and supplemental jurisdiction over Ms. Smith's state law claims pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) because unlawful employment practices occurred in New Jersey, where Ms. Smith lives and works and where Merck is headquartered.

20.     A substantial part of the events or omissions giving rise to Ms. Smith's claims set forth herein, including the discriminatory denial of pay and promotions, occurred in New Jersey.

21.     Ms. Smith has standing to bring this suit as she timely filed her administrative charge before the Equal Employment Opportunity Commission ("EEOC"), received her Right to Sue on April 2, 2012, and entered into a tolling agreement to toll her Title VII and EPA claims with Defendant on June 25, 2012.  Ms. Smith's administrative charge gave notice of the class-wide nature of the allegations.  The parties' tolling agreement provided that Ms. Smith's claims would be tolled until either party gave notice terminating the tolling agreement.  Ms. Smith's counsel notified Merck on May 9, 2013 that she was terminating the agreement.

### III. PARTIES

22.     From June 2004 to the present, **PLAINTIFF KELLI SMITH** was a female "employee" at Merck, as defined by Title VII and corresponding state law.  From June 2004 to the present, Ms. Smith has lived and worked in Toms River, New Jersey.

23.     At all times relevant to this action, **DEFENDANT MERCK & CO, INC.** is and has been a multi-national company headquartered in Whitehouse Station, New Jersey.

## IV. FACTUAL ALLEGATIONS

### A. Ms. Smith Joined Merck in 2004 and Earned Accolades for Her Performance.

24.     Ms. Smith is currently employed at Merck as a Senior Sales Representative.  As a Senior Sales Representative, she is responsible for developing and implementing business plans to generate and increase sales of Merck's pharmaceutical products.

25.     When Ms. Smith joined Merck in June 2004, she brought with her six years of sales experience and had regularly received national recognition for her strong performance and top sales rankings.

26.     At Merck, Ms. Smith consistently achieved exceptional results and distinguished herself as a top performer.  She earned the Vice President's Award in 2005 and the Director's Award in 2006, 2007 and 2008.  She also earned the Customer Trust and Value Award in 2009, a distinction that Merck awarded to only one representative out of approximately one hundred. Ms. Smith's supervisors consistently identified her as a role model for other employees.  In 2010, Ms. Smith's then-District Manager Ed Bader commended her leadership skills and her "phenomenal" relationships with customers and told her that Merck regularly used her as an example for others throughout the region to emulate.

27.     Ms. Smith leads multiple projects at Merck, and her colleagues also recognize her as a resource for the team, praising her diligence and leadership.  For example, one of her colleagues congratulated her on her leadership and extensive work in preparing a set of resources for new employees who joined the company as a result of its 2010 merger with Schering-Plough.

28.     Ms. Smith's sales numbers have always placed her among the top performers of her region.  Ms. Smith's district is among Merck's highest-performing districts, and even within this district, her individual performance stands out.  In 2011, Ms. Smith was consistently ranked

second out of forty-four sales representatives in the Northeast Region based on her sales numbers.

29.     Despite her skills and qualifications, Merck discriminated against Ms. Smith because of her gender and because she took maternity leave.  For example, Merck has denied Ms. Smith promotions and promotional opportunities, disciplined her unfairly and without justification, given her unfair performance evaluations, and subjected her to other discriminatory actions that have stalled her career and harmed her professional reputation.

**B. Ms. Smith Begins to Work for Team Leader Ed Veltre.**

30.     In January 2010, Merck reassigned Ms. Smith to work under Team Leader Ed Veltre ("Manager Veltre").   Manager Veltre, who previously worked at Schering-Plough before the company merged with Merck, fostered close friendships with the male employees on his team to the exclusion of female employees.  When Ms. Smith requested to meet with him, Manager Veltre ignored Ms. Smith's multiple calls and emails.  Meanwhile, he invited male employees to bars and restaurants, encouraging a "boys club" mentality that excluded female sales employees.

31.     Ms. Smith was six months pregnant when she began working for Manager Veltre, and she attempted to discuss her maternity leave with him on multiple occasions so that she could better prepare herself, her team and her physicians for her absence.  However, Manager Veltre refused to discuss Ms. Smith's maternity leave with her or how Merck would cover her territory in her absence.  As a result of her manager ignoring her, Ms. Smith faced additional obstacles in developing the necessary business plans for her return from maternity leave.

32.     In sharp contrast, Manager Veltre was in constant communication with male employees on the team, offering support and guidance to them while disregarding Ms. Smith's attempts to meet with him.

33.     Manager Veltre also obstructed Ms. Smith's ability to take maternity leave by refusing to sign the necessary paperwork for Merck's Human Resources Office to approve her leave, despite Ms. Smith's multiple requests for him to do so.  Ms. Smith was thus forced to attempt to contact Manager Veltre repeatedly while she was still in the hospital following childbirth.

**C.  Merck Demoted Ms. Smith Because She Took Maternity Leave.**

34.     Upon returning from maternity leave in September 2010, Ms. Smith immediately faced hostility from Manager Veltre.  While Merck had assigned Ms. Smith new products to promote, Manager Veltre ignored her questions about the products and new developments in her territory during her time on leave.  Additionally, in the six months between Ms. Smith's return from maternity leave and the announcement of performance ranking decisions, Manager Veltre accompanied Ms. Smith on only one half-day field visit, while, upon information and belief, he accompanied male sales employees on three to eight field visits each during the same period. Manager Veltre's failure to acknowledge Ms. Smith as a member of his team or train her on the new products to which she was assigned sharply undercut Ms. Smith's ability to perform successfully after her return from leave.

35.     While ignoring Ms. Smith's attempts to obtain the direction necessary to perform her job successfully, Manager Veltre continued to foster relationships with the male employees on the team, inviting them to social events and reaching out to them with support and advice.

