NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KELLI SMITH, KANDICE BROSS, RACHEL MOUNTIS, AMY SHURSKY and KATE WHITMER, individually and on behalf of a class of similarly situated female employees, | : : : : : : |
| Plaintiffs, | : Civil Action No. 13-cv-2970 (JAP) |
| v. | : **OPINION** |
| MERCK & CO., INC., | : : |
| Defendants. | : : : |

PISANO, District Judge

Presently before the Court is Defendant, Merck & Co., Inc.'s ("Defendant" or "Merck") motion to dismiss or strike Plaintiffs', Kelli Smith, Kandice Bross, Rachel Mountis, Amy Shursky and Kate Whitmer, individually and on behalf of a class of similarly situated female employees (collectively "Plaintiffs") disparate impact, and class and collective action claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and 23(d)(1)(D) [docket #26]. Plaintiffs oppose this motion [docket #31]. The Court considered the papers filed by the parties and rules on the written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, this Court DENIES Defendant's motion to dismiss in its entirety [docket #26].

**I.     BACKGROUND**

Plaintiffs' amended complaint, received by the Court on January 16, 2014 [docket #22] consists of twelve (12) causes of action against Defendant for: (1) Pay Discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; (2) Promotion

1

Discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*; (3) Pregnancy and Sex Plus Discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*; (4) Retaliation in violation of Title VII, 42 U.S.C. § 2000e-5(f), *et seq.*; (5) Constructive Discharge in violation of Title VII, 42 U.S.C. § 2000e-5(f), *et seq.*; (6) a violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; (7) a violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206(d); (8) Pay Discrimination in violation of the Law Against Discrimination ("LAD"), *N.J.S.A*. § 10:5-1, *et seq.*; (9) Promotion Discrimination in violation of the LAD, *N.J.S.A*. § 10:5-1, *et seq.*; (10) Pregnancy and Sex Plus Discrimination in violation of the LAD, *N.J.S.A*. § 10:5-1, *et seq.*; (11) a violation of the Family Leave Act, N.J.S.A. § 34:11B-1, *et seq.*; and (12) Retaliation in violation of the LAD, *N.J.S.A*. § 10:5-12(d), *et seq*. The following allegations are taken from Plaintiffs' amended complaint and are accepted as true for purposes of this Court's review only.

Plaintiffs' class allegations involve gender disparity and discrimination claims surrounding Defendant's promoting practices. Specifically, Plaintiffs' allege that the company fosters a "boys' club" environment in which women are excluded from the company's "tap-on-the-shoulder" promotions and promotional opportunities. See Plaintiffs' Amended Compl. ("Compl.") [docket #22], at ¶ 5. Plaintiffs' assert that senior leaders at Merck make personnel decisions based on unlawful stereotypes that men are "breadwinners" and responsible for financially supporting their families, while women should "stay at home" with children. Compl., at ¶ 7. Plaintiffs' also claim that Merck has systematically paid female sales representatives, particularly those who were, are or had been pregnant, less than similarly situated male employees in all forms of compensation, including base pay, salary increases, and incentive compensation. Compl., at ¶¶ 8-9. Further, Merck allegedly retaliates against women who suffer the effects of this discrimination and raise

any complaints surrounding the same. Compl., at ¶ 16. Despite being discouraged from raising complaints, when women have raised the issue of discrimination, Merck fails to take any steps to remedy its discriminatory policies. Compl., at ¶ 16. The class representatives seek to maintain claims on their own behalf and on behalf of 1) a class of female employees who are or were employed at Merck as sales representatives from December 2010 to the present; and 2) a sub-class of female employees at Merck from December 2010 to the present who are or were pregnant or have children. Compl., at ¶ 153. For purposes of clarity, the Court will address the class representatives' specific allegations separately below.

### *i.     Kelli Smith's Allegations*

Ms. Smith was employed at Merck as a "Senior Sales Representative" from June 2004 through December 2013. Compl., at ¶ 32. Ms. Smith consistently achieved exceptional results and distinguished herself as a top performer. Compl., at ¶ 34. Despite her skills and qualifications, Merck allegedly discriminated against Ms. Smith because of her gender and pregnancy leave by denying her promotions and promotional opportunities, disciplining her unfairly, giving her unfair performance evaluations and subjecting her to other discriminatory actions that have stalled her career and harmed her professional reputation. Compl., at ¶ 37. Ms. Smith was also paid less than similarly situated male employees, and demoted upon returning from maternity leave. Compl., at ¶¶ 38-39. Ms. Smith was informed by her superiors at Merck that the decision to demote her, as well as deny her an award, was due to the timing of her baby and maternity leave. Compl., at ¶ 42.

