**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| **KELLI SMITH,** *individually and on behalf of a class of similarly situated female employees,* **RACHEL MOUNTIS, AMY SHURSKY and KATE WHITMER** , | ) Docket No. 3:13-cv-02970-MAS-LHG<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | ) Courtroom No. 7E<br>) Clarkson S. Fisher Building |
| **versus** | ) & U.S. Courthouse<br>) 402 East State Street |
| **MERCK & CO., INC.,** | ) Trenton, New Jersey 08608<br>) |
| **Defendant.** | ) August 10, 2015<br>) 11:09 a.m. |

TRANSCRIPT OF TELEPHONE CONFERENCE RE: DISCOVERY DISPUTE
BEFORE HONORABLE LOIS H. GOODMAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:          Sanford Heisler, LLP
                             By:  DEBORAH MARCUSE, ESQ.
                                  ANDREW MELZER, ESQ.
                                  DAVID TRACEY, ESQ.
                             1350 Avenue of the Americas
                             31st Floor
                             New York, New York 10019

For the Defendant:          Morgan Lewis & Bockius, LLP
                             By:  CHRISSY KATZENSTEIN, ESQ.
                                  CAILIN HEILIG, ESQ.
                             1701 Market Street
                             Philadelphia, Pennsylvania 19103

ESR/Courtroom Deputy:       Ivannya Jimenez

**TRANSCRIPTION SERVICE:**      **TRANSCRIPTS PLUS, INC.**
                                **435 Riverview Circle**
                                **New Hope, Pennsylvania 18938**
                                **Telephone: 215-862-1115**
                                **Facsimile: 215-862-6639**
                                **e-mail** **CourtTranscripts@aol.com**

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1       <u>TRENTON, NEW JERSEY   AUGUST 10, 2015    11:09 A.M.</u>

2            (Call to order of the Court)

3            THE COURT:  All right.  Good morning, Counsel.  We're

4    on the record in Smith, et al. versus Merck and Co., Docket 13-

5    2970.

6            Can I have the appearances for the record, please?

7            MS. MARCUSE:  Deborah Marcuse, Andrew Melzer and

8    David Tracey for plaintiffs.

9            THE COURT:  Thank you.

10           MS. KATZENSTEIN:  Chrissy Katzenstein and Cailin

11   Heilig for defendant Merck and Company.

12           THE COURT:  All right.  Ms. Katzenstein, I am going

13   to ask you to speak up a little when you speak.

14           I am also going to ask you when you speak to please

15   state your name.  Just in case someone gets a transcripts, you

16   are not driving the transcriber crazy trying to figure out

17   whose voice it is.  Okay?

18           MS. KATZENSTEIN:  Right.

19           THE COURT:  All right.  Now I have a discovery

20   dispute that was submitted to me, there were actually several.

21   But I was very pleased to hear that some of them were resolved

22   by stipulation, and I congratulate you on that and thank you.

23           What remains was submitted to me by letter dated July

24   10, 2015, that was sent in by plaintiff.  And I got a response

25   dated July 16, 2015 from defendant.

3

1              And it seems to me there are really two issues here,

2  but I am going to ask you to clarify.  Because I will tell you,

3  quite honestly and rather bluntly, I have read these letters,

4  and I have read them again, and I have read them again.  And I

5  still am not clear exactly what it is plaintiff is asking for.

6  And now I am referring to the first part of it, the 2009 data

7  that plaintiff says they are looking for.

8              The second component is an update of what defendant

9  has already produced to bring it up-to-date, and we will deal

10  with that separately.

11              But with regard to 2009, I certainly got the

12  impression from plaintiffs' letter that nothing had been

13  produced for 2009.  And I started this before we went on the

14  record by saying I felt like it was almost two different cases

15  we are talking about because defendant says they have, in fact,

16  produced data for 2009, just a certain limited subset that has

17  not been produced.

18              And it might have been helpful to get a reply on

19  this.  Because, frankly, I have no idea as we sit here today

20  what it is that plaintiffs are looking for in this first

21  component of the discovery, and why they are entitled to it.

22  Because, frankly, the letter does not tell me.

23              So who is going to speak for plaintiff?

24              MS. MARCUSE:  This is Deborah Marcuse; I will, Your

25  Honor.

4

1          THE COURT:  Thank you.

2          MS. MARCUSE:  I am actually a little bit unclear

3 about what defendants are representing that they have produced.

