## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | |
|---|---|
| **KELLI SMITH,** *individually and on behalf of a class of similarly situated female employees,* **RACHEL MOUNTIS, AMY SHURSKY and KATE WHITMER ,** | ) Docket No. 3:13-cv-02970-MAS-LHG<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | ) Courtroom No. 7E<br>) Clarkson S. Fisher Building |
| **versus** | ) & U.S. Courthouse<br>) 402 East State Street |
| **MERCK & CO., INC.,** | ) Trenton, New Jersey 08608<br>) |
| **Defendant.** | ) October 13, 2015<br>) 3:22 p.m. |

TRANSCRIPT OF TELEPHONE CONFERENCE RE: PLAINTIFFS'
DISCOVERY REQUEST
BEFORE HONORABLE LOIS H. GOODMAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:      Sanford Heisler, LLP
                         By:  DEBORAH MARCUSE, ESQ.
                              DAVID TRACEY, ESQ.
                         1350 Avenue of the Americas
                         31st Floor
                         New York, New York 10019

For the Defendant:       Morgan Lewis & Bockius, LLP
                         By:  CHRISSY KATZENSTEIN, ESQ.
                              CAILIN HEILIG, ESQ.
                         1701 Market Street
                         Philadelphia, Pennsylvania 19103

ESR/Courtroom Deputy:    Ivannya Jimenez

**TRANSCRIPTION SERVICE:     TRANSCRIPTS PLUS, INC.**
                            **435 Riverview Circle**
                            **New Hope, Pennsylvania 18938**
                            **Telephone: 215-862-1115**
                            **Facsimile: 215-862-6639**
                            **e-mail CourtTranscripts@aol.com**

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          TRENTON, NEW JERSEY   OCTOBER 13, 2015    3:22 P.M.

2               (Call to order of the Court)

3          THE COURT:  (Recording commences with the following)

4     ... put that on the record, and then we can address what else

5     we need to do.

6          I have -- well, we have several letters where

7     plaintiff is seeking additional discovery from defendant Merck.

8     We discussed this at length during our conference on August 10,

9     2015, which was also conducted on the record.  And at that

10    time, I had additional questions which we went into during the

11    call, and I asked for further briefing.  That was presented to

12    the Court by letter dated August 13, 2015, on the docket as

13    Docket Entry 73.

14          In reviewing the letter, it was clear to me that

15    plaintiffs were not seeking the discovery we are talking about

16    for purposes of the motion to certify the collective action,

17    one of the original concerns that the Court had.  And that

18    motion has since been filed.

19          In fact, in the interim, plaintiffs have filed

20    several motions:

21          There is a motion for leave to amend that was filed

22    on September 11, 2015, that is Docket Entry 76;

23          There is a motion to certify the class -- actually to

24    certify the collective action, that is Docket Entry 77;

25          And there is a motion to also certify the collective

1  action under the Equal Pay Act, along with a motion for

2  equitable tolling, and that is Docket Entry -- well, we have

3  Docket Entry 78 and 79.

4         Now with regard to the requests that plaintiff has

5  made, I am going to go through them.  But I am not planning to

6  set out with detail what each party has argued, just set out

7  sufficient description of each party's position so that you

8  understand where I am coming from.

9         Plaintiff is seeking personnel and pay discovery back

10 to the beginning of 2009 with regard to potential class members

11 -- actually not with regard to class members, but outside of

12 the class.

13        Merck has indicated that it has provided personnel

14 and pay data starting December, 2010.

15        The difference here is with regard to data for people

16 who would have otherwise been potential class members, and

17 their comparators, but who left the company.

18        So just to clarify, Merck says it has produced all

19 data for people who are potential class members, and their

20 comparators, who have remained with the company.  If they left

21 prior to December, 2010, their information has not been

22 produced.

23        The parties disagree as to the relevant period for

24 discovery, both cite cases supporting their views.  And the

25 issues relate to both Title VII claims and Equal Pay Act

4

1  claims.

2          The arguments as to the appropriate time period for

3  discovery are different for Title VII as opposed to the EPA

4  claims.

5          With the Title VII claims, plaintiffs point to cases

6  allowing discovery for a period prior to the proposed class

7  period.  Plaintiffs say it is essential for them to get that

8  information in order to determine whether there is a pattern

9  and practice of discrimination, or a facially neutral practice

10  that has a disparate impact.

11          They express a concern that limiting discovery to the

12  period selected by Merck runs the risk of skewing the data.

13  They say that the case law supports discovery for a reasonable

14  period prior to the damages/liability period.

