**VIA ECF**

**November 9, 2016**

The Honorable Lois H. Goodman
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608
lhg_orders@njd.uscourts.gov

Re:   *Smith et al. v. Merck & Co., Inc. et al.*, **Case No. 3:13-cv-0297**

Dear Judge Goodman:

The parties write in follow up to the telephonic status conference conducted by the Court on October 25, 2016. The parties have met and conferred regarding several discovery and scheduling topics and have resolved several issues. However, the parties are unable to reach agreement on two outstanding issues: (1) the scheduling modifications required to accommodate opt-in discovery, including the length of time opt-in plaintiffs should be given to respond to written discovery; and (2) the extent to which the completed Rule 30(b)(6) depositions should count against the 20 depositions allotted Plaintiffs by agreement of the parties and order of this Court. The parties set forth their respective positions on each issue below and seek the Court's guidance.

**I.   Opt-In Discovery Schedule and Extension of Current Case Schedule**

   A.   *Plaintiffs' Position*

Plaintiffs propose a six-month extension of the close of discovery in this case, along with attendant extensions of all briefing deadlines, primarily to accommodate Defendants' stated intent to obtain written discovery from 120 opt ins followed by depositions of 60 opt ins. Plaintiffs attach a proposed amended scheduling order. (Ex. A.)

The schedule proposed by Plaintiff begins from the principle that opt-in responses to Merck's written discovery requests (6 document requests, or 9 with subparts, and 6 interrogatories, or 18 with subparts) should not be due during or immediately on the heels of the upcoming holiday season. Given Merck's stated intention to propound its discovery requests as soon as the parties can agree on the sampling procedure for random selection of opt-ins, Plaintiffs propose that opt-ins should have 75 days to respond to written discovery, followed by 105 calendar days (15 weeks) within which 60 opt-in depositions around the country would take place. (*See* Ex. B, Plaintiffs' Proposed Discovery Order on opt-in discovery schedule and fact witness depositions.) 60 depositions conducted over 15 weeks would be an average of four depositions per week, meaning that the parties would have to conduct two depositions per day, two days per week. Given Merck's expressed intention to insist upon maximal geographic diversity, Plaintiffs cannot anticipate that it will be possible to have two depositions take place in the same location on the same day. Accordingly, four depositions per week (assuming different locations for each) seems like the most reasonable pace.

Excluding the week of Thanksgiving and the two weeks encompassing Hanukah, Christmas, Kwanzaa, and New Years, the 75-day period proposed by Plaintiffs for written opt-in discovery represents approximately 55 days.[1] This is five days *less* than potential opt-ins received to fill out the one-page consent-to-join form and the one-page personal information form required to join this case. (Dkt. 148.) The 45 days proposed by Defendants, by contrast, would result in a response deadline that falls in the midst of the holiday season. By accounting for the holidays *ex ante*, Plaintiffs' proposed timeline will encourage opt-in participation and minimize the need for extensions. 55 days to complete discovery is perfectly in line with the weight of authority on this point. *See, e.g.*, *Flood v. Carlson Rests. Inc.*, No. 14-2740, 2016 U.S. Dist. LEXIS 75393, at *21 (S.D.N.Y. June 7, 2016) (ordering Plaintiffs to respond to discovery within 60 days); *Lloyd v. J.P. Morgan Chase & Co.*, No. 12-2197, 2016 U.S. Dist. LEXIS 68729 (S.D.N.Y. May 23, 2016) (noting that opt-in Plaintiffs received six months to respond to discovery); *Scott v. Bimbo Bakeries USA, Inc.*, No. 10-3154, U.S. Dist. LEXIS 175016, at *6 (E.D. Pa. Dec. 11, 2012) (ordering opt-in Plaintiffs to serve responses and objections to written discovery within 60 days).[2]

Plaintiffs anticipate that this time will be necessary to contact opt-ins, explain to them the discovery process, walk them through Defendants' requests—which include six interrogatories (18 with subparts) and six requests for the production of documents (nine with subparts)—search for responsive documents and any information necessary to respond to the interrogatories, and produce those documents and responses.