36.     Upon information and belief, Ms. Smith's sales numbers were lower than they would have been had she not been on leave.   To make up for her lack of managerial support or guidance, Ms. Smith took the initiative to train herself on eight new products within her first two weeks back from maternity leave by reaching out to other colleagues and managers to obtain the necessary resources.  On the single half-day field visit he paid Ms. Smith during the first six

months after her return from leave, Manager Veltre acknowledged Ms. Smith's strong performance, noting that she had a "solid understanding of [her] customers" and praising her ability to dive quickly back into the field.

**D. Merck Demoted Ms. Smith Because She Took Maternity Leave.**

37.     Despite her continued strong performance, however, Manager Veltre demoted Ms. Smith in March 2011, after her return from maternity leave.  Previously, Merck's ranking system included six categories, or "buckets," and Ms. Smith was ranked in the third-highest bucket.  In March 2011, Merck implemented a new ranking system that ranked employees in three categories instead of six, and Manager Veltre ranked Ms. Smith as an "S1," the lowest job classification for a sales representative at Merck.  Despite her seven years of high performance at the company, Merck's ranking placed her in the same category as entry-level representatives, decreasing her bonus compensation and denying her opportunities for prestigious assignments, access to managers and executives and higher compensation.  Merck publicized its rankings company wide, thereby signaling to all Merck employees that Ms. Smith was an entry-level employee and unqualified for leadership roles.

38.     Manager Veltre also denied Ms. Smith the prestigious Vice President's award in March 2011.  Manager Veltre gave this award to all members of the team except Ms. Smith, one other female employee with children and one male employee who had just started working at Merck.  Though the award is based on sales number and competencies, Manager Veltre gave the award to male employees with lower sales numbers than Ms. Smith who lacked her skill, experience and leadership.

39.     Manager Veltre told Ms. Smith that her low ranking and failure to get the award were not due to her performance but were "a matter of timing," indicating that he took these adverse actions against her because she had taken maternity leave.

10

40.     In April 2011, Ms. Smith asked Manager Veltre whether there were specific areas in which she could improve, and she requested a specific opportunity that would help her improve.  Manager Veltre denied her request, told her there was nothing she could do to improve and again stated that her low ranking was "all about timing."  Ms. Smith responded: "You're saying it's not about my performance, it's about my having a baby—you can't say that!" Manager Veltre responded only, "I know I'll be eating crow on this one."

41.     When Ms. Smith complained about her ranking to Manager Veltre's supervisor, Director of Commercial Operations John Daly ("Director Daly"), he admitted that her ranking was due to "the timing of [her] baby."  When Ms. Smith complained that her ranking had nothing to do with her performance, Director Daly stated:  "It's not like this is a lawsuit."

42.     When Ms. Smith suggested to Director Daly that she would pursue the matter with Merck's Human Resources Department, he immediately tried to discourage Ms. Smith from doing so and told her to "move on."

43.     Realizing that her low ranking was the result of Merck's discrimination and that her managers were not making any effort to rectify the situation, Ms. Smith complained on several occasions, including in March 2011, April 2011, and July 2011 to the Ombudsman's office and Merck's Office of Ethics and Human Resources, all of which failed to take any action to rectify the discrimination.

**E. Manager Veltre and Director Daly Threatened, Disciplined and Harassed Ms. Smith.**

44.     After Ms. Smith questioned her low ranking, Manager Veltre and Director Daly subjected her to threats, discipline and harassment.  For example, Manager Veltre stated to a female colleague and close friend of Ms. Smith's that "certain" people ask "inappropriate" questions.

11

45.      Additionally, in August 2011, Director Daly told Ms. Smith that complaining of discrimination was "inappropriate" and that she "crossed a line" in doing so.  He also accused her of "undermining" Manager Veltre and stated he would be scrutinizing her more closely by accompanying her on field trips and scheduling frequent meetings with her.  He also again insisted that Ms. Smith "move on" and drop the issue of her discriminatory ranking.

46.      Manager Veltre has also disciplined Ms. Smith for behaviors for which he never disciplined male employees.  In June 2011, for example, shortly after Ms. Smith complained to Human Resources, Manager Veltre disciplined Ms. Smith for allegedly violating company policy more than two months earlier.  However, upon information and belief, Manager Veltre does not discipline male employees who routinely violate company policies.  The discipline adversely affects Ms. Smith's standing, compensation and advancement opportunities.

47.      Manager Veltre further attempted to push Ms. Smith out of the company and threatened her ability to advance by failing to inform her of promotions for which she was eligible and by refusing to issue her performance reviews that accurately reflect her strong performance.  This has made Ms. Smith anxious and concerned about her future at the company.

48.      Manager Veltre has also excluded Ms. Smith from team emails and texts and failed to respond to any of her calls, emails or messages with questions about her territory.  For example, when Ms. Smith lost several of her largest accounts as the result of destruction caused by Hurricane Sandy, Manager Veltre failed to make necessary adjustments to Ms. Smith's sales portfolio or client base to account for the drastic changes in her territory, which has further decreased her commissions and reduced her total compensation.

49.      As a result of Merck's discrimination and retaliation, Ms. Smith's physical and mental health was severely affected, causing her to seek professional therapy and prescription anti-anxiety medication.

**F.  Merck Subjected Ms. Smith to a Hostile Work Environment.**

50.     Merck fosters an environment where female and pregnant employees are harassed and marginalized.  Male managers at Merck face no repercussions for inappropriate advances on female employees.  For example, at a national conference, Director Daly drunkenly and inappropriately propositioned a female employee in front of several other employees.

51.     Additionally, Manager Veltre regularly demeans Ms. Smith and makes her feel uncomfortable by kissing her in front of others at team meetings.  He persisted in doing so despite her obvious discomfort with his advances.  When Ms. Smith complained in August 2011 to Manager Veltre's supervisor Director Daly that Manager Veltre's behavior made her feel uncomfortable, he ignored her comment and failed to report Manager Veltre's inappropriate and harassing behavior to Human Resources.