After Ms. Smith complained about her demotion and suggested that she wanted to pursue the matter further with Merck's Human Resources department, her male manager discouraged her from pursuing that claim and told her to "move on." Compl., at ¶¶ 43-44. Despite this, Ms. Smith

3

complained on several occasions to the Ombudsman's office and to Merck's Office of Ethics and Human Resources, none of which took any action to rectify the discrimination. Compl., at ¶ 45. Then, in June 2011, shortly after Ms. Smith complained, Merck disciplined her for allegedly violating company policy more than two (2) months prior; however, Merck purportedly did not discipline male employees who routinely violated these same company policies. Compl., at ¶ 51. Further, Merck failed to inform Ms. Smith of four (4) promotion opportunities despite her previously expressing a strong interest in these positions. Compl., at ¶ 52.

Ms. Smith alleges that Merck fosters an environment whereby female employees and employees who are or have been pregnant are harassed and marginalized. Compl., at ¶ 54. Defendant's senior leadership allegedly encourages a "boys' club" type environment whereby inappropriate advances are made towards female employees. Compl., at ¶ 54. Ms. Smith claims that this type of environment results in Defendant demeaning and degrading female employees and allows for the professional contributions of female employees to go unrecognized. Compl., at ¶¶ 54-56. Ms. Smith also alleges that her opportunities for advancement were further diminished in response to her filing the instant lawsuit because Merck marginalized and stigmatized her which left her with no choice but to leave the company in December 2013. Compl., at ¶ 58.

### ii. *Kandice Bross' Allegations*

Ms. Bross began working for Merck in January 2010 when Merck merged with Schering-Plough. Compl., at ¶ 59. In 2009, Ms. Bross ranked among the top twenty-five (25) representatives nationwide for growth in market share for one of her products. Compl., at ¶ 60. Despite her qualifications, Merck allegedly discriminated against Ms. Bross because of her gender and pregnancy. Compl., at ¶ 62. During Ms. Bross' initial hire, Defendant assigned her to a lower level position with lower compensation than equally qualified male employees with the same job

4

duties. Compl., at ¶ 63. In September 2010, Ms. Bross' manager admitted that her salary "stuck out like a sore thumb" relative to the salaries of others in her region; as such, Merck slightly increased her salary. Compl., at ¶ 63. Even with this pay raise, however, Ms. Bross still made significantly less than her male counterparts. Compl., at ¶ 64. Specifically, Ms. Bross alleges that Defendant pays male sales representatives more because they are "breadwinners" who "provide for their families." Compl., at ¶ 66.

In addition to pay disparity, Ms. Bross alleges that Merck gave her a negative performance review and the lowest competency score, despite her sales numbers being amongst the highest in her district. Compl., at ¶ 67. Further, Merck allegedly discriminated against Ms. Bross by denying her promotional opportunities afforded to equally or less qualified male sales representatives. Compl., at ¶ 68. Ms. Bross alleges that it is Defendant's policies and procedures which prevented her from being promoted the year she took maternity leave and that her manager described her taking such leave as "unfortunate." Compl., at ¶ 70. Merck also denied Ms. Bross an award in 2010, despite her sales numbers being the same as those of her male territory partner, who received both the award and a higher bonus than Ms. Bross. Compl., at ¶ 72. Ms. Bross alleges that it is Defendant's "tap-on-the-shoulder" promotion policies and practices that denied her other promotional opportunities as well. Compl., at ¶¶ 73-74. Ms. Bross claims that Defendant's alleged discriminatory decisions are based on fostering a "boys' club" culture that results in subjecting female employees' to a hostile work environment. Compl., at ¶¶ 76-80.

### iii.     *Rachel Mountis' Allegations*

Ms. Mountis began working at Merck in 2005 as a medical representative. Compl., at ¶ 82. By 2010, Ms. Mountis had been promoted to the position of adult vaccine specialist. Compl., at ¶ 83. Despite her qualifications, Merck discriminated against Ms. Mountis because of her

gender and pregnancy. Compl., at ¶ 85. Specifically, Ms. Mountis alleges that she was paid less than similarly situated male employees notwithstanding the fact that her job duties, working conditions, performance, sales numbers, and experience were the same or comparable to her male counterparts. Compl., at ¶ 85. Defendant also laid off Ms. Mountis during a reorganization, demoted her, gave her unfair performance evaluations, denied her promotions and promotional opportunities, and subjected her to other discriminatory actions that have stalled her career and harmed her professional reputation. Compl., at ¶ 85.