4 But my understanding is that what we are -- what I know that we

5 are seeking is full employment data for the year 2009.  And my

6 understanding of what is in the data that defendants have

7 produced to date is full information from 2010, January, 2010

8 until July, 2014.

9          Now that includes some information about individuals

10 who were employed at Merck during 2009, and who continue to be

11 employed at Merck from 2010 forward.  But it does not -- and I

12 think defendants acknowledge this -- include information for

13 individuals -- it's simply not the full pay data for the year

14 2009.

15          So I'll start with that understanding, and then let

16 you hear from defendants if they believe that that's not an

17 accurate representation.

18          THE COURT:  Well, I will tell you, I read their

19 letter, and I am assuming you read their letter also.  And what

20 struck me was that they say that -- and I am looking at Page 3

21 of their letter.  They say, "Plaintiffs" -- this is a quote,

22 "Plaintiffs are seeking to compel 'complete employment and pay

23 data for class and collective members and their male

24 counterparts.'"  End of quote.

25          And Merck goes on to say they have produced the

1  complete employment and pay data for that population through

2  July, 2014.  What they say is if someone was hired before that

3  year, they have produced everything for those people.

4          So what they are suggesting, and what I am asking you

5  to respond to, is that the only exception is for people who

6  left Merck's employ in 2009.

7          And feel free to jump in, Ms. Katzenstein and Ms.

8  Heilig, whoever wants to speak for defendant, if I am getting

9  that wrong.  But I am taking that straight out of the letter.

10 And I am looking for whatever the nuance is.  What is it that I

11 am missing here?

12         MS. MARCUSE:  Your Honor, two points, I believe, just

13 briefly.

14         THE COURT:  Who is speaking?

15         MS. MARCUSE:  And this is Deborah Marcuse.

16         THE COURT:  Please identify yourself when you speak.

17 Excuse me?  Could you repeat that?  Please identify yourself

18 when you speak.

19         MS. MARCUSE:  Yes.  This is Deborah Marcuse for

20 plaintiffs.

21         I'm looking at Page 3 and there, Merck states that

22 they do not believe plaintiffs are entitled to data for any

23 individual who left Merck's employ before December 16th, 2010.

24         We have a difference of opinion on the question

25 whether we are entitled to -- we're looking at the following

1 paragraph.  The claim from Merck is that plaintiff Smith's

2 individual EPA claim was the only claim that was tolled between

3 June, 2012 and May, 2013.  As we've stated in our letters, we

4 disagree on that point.  So we believe that the -- the EPA

5 period goes back considerably further.

6         So, yes, we are asking for the data for certainly all

7 individuals employed in 2010, which, despite the fact like --

8 despite the fact that Merck says we're not entitled to it, my

9 understanding is that Merck has produced that data.  Chrissy,

10 is that accurate?

11         MS. KATZENSTEIN:  We have produced the data for all

12 of the class and collective action members in the population

13 from -- as that would exist from December 1st, 2010.

14         MS. MARCUSE:  Okay.  Well, then we're actually

15 missing substantially more than we even understood that we were

16 missing.  So we are then missing -- we are looking for

17 information for all of the individuals who are employed by

18 Merck from January 1st, 2009 through the present.

19         So I believe what we do not have then is data for all

20 the individuals employed who left Merck between -- who worked

21 at Merck sometime between January 1st, 2009 and December 1st,

22 2010, but who left the company before or on December 1st,

23 2010.

24         MS. KATZENSTEIN:  And this is --

25         MS. MARCUSE:  And that is based on our interpretation

1  of a tolling agreement that we, I believe, outlined in our

2  original letter to the Court.  I believe we outlined it in our

3  conditional certification letter, as well.  As well as our

4  understanding that we are entitled to full data for the entire

5  period from 2009 forward, even should the Court ultimately

6  determine that the only individuals included in the class are

7  those who come later.  That determination has not yet been

8  made.  And so where there is a dispute, we believe we are

9  entitled to the data.

10        MS. KATZENSTEIN:  And this is Chrissy Katzenstein,

11  Your Honor.

12        If I may just go back to the question that you posed

13  about the data that's been produced.  And that Your Honor is

14  correct, the data that Merck produced is data for anybody

15  falling within the class, and every piece of data that's

16  available in our SAP system throughout that person's

17  employment.