15          Merck, on the other hand, says it has already

16  provided the pre-liability discovery as to class members and

17  their comparators from the date of hire, regardless of whether

18  it was before or after December, 2010.  This, according to

19  Merck, constitutes four and a half years of data for

20  approximately 5,800 individuals.

21          They say the distinction plaintiffs are making, and

22  the discovery plaintiffs are seeking, is irrelevant as a

23  result.

24          They also say that discovery should not include data

25  for individuals whose claims are time-barred.  Now that is all

5

1  with regard to the Title VII claims.

2         With regard to the EPA, or Equal Pay Act, claims,

3  there are different arguments, mostly focused on how far back

4  plaintiffs' claims go.  This depends, in large part, on the

5  tolling agreements in place between the parties and how those

6  agreements should be interpreted.

7         Plaintiffs also ask the Court to take into

8  consideration their motion for equitable tolling of the Statute

9  of Limitations for the EPA claims.

10         Based on their tolling agreements, plaintiffs say the

11  claims should be viewed as dating back to April, 2010, at the

12  latest, and possibly sometime in 2009 if equitable tolling is

13  granted.

14         Merck disagrees as to how the tolling agreement from

15  2012 should be read, and asserts that the EPA claims should

16  only go back to May, 2011, at most.

17         The equitable tolling motion has been filed, as I

18  said earlier, and is now pending before Judge Shipp.  I have no

19  doubt that at some point, the interpretation of the 2012

20  tolling agreement will be before Judge Shipp, as well.  I do

21  not intend to decide those motions as part of this discovery

22  dispute, nor would it be appropriate to do so.

23         In terms of discovery, I do find that plaintiffs had

24  made a cogent argument with regard to the tolling of the EPA

25  claims, that discovery should go back to some point before

1  December, 2010.

2  And with regard to the Title VII claim, that

3  discovery should go back a reasonable period before the

4  liability/damages period.

5  Based on that, I am persuaded that a reasonable

6  period before December, 2012 is appropriate.

7  The question then is what is reasonable?  Because I

8  am not deciding on this call, or at any point, the tolling

9  issue; that is before Judge Shipp.  I am not basing the time

10  frame on the possibility that claims from 2009 would all be

11  allowed in the case.  Frankly, that is fairly speculative at

12  this point.

13  Rather, I look instead to the burden on Merck in

14  considering what would constitute a reasonable period.

15  Merck says that they would have to create two queries

16  to find out and identify employees who are sales

17  representatives from January 1, 2009 to November 30, 2010.  The

18  second query would extract the data for the individuals so

19  identified.

20  This becomes more complicated, however, prior to mid-

21  2009 when Merck changed its H.R. computer system.  For that

22  pre-mid-2009 period, Merck would have to access the legacy

23  database and deal with it separately.

24  I find that it is not an undue burden for Merck to

25  create the queries and extract the data for the period in which

1  the current H.R. system has been in place.

2          That means that I am instructing Merck to pull and

3  produce data for employees who were sales representatives from

4  mid-2009 when the current system was implement, to December,

5  2010 when they started their actual production.

6          I find that this would provide a reasonable period

7  prior to the class liability period for Title VII purposes, and

8  would also provide the data, if plaintiffs are correct, as to

9  the effect of the 2012 tolling agreement.

10          So that is what I want Merck to do.  That is my

11  finding.  I would like to hear from counsel for Merck now as to

12  how long it will take to accomplish this so that we can stay on

13  schedule.  Counsel?

14          MS. KATZENSTEIN:  Thank you, Your Honor.  I think

15  that I will just have to go back and double-check with my

16  client to confirm.  I know the last time we had said, I believe

17  it was two weeks, and had stipulated, if necessary, with

18  plaintiffs' counsel to an initial day, I don't think that

19  become necessary.  But I know it was a pretty significant time

20  crunch for our client.  So I would expect that we would need --

21  probably three weeks is more realistic for this pull, just

22  given the last experience.

23          THE COURT:  All right.  And where does that leave us

24  in terms of the larger schedule?  We have motions pending.  We

25  have fact discovery ongoing, and a separate schedule for the

1    Rule 23 class cert motion.

2            Ms. Marcuse, any comment?

3            MS. MARCUSE:  Your Honor, I mean I think that we

4    should be able to stay on schedule.

5            I would just like to clarify, you know, my

6    understanding is that the data pull here is going to be less

7    significant than what took -- well, no, I guess it's going to

8    be about the same amount of time.