Plaintiffs' concerns about giving opt-ins ample time to understand and undertake their obligations in the discovery process flow from their recognition that discovery-related burdens can dramatically chill participation in collective and class action litigation, even without the particularly burdensome timeline Merck proposes here. (Ex. E, Sanford Decl. ¶ 7.) In *Kassman v. KPMG LLP*, No. 11-3743 (S.D.N.Y. filed June 2, 2011), another Equal Pay Act collective action currently being litigated by Plaintiffs' counsel, the court ordered 185 opt-ins to participate in written discovery. 70 opt-ins withdrew from the case after being selected for discovery. (Ex. E, Sanford Decl. ¶ 8.) Similarly, in *Barrett et al. v. Forest Laboratories, Inc.*, No. 12-5224 (S.D.N.Y. filed July 5, 2012), an Equal Pay Act collective action currently being litigated by Plaintiffs' counsel and Defendants' counsel, 19 opt-ins were identified to participate in discovery. To date, 10 opt-in Plaintiffs were either unresponsive or withdrew, necessitating the selection of additional opt-in Plaintiffs for discovery.[3] (Ex. E, Sanford Decl. ¶ 9.) Opt-in

---

[1] In previous years, Merck has itself refused to participate in discovery during this two-week period, which it characterized as a company-wide shutdown. (Ex. C, Correspondence Between A. Melzer and K. Katzenstein; Ex. D, Correspondence from D. Marcuse to K. Katzenstein.)

[2] "Indeed, much of the key factual information defendants need from each plaintiff . . . is likely already in their possession and control. Obtaining hundreds of 'boiler plate' answers from the plaintiffs is not likely to 'advance the ball.'" *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013); *see also Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 193 (S.D.N.Y. 2014) ("Chipotle itself is in possession, or should be in possession, of much of the information or documentation it seeks, including names of supervisors, work schedules, performance reviews, and bonus compensation.").

[3] Counsel for Defendants has declared its intention in the *Barrett et al v. Forest et al* matter to seek to expel from the EPA collective any opt-in who was selected for discovery but did not participate. While there is less legal support for this position in the Third Circuit, Plaintiffs' counsel remains concerned that opt-ins who are unable to participate in discovery on the timeline Merck proposes will therefore be expelled from the collective and thus prevented from vindicating their right to equal pay for equal work.

discovery should be designed to *both* protect the integrity of the collective action mechanism *and* facilitate the exchange of relevant information. Plaintiffs' proposed schedule seeks to balance both of these goals.

Unless Defendants' goal is to deter opt-ins from participating in this action—which would be unlawful and retaliatory—Plaintiffs see no basis for Merck to insist upon its unreasonable schedule. Plaintiffs' proposal to add three months to Merck's schedule would benefit the opt-ins significantly while not prejudicing Defendants. Defendants' sudden insistence on an accelerated schedule contrasts with their consistent delay in producing their own eight corporate representatives for Rule 30(b)(6) depositions, which were only completed in July 2016 despite having been noticed by Plaintiffs in November 2015. The limited additional time that Plaintiffs seek to facilitate responses from 120 opt-ins who, in many cases, have no prior experience with the legal system (and whom Defendants will likely attempt to exclude from the case entirely if they are non-responsive) will provide opt-ins a reasonable chance to participate in this case.[4] Merck's newfound emphasis on expediency is nothing more than a thinly veiled attempt to make discovery as burdensome as possible for opt-in Plaintiffs.

   B.   *Defendants' Position*

Defendants propose a three-month enlargement of the current case deadlines—a schedule that is possible if opt-in discovery proceeds in an efficient manner.

To that end, Defendants propose that each opt-in have 45 days to respond to written discovery, which would be a reasonable extension beyond the 30 day deadline established by the Federal Rules of Civil Procedure. Plaintiffs reject this proposal and now seek 75 days—two and half times the normal response period—to respond to six interrogatories and six document requests (*see* Dkt. 218-1), which seek basic information regarding the opt-in plaintiffs' claims. *See, e.g.*, *Bell v. Reading Hosp.*, 2015 WL 1809127, * 2 (E.D. Pa. Apr. 21, 2015) (noting that written discovery is a "routine and un-burdensome" method of gathering information pertinent to final certification); *O'Toole v. Sears Roebuck & Co.*, 2014 WL 1388660, *3 (N.D. Ill. Apr. 10, 2014) ("In fact, each class member would be subjected to just 7 interrogatories and 17 requests for production.  This is not much of a burden, and it is one that the plaintiffs have voluntarily chosen to endure by virtue of opting in."). Plaintiffs' proposal would lead to extensive delay in completing opt-in discovery and is not warranted based on the limited nature of the discovery Defendants seek from each opt-in plaintiff.