52.     When female employees attempt to address Merck's culture of discrimination, Merck executives obstruct their efforts.  For example, Merck's male management refused to support the establishment of a Women's Network chapter in New Jersey, emphasizing that management did not "comfortable" with the proposal and forbidding women from discussing it with others.  This response has made it clear that challenging Merck's discriminatory status quo is off-limits.

53.     Male managers publicly demean and degrade female employees, further reinforcing an atmosphere in which the professional contributions of female employees go unrecognized.  For example, at a company event, Director Daly loudly asked a group of male employees, "Where are the Schering whores?" referring to the female employees from Schering-Plough, who had joined Merck in the 2010 merger. "They're much hotter than the Merck whores," he added.

## V. **CLASS ACTION ALLEGATIONS**

54.     Class Representative Smith represents a Class consisting of all female sales representatives who are, have been, or will be employed by Merck & Co., Inc. since October 2009.  The Class Representative and the Class of Merck employees she seeks to represent have been subjected to a systemic pattern and practice of gender discrimination and disparate impact gender discrimination by Merck.

55.     Class Representative Smith also represents a Sub-Class consisting of all female sales representatives at Merck who are, have been or will be pregnant or have children since October 2009.

56.     Merck's discriminatory policies and practices have subjected female employees to continuing unlawful disparate treatment and have had a continuing, unlawful disparate impact on them and their employment opportunities.  Such gender and pregnancy discrimination includes (a) assigning female and pregnant employees to lower classifications than similarly situated male employees performing the same job duties; (b) paying female and pregnant employees less than their male counterparts and (c) denying female and pregnant employees development, promotion and advancement opportunities resulting in their relegation to lower classification and compensation levels; (d) failing to prevent, respond to, adequately investigate and/or appropriately resolve instances of gender discrimination and pregnancy discrimination in the workplace; (e) treating pregnant employees and female employees with children differently from non-pregnant employees and male employees with and without children; (f) creation of a hostile work environment; and (g) otherwise subjecting female employees generally and female employees who are pregnant or have children in particular to disparate treatment with respect to the terms and conditions of their employment through exposure to pregnancy and gender-based discrimination, sexual harassment and a hostile work environment with no avenues for recourse.

14

The gender discrimination also involves retaliation against female and pregnant employees who have complained of wage disparity, gender discrimination and sexual harassment through internal reporting channels, the filing of EEOC complaints, and hiring counsel, including by unfairly demoting them, taking unwarranted disciplinary measures, subjecting them to increased scrutiny or otherwise altering their terms and conditions of employment.

57.     Merck's compensation, development, promotion, advancement, award, training and performance evaluation policies, practices and procedures incorporate the following discriminatory practices: (a) refusing or failing to establish and/or follow policies, practices, procedures or criteria that reduce or eliminate disparate impact and/or intentional biases or stereotypes and (b) refusing or failing to provide equal training opportunities to female employees generally and to female employees who are pregnant or have children in particular.

58.     Merck, in effect, bars female employees from better and higher-paying positions that have traditionally been held by male employees.  The systemic means of accomplishing such gender-based stratification include, but are not limited to, Merck's assignment, development, promotion, advancement, training, compensation and performance evaluation policies, practices and procedures.

59.     These policies, practices and procedures all suffer from a lack of: transparency; adequate quality standards and controls; sufficient implementation metrics; upper management/HR review; and opportunities for redress or challenge.  As a result, employees are assigned, evaluated, compensated, developed and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage, develop or reward employees.

60.     Where HR and Ombuds complaint and compliance policies exist, they lack meaningful quality controls, standards, implementation metrics and means of redress, such that

15

upper management and HR may ignore, disregard, minimize, cover up, mishandle or otherwise fail to respond properly to evidence of discrimination in the workplace. There is no meaningful separation between complaint reporting channels and the managers who create discriminatory or hostile working conditions for women, such that complaints do not remain confidential and victims of discrimination often face retaliation or are dissuaded from raising concerns altogether. Moreover, HR and management have contributed to and failed to curb a corporate culture that presumes that caretaking responsibilities make an employee less dedicated or productive.

61.    Merck tolerates and cultivates a hostile environment in which female and pregnant employees are routinely and openly devalued and where retaliation for voicing complaints of gender discrimination is the norm. Amid and as a result of this environment, female employees who question these norms or raise concerns are routinely pushed out of the company.

62.    Further, Merck demonstrates a reckless disregard—a deliberate indifference—to discrimination against its female employees generally and its female employees who are pregnant or have children in particular by overlooking or otherwise dismissing even blatant evidence of gender and pregnancy discrimination.

63.    Merck's assignment, development compensation, promotion, training, evaluation, personnel management, termination, maternity, awards and complaint policies, practices and procedures have a disparate impact on the Class Representative and the Class she seeks to represent. Such policies, practices and procedures are not valid, job-related or justified by business necessity.

64.    Indeed, the facts demonstrate that it is Merck's standard operating procedure to discriminate against female and pregnant employees on a mass scale. Merck's assignment, development, compensation, promotion, training, evaluation, personnel management,

16

termination, maternity, awards and complaint policies, practices and procedures form a part of the Defendant's overall pattern and practice of keeping women in the lower classifications that carry less desirable terms and conditions of employment.

65.     Because of Merck's systemic pattern and practice of gender discrimination, the Class Representative and Class she seeks to represent have been adversely affected and have experienced harm, including the loss of compensation, wages, back pay, and employment benefits as well as physical and emotional pain and suffering.

66.     Merck has failed to impose adequate discipline for managers and employees who violate its fair employment policies and equal employment opportunity laws and has failed to create adequate incentives for its managerial and supervisory personnel to comply with such policies and laws.

67.     The Class Representative and the Class have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief.  The Class Representative and the Class are now suffering, and will continue to suffer, irreparable injury from Merck's ongoing, unlawful policies, practices and procedures as set forth herein unless those policies, practices and procedures are enjoined by this Court.