During the reorganization, Merck announced that it would determine layoffs based on three (3) factors: 1) the employee's sales numbers from the previous two years; 2) an evaluation of the employee's competencies; and 3) the location of the employee's residence relative to Merck's sales territories. Compl., at ¶ 86. In late November 2010, four (4) weeks prior to her baby's due date, Ms. Mountis went on short-term disability leave due to serious pregnancy-related health problems. Compl., at ¶ 87. Nearly one (1) week later, Ms. Mountis' team leader contacted her to inform her of Merck's decision to lay her off. Compl., at ¶ 87. Ms. Mountis later learned that Defendant instead assigned a male employee, who had comparable sales numbers to Ms. Mountis, to her territory. Compl., at ¶ 89.

Following her lay-off and per Defendant's policy, Ms. Mountis had two (2) months to apply through internal job listings to open positions at Merck. Compl., at ¶ 90. During this two (2) month window, however, Ms. Mountis was on maternity leave so she requested an extension through the Human Resources department, which was denied. Compl., at ¶ 90. As such, Ms. Mountis was forced to apply for positions on the day she checked into the hospital and to interview in person ten (10) days after having a caesarean section surgery. Compl., at ¶ 90. In April 2011, Merck informed Ms. Mountis that she received a new position within the company; however, it

6

was a position that Ms. Mountis was overqualified for, as it was at the lowest tier. Compl., at ¶ 91. Defendant again demoted Ms. Mountis in December 2012 when she was on her second maternity leave and attempted to transfer her to a position significantly farther from her home. Compl., at ¶ 92. Ms. Mountis alleges that Merck stifled her career and interfered with her professional development, causing her high levels of stress and anxiety. Compl., at ¶¶ 93-94.

### iv.    *Amy Shursky's Allegations*

Ms. Shursky began working for Merck as an analyst in September 2000, later becoming a specialty representative in March 2004, a senior hospital representative in November 2007, a senior disease focus representative in March 2009, and a senior disease focus respiratory representative in January 2010. Compl., at ¶¶ 95, 97. Despite her skills and qualifications, Ms. Shursky alleges that Merck discriminated against her because of her gender and pregnancy. Compl., at ¶ 98. Ms. Shursky claims that Merck paid her less than similarly situated male employees and assigned her to a lower tiered position than she was qualified for while she was out on maternity leave. Compl., at ¶¶ 99-100. Despite her requests to be assigned to a position at a higher tier, Ms. Shursky was informed that the assignment was "probably not good timing" because of her "going on maternity leave." Compl., at ¶¶ 102-103.

Moreover, upon returning from maternity leave, Ms. Shursky was advised that her position may be eliminated altogether due to her manager's belief that women with children should not work outside the home. Compl., at ¶ 104. Merck also gave Ms. Shursky a negative performance review for 2011, the year she had been on maternity leave, and her manager admitted that it based Ms. Shursky's rating on the fact that it had been a "choppy" year for her "because of her maternity." Compl., at ¶ 105. Ms. Shursky alleges that, as a result of Defendant's discrimination, she suffered and continues to suffer from high levels of stress and anxiety. Compl., at ¶ 106.

### v. *Kate Whitmer's Allegations*

Ms. Whitmer began working at Merck in July 2005 as an associate sales representative and was later promoted to an adult immunization professional in 2006, an adult immunization professional II in 2008, and finally to an executive vaccine representative in March 2011. Compl., at ¶¶ 107-108. While at Merck, Ms. Whitmer distinguished herself as a top performer, consistently ranking in the top 30% for sales performance and top 20% for leadership potential. Compl., at ¶ 110. Despite her strong performance, Merck paid Ms. Whitmer less than male sales representatives in the same jobs who performed the same duties under the same working conditions, and also paid her less than male representatives who were in lower tiered positions. Compl., at ¶ 111. Similarly, Ms. Whitmer alleges that Merck paid a male counterpart bonuses which were three (3) times as high as hers, despite their performance numbers being exactly the same. Compl., at ¶ 112.