18        So to the extent that somebody was employed at Merck

19  in 2009 and continues to be employed during the class period,

20  that data has been produced to plaintiffs at this point.  So

21  really the dispute relates only to individuals who are not part

22  of the class, and who have no exposure or liability with

23  respect to those individuals.

24        Ms. Marcuse just referenced a tolling agreement that

25  plaintiffs contend would extend the EPA class period back

1  earlier into 2010.  Merck has made clear that that is not how

2  we interpret the tolling agreement.  There is nothing in that

3  tolling agreement that suggests that the claims of EPA opt-ins

4  were tolled during that period.  That agreement related only to

5  named plaintiff, Kelli Smith.

6           So we contend that at the very earliest, the EPA

7  class period cannot start until 2011.  Accordingly that, too,

8  is completely encompassed by the data that has been produced up

9  to this point.

10          MS. MARCUSE:  In the tolling agreement -- sorry.

11 This is Deborah Marcuse.

12          In the tolling agreement, there is Paragraph 2 that I

13 believe we've cited in our prior filings on conditional

14 certification that notes that all of Merck's potential

15 counterclaims against plaintiff or potential class members are

16 tolled.  That expressly contemplates potential class members

17 and would not make any sense if the entire agreement did not

18 expressly contemplate potential class members, as well as Kelli

19 Smith.

20          MS. KATZENSTEIN:  And if I may respond, this is

21 Chrissy Katzenstein.

22          I think that we're kind of merging two distinct

23 concepts in terms of class members versus collective action

24 members.  The tolling agreement -- for Title VII purposes, the

25 claims of class members toll from the charge filing date, and

1  were tolled pursuant to this tolling agreement.

2          However, for EPA purposes, a claim statute continues

3  to run for the collective class until those individuals opt in.

4  So there's two different class members, and it references with

5  respect to class members, the agreement is completely silent

6  with respect to both claims and counterclaims for collective

7  class members.

8          MS. MARCUSE:  Since those are -- sorry.  This is

9  Deborah Marcuse.

10         Since those are overlapping categories and it is not

11 specific -- the tolling agreement is not specific as to

12 exclusively claims relating to Title VII are claims flowing

13 from the EPA, that argument doesn't really make sense to us.

14         But, again, where there's a dispute, we believe that

15 we are entitled to the data going back.

16         Moreover, since the pay liability period under Title

17 VII also goes back through the beginning of 2009, we believe we

18 are entitled to look.  Even if it were the case that only

19 individuals who are subsequently employed by Merck would be --

20 who are employed by Merck after 2009 would ultimately be able

21 to collect, we are still entitled to see the full pay data for

22 all the individuals to whom those people are being compared so

23 that we can understand the disparities in their total context.

24         MS. KATZENSTEIN:  This is --

25         THE COURT:  I have a question here that concerns me.

1   Right now, we are doing discovery as to the named plaintiff,

2   and for the collective action and the class certification

3   motions.   How does the 2009 data that you're talking about

4   relate to the plaintiff, the named plaintiff, and the motions?

5            I understand that if the class is certified, you are

6   going to want this information.   But how does it relate to what

7   we are doing now?

8            MS. MARCUSE:   This is Deborah Marcuse.

9            Certainly the full information for 2010 would be

10  directly relevant to pay disparities that are encompassed by

11  what we contend is the full EPA liability period for named

12  plaintiff Kelli Smith and the collective members with whom,

13  again, there is overlap with the Title VII class.

14           With respect to class certification, I don't see how

15  it's not relevant since we are talking about certifying a class

16  for pay disparities where the pay disparities at issue extend

17  back to the beginning of 2009.

18           MS. KATZENSTEIN:   And this is Chrissy Katzenstein.

19           I just want to be clear that the liability period in

20  this case commences in December of 2010.   To the extent that

21  the statute provides for two years of back pay, that is from

22  the date the charge is filed, that's an issue of damages.   So

23  we maintain that that -- this 2009 data, to the extent it has

24  any relevance at all, which we would dispute, it doesn't become

25  relevant until a class is certified.

1          So at this juncture, to assess whether there is a pay

2  disparity from December, 2010 forward, that data has been

3  produced and plaintiffs are able to make that assessment at

4  this juncture.

5          THE COURT:  All right.  Here is --

6          MS. MARCUSE:  Your Honor, this is --

7          THE COURT:  I think I have heard enough.  I have to

8  tell you, folks, you are talking about something as if -- first

9  of all, you are talking about things that are not in the record

10  on this application, they are from other applications.  You are

11  talking about discovery that I am still unclear what has been

12  produced.