9            I'm just, you know, a little bit concerned about the

10   timing.  If it could be done within two weeks, rather than

11   three, that would certainly be our preference.  But for the

12   rest, we don't -- we absolutely don't want to hold up the

13   schedule in any way.

14           MS. KATZENSTEIN:  And I would just note I think we

15   will still be, you know, just finishing up with conditional

16   certification briefing, and plaintiff will be doing their

17   reply.

18           So I wouldn't expect that -- in terms of where we are

19   in discovery, and what we have planned going forward, that

20   anything would be largely different, whether it would take us

21   that additional week or not.  I just know based on kind of

22   allowing the client sufficient time to pull that information,

23   getting their infrastructure in gear to do it, irrespective of

24   the time frame, it's the same process in terms of pulling the

25   data.

9

1          And so I think that three weeks would give us that
2  extra cushion to make it less burdensome for the client.
3          THE COURT:  All right.  Well, frankly, whether it's
4  two weeks or three weeks, I would like you to get it going
5  promptly, and make every effort to get it done as expeditiously
6  as possible.
7          MS. KATZENSTEIN:  Yes, Your Honor.
8          THE COURT:  I am not, at this point, changing
9  anything else in the schedule.
10          I am going to ask Ms. Marcuse to prepare an order
11  from today, provide it to defense counsel before you submit it.
12  And then send it in with a notation that everybody has signed
13  off on the language of it.  All right?
14          MS. KATZENSTEIN:  Yes, Your Honor.
15          MS. MARCUSE:  Yes, Your Honor.
16          THE COURT:  Now with regard to the motion to amend
17  that is on the docket, is that opposed?
18          MS. KATZENSTEIN:  Yes, Your Honor.  Merck will be
19  filing its opposition on Friday, October 16th.
20          THE COURT:  And I hate to do this at this point, I
21  usually remember to do it in the beginning, and ask you when
22  you speak to state your name.  Just in case someone gets a
23  transcript, and we don't have the poor transcriber trying to
24  figure out who is speaking.
25          Was that Ms. Katzenstein?

1             MS. KATZENSTEIN:  Yes, Your Honor; I apologize.

2             THE COURT:  Okay.  All right.  So when that is fully

3  briefed, we will take a look at it.

4             What I would like to do is set you up for a call in a

5  couple of months just as a status call to make sure that

6  everything is moving along as it should be.  Let me get the

7  calendar.

8                          (Pause)

9             THE COURT:  I don't know if you all will be working

10  the week between Christmas and New Year's, it is a dreadful

11  time, but many of us will be working.  Can we do a call on

12  December 29?  Otherwise it will be off until January.

13            MS. KATZENSTEIN:  This is --

14            MS. MARCUSE:  This is Deborah Marcuse -- I'm sorry.

15            MS. KATZENSTEIN:  No go ahead.

16            MS. MARCUSE:  That works for us.

17            MS. KATZENSTEIN:  Yes, and this is Chrissy

18  Katzenstein.  That works for us, as well.

19            THE COURT:  All right.  So we are all working that

20  week.  So let's have a call December 29 at 10 a.m.

21            MS. MARCUSE:  Thank you, Your Honor.

22            THE COURT:  I will ask --

23            MS. MARCUSE:  This is Deborah Marcuse.

24            THE COURT:  Thank you.  I will ask defendant to

25  initiate the call.  If you have any problems before then,

1  please let me know.  But otherwise, I will expect discovery to

2  be moving along, and these motions to be briefed, and we will

3  see where we stand.

4          MS. KATZENSTEIN:  Thank you, Your Honor.

5          THE COURT:  All right.  Anything else?

6          MS. MARCUSE:  No, Your Honor.  Not from plaintiffs,

7  Your Honor.

8          MS. KATZENSTEIN:  Not from defendant, Your Honor.

9          THE COURT:  All right.  Thank you, all, very much.  I

10  will talk to you in December.

11          MS. KATZENSTEIN:  Thank you.

12          MS. MARCUSE:  Thank you very much.  Bye-bye.

13          THE COURT:  Bye-bye.

14      (Whereupon, at 3:38 p.m., the hearing was adjourned.)

15

16

17

18

19

20

21

22

23

24

25

1

2                        CERTIFICATE OF TRANSCRIBER

3

4       I, KAREN HARTMANN, a certified Electronic Court

5  Transcriber, certify that the foregoing is a correct transcript

6  from the electronic sound recording of the proceedings in the

7  above-entitled matter.

8

9  *Karen Hartmann*

10  Karen Hartmann, AAERT CET**D0475 Date:  October 16, 2015

11  TRANSCRIPTS PLUS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25