The only explanations that Plaintiffs have articulated for their request is the fact that preparing responses will be time consuming for their counsel (as they explained during the October 25, 2016 status conference) and that the holidays will cause further delays.[5] However, this does not justify a two-and-a-half month response period. Plaintiffs' counsel have represented

---

[4]   In *Plaintiffs'* Counsel's experience, faced with the demands of opt-in discovery, some opt-ins simply elect to dismiss their claims. (Ex. E, Sanford Decl. ¶¶ 8-9.) Should this happen, Plaintiffs submit that the number of opt-ins selected for discovery should be proportionally reduced, and any replacement opt-ins should have 60 days to respond to discovery.

[5]   Plaintiffs note that Merck has a "shutdown" period during the holiday season and does not require employees to work during that period.  This is true and actually should provide the opt-in plaintiffs who are currently employed with the company time to address their discovery obligations.

3

that they are adequate counsel to handle a case of this size, and having filed this case and moved for conditional certification, Plaintiffs cannot now contend that their discovery obligations are too onerous. *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. Aug. 15, 2013) ("Plaintiffs can hardly be heard to complain about the cost, burden, and difficulties associated with defendants' discovery when they chose to pursue an extensive class. Plaintiffs knew what they were in for when they filed the case."). Moreover, the opt-in plaintiffs voluntarily chose to participate in this case, with full notice that they may have to respond to written discovery and/or sit for deposition, and having done so, they must now devote the time that is necessary to ensure that the case can proceed expeditiously.[6] Accordingly, Defendants respectfully request that the Court order the opt-in plaintiffs to respond to written discovery within 45 days. (Defendants have attached their proposed order as Exhibit F.)

With this opt-in discovery schedule, Defendants propose that the fact discovery deadline be extended approximately three months from December 21, 2016 to March 30, 2017, rather than the six months Plaintiffs propose. Defendants are prepared to serve written discovery in the coming days such that the responses will be due before the end of the year. Defendants will also identify some of the 60 opt-in plaintiffs they intend to depose by December 1, 2016, so that the parties can work to find mutually convenient dates for depositions with the goal of commencing depositions as early as the week of January 2, 2017. The remaining deponents will be identified as quickly as possible after Defendants receive written discovery responses. Presuming that the parties are able to complete 6-8 depositions per week—which should be feasible irrespective of location given that all parties have multiple attorneys on this case—this would put the parties on schedule to complete opt-in discovery by mid-March 2017.

This schedule will avoid a six month enlargement and allow the parties to complete class certification briefing by September 2017, rather than December 2017, as Plaintiffs propose. *See* Fed. R. Civ. Pro. 23 (requiring a ruling on class certification "at an early practicable time"). Defendants' proposed amended scheduling order is attached as Exhibit G.

## II. Number of Depositions Taken

### A. *Plaintiffs' Position*[7]

On October 6, 2016, Plaintiffs noticed the depositions of Deborah Dagit (Merck's former Chief Diversity Officer and the official responsible for Merck's EEO policy), Annemarie (Terrelle) Siville (lead HR investigator of Kelli Smith's discrimination claims and a current Merck employee), Jeannie Mack (the HR representative responsible for investigating Kate

---

[6] Plaintiffs also suggest that a short response period precludes women from participating in this case. There is no evidence to support this position. Indeed, in *Barrett et al. v. Forest Laboratories, Inc.*, the case to which Plaintiffs point, it has now been more than six months since discovery was served and the non-responsive opt-in plaintiffs have still provided no responses. Thus, the length of time to respond does not appear to be the issue.