### A. General Facts Relevant To Class Claims And Class Definition

68.     Class Representative Smith seeks to maintain claims on her own behalf and on behalf of a) a Class of female employees who are or were employed at Merck as sales representatives in Merck from October 2009 to the present; and b) a Sub-Class of female employees at Merck from October 2009 to the present who are or were pregnant or have children.

69.     Upon information and belief, the members of the proposed Class number in the thousands and the members of the proposed Sub-Class number in the hundreds.

70.     The Class Representative seeks to represent all of the female employees described above.   The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

**B. Efficiency Of Class Prosecution Of Common Claims**

71.     Certification of a class of female employees and a subclass of female employees who are or were pregnant or have children is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Class Representative and the Class.   The individual claims of Class Representative Smith require resolution of the common questions concerning whether Merck has engaged in a systemic pattern and/or practice of gender discrimination against female employees and/or whether its facially neutral policies have an adverse effect on the Class.   Class Representative Smith seeks remedies to eliminate the adverse effects of such discrimination in her own life, career, and working conditions and in the lives, careers and working conditions of the Class members, and to prevent Merck's continued gender discrimination.

72.     Class Representative Smith has standing to seek such relief because of the adverse effects that such discrimination has had on her individually and on female employees generally. Merck caused their injuries through its discriminatory practices, policies and procedures, as well as its disparate treatment of employees who are female and/or pregnant.

73.     To gain such relief for herself, as well as for the Class members, the Class Representative will first establish the existence of systemic gender discrimination at Merck as the premise for the relief she seeks.

74.     Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.   Certification of the proposed class of female sales representatives is

the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representative, the proposed Class and the Defendant.

### C. Numerosity And Impracticability Of Joinder

75.     The Class and Sub-Class Ms. Smith she seeks to represent are too numerous to make joinder practicable.  On information and belief, the proposed Class consists of thousands of current and former employees during the liability period, and the proposed Sub-Class consists of hundreds of current and former employees during the liability period.

### D. Common Questions Of Law And Fact

76.     The prosecution of the claims of the Class Representative will require the adjudication of numerous questions of law and fact common to her claims and those of the Class she seeks to represent.  The common questions of law include: (a) whether Merck has engaged in unlawful, systemic gender discrimination in its compensation, promotion, advancement and discipline policies, practices and procedures, and in the general terms and conditions of work and employment; (b) whether the failure to institute adequate standards, quality controls, implementation metrics, or oversight in assignment, development, compensation, promotion, training, evaluation, personnel management, termination, maternity, awards and complaint policies, practices and procedures violates Title VII and/or other statutes; (c) whether the lack of transparency and of opportunities for redress in those systems violates Title VII and/or other statutes; (d) whether the failure of upper management and HR to prevent, investigate or properly respond to evidence and complaints of discrimination in the workplace violates Title VII and other statues; (e) whether Merck is liable for a continuing systemic violation of Title VII, and other statutes; (f) a determination of the proper standards for proving a pattern or practice of discrimination by Merck against its female sales employees under the disparate treatment theory

of liability; and (g) a determination of the proper standard for proving that facially neutral employment practices at Merck had a disparate impact on the Class and Sub-Class.

77.     The common questions of fact include: whether Merck has, through its policies, practices and procedures: (a) used a system of assignment that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (b) through the use of that system of assignment placed female employees in job titles or classifications lower than similarly situated male employees; (c) systemically, intentionally or knowingly placed female employees in job titles or classifications lower than similarly situated male employees; (d) used a compensation system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (e) through the use of that compensation system compensated female employees less than similarly situated male employees in salary and/or other perks; (f) systemically, intentionally or knowingly compensated female employees less than similarly situated male employees; (g) used a system of development and mentoring that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (h) through the use of that development and mentoring system failed to develop or provide opportunities for development to female employees in a commensurate manner to their similarly situated male counterparts; (i) systematically, intentionally or knowingly failed to develop or provide opportunities for development to female employees in a commensurate manner to their similarly situated male counterparts; (j) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (k) through the use of that promotion system precluded or delayed the promotion of female employees into higher jobs traditionally held by male employees; (l) systematically, intentionally or knowingly precluded or delayed the selection and promotion of female employees into higher level jobs

traditionally held by male employees; (m) used a system for performance evaluations that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency or opportunities for redress; (n) through the use of that performance evaluation system inaccurately, unfairly or disparately measured, classified and compared female and male employee performance; (o) systematically, intentionally or knowingly subjected female employees to inaccurate, unfair or discriminatorily critical or lowered performance evaluations; (p) used maternity policies, practices and procedures that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency or opportunities for redress; (q) through the use of those policies, practices and procedures treated female employees who are or were pregnant or have children differently and discriminatorily from male employees with and without children and female employees who are not pregnant and do not have children; (r) systematically, intentionally or knowingly subjected pregnant employees to disparate and discriminatory terms and conditions of employment; (s) used HR and Ombuds systems that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency, or opportunities for redress; (t) relying upon and using these systems, minimized, ignored or covered-up evidence of gender discrimination and harassment in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination and harassment brought to the attention of senior management or the Human Resources department; (u) systematically, intentionally, knowingly or deliberately sowed an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled or covered up evidence of or complaints of gender and pregnancy discrimination (v) retaliated against those who have complained of gender-based discrimination through techniques including but not limited to demotions, unwarranted disciplinary measures, negative performance reviews, and

increased scrutiny; and (w) otherwise discriminated against pregnant women and women with child-rearing responsibilities in the terms and conditions of employment.

78.     Merck compensated female employees less than similarly situated males; precluded or delayed the selection and promotion of female employees into higher level jobs; retaliated against those who have complained of gender-based discrimination through techniques including but not limited to unwarranted disciplinary measures, negative performance reviews and increased scrutiny; and otherwise discriminated against women generally and pregnant women and women with children in particular in the terms and conditions of employment.

79.     The employment policies, practices and procedures to which the Class Representative and the Class and Sub-Class members are subjected are set at Merck's corporate level and apply universally to all Class and Sub-Class members.  These employment policies, practices and procedures are not unique or limited to any district; rather, they apply to all districts and, thus, affect Class Representative Smith and Class and Sub-Class members in the same ways regardless of the district in which they work.