Ms. Whitmer claims that Merck denied her promotions and promotional opportunities when she was about seven (7) months pregnant because the company's policies and practices prevented her from applying for a sales position at a higher tier. Compl., at ¶113. Ms. Whitmer applied for other specialty positions and also asked for more prestigious assignments, but these requests were denied. Compl., at ¶¶ 114-115. As a result, Ms. Whitmer complained that the company was giving these assignments to less-qualified male employees who lacked her demonstrated performance and leadership capabilities. Compl., at ¶115. Ms. Whitmer also complained to Human Resources about being denied an award that was instead given to a male employee with lower sales numbers and fewer leadership responsibilities, but Human Resources refused to take any remedial action. Compl., at ¶ 118. Ms. Whitmer also attempted to call Merck's

Human Resources hotline on numerous occasions to report the alleged discrimination, but never received a response. Compl., at ¶ 119.

In November 2011, Ms. Whitmer forwarded a file to a customer that, due to an error by Merck's IT department, contained information that the customer should not have seen. Compl., at ¶ 128. Ms. Whitmer notified her manager, who did not raise any concerns about the incident, and she later learned from Human Resources that the error was "no big deal" and would have "zero effect" on her bonus pay or her job. Compl., at ¶ 128. Two (2) weeks later, however, Ms. Whitmer was informed that she was reported to Human Resources for this mistake, was under investigation, and that Merck might terminate her employment. Compl., at ¶ 129. Unable to tolerate the stress allegedly imposed by her manager and the threat of an investigation, Ms. Whitmer felt that she had no choice but to leave Merck in January 2012. Compl., at ¶ 132. Ms. Whitmer alleges that, as a result of Merck's discrimination and continuing retaliation, she suffered and continues to suffer from high levels of stress and anxiety. Compl., at ¶ 133.

## II.     DISCUSSION

### a. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but it does require "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). Therefore, in order to withstand a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To decide if a complaint meets this plausibility standard and therefore, survives a motion to dismiss, the Third Circuit has required a three step analysis: (1) the Court must "outline the elements a plaintiff must plead to . . . state a claim for relief"; (2) the Court must identify "those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, [the Court] should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000).

Further, the Supreme Court has recognized that, in some instances, it may be appropriate for a District Court to determine at the pleading stage whether a plaintiff can satisfy Rule 23's class certification requirements. See *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). However, the Third Circuit has noted that

the 2003 amendments to Rule 23 aim to reflect the need for a thorough evaluation of the class certification factors and therefore, the rule does not require or encourage premature certification determinations. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008), as amended (Jan. 16, 2009). Importantly, "[w]hile these amendments do not alter the substantive standards for class certification, they guide the trial court in its proper task-to consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class." *Id.* at 320.

### b. Analysis

Defendant argues that, whether analyzed as a Rule 23(d)(1)(D) motion to strike or a Rule 12(b)(6) motion to dismiss, the standard is effectively the same and Plaintiffs' factual allegations are not sufficient to state a viable class claim. Specifically, Defendant claims that Plaintiffs' allegations primarily surround particular decisions made by individual managers, but that Plaintiffs' have failed to sufficiently allege a specific policy or practice by the company as a whole that has a disparate impact sufficient to warrant class certification.

Under Federal Rule of Civil Procedure 23(a), the party seeking certification must demonstrate, first, that: "(1) the class is so numerous that joinder of all members is impracticable[;] (2) there are questions of law or fact common to the class[;] (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class[;] and (4) the representative parties will fairly and adequately protect the interests of the class[.] Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011). This is so because, in order to justify a departure from the usual rule that litigation is conducted by and on behalf of individually named parties, "a class representative must be part of the class and 'possess the same interest and suffer

the same injury' as the class members." *Id*. at 2550 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).

As such, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551 (emphasis in original). Where class certification is sought in the Title VII context, Courts have noted that there is a conceptual gap between:

> (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and
>
> (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id*. at 2553 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58, 102 S. Ct. 2364, 2371, 72 L. Ed. 2d 740 (1982)). The Supreme Court has suggested two (2) ways to bridge the conceptual gap in a Title VII class action. "First, if the employer 'used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a). Second, significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." *Id*. Stated differently, "[w]ithout some glue holding the alleged *reasons* for" employment decisions together, it would be impossible in a Title VII case to say that "examination

of all the class members' claims for relief will produce a common answer to the crucial question" as to why they were disfavored. *Id*. at 2552 (emphasis in original).