13          Are you saying -- Ms. Katzenstein, are you saying you

14  did not produce all of 2010?

15          MS. KATZENSTEIN:  We have produced December -- so we

16  have produced the data for everybody employed within the class

17  period.  So if somebody is within the class period, their full

18  2010, 2009 --

19          THE COURT:  No, I understand that.

20          MS. KATZENSTEIN:  -- you know, as far --

21          THE COURT:  I understand that.

22          MS. KATZENSTEIN:  Right.

23          THE COURT:  But I understood that you did something

24  more than that.  Because what you say on Page 3 is that you

25  have produced the complete employment and pay data for this

1 population.  "This population" being the class and collective
2 members and their male counterparts.  Am I mistaken that you
3 have produced the entire record for the male counterparts, as
4 well?

5      MS. KATZENSTEIN:  That's correct, Your Honor.

6      THE COURT:  All right.

7      MS. KATZENSTEIN:  So it's the entire population of
8 sales representatives who have been employed by Merck during
9 the class period.  So that would include every male and female
10 sales rep who worked in such role at any point.

11      THE COURT:  All right.  I want you folks to go back
12 and -- you are going to submit something to me, and there
13 particular issues that I want you to address:

14      One is how far back you believe we should be looking
15 for this discovery, and why.  And that calls into question,
16 number one, the limitations or the extension of the time frame
17 under both Title VII and the Equal Pay Act.  You can tell me
18 what you want me to understand from the tolling agreements, but
19 I expect you to give me the tolling agreement so I can look at
20 it, and not refer back to something that has previously been
21 briefed.

22      I need to know separately for the Equal Pay Act and
23 Title VII where you are going and how, what plaintiff is
24 looking for, applies to either Ms. Smith, as the named class
25 member, or the motions that we are looking at now and are not

1  simply class specific discovery that we will address if and

2  when the class is certified.

3       I need to have a better understanding of what exactly

4  has been produced, why it has only been produced back to

5  December, 2010, and what the cost of extending that discovery

6  back to January, 2009 would be.  I am told that it would be a

7  burden.  But, frankly, I do not know what that burden is, we

8  are in an era of proportionality.  And for me to evaluate it, I

9  need to know why it is necessary to plaintiff at this stage,

10  and what the burden would be to defendant to produce it.

11  Without those, I cannot evaluate and tell you what a fair

12  result is.

13       So what I would like you to do is to put together a

14  joint letter in which you go through, "Point one, here is what

15  plaintiff is looking for, and why."  Response, "Here is why it

16  is not necessary."  And in that, you can have subpoints, but I

17  want point/counterpoint.  I want you talking about the same

18  issues at the same time.  Because I have gone back and forth

19  between these letters multiple times, and it seems to me you

20  are talking about different things.  You are citing different

21  sections of statutes, as if they somehow counter each other,

22  and never explaining where you are going with it.

23       So what plaintiff is looking for, what defendant has

24  already produced, why nothing further should be produced or why

25  it should, what the need is versus the cost or burden, and how

1  that tolling agreement fits in.  Are we clear?

2          MS. KATZENSTEIN:  Yes, Your Honor.

3          MS. MARCUSE:  This is Deborah Marcuse.

4          Yes, Your Honor.

5          THE COURT:  All right.  How long will you need to do

6  this?

7          MS. MARCUSE:  When would you like that?

8          THE COURT:  Well, that is the next question.  How

9  long do you need?  I understand a joint letter takes longer.

10  But, frankly, it is much more useful to me to have a

11  point/counterpoint because it is much harder for you guys to

12  talk past each other.

13          MS. MARCUSE:  This is Deborah Marcuse.

14          This raises the question of what is to be done with

15  the scheduling of our conditional --

16          THE COURT:  We will deal with that next.

17          MS. MARCUSE:  -- cert motion --

18          THE COURT:  We will deal with that.

19          MS. MARCUSE:  Understood.

20          THE COURT:  How long do you need to do this letter?

21  You are telling me you need this information for your cert.  If

22  you do not need it for the cert, you can go ahead and file your

23  cert motion, the conditional cert.

24          If you need this information, it is going to be held

25  up because I really do not have the information that I need to

1   decide this issue.  If you are able to work this issue out, God

2   bless.