[7] While Plaintiffs view the disagreements regarding outstanding fact witness depositions as wholly distinct from the aforementioned matter of scheduling the opt-in discovery, we seek to address both issues at once in the interest of judicial economy and to point out the contrast between Defendants' obstructionist position with regard to its own deponents and its relentless haste with regard to the handling of opt-in discovery.

4

Whitmer's and Rachel Mountis's discrimination claims and denying Ms. Mountis' request for an extension of time in which to apply for jobs due to her high risk pregnancy and imminent birth), and Margan Mulvaney (current head of Human Resources for Merck Animal Health). Merck responded that "Plaintiffs have now deposed 10 fact witnesses and 8 Rule 30(b)(6) witnesses. Therefore, absent leave of court, they are entitled to just two additional depositions." (Ex. H, Email from K. Katzenstein to D. Marcuse.) Merck further demanded that Plaintiffs make arguments for the relevance of deposing Ms. Mack, Ms. Mulvaney and Ms. Dagit, asserted that Ms. Siville would not be available for a deposition for as long as six months because she would soon be going on maternity leave (while refusing to provide the date on which Ms. Siville's leave began), and threatened to seek a protective order to prevent all four depositions.[8] (*Id.*)

Neither the law nor the facts of this case support Merck's position. Rule 30(b)(6) itself states, "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." The 1993 Advisory Committee Comment to the rule states that "[a] deposition under Rule 30(b)(6) should, for purposes of this limit, be treated as a single deposition even though more than one person may be designated to testify."[9]

Merck now asserts that its Rule 30(b)(6) witnesses should be counted as either eight or three witnesses against this Court's presumptive 20 deposition limit. Merck argues alternatively for three depositions because three corporate Defendants are involved in the case or eight depositions because, it asserts, Plaintiffs strayed into fact witness territory during 30(b)(6) depositions. Merck's attempt to get around the plain language of the Rule and Commentary by mischaracterizing the content of Plaintiffs' Rule 30(b)(6) depositions is transparent and baseless, not least because Plaintiffs would certainly have demanded an additional seven hours of time with any individual they had intended to depose as both a 30(b)(6) witness and a fact witness simultaneously. *See Sabre v. First Dominion Capital, LLC*, No. 01-2145, 2001 U.S. Dist. LEXIS 20637, at *4 (S.D.N.Y. Dec. 12, 2001) ("The 30(b)(6) deposition of an [sic] witness is a separate

---

[8] In light of the fact that Ms Siville is currently on maternity leave, the parties are meeting and conferring on the scheduling of her deposition, which was noticed on October 4, 2016, prior to her going on leave.

[9] A contrary rule would be manifestly unfair to the non-corporate party in any litigation. "[C]orporations with voluminous and complex documents may require testimony from multiple officers and custodians to provide comprehensive testimony regarding all matters 'known or reasonably available to the organization.' Thus, a contrary rule would place an unfair constraint on the number of depositions allowed to parties needing to conduct Rule 30(b)(6) depositions." *State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc*., 254 F.R.D. 227, 234–35 (E.D. Pa. 2008) (quoting Fed. R. Civ. P. 30(b)(6)); *see also Hannah v. Wal-Mart Stores, Inc.*, No. 12-1361, 13612014 U.S. Dist. LEXIS 2971, at *20 n.7 (D. Conn. Jan. 10, 2014), *adhered to on reconsideration*, No. 12-361, 2014 U.S. Dist. LEXIS 10766 (D. Conn. Jan. 29, 2014) (quoting advisory committee comment to Rule 30(b)(6)); *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. 11-542, 2013 U.S. Dist. LEXIS 81538, at *34–35 (W.D. Tex. June 10, 2013) (quoting *State Farm*, 254 F.R.D. at 234); *In re Weatherford Int'l Sec. Litig*., No. 11-1646, 2013 U.S. Dist. LEXIS 120321, at *10 (S.D.N.Y. Aug. 23, 2013) (quoting comment to Rule 30(b)(6)); *Lexington Ins. Co. v. Sentry Select Ins. Co*., No. 08-1539, 2009 U.S. Dist. LEXIS 122184, at *25 (E.D. Cal. Dec. 17, 2009) (same); *Beaulieu v. Bd. of Trustees of Univ. of W. Fla*., No. 07/RV/EMT, 2007 U.S. Dist. LEXIS 92641, at *4 (N.D. Fla. Dec. 18, 2007) (same); *In re Sulfuric Acid Antitrust Litig*., No. 03 C 4576, 2005 U.S. Dist. LEXIS 17420, at *12 (N.D. Ill. Aug. 19, 2005); *Quality Aero Tech., Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) (same); *Sabre v. First Dominion Capital, LLC*, No. 01-2145, 2001 U.S. Dist. LEXIS 20637, at *2 (S.D.N.Y. Dec. 12, 2001) (same).

deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent seven-hour time limit."). As to Merck's argument in the alternative regarding the number of corporate Defendants, it now takes a position that is wildly inconsistent with the myriad positions it has taken on this issue to date: first asserting that Plaintiffs should have sued MSD instead of Merck & Co., then producing MSD employees as corporate representatives of Merck & Co. while fighting tooth and nail against MSD's inclusion in the case, and finally capitulating at the eleventh hour to the inclusion of Intervet as a third Defendant, necessitating an additional three 30(b)(6) depositions relating to Animal Health alone.[10]

Merck's inconsistent and opportunistic positions cannot be permitted to stack the deck in its favor. When Plaintiffs served their single Notice of Rule 30(b)(6) Deposition on November 12, 2015 on Merck & Co., Inc. (Ex. I.), there was a single Defendant: Merck & Co. It took Merck & Co. more than four months to produce four corporate representatives, all of them employees of MSD, all the while insisting that Merck & Co. was not a proper Defendant and that MSD could not be added as a Defendant. Merck also strenuously asserted that its Animal Health division was not included in the case, and refused to provide almost all relevant discovery relating to that division. Only upon this Court's ruling in May 2016 that Plaintiffs could add MSD as a Defendant did Merck reverse course on the Animal Health issue, which necessitated the scheduling of three additional Animal Health 30(b)(6) depositions on various topics that had already been covered on Merck & Co.'s behalf by deponents employed by MSD. Now, Merck takes the position that all of these witnesses were actually produced on behalf of the two late-entry corporate Defendants as well as Merck & Co., Inc., and must on that basis be counted as three depositions instead of one.

Merck cannot be allowed to invoke its corporate structure—itself a legal fiction—as a means of manipulating the discovery available to Plaintiffs.[11] Plaintiffs noticed the deposition of one entity based on Plaintiffs' understanding that parent Merck & Co., Inc. controls its subsidiaries. (Dkts. 76-1, 97, 114.) Defendants' *post hoc* assertions that Plaintiffs in fact noticed three depositions is belied by the fact that Plaintiffs served *only one Rule 30(b)(6) deposition notice*. Moreover, at no time during the eight months of Rule 30(b)(6) depositions did Defendants ever disclose the position upon which they now insist. Defendants' position is so at odds with the legal authority that it can be explained only as an attempt to deny Plaintiffs the

---

[10] If anything, Merck & Co., Inc.'s right to designate the nominal agents of its subsidiaries to testify on its behalf suggests that it controls them and is therefore a joint employer and an integrated enterprise with them. *Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394 (D.N.J. 2011) (finding that a parent corporation-defendant's control over corporate affiliates/subsidiaries, while not necessary, is more than sufficient to require such subsidiaries/affiliates to supply information for a 30(b)(6) deposition).

[11] Indeed, the duty to proffer as many knowledgeable individuals to testify on the subject matter identified in the 30(b)(6) notice, regardless of corporate structure, falls on Defendants and only Defendants. *See, e.g.*, *Metro Brokers, Inc. v. Transp. Ins. Co.*, No. 12-010, 2013 WL 12062268, at *6 (N.D. Ga. Aug. 5, 2013) (noting that the employee of a subsidiary could be designated by the parent company as one of multiple 30(b)(6) witnesses since the rule makes no limitation as to who technically employs the corporate designees); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 5 (D.D.C. 2007) ("Regardless of whatever relation [Defendant] has within its own corporate structure, this does not relieve [Defendant] of its duty to appear under Rule 30(b)(6), in which a person 'shall testify as to matters known or reasonably available to the organization.'" (quoting Rule 30(b)(6)); *Beazer E., Inc. v. The Mead Corp.*, No. 91-408, 2010 WL 5071762, at *4 (W.D. Pa. Dec. 6, 2010) (listing corporate defendant's responsibilities under Rule 30(b)(6)).