80.     Throughout the liability period, a disproportionately large percentage of the managers, executives and officers at Merck have been male employees or female employees who were not pregnant and did not have children.

81.     Discrimination in selection, promotion and advancement occurs as a pattern or practice throughout management in all business units of Merck.  Assignment, selection, promotion and advancement opportunities are driven by personal familiarity, subjective decision-making, pre-selection and interaction between male executives and subordinates rather than by merit or equality of opportunity.  These polices, practices and procedures all suffer from a lack of transparency, adequate quality standards and controls, sufficient implementation metrics, upper management/HR review and opportunities for redress or challenge.  As a result,

22

employees are assigned, evaluated, compensated, developed and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage or reward employees.

82.     As a result, male employees and non-pregnant employees have advanced and continue to advance more rapidly to better and higher-paying jobs than female employees and pregnant employees.

83.     Merck's policies, practices and procedures have had an adverse impact on and have resulted in routine adverse disparate treatment of on female employees seeking selection for, or advancement to, better and higher-paying positions.  On information and belief, the higher the level of the job classification, the lower the percentage of female employees holding it.

84.     As a result, male managers and female managers without children have a disproportionate say in the assignment, development, evaluation and compensation of female employees.  Female employees are routinely undervalued and their work product minimized and disregarded, resulting in significant implications not only for their advancement opportunities but also for their compensation.

85.     Because Merck's personnel management systems do not provide sufficient oversight or safety measures to protect against intentional and overt discrimination or the disparate impact of even facially neutral policies and procedures, female employees suffering from discrimination are without recourse.  In addition, the absence of a check on discrimination extends to retaliatory actions, leaving victims of discrimination doubly vulnerable.  As such, Merck fosters and sometimes even tacitly condones discrimination.

**E. Typicality Of Claims And Relief Sought**

86.     The claims of the Class Representative are typical of the claims of the Class and Sub-Class.  The relief sought by Class Representative for gender and pregnancy discrimination

complained of herein is also typical of the relief that is sought on behalf of the Class and Sub-Class.

87.     Like the members of the Class and Sub-Class, the Class Representative is a female employee who was pregnant and has children and worked at Merck during the liability period.

88.     Discrimination in assignment, promotion, development, selection, training, evaluations and HR oversight affects the compensation, advancement and overall treatment of the Class Representative and all employee class members in the same or similar ways.

89.     Merck has failed to create adequate incentives for its executives and managers to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, practices and procedures referenced in this Complaint, and has failed to discipline adequately its executives, managers and other employees when they violate Company policy or discrimination laws.  These failures have affected the Class Representative and the Class members in the same or similar ways.

90.     By tying the compensation of representatives and managers to product sales goals—without amending these goals to account for female sales representatives' being out on maternity leave—Merck creates an environment where employees and managers have incentives to discriminate against women who do or may take maternity leave.

91.     Merck has further failed to respond adequately or appropriately to evidence of discrimination and harassment, and complaints or concerns raised about the same.  These failures have affected the Class Representative and the Class members in the same or similar ways.

92.     The relief necessary to remedy the claims of the Class Representative is exactly the same as that necessary to remedy the claims of the Class members in this case.  Class Representative Smith seeks the following relief for her individual claims and for those of the

members of the proposed Class: (a) a declaratory judgment that Merck has engaged in systemic gender discrimination against the Class by (1) paying female employees less than their male counterparts, (2) denying female employees promotion into better and higher-paying positions (3) discriminating against pregnant women and women with children, and (4) otherwise failing to investigate or respond to evidence of discrimination or harassment in the workplace; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief that effectuates a restructuring of Merck's promotion, training, performance evaluation, compensation and discipline policies, practices, and procedures—so that women at Merck will be able to compete fairly in the future for promotions, transfers and assignments to better and higher-paying classifications with terms and conditions of employment traditionally enjoyed by male employees, and so that they may if necessary raise concerns about discrimination without fear of retaliation; (d) back pay, front pay and other equitable remedies necessary to make the employees whole from the Defendant's discrimination; (e) punitive and nominal damages to prevent and deter Merck from engaging in similar discriminatory practices in the future; (f) compensatory damages; and (g) attorneys' fees, costs and expenses.

### F. F. Adequacy Of Representation

93.    The Class Representative's interests are co-extensive with those of the Class and Sub-Class she seeks to represent in this case.  The Class Representative seeks to remedy Merck's discriminatory employment policies, practices and procedures so that female employees generally and female employees who are pregnant or have children in particular will no longer be prevented from advancing into higher-paying and higher ranked positions at Merck.

94.    Class Representative Smith is willing and able to represent the Class and Sub-Class fairly and vigorously as she pursues her claims in this action.

95.     Class Representative Smith has retained counsel who are qualified, experienced and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.  The combined interests, experience and resources of counsel to litigate competently the individual and class claims at issue in this case satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

### G.  Requirements Of Rule 23(b)(2)

96.     Merck has acted on grounds generally applicable to the Class Representative and the Class by adopting and following systemic policies, practices and procedures that are discriminatory.  Gender discrimination is Merck's standard operating procedure rather than a sporadic occurrence.

97.     Merck has refused to act on grounds generally applicable to the Class by, inter alia: (a) failing to pay and promote female and/or pregnant employees on par with similarly situated male and non-pregnant employees; (b) assigning female employees to job titles and classifications lower than appropriate for their actual job duties and responsibilities; (c) denying female employees promotion and advancement opportunities in favor of male employees; (d) failing to prevent, respond to, adequately investigate and appropriately resolve claims of gender and pregnancy discrimination; (e) refusing to adopt and apply selection, promotion, training, performance evaluation, compensation, Human Resources, corporate leadership and discipline policies, practices and procedures that do not have a disparate impact on, or otherwise systemically discriminate against, female employees; and (f) refusing to provide equal terms and conditions of employment for female employees, for pregnant women and for women with children.