Here, Defendant relies on *Wal-Mart* to support its argument that Plaintiffs cannot sustain their Title VII and related claims as a class action. Defendant asserts that Plaintiffs' allegations focus solely on discretionary decisions by individual managers, not a centralized senior leadership team and, therefore, cannot plausibly give rise to a common question that connects Plaintiffs' and the class members' claims. Defendant's reliance on *Wal-Mart* is, in the abstract, persuasive; however, what Defendant fails to acknowledge is that the Court in *Wal-Mart* had significant evidence in front of it when determining whether to certify the class. There, the Plaintiffs' filed their complaint in the District Court on June 8, 2001. More than one (1) year had elapsed when an Order was entered on November 26, 2002, by the Honorable Martin Jenkins which set a discovery schedule and deadlines for the *Wal-Mart* Plaintiffs to file their class certification motion. This Order also set a class certification hearing to be held on July 25, 2003, which was more than two (2) years after the Plaintiffs' initial complaint was filed. In support of their motion for class certification, the Plaintiffs in *Wal-Mart* filed 121 declarations with exhibits, and Wal-Mart filed over 300 supporting declarations and documents in connection with their opposition. After considering the vast amounts of evidence, the District Court in *Wal-Mart* decided the motion for class certification on June 21, 2004, three (3) full years after the Plaintiffs' had filed their complaint.

The procedural posture of *Wal-Mart* is particularly instructive here, as Defendant's reliance on the case is misplaced. Particularly, the parties in *Wal-Mart* engaged in extensive discovery, the Court reviewed thousands of documents and exhibits in connection with the class claims, conducted a hearing, and ruled on the certification motion three (3) full years after the complaint

...

was filed. Such is not the case here. Rather, in the instant matter, Plaintiffs' original complaint was filed with this Court on May 9, 2013, and the amended complaint on January 16, 2014 [docket #1 and #22, respectively]. Merely one (1) month later, Merck filed the instant motion on February 18, 2014 [docket #26]. Hardly, if any, discovery has been completed and there has been little to no evidence put before this Court to evaluate the merits of Plaintiffs' class claims and whether these claims suffice for purposes of Rule 23 certification. *Id*. at 2551 (determining whether the requirements of Rule 23 have been met "will entail some overlap with the merits of the plaintiff's underlying claim."). Defendant's motion is simply premature and of the type that the Third Circuit has specifically cautioned against granting. See *In re Hydrogen Peroxide*, 552 F.3d at 318 (indicating that the trial court is to carefully consider all relevant evidence in order to make a definitive determination regarding whether the requirements of Rule 23 have been met before certifying a class). Whether Plaintiffs' Title VII and other related class allegations ultimately meet the standards of Rule 23 under the guise of the *Wal-Mart* decision is not for the Court to determine at this juncture.

Moreover, Plaintiffs' have certainly pled sufficient allegations to withstand the plausibility standard set forth in Rule 12(b)(6). The amended complaint is 69 pages replete with allegations surrounding Merck's alleged policies and procedures resulting in disparate impact to female sales representatives which, as set forth above, this Court is required to accept as true for purposes of this motion. Further, the amended complaint contains 16 pages dedicated solely to factual allegations surrounding the requirements of Rule 23 – namely, numerosity, commonality, typicality, and adequate representation – in addition to the requirements of Rule 23(b). Similarly, Defendant's argument that Plaintiffs' simply substituted names of individual managers with "Merck" and that such is insufficient to make Plaintiffs' claims plausible, is missing the mark.

Indeed, the Supreme Court noted in *Wal-Mart* that one of the ways to bridge the "conceptual gap" between an individual's discrimination claim and that of a class, and therefore justify class certification, is by showing "significant proof that an employer operated under a general policy of discrimination . . . [and] the discrimination manifested itself in hiring and promotion practices in the same general fashion, *such as through entirely subjective decisionmaking processes*." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2552 (emphasis supplied). While it is too premature to determine whether Plaintiffs' have "significant proof" to suffice under this standard, Plaintiffs' have certainly pled sufficient allegations regarding Defendant's promotion practices and subjective decisionmaking such that Plaintiffs' class claims are plausible.

### III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and/or strike Plaintiff's disparate impact, class and collective action claims [docket # 26] is DENIED, without prejudice. An appropriate Order accompanies this Opinion.

Date:  October 8, 2014                                                    /s/ Joel A. Pisano
                                                                          JOEL A. PISANO
                                                                          United States District Judge