3          But if you need me to decide it, you need to give me

4   the information that I need without simply saying the same

5   thing over and over.  I need to have a better understanding.

6   So are you telling me that you need this information for your

7   conditional cert motion?  Not your class cert, but your

8   conditional cert.

9          MS. MARCUSE:  Your Honor, I -- this is Deborah

10  Marcuse.

11         I think in light of the fact that the time is moving

12  forward, I'm not sure that we will want, on the tolling -- on

13  the Statute of Limitations for the opt-ins at this point, I am

14  not sure that we will want to postpone further.  I think that

15  we may attempt to file with what we have while we attempt to

16  work this out.

17         However, that brings us to the second batch of data,

18  which is more urgently necessary, I believe, which is the mid-

19  2014 through, let's say, July, 2015.  So we would like to try

20  to go ahead and move forward with the conditional

21  certification.

22         I believe that for our part, we could file a joint

23  letter by close of business Wednesday, if that's acceptable to

24  defendants, because we would like to move this forward.  Unless

25  defendants are willing to consent to tolling for the EPA opt-

1    ins while we work this out.

2          MS. KATZENSTEIN:  And this is Chrissy Katzenstein.

3          I just want to note that up until now, we understood

4    that the data that plaintiffs sought, they believed was

5    relevant for class certification purposes.  But we had

6    negotiated a conditional cert with this dispute pending based

7    on our understanding that plaintiffs were really not arguing

8    that they had to have this data for conditional certification.

9          We would ask that we have until Thursday of this

10   week, just to Your Honor's point, that it does take a little

11   time to go back and forth on joint letters.  And we cannot

12   consent to any -- any further tolling at this point on the

13   basis of this dispute.

14         THE COURT:  All right.  Ms. Marcuse, you are saying

15   you do not need this information for your conditional cert,

16   just for your class cert, am I understanding you correctly?

17         MS. MARCUSE:  This is Deborah Marcuse.

18         Your Honor, I'm saying that we will move forward with

19   the conditional cert motion without the 2009, and apparently

20   much of the 2010 data at this point just so that we can get

21   something before you in light of defendant's unwillingness to

22   consent to any further tolling.

23         THE COURT:  All right.

24         MS. MARCUSE:  However, we would ask for a resolution

25   of the issue with the later data that's missing, and a possible

1   additional extension, depending on if that data is to be

2   produced, when it's going to be produced.  Because we would

3   like to have the time to look at it.

4           THE COURT:  Ms. Katzenstein, what is the problem with

5   updating the data that has already been produced?  I understand

6   that there is some burden, but it has to be done.  Why can't it

7   be done now?  Give them another year of data.

8           MS. KATZENSTEIN:  And, Your Honor, I think that we've

9   expressed we're willing to update the data.  But doing it

10  repeatedly is burdensome.  The volume of data that has been

11  produced is rather significant, so -- it is data for all sales

12  representatives who have worked throughout the 2010 forward

13  class period.

14          THE COURT:  I understand that.  I am going to stop

15  you right there.  I understand that.  But Ms. Marcuse is not

16  overreaching here.  She is not saying we want weekly or monthly

17  updates.  We are talking about a year of data.  I think that is

18  an appropriate time frame for an update.  So your last

19  production was through July, 2014?

20          MS. KATZENSTEIN:  Yes, Your Honor.

21          THE COURT:  I would like you to update through -- we

22  are in August now, so update through July, 2015.

23          I am assuming that this is a computer function.  We

24  are not in the old days where you are running from ledger book-

25  to-ledger book.  And this data has been gathered once, so we

18

1   are not reinvesting the wheel here.

2            MS. KATZENSTEIN:  No, Your Honor.  There is some

3   time, though, that it takes to extract the data, so it's done

4   extracting it from the human resources system.  We don't do it

5   through generating a report or something similar to that.  It's

6   a complete data extraction, and then it's refined so that it's

7   the relevant information for that population.  So there is some

8   lag, it's not something that feasible in a matter of days.  It

9   does probably take one to two weeks to get the right data just

10  because of the volume and the way that it's pulled out of the

11  human resources system.

12           THE COURT:  All right.  Let's have it produced by

13  August 21.

14           What does that do to you, Ms. Marcuse?

15           MS. MARCUSE:   Your Honor, let me just look at the

16  calendar here.  If it's produced by August 21st, that is a

17  Friday.  Again, I am torn because I don't want to push the

18  deadline without tolling because the clock is ticking on our

19  collective members.