discovery necessary to prosecute this case. Plaintiffs therefore ask the Court to order Defendants to produce the noticed fact witnesses for deposition. Further, because Defendants continue to assert these frivolous interpretations even when faced with overwhelming case law to the contrary, Plaintiffs respectfully request an award of the legal fees associated with seeking the Court's intervention to compel these witnesses.

Likewise, Merck's suggestion that Plaintiffs must proffer the particular relevance of the four fact witnesses is without merit.[12] Unlike Rule 30(b)(6), Rule 30(b)(1) does not require a party to provide notice of the topics of questioning. Additionally, "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *United States v. Educ. Mgmt. LLC*, No. 2:07-cv-00461, 2014 U.S. Dist. LEXIS 50518, at *15 (W.D. Pa. Feb. 24, 2014); *see also United States v. Bojcun*, No. 04-6433, 2006 U.S. Dist. LEXIS 50493, at *8-9 (D.N.J. July 24, 2006) (holding that a protective order prohibiting depositions is warranted only where "[g]ood cause is established [by] showing that disclosure will result in a clearly defined and serious injury to the party seeking closure.") (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)) (internal citations omitted).[13]

Merck has not even attempted to assert that such "extraordinary circumstances" exist here. Deposing Ms. Mack, Ms. Mulvaney, and Ms. Dagit—which Plaintiffs have a right to do—cannot possibly result in any "clearly defined and serious injury" to Merck. And "the mere possibility of repetitious testimony is not by itself sufficient to justify a protective order barring the taking of depositions." *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Envtl., Inc.*, No. 09-cv-0956, 2009 U.S. Dist. LEXIS 115698, at *10 (E.D. Pa. Dec. 11, 2009).

Because Defendants' stonewalling on these four fact witnesses is plainly frivolous, Plaintiffs seek an award of attorney fees and costs. Sanctions, including legal fees, are warranted "in the exceptional circumstance . . . where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). "[M]eritless and frivolous objections" to discovery constitute such exceptional circumstances. *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 710 (D.N.J. 2015). It is just so here: Defendant cites no authority to justify its objections to producing its witnesses. Accordingly, the Court should award Plaintiffs legal fees and costs associated with this motion.

    B.    *Defendants' Position*

On November 12, 2015, Plaintiffs served a Notice of Deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Notice") containing 90 broadly worded topics seeking information

---

[12] Plaintiffs continue to meet and confer with Merck in an attempt to schedule the deposition of Annemarie (Terrelle) Siville in a manner that will not interfere with her protected leave; these attempts, however, have been inhibited to date by Merck's refusal to disclose the date on which Ms. Siville went on leave (which under Merck's policies would establish the outside six-month limit of her leave and thus the time by which her deposition should be able to proceed).

[13] *See also MetLife Inv'rs USA Ins. Co. v. Star Lite Brokerage, Inc.*, No. 11-911-LPS, 2012 U.S. Dist. LEXIS 139431, at *5-6 (D. Del. Sep. 21, 2012); *Holm v. Pollack*, No. 00-CV-2893, 2001 U.S. Dist. LEXIS 16930, at *4-5 (E.D. Pa. Oct. 18, 2001); *First Fid. Bancorporation v. Nat'l Union Fire Ins. Co.*, No. 90-1866, 1992 U.S. Dist. LEXIS 3367, at *12-13 (E.D. Pa. Mar. 5, 1992); *Flowers v. Chrysler Motors Corp.*, No. 86-6462, 1988 U.S. Dist. LEXIS 11848, at *4 (E.D. Pa. Oct. 21, 1988).

on virtually all aspects of sales representatives' employment over a seven a year period. To address this Notice, Defendants prepared and produced eight witnesses who each testified for a full day. During these depositions, Plaintiffs did not limit the questioning to the topics for which the witnesses were designated and instead ventured far beyond amassing more than 2,172 pages of deposition testimony over the course of nearly 50 hours of record time. After those depositions concluded, Plaintiffs then took the depositions of ten fact witnesses, many of which lasted nearly the full seven hours of record time and all of which touched on topics that were irrelevant to this case and/or duplicative of testimony solicited through Rule 30(b)(6) deponents.