98.     Merck's policies, practices and procedures of assignment, development, promotion, advancement, compensation, awards and performance evaluations have resulted in gender discrimination and stratification.  Merck's systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the Class as a whole.

99.     Injunctive, declaratory and affirmative relief are the predominant forms of relief sought in this case.  Entitlement to declaratory and injunctive relief flows directly and automatically from proof of systemic gender discrimination by Merck.

100.     In turn, entitlement to declaratory and injunctive relief forms the factual and legal predicate for recovery by the Class Representative and Class Members of monetary and nonmonetary remedies for individual losses caused by the systemic discrimination, as well as their recovery of nominal and punitive damages.

### H. Requirements Of Rule 23(b)(3)

101.     The common issues of fact and law affecting the claims of the Class Representative and proposed class members, including, but not limited to, the common issues previously identified herein, predominate over any issues affecting only individual claims. These common issues include whether Merck has engaged in gender discrimination against female employees by (a) assigning female employees to lower job titles and classifications than their male counterparts; (b) paying female employees less than their male counterparts; (c) denying female employees promotion and advancement opportunities in favor of male employees; (d) treating pregnant employees and women with children differently from non-pregnant or childless female employees and male employees; (e) failing to prevent, respond to, investigate adequately or respond appropriately to instances of gender discrimination; and (f)

27

tolerating and promoting a culture of gender discrimination directed against female employees in general and female employees who are pregnant or have children in particular.

102.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representative and members of the proposed class.

103.    The cost of proving Merck's pattern and practice of discrimination makes it impracticable for the Class Representative and members of the proposed class to prosecute their claims individually.

104.    By virtue of the pattern and practice of discrimination at Merck, the Class Representative and Class members are eligible for monetary remedies for losses caused by the systemic discrimination, including backpay, frontpay, compensatory damages, and other nominal and punitive damages.

## VI.  COUNTS

### COUNT I
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"),
### 42 U.S.C. § 2000e, *et seq.*
### Pay Discrimination
### (On Behalf of Plaintiff Smith and All Class Members)

105.    Class Representative Smith re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

106.    This Count is brought on behalf of the Class Representative Smith and all members of the Class.

107.    Defendant has discriminated against Class Representative Smith and all members of the Class in violation of Title VII by subjecting them to different treatment on the basis of their gender.  The members of the Class have been disparately impacted and disparately treated as a result of Defendant's wrongful conduct and its policies, practices and procedures.

108.    Defendant has discriminated against Class Representative Smith and all members

of the Class by subjecting them to discriminatory denials of pay raises and discriminatory performance evaluations and rankings that affect pay, in violation of Title VII.

109.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Class Representative Smith and the members of the proposed class, entitling the Class Representative and the members of the Class to punitive damages.

110.    As a result of Defendant's conduct alleged in this complaint, Class Representative Smith and the members of the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

111.    By reason of Defendant's discrimination, Class Representative Smith and members of the Class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

112.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"),**
**42 U.S.C. § 2000e,** *et seq.*
**Promotion Discrimination**
**(On Behalf of Plaintiff Smith and All Class Members)**

113.    Class Representative Smith re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

114.    This Count is brought on behalf of Class Representative Smith and all members of the Class.

115.    Defendant has discriminated against Class Representative Smith and all members of the Class in violation of Title VII by subjecting them to different treatment on the basis of their gender.  The members of the Class have been disparately impacted and disparately treated

29

as a result of Defendant's wrongful conduct and Merck's policies, practices and procedures.

116.    Defendant has discriminated against the Class Representative and all members of the Class by treating them differently from and less preferably than similarly situated male employees, and by subjecting them to discriminatory denials of promotions, discriminatory denials of developmental opportunities and discriminatory performance evaluations that affect promotions in violation of Title VII.

117.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Class Representative and the members of the proposed class, entitling Class Representative and the members of the Class to punitive damages.

118.    As a result of Defendant's conduct alleged in this complaint, the Class Representative and the members of the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

119.    By reason of Defendant's discrimination, Class Representative Smith and members of the Class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

120.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT III**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e,** *et seq.*
**Pregnancy and Sex Plus Discrimination**
**(On Behalf of Plaintiff Smith and All Sub-Class Members)**

121.    Class Representative Smith re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

122.    This Count is brought on behalf of Class Representative Smith and all members of the Sub-Class.

123.    Defendant has discriminated against Class Representative Smith and all members of the Sub-Class in violation of Title VII by subjecting them to different treatment on the basis of their gender.  The members of the Class have been disparately impacted and disparately treated as a result of Defendant's wrongful conduct and its policies, practices and procedures.

124.    Defendant has discriminated against the Sub-Class members bringing this claim by treating them differently from and less preferably than similarly situated male employees and female employees who are not pregnant and who do not have children, and by subjecting them differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotional and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of Title VII.

125.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Class Representative Smith and the members of the proposed Sub-Class, entitling the Class Representative and the members of the Sub-Class to punitive damages.

126.    As a result of Defendant's conduct alleged in this complaint, Class Representative

Smith and the members of the Sub-Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

127.    By reason of Defendant's discrimination, Class Representative Smith and members of the Sub-Class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

128.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e-5(f),** *et seq.*
**Retaliation**
**(On Behalf of Plaintiff Smith)**

129.    Plaintiff Smith re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

130.    Plaintiff engaged in protected activities by complaining about gender discrimination—including but not limited to pay disparity, denial of opportunities for professional advancement, favorable treatment towards male employees and derogatory remarks—to people in management positions and in Human Resources.

131.    Defendant engaged in adverse employment actions against Plaintiff for engaging in protected activities.  Such adverse employment actions have been in the form of subjecting her to unfavorable terms and conditions of employment, including inter alia, denials of promotions, disciplinary actions and subjection to a hostile working environment.  The adverse employment actions have materially and adversely affected Plaintiff's overall terms and conditions of employment.