20           And I'll note that my original proposal to defendant

21  was go ahead and produce the data now.  You're making the

22  argument that you shouldn't then have to produce it before

23  class certification.  Let's make that argument later then.

24  Let's put that argument before the Judge, but let's not hold

25  this train up --

1                THE COURT:  But, Ms. Marcuse --

2                MS. MARCUSE:  -- with respect to the conditional

3  search.

4                THE COURT:  Ms. Marcuse --

5                MS. MARCUSE:  And so I am asking, I suppose, for --

6  if we could have an extension, along with Court-mandated

7  tolling for the interim period between now and, say -- I'm just

8  trying to look at the schedule -- September 11th, that would be

9  great.

10               And that's a short time line for us to look at

11 everything but, again, we are trying to push this forward as

12 much as possible.

13               MS. KATZENSTEIN:  And, Your Honor, if I may.  This is

14 Chrissy Katzenstein.

15               I just, again, want to note that we've all proceeded

16 under the notion that this data wasn't being sought in

17 connection with conditional certification.  Just last week, we

18 talked about an extension to the conditional certification

19 deadline of six additional days.  We agreed with that time

20 frame, and we don't see any reason why we aren't able to

21 proceed with the current schedule.

22               With respect to tolling, there -- you know, there are

23 certain circumstances where a court could grant equitable

24 tolling, this certainly isn't one of those.  But, you know, to

25 the extent that plaintiffs are requesting it, we think that

1   that is properly done through briefing.

2           MS. MARCUSE:   This is Deborah Marcuse, Your Honor.

3           I believe that Chrissy may be misstating because it

4   is very clear.  Setting aside the 2009 data, which, again, I

5   don't believe that we fully understood what was missing from

6   2010, so that is something we're going to need to think

7   through.

8           But when we spoke about the 2014 through 2015 data,

9   we made it extremely clear that that was an issue for

10  conditional cert.  Because, in fact, the dispute was that Merck

11  said, "Look, you can have one update of the data.  Do you want

12  it now or do you want it before class certification?"  And we

13  said "We need it both now and before class certification."  So

14  just to be clear, that has always been on the table.

15          THE COURT:   But I will tell you something, from my

16  perspective, I was told that the conditional certification was

17  really a much simpler hurdle, and it was not my understanding

18  that all of this discovery was going to be needed for the

19  conditional motion.

20          Ms. Marcuse, I am not prepared to order a tolling on

21  this call.  If you think it is within my authority to toll, you

22  can brief that.  But I am not prepared, based upon what I have

23  before me, to grant your request to toll until you file your

24  motion.  So you have a choice to make.

25          MS. MARCUSE:   This is Deborah Marcuse.

1           I understand, Your Honor.

2           THE COURT:  You have a choice to make.  If you want

3  more time --

4           MS. MARCUSE:  Yes, but --

5           THE COURT:  -- I can give you more time to file your

6  motion.  And, frankly, here is the deal:  I will give you until

7  September 11 to file your motion.  But I am telling you now, I

8  am not tolling anything without briefing on my authority and

9  the reasons why I should exercise that authority.

10          If you want to file your motion tomorrow, you can.

11  By my giving you until September 11, that is a deadline.  That

12  is not a hard filing date.  You can file that motion as soon as

13  you are ready.

14          I have ordered defendant to provide you with that

15  update.  And I have given them the time that they said they

16  needed to put it together.

17          Now I am assuming that it will be provided

18  electronically, and it will be provided -- I do not know how

19  you provide it, Ms. Katzenstein, if it's put on the cloud so

20  that it is instantly accessible, or if it is something that is

21  not delivered electronically.  You guys work that out, but I

22  want it in Ms. Marcuse's hands by the 28th, okay?