Now, Plaintiffs seek to depose four additional fact witnesses whose depositions Defendants believe will be equally wasteful. For example, Plaintiffs have already deposed one fact witness involved in the investigation of Ms. Smith's internal complaint—the very topic for which they seek Ms. Siville.[14] Similarly, Plaintiffs have noticed the deposition of Margan Mulvaney, a Human Resources Director for Animal Health (Intervet), despite the fact that Animal Health Rule 30(b)(6) witnesses have already testified as to the relevant Human Resources policies and practices and the fact that Ms. Mulvaney does not relate to any of the named Plaintiffs' factual allegations. And Plaintiffs have warned that they intend to notice even more depositions in the future. Defendants maintain that Plaintiffs have two of their 20 depositions remaining and, consistent with Defendants' understanding of the scheduling order, are prepared to offer two witnesses of Plaintiffs' choosing. Plaintiffs contend that they are entitled to nine more despite having taken 18 full days of testimony already. Defendants seek clarification.

To avoid the 20 deposition limit set forth in the Court's scheduling order (*see* Dkt. 158) and pursue up to nine more fact witness depositions, Plaintiffs maintain that the eight Rule 30(b)(6) depositions count as a single deposition, and therefore, they have taken only eleven depositions to date. Defendants disagree for two reasons: (1) Plaintiffs sought Rule 30(b)(6) testimony from three separate entitles, Merck & Co., Inc., Merck Sharpe & Dohme Corp. and Intervet, Inc., and presumably will use the Rule 30(b)(6) testimony as binding company testimony as to each entity; and (2) Plaintiffs spent countless hours in these depositions on topics other than those for which the witness was designated thereby getting the benefit of the individual as both a Rule 30(b)(6) witness and a fact witness.[15] Accordingly, it cannot be the case, as Plaintiffs suggest, that these eight broad and wasteful depositions count as a single deposition.

First, although Plaintiffs served their Rule 30(b)(6) Notice before MSD and Intervet were added to this case as named Defendants, the depositions of those entities did not commence until after it was clear that they would be added to the case, and Plaintiffs insisted that Rule 30(b)(6) witnesses be proffered on behalf of all three entities. Defendants did not require that Plaintiffs

---

[14] Until today, Plaintiffs had suggested that Defendants should interrupt Ms. Siville's leave of absence and require her to prepare and sit for deposition during her maternity leave. They have now changed their position and the parties will continue to meet and confer in an effort to ensure that Ms. Siville is not required to sit for deposition while on maternity leave.

[15] Plaintiffs' contention that Defendants' positions are frivolous and they are entitled to attorneys' fees and/or sanctions is wrong. Defendants are not arguing that these count as eight distinct depositions simply because it took this number of witnesses to address Plaintiffs' Rule 30(b)(6) notice. Nor are Defendants contending that a protective order is otherwise needed as to these witnesses.

serve identical notices of deposition on MSD and Intervet—an exercise that itself would be a waste of resources—but rather agreed to provide Rule 30(b)(6) testimony on behalf of each entity. Plaintiffs have therefore had Rule 30(b)(6) depositions of three separate corporate defendants, and for this reason alone, Plaintiffs' Rule 30(b)(6) depositions cannot count as one deposition. *See I/P Engine, Inc. v. AOL, Inc.*, 283 F.R.D. 322, 324 (E.D. Va. 2012) (noting that the Rule 30(b)(6) depositions of the five corporate defendants count as "one deposition each").