132.   A reasonable employee would find Merck's retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

133.   Defendant's retaliatory acts against Plaintiff were a direct and proximate result of her protected activities.

134.   Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Plaintiff, entitling her to punitive damages.

135.   As a result of Defendant's conduct alleged in this complaint, Plaintiff Smith has suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

136.   By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available, including an award of punitive damages.

137.   Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

### COUNT V
### VIOLATION OF FAMILY AND MEDICAL LEAVE ACT ("FMLA")
### 29 U.S.C. § 2601, *et seq.*
### (On Behalf of Plaintiff Kelli Smith)

138.   Class Representative Smith re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

139.   Under the FMLA, an employee must be restored by the employer to the same position held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. Further, an employer cannot use the taking of FMLA leave as a "negative factor" in employment actions

such as hiring, promotions, or disciplinary actions.  Ms. Smith took approved FMLA leave for maternity leave.

140.    Merck interfered with Ms. Smith's taking of protected maternity leave and discriminated against her for the taking of such leave, in violation of the FMLA.

141.    Merck interfered with Ms. Smith's taking of FMLA-protected maternity leave and discriminated against her for taking such leave by using the taking of FMLA leave as a negative factor in employment actions, including, inter alia, demoting her, denying her career-advancement opportunities, making inaccurate statements harmful to her professional career, and creating an environment hostile to pregnancy and the taking of statutorily protected maternity leave.

142.    Defendant acted willfully, intentionally and with reckless disregard for Ms. Smith's rights under the FMLA.

143.    As a direct and proximate result of Defendant's actions, Ms. Smith suffered injury and monetary damages, including but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, expenses and costs and is entitled to all legal and equitable remedies available.

144.    By reason of Defendant's discrimination, Ms. Smith is entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 2617.

**COUNT VI**
**VIOLATION OF THE LAW AGAINST DISCRIMINATION,**
**N.J. STAT. § 10:5-1, *et seq.***
**Pay Discrimination**
**(On Behalf of Plaintiff Smith and Class Members)**

145.     Class Representative Smith re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

146.     This Count is brought on behalf of Class Representative Smith and all members of the Class.

147.     Defendant has discriminated against Class Representative Smith and all members of the Class in violation of the New Jersey State Law Against Discrimination by subjecting them to different treatment on the basis of their gender.  The members of the Class have been disparately impacted and disparately treated as a result of Defendant's wrongful conduct and its policies, practices and procedures.

148.     Defendant has discriminated against Class Representative Smith and all members of the Class by subjecting them to discriminatory denials of pay raises and discriminatory performance evaluations and rankings that affect pay, in violation of the Law Against Discrimination.

149.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Class Representative Smith and the members of the proposed class, entitling Class Representative Smith and the members of the Class to punitive damages.

150.     As a result of Defendant's conduct alleged in this complaint, Class Representative Smith and the members of the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

151.    By reason of Defendant's discrimination, Class Representative Smith and members of the Class are entitled to all legal and equitable remedies available for violations of the Law Against Discrimination, including an award of punitive damages.

152.    Attorneys' fees should be awarded under N.J. Stat. § 10:5-27.1.

**COUNT VII**
**VIOLATION OF THE LAW AGAINST DISCRIMINATION,**
**N.J. STAT. § 10:5-1, *et seq*.**
**Promotion Discrimination**
**(On Behalf of Plaintiff Smith and Class Members)**

153.    Class Representative Smith re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

154.    This Count is brought on behalf of Class Representative Smith and all members of the Class.

155.    Defendant has discriminated against Class Representative Smith and all members of the Class in violation of the Law Against Discrimination by subjecting them to different treatment on the basis of their gender.  The members of the Class have been disparately impacted and disparately treated as a result of Defendant's wrongful conduct and its policies, practices and procedures.

156.    Defendant has discriminated against Class Representative Smith and all members of the Class by treating them differently from and less preferably than similarly situated male employees, and by subjecting them to discriminatory denials of promotions, discriminatory denials of developmental opportunities and discriminatory performance evaluations that affect promotions in violation of the Law Against Discrimination.

157.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Class Representative Smith and the members

of the proposed Class, entitling Class Representative Smith and the members of the Class to punitive damages.

158.    As a result of Defendant's conduct alleged in this complaint, Class Representative Smith and the members of the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

159.    By reason of Defendant's discrimination, Class Representative Smith and members of the Class are entitled to all legal and equitable remedies available for violations of the Law Against Discrimination, including an award of punitive damages.

160.    Attorneys' fees should be awarded under N.J. Stat. § 10:5-27.1.

**COUNT VIII**
**VIOLATION OF THE LAW AGAINST DISCRIMINATION**,
**N.J. STAT. § 10:5-1,** *et seq.*
**Pregnancy and Sex Plus Discrimination**
**(On Behalf of Plaintiff Smith and Sub-Class Members)**

161.    Class Representative Smith re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

162.    This Count is brought on behalf of the Class Representative Smith and all members of the Sub-Class.

163.    Defendant has discriminated against Class Representative Smith and all members of the Sub-Class in violation of New Jersey Law Against Discrimination Title VII by subjecting them to different treatment on the basis of their gender.  The members of the Sub-Class have been disparately impacted and disparately treated as a result of Defendant's wrongful conduct and its policies, practices and procedures.

164.   Defendant has discriminated against the Sub-Class members bringing this claim by treating them differently from and less preferably than similarly situated male employees and non-pregnant employees and by subjecting them differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotional and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of New Jersey Law Against Discrimination.

165.   Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Class Representative Smith and the members of the proposed Sub-Class, entitling Class Representative Smith and the members of the Sub-Class to punitive damages.

166.   As a result of Defendant's conduct alleged in this complaint, Class Representative Smith and the members of the Sub-Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

167.   By reason of Defendant's discrimination, Class Representative Smith and members of the Sub-Class are entitled to all legal and equitable remedies available for violations of New Jersey Law Against Discrimination, including an award of punitive damages.