23          MS. MARCUSE:  Okay.

24          MS. KATZENSTEIN:  I'm sorry, Your Honor, did you say

25  the 28th?  Or --

```
 1              THE COURT:  What day did I say?  The 21st.

 2              MS. KATZENSTEIN:  Yes.

 3              THE COURT:  In her hands by the 21st, all right?

 4              And then, Ms. Marcuse, it is up to you.  You can file

 5  that motion by September -- on September 11.  You can file it

 6  on September 10.  You can file it on September 9.  You can file

 7  it on any day before then.  And I leave it to you to decide --

 8              MS. MARCUSE:  Understood.

 9              THE COURT:  -- what you need and what your priorities

10  are.

11              MS. MARCUSE:  Yes, Your Honor.  Thank you.

12              THE COURT:  Okay?

13              MS. MARCUSE:  Thank you, Your Honor.

14              MS. KATZENSTEIN:  Thank you.

15              THE COURT:  So that production will be made by August

16  21, to be received by then.

17              And I will have your joint letter on the discovery

18  issues addressing the issues that I raised by Thursday, August

19  13.  And I will deal with it as promptly as I can.

20              MS. KATZENSTEIN:  Thank you, Your Honor.  And may I

21  just ask --

22              MS. MARCUSE:  Thank you, Your Honor.

23              THE COURT:  Now do we have any other calls scheduled

24  in this case?

25              MS. KATZENSTEIN:  We do not, Your Honor.
```

1          THE COURT:  Then I would like to schedule one.  I

2  like to always have our next call scheduled so that we do not

3  lose touch.  And so let's plan to have just a status call on

4  October 13.  And it will just be a touch base, see if there are

5  any problems, make sure everything is moving smoothly.  Let's

6  plan that for 11 a.m.  I will ask plaintiff to initiate the

7  call.

8          And we will see where we are then.  But obviously

9  that doesn't change any of the things, the tasks that you have

10  undertaken here on this call.  Okay?

11          MS. KATZENSTEIN:  Thank you, Your Honor.

12          MS. MARCUSE:  Your Honor, this is Deborah Marcuse.

13          I have one additional question, having to do with the

14  motion to amend.  In light of these adjustments to the

15  schedule, we would ask for a corresponding adjustment to the

16  deadline of the motion to amend until September 14th.

17          MS. KATZENSTEIN:  Your Honor, this is Chrissy

18  Katzenstein.

19          I -- this is the first we've heard of any request to

20  the enlargement for the motion to amend.  And we don't believe

21  that these two issues are related.

22          So to the extent that that deadline is August 13th,

23  we would ask that that remain.  And plaintiffs, of course, may

24  move to -- for leave of Court to amend the scheduling order,

25  but we don't think it's appropriate to do so.

1     THE COURT:  I do not need a motion for leave to amend

2  the scheduling order.  I am looking at our last schedule.

3                         (Pause)

4     THE COURT:  I do not know whether you have something

5  in mind, Ms. Marcuse, but I will extend that deadline to seek

6  leave to amend to September 11, which is the next filing date.

7  That would be returnable October 5, all right?

8     MS. MARCUSE:  That works, Your Honor.  Thank you very

9  much.

10     MS. KATZENSTEIN:  And, Your Honor, this is Chrissy

11  Katzenstein.

12     Just one final question on the conditional

13  certification briefing schedule.  The parties had previously

14  set the schedule so that defendant would have 30 days to

15  respond, with the reply due approximately 15 days after.  Are

16  we able to maintain that same schedule?

17     THE COURT:  Yes, but I want it to run from whenever

18  they filed the motion.  So when they file the motion, why don't

19  you send a letter in confirming that that is what you have

20  agreed to, all right?  So if Ms. Marcuse files her motion on

21  September 1, send me a letter saying, "By prior agreement, and

22  with the Court's approval, our opposition is due in 30 days,"

23  all right?

24     MS. KATZENSTEIN:  All right.

25     THE COURT:  That way, we do not have a full schedule

25

1    on the docket.

2              MS. MARCUSE:  Yes, thank you, Your Honor.

3              THE COURT:  Anything else?

4                   (No audible response heard)

5              THE COURT:  All right.  Thank you very much.

6              MS. MARCUSE:  No, Your Honor.

7              MS. KATZENSTEIN:  Thank you.

8              THE COURT:  Okay.  Bye-bye.

9              MS. MARCUSE:  Thank you.

10       (Whereupon, at 11:48 a.m., the hearing was adjourned.)

11

12                   CERTIFICATE OF TRANSCRIBER

13

14       I, KAREN HARTMANN, a certified Electronic Court

15  Transcriber, certify that the foregoing is a correct transcript

16  from the electronic sound recording of the proceedings in the

17  above-entitled matter.

18

19  _Karen Hartmann_

20  Karen Hartmann, AAERT CET**D0475 Date:  October 15, 2015

21  TRANSCRIPTS PLUS, INC.

22

23

24

25