Second, Plaintiffs repeatedly used the Rule 30(b)(6) depositions to explore topics beyond those for which the witnesses were designated. And, although defense counsel objected to these questions as outside the scope, Plaintiffs' counsel insisted that the witnesses answer. For example, Intervet designated David Moore to testify regarding the narrow topic of sales incentive plans applicable to Animal Health sales representatives. During this deposition, and over defense counsel's objections, Plaintiffs' counsel questioned Mr. Moore regarding:

- Total compensation and functional salary ranges (a topic for which another witness was designated to testify) (Moore Dep. at 45:18-46:12; 86:15-89:6; 90:15-93:13);

- The structure of the Animal Health salesforce (a topic for which another witness was designated to testify) and positions that are outside the scope of the case such as National Account Managers (Moore Dep. at 20:14-22:3; 79:21-83:2);

- A job remapping process that integrated Animal Health representatives into a new job structure and the responsibilities of different sales representative positions (Moore Dep. at 254:22-260:11);

- The company's document retention policies and related trainings (Moore Dep. at 112:23-115:14); and

- Policies utilized by Schering Plough the entity that previously owned Intervet, Inc. and was acquired by Merck & Co., Inc. in late 2009 (Moore Dep. at 167:13-168:23).

Similarly, Dawn Pataki was designated to testify regarding topics relating to MSD's performance rating and promotion processes and a job reclassification process known as Career Pathways. Nevertheless, Plaintiffs did not limit themselves to these topics during Ms. Pataki's deposition and instead questioned her regarding topics such as:

- The creation of job descriptions and distinctions between the different types of sales representative positions (Pataki Dep. at 62:17-74:14);

- Merck & Co. Inc.'s role as a federal contractor (Pataki Dep. at 77:11-78:2; 237:15-238:6);

- The structure of the salesforce (Pataki Dep. at 135:6-137:4); and

- Whether certain payments and awards constituted "reportable income" and whether fair market value assessments were conducted for non-monetary awards (Pataki Dep. at 246:9-248:16).

9

It is fundamentally unfair for Plaintiffs to get both the benefit of counting the Rule 30(b)(6) deposition of each corporate defendant as a single deposition (irrespective of the number of depositions needed to address Plaintiffs' Notice) and the benefit of being able to explore topics far beyond those for which witnesses were designated, which Plaintiffs did in every single deposition. Indeed, this effectively allows Plaintiffs to take fact witness depositions of every Rule 30(b)(6) deponent without being charged as having done such. Accordingly, Defendants respectfully request that the Court find that Plaintiffs have completed 18 depositions to date in light of their treating Rule 30(b)(6) deponents as fact witnesses.

\* \* \*

The parties respectfully request that a telephonic status conference be scheduled as soon practicable for the Court to address these topics.

Thank you for your consideration.

Respectfully Submitted,

| | |
|---|---|
| s/ David Tracey | s/ Michael S. Burkhardt |
| David Tracey (NJ ID# 081062013) | Michael S. Burkhardt (NJ ID#008541993) |
| Russell Kornblith (*pro hac vice*) | **MORGAN, LEWIS & BOCKIUS LLP** |
| Andrew Melzer (*pro hac vice*) | 1701 Market Street |
| **SANFORD HEISLER LLP** | Philadelphia, PA 19103-2921 |
| 1350 Avenue of the Americas, 31st Floor | Telephone: (215) 963-5000 |
| New York, NY 10019 | Facsimile: (215) 963-5001 |
| Telephone: (646) 402.5658 | |
| Facsimile: (646) 402.5651 | Blair Robinson (NJ ID# 040712004) |
| | **MORGAN, LEWIS & BOCKIUS LLP** |
| Deborah K. Marcuse (*pro hac vice*) | 101 Park Avenue |
| **FEINSTEIN DOYLE PAYNE & KRAVEC, LLC** | New York, New York 10178 |
| 429 Fourth Avenue, Ste. 1300 | Telephone: (212) 309-6000 |
| Pittsburgh, PA 15219 | |
| Telephone: (412) 281-8400, ext. 121 | Krissy Katzenstein (*pro hac vice*) |
| | **MORGAN, LEWIS & BOCKIUS LLP** |
| *Attorneys for Plaintiffs and the Class* | 1111 Pennsylvania Ave NW |
| | Washington, DC 20004 |
| | Telephone: (202) 739-3000 |
| | |
| | *Attorneys for Merck & Co. Inc.* |