168.   Attorneys' fees should be awarded under N.J. Stat. § 10:5-27.1.

**COUNT IX**
**VIOLATION OF THE FAMILY LEAVE ACT**
**N.J. STAT. § 34:11B-1,** *et. seq.*
**(On Behalf of Plaintiff Smith)**

169.    Class Representative Smith re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

170.    Defendant discriminated against Class Representative Smith on the basis of her pregnancy, childbirth and related conditions in violation of the Family Leave Act ("FLA").  N.J. Stat. § 34:11B-1, *et seq.*

171.    Defendant retaliated against Class Representative Smith for taking FLA-protected leave by adversely and materially changing the terms and conditions of her employment by, inter alia, demoting her, denying her career-advancement opportunities, and otherwise creating an environment hostile to pregnancy and the taking of statutorily protected leave.

172.    Defendant acted willfully, intentionally, and with reckless disregard for Class Representative Smith's rights under the FLA.

173.    As a direct and proximate result of defendant's actions, Class Representative Smith suffered injury and monetary damages, including but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, pain and suffering, expenses and costs, and is entitled to all legal and equitable remedies available.

174.    By reason of Defendant's discrimination, Class Representative Smith is entitled to all legal and equitable remedies available for violations of the FLA, including an award of punitive damages.

175.    Attorneys' fees should be awarded under N.J. Stat. § 34:11B-1.

**COUNT X**
**VIOLATIONS OF THE LAW AGAINST DISCRIMINATION,**
**N.J. STAT. § 10:5-12(d) *et seq.*,**
**Retaliation**
**(On Behalf of Plaintiff Smith)**

176.    Class Representative Smith re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

177.    Class Representative Smith engaged in a protected activity by complaining about gender discrimination—including but not limited to pay disparity, denial of opportunities for professional advancement, favorable treatment towards male employees and derogatory remarks—to people in management positions and in Human Resources.

178.    Defendant engaged in adverse employment actions against Class Representative Smith for engaging in protected activities.  Such adverse employment actions have been in the form of subjecting them to unfavorable terms and conditions of employment, including inter alia, denials of promotions, disciplinary actions and subjection to a hostile working environment.  The adverse employment actions have materially and adversely affected Class Representative Smith's overall terms and conditions of employment.

179.    A reasonable employee would find Merck's retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

180.    Defendant's retaliatory acts against Class Representative Smith were a direct and proximate result of her protected activities.

181.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Class Representative Smith, entitling her to punitive damages.

182.    As a result of Defendant's conduct alleged in this complaint, Class Representative Smith has suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

183.    By reason of Defendant's discrimination, Class Representative Smith is entitled to all legal and equitable remedies available for violations of the Law Against Discrimination, including an award of punitive damages.

184.    Attorneys' fees should be awarded under N.J. Stat. § 10:5-27.1.

## PRAYER FOR RELIEF ON CLASS CLAIMS

WHEREFORE, the Class Representative, on her own behalf and on behalf of the Class, pray that this Court:

A.    Grant certification of this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23 (a), (b)(2) and/or (b)(3), on behalf of the proposed Plaintiff Class; designation of the proposed Class Representative as representative of this Class; and designation of Plaintiff's counsel of record as Class Counsel;

B.    Declare and adjudge that the corporate Defendant's employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Class Representative and Class members;

C.    A permanent injunction against Merck and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages and gender discrimination as set forth herein;

D.    Order Defendant to initiate and implement programs that will: (i) provide equal employment opportunities for female employees; (ii) remedy the effects of the Defendant's past

41

and present unlawful employment policies, practices and/or procedures; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above; and/or

E.      Order Defendant to initiate and implement systems of assigning, training, transferring, compensating and promoting female employees in a non-discriminatory manner; and/or

F.      Order Defendant to establish a task force on equality and fairness to determine the effectiveness of the programs described in D through E above, which would provide for: (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in D through E above; and/or

G.      Order Defendant to adjust the wage rates and benefits for the Class Representative and the Class members to the level that they would be enjoying but for the Defendant's discriminatory policies, practices and/or procedures; and/or

H.      Order Defendant to place or restore the Class Representative and the Class members into those jobs they would now be occupying but for Defendant's discriminatory policies, practices and/or procedures; and/or

I.      Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that the Defendant have remedied the practices complained of herein and are determined to be in full compliance with the law; and/or

J.      Award nominal, compensatory and punitive damages to the Class Representative and the Class members, in excess of one hundred million dollars; and/or

K.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to the Class Representative and Class members; and/or

L.       Award back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by the Class Representative and the Class members to be determined at trial; and/or

M.       Order Defendant to make whole the Class Representative and Class members by providing them with appropriate lost earnings and benefits, and other affirmative relief; and/or

N.       Award any other appropriate equitable relief to the Class Representative and Class members; and/or

O.       Award any additional and further relief as this Court may deem just and proper.

## VIII.  **JURY DEMAND**

Plaintiff Smith demands a trial by jury on all issues triable of right by jury.


Dated:  May 9, 2013                           **SANFORD HEISLER, LLP**
                               By:      s/Jennifer Siegel

                                        David Sanford (D.C. Bar No. 457933)
                                        Kate Mueting (D.C. Bar No. 988177)
                                        **SANFORD HEISLER, LLP**
                                        1666 Connecticut Avenue, N.W., Suite 300
                                        Washington, D.C. 20009
                                        Telephone: (202) 499-5201
                                        Facsimile:  (202) 499-5119
                                        dsanford@sanfordheisler.com
                                        kmueting@sanfordheisler.com

                                        Jennifer Siegel (NJ-6110)
                                        Deborah Marcuse (NY Bar No. 457933)
                                        **SANFORD HEISLER, LLP**
                                        1350 Avenue of the Americas, 31st Floor
                                        New York, New York 10019
                                        Telephone: (646) 402-5656
                                        Facsimile: (646) 402-5650
                                        jsiegel@sanfordheisler.com
                                        dmarcuse@sanfordheisler.com

                                        *Attorneys for Plaintiff Kelli Smith*