1

```
 1        UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW JERSEY
 2
 3   _____

     KELLI SMITH, individually and
 4   on behalf of a class of
     similarly situated female          CIVIL ACTION NUMBER:
 5   employees, RACHEL MOUNTIS,
     AMY SHURSKY, and KATE              3:13-cv-02970-MAS-LHG
 6   WHITMER,

 7        Plaintiffs,                    MOTION HEARING

 8          -vs-

 9   MERCK & CO., INC., et al.,

10        Defendants.
     _____
11        Clarkson S. Fisher United States Courthouse
          402 East State Street
12        Trenton, New Jersey  08608
          November 9, 2017
13
     B E F O R E:       HONORABLE MICHAEL A. SHIPP
14                      UNITED STATES DISTRICT JUDGE

15

16   A P P E A R A N C E S:

17   SANFORD HEISLER SHARP, LLP
     BY:  RUSSELL L. KORNBLITH, ESQUIRE
18            and
          THOMAS J. HENDERSON, ESQUIRE
19   On behalf of the Plaintiffs.

20   MORGAN, LEWIS & BOCKIUS, LLP
     BY:  MICHAEL S. BURKHARDT, ESQUIRE
21            and
          KRISSY L. KATZENSTEIN, ESQUIRE
22   On behalf of the Defendants.

23
     Certified as True and Correct as required by Title 28,
24   U.S.C., Section 753
          /S/ Cathy J. Ford, CCR, CRR, RPR
25
```

2

1            THE DEPUTY COURT CLERK:  All rise.

2            (Open court begins at 11:26 a.m.)

3            THE COURT:  Please be seated.

4            Good morning, Counsel.

5            COUNSELS:  Good morning, your Honor.

6            THE COURT:  We're here today in the matter of

7    Smith versus Merck, *et al.*, Docket Number 13-2970.

8            May I have appearances of counsel, please.

9            MR. KORNBLITH:  Russell Kornblith for the

10   plaintiffs, your Honor, here with my colleague Thomas

11   Henderson.

12           MR. BURKHARDT:  Michael Burkhardt, your Honor,

13   and my colleague Krissy Katzenstein on behalf of

14   defendants.

15           THE COURT:  This matter is before the Court on

16   the plaintiffs' appeal of Magistrate Judge Goodman's

17   decision to the district court regarding the proper

18   scope of expert discovery.  Now, this is plaintiffs'

19   motion, so I'm going to allow -- I'm going to hear

20   from plaintiff first.  After, I'll hear from defense

21   counsel.  And I have a few questions for both sides,

22   so let me go ahead and have plaintiffs' counsel start

23   us off.

24           MR. KORNBLITH:  Thank you, your Honor.  And if

25   possible, I would appreciate the opportunity to have a

3

1  brief rebuttal.

2       THE COURT:  Yes.  Let me ask you a question

3  from the outset now.  This appeal has been couched as

4  an appeal of two attachments:  Attachment 1 and

5  Attachment 2.  Let me just make sure I have this

6  right.

7       Counsel for defendants separated the

8  deposition questions at issue into two categories:

9  According to defendants, Attachment 1 contains

10 questions relevant to the compensation claims on which

11 you are moving to certify a class, and Attachment 2

12 contains questions about claims that plaintiffs have

13 abandoned.

14      Do you agree with this breakdown?

15      MR. KORNBLITH:  I think that breakdown is

16 roughly correct, your Honor.  And I think that it's

17 actually a very important distinction in some of the

18 questions that Mr. Burkhardt asked.

19      With regard to the latter ones, it's very

20 clear that those questions do not at all pertain to

21 the opinions expressed in the report, which is, of

22 course, one of the limitations on discovery here.

23      With regard to the former, those were

24 preliminary analyses that were performed in

25 consultation with counsel and solely for the purposes

4

1  of transmitting the results to counsel or,

2  alternatively, they were just the preliminary analyses

3  that would in turn be fed into draft reports.

4      So, your Honor, this motion calls upon the

5  Court to decide whether Rule 26's trial-preparation

6  protection for communications between counsel and the

7  expert and draft expert reports preclude discovery of

8  a party-opponent of the substance of those

9  communications and drafts, even if not the letter of

10  them themselves.

11      The preliminary analyses that are at issue

12  here were done at counsel's direction and solely for

13  the purposes of transmitting the results to counsel.

14  Opposing counsel, during the deposition of Dr. Vekker,

15  asked Dr. Vekker a number of questions about what

16  analyses the plaintiffs in this case had asked him to

17  perform.

18      We objected to those questions; we stated they

19  were improper, and so opposing counsel then sought an

20  end run around those questions by saying, I don't want

21  the communications, just tell me what you did in

22  anticipation of those communications.

23      In response, we directed Dr. Vekker that he

24  could answer the questions posed by the defendants --

25  the questions about what was done -- but only as it

5

1    pertained to the report.  In other words, we

2    instructed him not to answer only with regard to

3    analyses that were done solely for discussion with

4    counsel at the request of counsel.

5            So the expert in this case has actually

6    answered a lot of the discovery, if not, in fact, all

7    of the discovery to which the defendants are entitled.

8    What he hasn't testified to is simply his

9    communications with counsel.

10           What the defendants here are seeking is to

11   compel analyses on topics other than those to which

12   Dr. Vekker has offered an opinion in his report.  And

13   that goes to the heart of the trial-preparation

14   protection established by Rules 23 and -- 26(b)(3) and

15   26(b)(4).

16           Rule 26 provides that opposing counsel is not

17   entitled to enter into questioning about the substance

18   of plaintiffs' trial preparation.  Production of the

19   programming at issue here would reveal essentially in

20   sequence exactly what Dr. Vekker did at plaintiffs'

21   direction.  In other words, it's going to reveal

22   exactly what plaintiffs directed Dr. Vekker to do and

23   thereby exactly what the -- our thought processes

24   were.  The files --

25           THE COURT:  Counsel -- and some of this is

6

1   difficult.  I have been trying to parse through some

2   of the questions here because it really kind of cuts

3   very narrowly in terms of what should be disclosed and

4   what shouldn't be disclosed.

5          For instance -- and I'm looking at Attachment

6   Number 1 on the first page -- and I'm not going to go

7   through all the questions, but the second box, for

8   example, the defendants ask whether Dr. Vekker ever

9   ran an analysis of compensation, quote, like

10  Dr. Vekker reflected in Table 1 where you controlled

11  for grade, close quote.

12         This seems to go to the methodology and the

13  soundness of the basis for Dr. Vekker's opinion.  How

14  can that possibly be protected?  Shouldn't counsel be

15  allowed to probe into the methodology and the

16  soundness of the calculations?

17         MR. KORNBLITH:  Well, your Honor, I'm actually

18  glad that you ask about that because it's one of the

19  questions that I wanted to speak to specifically here.

20         The transcript on that point will actually

21  reveal that Dr. Vekker said that he didn't recall

22  whether he'd run it, I believe, and he didn't recall

23  because he didn't consider it in expressing the

24  opinion that he actually expressed.

25         And I believe he was then questioned about,

7

1    Well, why wouldn't you -- wouldn't you always include

2    that kind of control?  And I believe Dr. Vekker

3    testified that no, he wouldn't necessarily always use

4    that control because what pay grade somebody is put

5    into is a company-tainted variable.  In other words,

6    the company here is deciding what pay grade they put

7    somebody into, so if you're running the regression

8    with that control, it might make the disparity

9    entirely disappear.  That wouldn't mean that there

10   wasn't gender disparity in pay.

11        I mean, here, part of plaintiffs' claim is

12   actually that the S1 and the S2 grades do the same job

13   and that, as a result, even though they have different

14   pay grades, they should be analyzed in a single

15   regression.  And that's part of what Dr. Vekker

16   testified to.

17        So in that case, I don't think it goes to the

18   formulation of his opinion whether he ran the numbers

19   or not and what the numbers showed.  The more salient

20   question for his analysis is why he did it the way

21   that he did it.  And defendants were allowed to ask

22   that question, and they did, and they got an answer.

23        So I think that that brings us to actually two

24   other important categories of analysis.  In that case,

25   the case that we were just discussing with regard to

8

1    the grade control, Dr. Vekker may have run it at our

2    instruction.  And if he did that, that doesn't

3    necessarily have any bearing on his expert report.  In

4    other words, he didn't consider it, which is what he

5    testified to.

6         There are two other categories of information

7    that the defendants are seeking that would be revealed

8    if the programming that we were discussing is

9    revealed.

10        THE COURT:  Before you go on -- so do you

11   believe that a preliminary analysis conducted by an

12   expert needs to be disclosed if the expert ultimately

13   considered or relied upon the analysis in reaching an

14   opinion?

15        MR. KORNBLITH:  Yes.  If he testifies that he

16   considered the analysis or that he relied upon the

17   analysis in forming his opinion, then yes, that would

18   have to be disclosed.

19        In this case, it was incumbent on the

20   defendants to elicit that kind of testimony that he

21   relied on or considered some other analysis.  But they

22   weren't able to elicit that testimony, which is why

23   they've now come to the Court and said, Well,

24   basically, we want to redefine "consider" to mean

25   something that it clearly doesn't to Dr. Vekker.

1            I do want to talk about two other categories

2    of information here that are -- clearly were things

3    that weren't considered when Dr. Vekker expressed the

4    opinions in the report.  Which, remember, the report

5    itself has a regression relating to base pay, and

6    Dr. Vekker opines that there is a statistically

7    significant disparity in base pay for women in the

8    S Grades 1 and 2.

9            Now, there are also -- or there may also be

10   analyses of other claims and subjects that are not in

11   the report.  These would include things like bonuses,

12   initial assignments, promotions, awards, leave,

13   pregnancy.  Those simply aren't relevant to the

14   opinions expressed in the report, which are purely

15   based on base pay.

16           And if the defendants do think that they are

17   relevant to the opinions expressed in the report, the

18   defendants are welcome to question Dr. Vekker about

19   why he didn't consider them.  That's the alternative

20   analysis to which the portion that I'm sure we'll talk

21   about later is referring.  So that's the first

22   category.

23           The second category of analyses that may be

24   expressed in this programming have to do with

25   settlement and damages.  Again, Dr. Vekker offers no

1    opinion as to damages.  He offers no opinion at all.

2    And the fact that this information was done for

3    settlement purposes would make it otherwise

4    inadmissible.  But the defendants are here seeking to

5    discover it, as part of their request, for every

6    analysis that Dr. Vekker ever did.

7         So I think what's important to know here is

8    that -- there are a series of programming files at

9    issue.  And these programming files were created in

10   large part as a result of a series of telephone

11   conversations with counsel.  And in those telephone

12   conversations, counsel would ask Dr. Vekker:  What

13   happens if X is done?  Dr. Vekker would generate a

14   program and transmit the results to counsel.

15        Now, Dr. Vekker has testified that he didn't

16   consider any of those analyses when he produced the

17   analysis that he, as an independent expert, put forth

18   in his report.  The defendants, however, if they were

19   allowed to discover these, would essentially be able

20   to probe our thought process in developing the case,

21   going back over a period of three years.

22        The production of these other analyses also

23   isn't necessary for defendants to have a thorough

24   understanding of what Dr. Vekker did and to

25   cross-examine him on it.  Dr. Vekker has produced the

1   backup files and the programming for the analysis that

2   he actually ran, on which he actually expressed an

3   opinion.

4          The rest of this is essentially the substance

5   of the communications between plaintiffs and the

6   expert.  In other words, by seeing this, defendants

7   are going to know what was being talked about and

8   roughly when it was being talked about, just not the

9   exact words that were used.

10          The protections and the exceptions in

11   Rules 26(b)(4)(C)(ii) and (iii) are very careful in

12   what they permit the defendants to discover of the

13   communications between plaintiffs and their expert,

14   and that should be the limit on what the defendants

15   are here entitled to discover:  facts or data that the

16   expert considered in forming the opinions to be

17   expressed or assumptions he relied upon in forming the

18   opinions to be expressed.

19          Here, a preliminary analysis is, quite simply,

20   not a fact or a piece of data.  It's an analysis that

21   was performed by Dr. Vekker at counsel's instruction

22   for transmission to counsel or insertion in a draft.

23   That's distinguished from the facts or data, the

24   statistical data files that the defendants here

25   produced, which are identified in Exhibit D to

1   Dr. Vekker's report.

2          So, with that said, I think that the important

3   piece to remember here is that what the defendants are

4   seeking to discover is essentially the substance of

5   the communications between plaintiffs and the expert

6   or the drafts.  And if they're allowed to discover it

7   here, Rule 26(b)(4)(C) essentially becomes a hollow

8   shell.

9          Unless there are any other questions.

10          THE COURT:  I have more questions, but I think

11   I'm going to address -- I want to hear from the

12   defendants, and I'll address them on your rebuttal.

13          MR. KORNBLITH:  Yes, your Honor.  Thank you.

14          THE COURT:  Mr. Burkhardt, let me hear from

15   you.

16          MR. BURKHARDT:  Thank you, your Honor.

17          Your Honor, I'm happy to answer any questions

18   if you have preliminary questions, or I'll just start

19   to address.

20          THE COURT:  There are a few questions I have

21   at the outset.  I mean, how does your position square

22   with the amendments from 2010?  I mean, if the Court

23   affirms Judge Goodman's decision, would the effect be

24   that the better-funded party, in essence, would hire

25   consulting and testifying experts?  In other words,

13

1    does this come down to a battle of resources?

2           MR. BURKHARDT:  It doesn't, your Honor.  And

3    the assertion made about one area of concern relating

4    to consulting and testifying experts and the reference

5    to that, that's taken from committee discussions.

6    It's not what the rule actually says.  So it's

7    important to take a step back and realize what's sort

8    of the starting point.

9           The starting point is, for a testifying

10   expert, work product protection doesn't apply.  So

11   that's in Section 23 -- in 26(b)(3)(A), work product

12   protection for nontestifying experts doesn't apply

13   when you have a testifying expert.  In 2010, they

14   amended the rule to craft a limited set of exceptions

15   to apply work product protection to only two things:

16   draft reports or certain types of attorney-expert

17   communications.

18          So the construct that was created that

19   Mr. Kornblith was just talking about made it sound

20   like discovery is limited.  In reality, the

21   overwhelming case law is that discovery of testifying

22   experts is broad.  There is no work product protection

23   associated with something your expert does.

24          There are only two limited exceptions:  draft

25   reports and communications from the attorneys to their

14

1    expert.  And then there exceptions to that that say,

2    obviously, if those communications involve facts or

3    assumptions that the lawyers tell the expert to use,

4    those are still discoverable.

5          So the starting point here is, one, the

6    questions that were asked in his deposition were,

7    simply, did you do something; Dr. Vekker, did you do

8    an analysis that controlled for grade when you were

9    analyzing the data in this case?  There's nothing

10   privileged about whether he did something in the first

11   instance.

12         We are also entitled to the underlying

13   programming that he did on that analysis because it's

14   not protected as a testifying expert.  The numerous

15   cases, the three cases from the Ninth, Tenth, and

16   Eleventh Circuits -- they all go right to this exact

17   same issue.  They make it clear that both the

18   construct of the rule plus the rationale behind it

19   would not preclude examination of this kind of

20   information because it is data that is not an

21   attorney-expert communication; it is not a draft

22   report.

23         The cases that the plaintiffs point to in

24   their papers involve a presentation or a communication

25   that the expert generated.  The rules are clear in

1   terms of being able to get at the underlying facts and

2   information that the expert created when formulating

3   his opinion.

4        Now, it's important to understand that that's

5   the starting point.  This argument about what was

6   considered and did he consider it in his report,

7   that's not the law.  That's the question, initially,

8   of whether you have an obligation to disclose the

9   information.

10       So Rule 26 has (a)(2), which are disclosure

11  requirements.  They're akin to (a)(1), initial

12  disclosures.  They don't define the scope of

13  discovery.  They tell you this is what you must

14  disclose.  In that section, the language says you have

15  to produce all facts or data that were considered by

16  the expert.  It used to say "facts and other

17  information."  The change to that language was only

18  linked to the ultimate exceptions that were created

19  saying no draft reports and no communications from

20  your lawyers.

21       New Jersey case law and numerous other courts

22  around the country define "consider" very broadly, so

23  even if we were just thinking about it from a

24  disclosure standpoint, it talks about anything an

25  expert generates, reviews, reflects upon, reads, or

16

1    uses in connection with the formulation of his

2    opinion.

3            And the *Yeda* case that we cited in our papers,

4    your Honor -- even there, where the expert said, I

5    didn't consider this other analysis that I did, the

6    court rejected that as meeting their burden.  You

7    can't just have the expert say, no, I didn't consider

8    it, and then say, but you generated it.  And that case

9    was really one where he was originally a, quote,

10   consulting expert and then became a testifying expert.

11   We don't even have that situation here.

12           So the standard of what an expert considers is

13   broad.  The standard for what is discoverable is broad

14   and governed under 26(b)(1), and then the only

15   question is, is there something that is privileged?

16   And the original objections throughout the deposition,

17   over and over again, were, you're asking about

18   something that might implicate a communication.

19           There's pages of -- hundreds of pages of

20   objections and back-and-forth between myself and

21   Mr. Henderson multiple times, saying, I'm not asking

22   you about the communications.  I'm not asking you --

23   nor did I say to Dr. Vekker, I'm not asking you

24   whether or not you wrote an email to the lawyers or

25   they wrote you and said do X, Y, and Z.  But I'm

17

1    entitled to see if you did an analysis and see the

2    programming behind it.

3            And the example Mr. Kornblith referenced is

4    inaccurate in what happened in the particular

5    transcript.  That one question -- and there are many,

6    as you saw in Attachment 1 -- was, did you do an

7    analysis that controlled for grade?  It goes

8    absolutely to the heart of his methodology.  It goes

9    to whether he tested, did alternative analyses.  And

10   the advisory committee notes are very clear that

11   nothing in these amendments that are limited

12   exceptions would preclude you from taking discovery on

13   testing, alternative methods that you did, the testing

14   of litigation materials that a testifying expert

15   generated.

16           What it doesn't entitle me to get, perhaps to

17   my chagrin when the rules were amended, but what it

18   doesn't entitle me to get were specific email

19   communications.  Or if an expert generates a draft

20   report, sends it to counsel, counsel starts editing

21   it, sends it back -- that's now considered protected.

22           So the whole notion of well, we needed a

23   different expert to work on the report, it sounds

24   great in theory.  It's not really what, ultimately,

25   was done with the amendments to the rule.

18

1      If the rule was intended to say any analysis

2  that counsel asked their testifying expert to perform

3  is protected, that's what they would have said.  The

4  Ninth, Tenth, and Eleventh Circuits in the *Republic of*

5  *Ecuador* cases all basically made this point.  They

6  said if the rule makers thought or wanted to restrict

7  discovery of testifying experts, they would have done

8  it.  But they didn't.  And it's instructive, your

9  Honor, because it talks about the rationale why, you

10  know, why wouldn't you do it?

11      And Mr. Kornblith made a passing reference to

12  the fact that their expert is supposed to be an

13  independent expert.  That's the very reason why

14  discovery is broad.  We are entitled to test whether

15  or not Dr. Vekker's opinions are sound.  Did he do

16  analyses controlling for grade?  Did he test the

17  things that are actually in their class certification

18  papers?

19      Plaintiffs say that, for example, the merit

20  increase policy causes an adverse result.  Second page

21  of Attachment 1, I asked him:  Did you do an analysis

22  of whether merit increases had any adverse effect

23  based on gender?

24      His answer?  No, subject to the objection.

25      Now, as the magistrate properly determined,

19

1   the objection muddies the testimony because he could

2   have, if counsel asked him, but he may not have.  He

3   never answered the question.  He would never answer

4   that question directly.  If he did, we're entitled to

5   see the programming on that and then properly

6   cross-examine him.

7          Plaintiffs argue in their opposition papers --

8   and I don't remember now, your Honor, if it was the

9   reply or the original appeal -- that the section of

10  the committee notes that talks about you are clearly

11  entitled to discovery of alternative analyses, testing

12  of data that a testifying expert does -- their

13  assertion is that only means that I get to ask

14  Dr. Vekker in his deposition, well, let me give you a

15  hypothetical and see if you agree or don't agree with

16  my alternative.  There's nothing about that language

17  that would suggest that that's the only meaning and

18  that it means I'm not entitled to see if he actually

19  did it.

20         The whole purpose of rules around testifying

21  experts is to allow for broad discovery, to allow for

22  us to have a fair and full opportunity to

23  cross-examine this expert and, ultimately, to present

24  an argument to the Court that, under Daubert, he has

25  not used a sound methodology and that he had

20

 1   information that showed the exact opposite, your

 2   Honor.

 3          So -- and I'm happy, again, to answer any

 4   questions, your Honor.  The only thing --

 5          THE COURT:  Why do you want the information in

 6   Attachment Number 2 if the plaintiffs are no longer

 7   pursuing those claims?

 8          MR. BURKHARDT:  Well, your Honor, one of the

 9   requirements for Rule 23 class certification is

10   adequacy of counsel and the named representatives.

11   There is case law that we will submit to you in our

12   opposition papers that makes it clear that if counsel

13   or named plaintiff abandons claims, that that is one

14   of the issues a court should take into consideration

15   as to whether or not these lawyers and their

16   representative can adequately, quote/unquote,

17   represent the interest of the class.

18          It's only one argument, but the issue is we've

19   been in litigation for four years -- a complaint that

20   has numerous other claims that were asserted.

21          And Dr. Vekker also was playing a little cute

22   in his deposition where he would occasionally say, as

23   he does in his report, the total effect of Merck's

24   policies lead to an adverse compensation result.

25   We're entitled to ask him, did he explore those

21

1   things?  I'm entitled to ask him, did you do an

2   analysis of this claim of the named plaintiffs in this

3   case?  You're here as an expert.  You are asserting

4   that there's a pattern and practice of discrimination

5   at Merck.  I'm entitled to know whether you did it.

6        And what we proposed to the magistrate, at her

7   request, in terms of were we willing to do the

8   compromise -- we had said, with Attachment 2, what we

9   would like to know is, did he do it or not?  Give us a

10  verified response whether he did or he didn't, and if

11  so, then he can articulate whether he says he

12  considered or relied upon it or not.

13       We should be entitled at that point to

14  challenge that if needed, but we separated the two

15  things.  These are clearly not related to the area of

16  compensation that he opined on.  Attachment 1 clearly

17  relates in every way to the opinion that he expressed

18  in his report.  There's really no argument at all with

19  respect to Attachment 1.

20       Attachment 2, in my opinion, is still

21  relevant, your Honor, because we think it's relevant

22  to the question of adequacy.  And again, under the

23  rules, there's nothing that precludes discovery of it

24  unless it's a draft report or an attorney-expert

25  communication.

22

1        The plaintiffs never asserted before the

2   magistrate that what Dr. Vekker did was a draft

3   report.  They have never presented us with a privilege

4   log.  They presented no factual basis to suggest that

5   what the magistrate concluded is clear error, which is

6   the standard on appeal.  It's great lawyer argument to

7   say this is why Dr. Vekker did this.  There's no

8   factual support for any of that.

9        So our -- we proposed the compromise.  We're

10  still willing to live with the compromise between

11  Attachments 1 and 2.  Frankly, the magistrate properly

12  concluded we're entitled to all of it because, when

13  you look at the construct of the rules, the starting

14  point is, as long as it's relevant -- and there's no

15  real argument it's not relevant to the case --

16  everything's discoverable except two little things:

17  communications -- which we're not asking for, we

18  haven't asked for, and they haven't produced -- and

19  draft reports -- we didn't ask for, we haven't asked

20  for, and they haven't produced.  Nor will we if we --

21  when we get to discovery.

22        So we accept that's part of the rule unless,

23  again, there's still some communications that would be

24  at issue, but the plaintiffs produced those.  Things

25  where you send an email to your expert and say, here

23

1   is the class definition; or here is, you know, the set

2   of data that you need.  Those communications are still

3   discoverable, even under these very limited

4   carve-outs.  That's not what's at issue here.  What's

5   at issue here is, what analysis did Dr. Vekker do and

6   when -- what is the programming behind that analysis?

7          Honestly, your Honor, I don't believe

8   Dr. Vekker did many of these things, but we

9   continuously got an objection saying subject to the

10  standing objection, no, which was translated to

11  meaning I didn't do it independently, but I might have

12  done it at the direction of counsel, or I might have

13  been asked by counsel to do it.

14         Well, that's not the standard under the rules

15  to say you don't have to disclose it.  If in fact he

16  didn't do something, we're entitled to know.  Okay,

17  you never looked at that issue.  Done.  We shouldn't

18  even be fighting about those.  So part of the starting

19  point was just answer the question.

20         The secondary piece is, we're entitled to the

21  backup like you are with any normal testifying expert

22  discovery so we can test the methodology he used --

23  did he ignore relevant information -- and present a

24  proper argument to the Court that Dr. Vekker's opinion

25  is not reliable and doesn't meet the Daubert standard.

24

1          One of the standards under Daubert is clear,

2     you know -- have you tested your methodology?  Can it

3     be tested?  Well, if he's out running alternative

4     analyses on all kinds of things related to

5     compensation, we're entitled to know that.  If he

6     never studies any of the actual theories the

7     plaintiffs assert to support class certification,

8     we're entitled to know that.

9          THE COURT:  Okay.  Thank you.

10          MR. BURKHARDT:  Thank you, your Honor.

11          THE COURT:  Mr. Kornblith.  Counsel says

12     they're entitled to the stuff at Attachment 2 because

13     it's relevant.

14          MR. KORNBLITH:  Well, your Honor, it's not --

15     it's not something that Dr. Vekker considered in

16     expressing the opinions in his report.

17          The opinions in the report pertain only to

18     base pay.  And if Mr. Burkhardt believes that

19     Dr. Vekker should have, say, considered pregnancy as

20     one of the variables in running his base pay

21     regression, he was entitled to ask Dr. Vekker why

22     Dr. Vekker didn't consider pregnancy status in running

23     those regressions.

24          The fact that Dr. Vekker didn't, though,

25     doesn't impede Mr. Burkhardt's ability to raise a

25

1    Daubert challenge or something like that.

2    Mr. Burkhardt can still question Dr. Vekker's

3    methodology; he just doesn't need Dr. Vekker's own

4    work product that was done at the request and

5    instruction of counsel in order to do that.

6            THE COURT:  Does any of this speak to adequacy

7    of counsel or sufficiency of the requirements under

8    Rule 23?

9            MR. KORNBLITH:  Well, I don't believe the

10   adequacy challenge was raised in the defendants'

11   papers, so I would need Mr. Burkhardt to hum a few

12   more bars of that argument in order to fully

13   understand it.

14           But if the question is whether the plaintiffs

15   are obligated to move for class certification on every

16   claim in the complaint, the case law is pretty clear

17   on that.  We've got a footnote in our brief with at

18   least three case citations that are to that effect,

19   and there's no reason to believe that that would be

20   any different here.

21           So with that in mind, the -- Dr. Vekker's

22   opinions are indeed conformed to the limitations of

23   the Rule 23 papers to the extent that we are only

24   moving for a class certification -- for class

25   certification on the issue of base pay; and so it is

1    not at all clear what the relevance of, say, an

2    opinion on whether Merck discriminates against people

3    who've taken leave would be to that.

4         If -- excuse me -- Mr. Burkhardt wants to

5    suggest that that's somehow relevant, it's incumbent

6    on him to make that argument to Dr. Vekker by

7    presenting Dr. Vekker with facts or data that he

8    should have considered and questioning Dr. Vekker

9    about why he didn't consider those facts or data.

10        Mr. Burkhardt didn't do that, though.  What he

11   instead sought to do was to ask whether plaintiffs had

12   ever asked certain questions about other facts or

13   data.

14        I do want to briefly address also one of the

15   changes in the rules that I think has been minimized

16   here, which is the shift from information to facts or

17   data.  That shift is meant to intentionally narrow the

18   scope of the discovery to which the defendants are

19   entitled here.

20        Because facts or data are the things that the

21   defendants produced here.  They are the things

22   identified in Exhibit D to Dr. Vekker's report.  Facts

23   or data are not the interpretations of the facts or

24   data that Dr. Vekker then made, and that's clear in

25   the case law of both presented by the defendants and

1    presented by us.

2          I also want to address the *Yeda* case that

3    Mr. Burkhardt brought up.  The *Yeda* case is actually

4    somewhat on point here because it recognizes that

5    there is a distinction between work that an expert may

6    perform in his consulting capacity and the work that

7    an expert may perform in his testifying capacity, and

8    that the work done in the consulting capacity isn't

9    necessarily facts or data that was considered in

10   forming the opinions expressed in the testifying

11   capacity, that that's actually a fact-driven analysis

12   that's driven by the actual opinions expressed.

13         Now, in that case, what happened was that

14   there was a very particular experiment that the expert

15   had designed, and the court basically said, there's no

16   way that that didn't figure into your analysis.

17         But that's not what's at issue here, and it's

18   certainly not what's at issue with regard to all of

19   the claims, for example, on bonus, additional

20   assignments, promotions, award, leave, pregnancy, to

21   which Dr. Vekker has expressed no opinion.

22         Likewise, the *Republic of Ecuador* cases to

23   which Mr. Burkhardt refers are not nearly as clear-cut

24   as he says.  Those cases simply say that

25   Rule 23(b)(3)(A) does not apply as a blanket

1    protection to all work done by an expert.

2         We have some disagreement with those cases,

3    but even acknowledging those cases, that doesn't

4    undercut Rule 26(b)(4)(C)'s protections for analyses

5    that are done solely for the purposes of transmission

6    to counsel.

7         Finally, I want to address two minor points

8    here, which is that Mr. Burkhardt states that we never

9    produced a privilege log in this case.  The responses

10   to subpoena that were produced here offered a

11   privilege log.  The defendants never took us up on

12   that offer.  If that's going to be helpful, it's

13   obviously something we could provide, but that's why

14   there is no privilege log in this case.

15        THE COURT:  And that kind of goes to another

16   issue here, too.  Some of the arguments that you folks

17   are putting forward -- it's just more comprehensive

18   than what was in front of Judge Goodman, so I'm called

19   upon to make a decision upon information that really

20   wasn't presented to Judge Goodman.

21        And so it really kind of creates somewhat of a

22   quagmire for the Court because I want to see the case

23   move, but at the same time, I think it's a little

24   inappropriate that we have issues now that are here

25   that weren't there.

1          MR. KORNBLITH:  Right.  I understand the

2   Court's position on that, and I think that's in part

3   been a product of the back-and-forth between counsel

4   here.

5          I do want to address one other minor point,

6   which is the standard on this appeal, which the

7   defendants state in their brief that it's clear error.

8   I know your Honor, having been a magistrate judge

9   before being appointed to the district court, has an

10  understanding of this.  There is a more lenient

11  standard of review on the factual basis, but the law

12  is reviewed *de novo*.  And the *Bowen* case that the

13  defendants state actually says that, so I don't know

14  where we get to this clear error standard from.

15          THE COURT:  All right, Counsel.

16          Here's what I'd like to do here.  It's funny.

17  I always thought discovery was so straightforward.

18  And, as you say, I've been a magistrate judge for five

19  years and dealt with issues like this.  But I think

20  that there are some complicating factors here that I

21  need to look at more closely, so what I want to do is,

22  I'm going to reserve for today.  I'm going to ask my

23  courtroom deputy to reach out to you folks and see if

24  you folks are available on Monday, and we'll do a

25  telephone conference on Monday, at which time I will

30

1    render my decision.

2          There are a few other things I want to look

3    at.  I want to look a little bit more closely at some

4    of the issues that you folks raised on oral argument

5    today and consider that, and then on Monday I'll issue

6    a telephonic decision.  Okay?

7          So with that, I want to thank you for coming

8    in and for your oral argument, but that's all we have

9    for today.

10         MR. KORNBLITH:  Thank you, your Honor.

11         MR. BURKHARDT:  Thank you, your Honor.

12         THE DEPUTY COURT CLERK:  All rise.

13         (Court concludes at 12:03 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

## /

/S [1] - 1:24

## 0

08608 [1] - 1:12

## 1

1 [10] - 3:4, 3:9, 6:6, 6:10, 9:8, 17:6, 18:21, 21:16, 21:19, 22:11
11:26 [1] - 2:2
12:03 [1] - 30:13
13-2970 [1] - 2:7

## 2

2 [8] - 3:5, 3:11, 9:8, 20:6, 21:8, 21:20, 22:11, 24:12
2010 [2] - 12:22, 13:13
2017 [1] - 1:12
23 [5] - 5:14, 13:11, 20:9, 25:8, 25:23
23(b)(3)(A [1] - 27:25
26 [2] - 5:16, 15:10
26's [1] - 4:5
26(b)(1 [1] - 16:14
26(b)(3 [1] - 5:14
26(b)(3)(A [1] - 13:11
26(b)(4) [1] - 5:15
26(b)(4)(C [1] - 12:7
26(b)(4)(C)'s [1] - 28:4
26(b)(4)(C)(ii [1] - 11:11
28 [1] - 1:23

## 3

3:13-cv-02970-MAS-LHG [1] - 1:5

## 4

402 [1] - 1:11

## 7

753 [1] - 1:24

## 9

9 [1] - 1:12

## A

a)(1 [1] - 15:11
a)(2 [1] - 15:10
a.m [1] - 2:2
abandoned [1] - 3:13

abandons [1] - 20:13
ability [1] - 24:25
able [3] - 8:22, 10:19, 15:1
absolutely [1] - 17:8
accept [1] - 22:22
according [1] - 3:9
acknowledging [1] - 28:3
ACTION [1] - 1:4
actual [2] - 24:6, 27:12
additional [1] - 27:19
address [7] - 12:11, 12:12, 12:19, 26:14, 27:2, 28:7, 29:5
adequacy [4] - 20:10, 21:22, 25:6, 25:10
adequately [1] - 20:16
adverse [3] - 18:20, 18:22, 20:24
advisory [1] - 17:10
affirms [1] - 12:23
agree [3] - 3:14, 19:15
ahead [1] - 2:22
akin [1] - 15:11
al [2] - 1:9, 2:7
allow [3] - 2:19, 19:21
allowed [4] - 6:15, 7:21, 10:19, 12:6
alternative [6] - 9:19, 17:9, 17:13, 19:11, 19:16, 24:3
alternatively [1] - 4:2
amended [2] - 13:14, 17:17
amendments [1] - 12:22, 17:11, 17:25
AMY [1] - 1:5
analyses [15] - 3:24, 4:2, 4:11, 4:16, 5:3, 5:11, 9:10, 9:23, 10:16, 10:22, 17:9, 18:16, 19:11, 24:4, 28:4
analysis [26] - 6:9, 7:20, 7:24, 8:11, 8:13, 8:16, 8:17, 8:21, 9:20, 10:6, 10:17, 11:1, 11:19, 11:20, 14:8, 14:13, 16:5, 17:1, 17:7, 18:1, 18:21, 21:2, 23:5, 23:6, 27:11, 27:16
analyzed [1] - 7:14
analyzing [1] - 14:9
answer [8] - 4:24, 5:2, 7:22, 12:17, 18:24, 19:3, 20:3, 23:19
answered [2] - 5:6, 19:3
anticipation [1] - 4:22
appeal [6] - 2:16, 3:3, 3:4, 19:9, 22:6, 29:6
appearances [1] - 2:8
apply [4] - 13:10, 13:12, 13:15, 27:25
appointed [1] - 29:9
appreciate [1] - 2:25
area [2] - 13:3, 21:15

argue [1] - 19:7
argument [11] - 15:5, 19:24, 20:18, 21:18, 22:6, 22:15, 23:24, 25:12, 26:6, 30:4, 30:8
arguments [1] - 28:16
articulate [1] - 21:11
assert [1] - 24:7
asserted [2] - 20:20, 22:1
asserting [1] - 21:3
assertion [2] - 13:9, 19:13
assignments [2] - 9:12, 27:20
associated [1] - 13:23
assumptions [2] - 11:17, 14:3
Attachment [11] - 3:4, 3:5, 3:9, 3:11, 6:5, 17:6, 18:21, 20:6, 21:8, 21:19, 24:12
attachment [2] - 21:16, 21:20
attachments [1] - 3:4
Attachments [1] - 22:11
attorney [3] - 13:16, 14:21, 21:24
attorney-expert [3] - 13:16, 14:21, 21:24
attorneys [1] - 13:25
available [1] - 29:24
award [1] - 27:20
awards [1] - 9:12

## B

back-and-forth [2] - 16:20, 29:3
backup [2] - 11:1, 23:21
bars [1] - 25:12
base [6] - 9:5, 9:7, 9:15, 24:18, 24:20, 25:25
based [2] - 9:15, 18:23
basis [3] - 6:13, 22:4, 29:11
battle [1] - 13:1
bearing [1] - 8:3
became [1] - 16:10
becomes [1] - 12:7
begins [1] - 2:2
behalf [4] - 1:4, 1:19, 1:22, 2:13
behind [3] - 14:18, 17:2, 23:6
believes [1] - 24:18
better [1] - 12:24
better-funded [1] - 12:24
between [6] - 4:6, 11:5, 11:13, 12:5, 16:20, 22:10, 27:5, 29:3
bit [1] - 30:3
blanket [1] - 27:25
BOCKIUS [1] - 1:20
bonus [1] - 27:19

bonuses [1] - 9:11
Bowen [1] - 29:12
box [1] - 6:7
breakdown [2] - 3:14, 3:15
brief [3] - 3:1, 25:17, 29:7
briefly [1] - 26:14
brings [1] - 7:23
broad [5] - 13:22, 16:13, 18:14, 19:21
broadly [1] - 15:22
brought [1] - 27:3
burden [1] - 16:6
BURKHARDT [7] - 1:20, 2:12, 12:16, 13:2, 20:8, 24:10, 30:11
Burkhardt [11] - 2:12, 3:18, 12:14, 24:18, 25:2, 25:11, 26:4, 26:10, 27:3, 27:23, 28:8
Burkhardt's [1] - 24:25
BY [2] - 1:17, 1:20

## C

calculations [1] - 6:16
capacity [4] - 27:6, 27:7, 27:8, 27:11
careful [1] - 11:11
carve [1] - 23:4
carve-outs [1] - 23:4
case [25] - 4:16, 5:5, 7:17, 7:24, 7:25, 8:19, 10:20, 13:21, 14:9, 15:21, 16:3, 16:8, 20:11, 21:3, 22:15, 25:16, 25:18, 26:25, 27:2, 27:3, 27:13, 28:9, 28:14, 28:22, 29:12
cases [8] - 14:15, 14:23, 18:5, 27:22, 27:24, 28:2, 28:3
categories [4] - 3:8, 7:24, 8:6, 9:1
category [2] - 9:22, 9:23
Cathy [1] - 1:24
causes [1] - 18:20
CCR [1] - 1:24
certain [2] - 13:16, 26:12
certainly [1] - 27:18
certification [6] - 18:17, 20:9, 24:7, 25:15, 25:24, 25:25
Certified [1] - 1:23
certify [1] - 3:11
chagrin [1] - 17:17
challenge [3] - 21:14, 25:1, 25:10
change [1] - 15:17
changes [1] - 26:15
Circuits [2] - 14:16, 18:4
citations [1] - 25:18

**cited** [1] - 16:3
**CIVIL** [1] - 1:4
**claim** [3] - 7:11, 21:2, 25:16
**claims** [7] - 3:10, 3:12, 9:10, 20:7, 20:13, 20:20, 27:19
**Clarkson** [1] - 1:11
**class** [10] - 1:4, 3:11, 18:17, 20:9, 20:17, 23:1, 24:7, 25:15, 25:24
**clear** [13] - 3:20, 14:17, 14:25, 17:10, 20:12, 22:5, 24:1, 25:16, 26:1, 26:24, 27:23, 29:7, 29:14
**clear-cut** [1] - 27:23
**clearly** [5] - 8:25, 9:2, 19:10, 21:15, 21:16
**CLERK** [2] - 2:1, 30:12
**close** [1] - 6:11
**closely** [2] - 29:21, 30:3
**CO** [1] - 1:9
**colleague** [2] - 2:10, 2:13
**coming** [1] - 30:7
**committee** [3] - 13:5, 17:10, 19:10
**communication** [4] - 14:21, 14:24, 16:18, 21:25
**communications** [17] - 4:6, 4:9, 4:21, 4:22, 5:9, 11:5, 11:13, 12:5, 13:17, 13:25, 14:2, 15:19, 16:22, 17:19, 22:17, 22:23, 23:2
**company** [2] - 7:5, 7:6
**company-tainted** [1] - 7:5
**compel** [1] - 5:11
**compensation** [5] - 3:10, 6:9, 20:24, 21:16, 24:5
**complaint** [2] - 20:19, 25:16
**complicating** [1] - 29:20
**comprehensive** [1] - 28:17
**compromise** [3] - 21:8, 22:9, 22:10
**concern** [1] - 13:3
**concluded** [2] - 22:5, 22:12
**concludes** [1] - 30:13
**conducted** [1] - 8:11
**conference** [1] - 29:25
**conformed** [1] - 25:22
**connection** [1] - 16:1
**consider** [12] - 6:23, 8:4, 8:24, 9:19, 10:16, 15:6, 15:22, 16:5, 16:7, 24:22, 26:9, 30:5
**consideration** [1] - 20:14
**considered** [13] - 8:13, 8:16, 8:21, 9:3, 11:16, 15:6, 15:15, 17:21, 21:12, 24:15, 24:19, 26:8, 27:9
**considers** [1] - 16:12
**construct** [3] - 13:18, 14:18, 22:13

**consultation** [1] - 3:25
**consulting** [5] - 12:25, 13:4, 16:10, 27:6, 27:8
**contains** [2] - 3:9, 3:12
**continuously** [1] - 23:9
**control** [4] - 7:2, 7:4, 7:8, 8:1
**controlled** [3] - 6:10, 14:8, 17:7
**controlling** [1] - 18:16
**conversations** [2] - 10:11, 10:12
**correct** [1] - 3:16
**Correct** [1] - 1:23
**couched** [1] - 3:3
**Counsel** [3] - 2:4, 5:25, 29:15
**counsel** [32] - 2:8, 2:21, 2:22, 3:7, 3:25, 4:1, 4:6, 4:13, 4:14, 4:19, 5:4, 5:9, 5:16, 6:14, 10:11, 10:12, 10:14, 11:22, 17:20, 18:2, 19:2, 20:10, 20:12, 23:12, 23:13, 24:11, 25:5, 25:7, 28:6, 29:3
**counsel's** [2] - 4:12, 11:21
**COUNSELS** [1] - 2:5
**country** [1] - 15:22
**course** [1] - 3:22
**COURT** [18] - 1:1, 2:1, 2:3, 2:6, 2:15, 3:2, 5:25, 8:10, 12:10, 12:14, 12:20, 20:5, 24:9, 24:11, 25:6, 28:15, 29:15, 30:12
**court** [6] - 2:2, 2:17, 16:6, 20:14, 27:15, 29:9
**Court** [8] - 2:15, 4:5, 8:23, 12:22, 19:24, 23:24, 28:22, 30:13
**Court's** [1] - 29:2
**Courthouse** [1] - 1:11
**courtroom** [1] - 29:23
**courts** [1] - 15:21
**craft** [1] - 13:14
**created** [4] - 10:9, 13:18, 15:2, 15:18
**creates** [1] - 28:21
**cross** [3] - 10:25, 19:6, 19:23
**cross-examine** [3] - 10:25, 19:6, 19:23
**CRR** [1] - 1:24
**cut** [1] - 27:23
**cute** [1] - 20:21
**cuts** [1] - 6:2

**D**

**damages** [2] - 9:25, 10:1
**data** [17] - 11:15, 11:20, 11:23, 11:24, 14:9, 14:20, 15:15, 19:12, 23:2, 26:7,

26:9, 26:13, 26:17, 26:20, 26:23, 26:24, 27:9
**Daubert** [4] - 19:24, 23:25, 24:1, 25:1
**de** [1] - 29:12
**dealt** [1] - 29:19
**decide** [1] - 4:5
**deciding** [1] - 7:6
**decision** [5] - 2:17, 12:23, 28:19, 30:1, 30:6
**defendants** [27] - 2:14, 3:7, 3:9, 4:24, 5:7, 5:10, 6:8, 7:21, 8:7, 8:20, 9:16, 9:18, 10:4, 10:18, 10:23, 11:6, 11:12, 11:14, 11:24, 12:3, 12:12, 26:18, 26:21, 26:25, 28:11, 29:7, 29:13
**Defendants** [2] - 1:10, 1:22
**defendants'** [1] - 25:10
**defense** [1] - 2:20
**define** [2] - 15:12, 15:22
**definition** [1] - 23:1
**deposition** [6] - 3:8, 4:14, 14:6, 16:16, 19:14, 20:22
**DEPUTY** [2] - 2:1, 30:12
**deputy** [1] - 29:23
**designed** [1] - 27:15
**determined** [1] - 18:25
**developing** [1] - 10:20
**different** [3] - 7:13, 17:23, 25:20
**difficult** [1] - 6:1
**directed** [2] - 4:23, 5:22
**direction** [3] - 4:12, 5:21, 23:12
**directly** [1] - 19:4
**disagreement** [1] - 28:2
**disappear** [1] - 7:9
**disclose** [3] - 15:8, 15:14, 23:15
**disclosed** [4] - 6:3, 6:4, 8:12, 8:18
**disclosure** [2] - 15:10, 15:24
**disclosures** [1] - 15:12
**discover** [6] - 10:5, 10:19, 11:12, 11:15, 12:4, 12:6
**discoverable** [4] - 14:4, 16:13, 22:16, 23:3
**discovery** [18] - 2:18, 3:22, 4:7, 5:6, 5:7, 13:20, 13:21, 15:13, 17:12, 18:7, 18:14, 19:11, 19:21, 21:23, 22:21, 23:22, 26:18, 29:17
**discriminates** [1] - 26:2
**discrimination** [1] - 21:4
**discussing** [2] - 7:25, 8:8
**discussion** [1] - 5:3
**discussions** [1] - 13:5
**disparity** [3] - 7:8, 7:10, 9:7
**distinction** [2] - 3:17, 27:5

**distinguished** [1] - 11:23
**DISTRICT** [3] - 1:1, 1:1, 1:14
**district** [2] - 2:17, 29:9
**Docket** [1] - 2:7
**done** [13] - 4:12, 4:25, 5:3, 10:2, 10:13, 17:25, 18:7, 23:12, 23:17, 25:4, 27:8, 28:1, 28:5
**down** [1] - 13:1
**Dr** [50] - 4:14, 4:15, 4:23, 5:12, 5:20, 5:22, 6:8, 6:10, 6:13, 6:21, 7:2, 7:15, 8:1, 8:25, 9:3, 9:6, 9:18, 9:25, 10:6, 10:12, 10:13, 10:15, 10:24, 10:25, 11:21, 12:1, 14:7, 16:23, 18:15, 19:14, 20:21, 22:2, 22:7, 23:5, 23:8, 23:24, 24:15, 24:19, 24:21, 24:22, 24:24, 25:2, 25:3, 25:21, 26:6, 26:7, 26:8, 26:22, 26:24, 27:21
**draft** [11] - 4:3, 4:7, 11:22, 13:16, 13:24, 14:21, 15:19, 17:19, 21:24, 22:2, 22:19
**drafts** [2] - 4:9, 12:6
**driven** [2] - 27:11, 27:12
**during** [1] - 4:14

**E**

**East** [1] - 1:11
**Ecuador** [2] - 18:5, 27:22
**editing** [1] - 17:20
**effect** [4] - 12:23, 18:22, 20:23, 25:18
**Eleventh** [2] - 14:16, 18:4
**elicit** [2] - 8:20, 8:22
**email** [3] - 16:24, 17:18, 22:25
**employees** [1] - 1:5
**end** [1] - 4:20
**enter** [1] - 5:17
**entirely** [1] - 7:9
**entitle** [2] - 17:16, 17:18
**entitled** [21] - 5:7, 5:17, 11:15, 14:12, 17:1, 18:14, 19:4, 19:11, 19:18, 20:25, 21:1, 21:5, 21:13, 22:12, 23:16, 23:20, 24:5, 24:8, 24:12, 24:21, 26:19
**error** [3] - 22:5, 29:7, 29:14
**ESQUIRE** [4] - 1:17, 1:18, 1:20, 1:21
**essence** [1] - 12:24
**essentially** [5] - 5:19, 10:19, 11:4, 12:4, 12:7
**established** [1] - 5:14
**et** [2] - 1:9, 2:7
**exact** [3] - 11:9, 14:16, 20:1
**exactly** [3] - 5:20, 5:22, 5:23

3

examination [1] - 14:19
examine [3] - 10:25, 19:6, 19:23
example [4] - 6:8, 17:3, 18:19, 27:19
except [1] - 22:16
exceptions [6] - 11:10, 13:14, 13:24, 14:1, 15:18, 17:12
excuse [1] - 26:4
Exhibit [2] - 11:25, 26:22
experiment [1] - 27:14
expert [45] - 2:18, 4:7, 5:5, 8:3, 8:12, 10:17, 11:6, 11:13, 11:16, 12:5, 13:10, 13:13, 13:16, 13:23, 14:1, 14:3, 14:14, 14:21, 14:25, 15:2, 15:16, 15:25, 16:4, 16:7, 16:10, 16:12, 17:14, 17:19, 17:23, 18:2, 18:12, 18:13, 19:12, 19:23, 21:3, 21:24, 22:25, 23:21, 27:5, 27:7, 27:14, 28:1
experts [6] - 12:25, 13:4, 13:12, 13:22, 18:7, 19:21
explore [1] - 20:25
expressed [13] - 3:21, 6:24, 9:3, 9:14, 9:17, 9:24, 11:2, 11:17, 11:18, 21:17, 27:10, 27:12, 27:21
expressing [2] - 6:23, 24:16
extent [1] - 25:23

## F

fact [7] - 5:6, 10:2, 11:20, 18:12, 23:15, 24:24, 27:11
fact-driven [1] - 27:11
factors [1] - 29:20
facts [14] - 11:15, 11:23, 14:2, 15:1, 15:15, 15:16, 26:7, 26:9, 26:12, 26:16, 26:20, 26:22, 26:23, 27:9
factual [3] - 22:4, 22:8, 29:11
fair [1] - 19:22
fed [1] - 4:3
female [1] - 1:4
few [4] - 2:21, 12:20, 25:11, 30:2
fighting [1] - 23:18
figure [1] - 27:16
files [5] - 5:24, 10:8, 10:9, 11:1, 11:24
finally [1] - 28:7
first [4] - 2:20, 6:6, 9:21, 14:10
Fisher [1] - 1:11
five [1] - 29:18
folks [4] - 28:16, 29:23, 29:24, 30:4

footnote [1] - 25:17
FOR [1] - 1:1
Ford [1] - 1:24
former [1] - 3:23
forming [4] - 8:17, 11:16, 11:17, 27:10
formulating [1] - 15:2
formulation [2] - 7:18, 16:1
forth [3] - 10:17, 16:20, 29:3
forward [1] - 28:17
four [1] - 20:19
frankly [1] - 22:11
front [1] - 28:18
full [1] - 19:22
fully [1] - 25:12
funded [1] - 12:24
funny [1] - 29:16

## G

gender [2] - 7:10, 18:23
generate [1] - 10:13
generated [3] - 14:25, 16:8, 17:15
generates [2] - 15:25, 17:19
glad [1] - 6:18
Goodman [2] - 28:18, 28:20
Goodman's [2] - 2:16, 12:23
governed [1] - 16:14
grade [7] - 6:11, 7:4, 7:6, 8:1, 14:8, 17:7, 18:16
grades [2] - 7:12, 7:14
Grades [1] - 9:8
great [2] - 17:24, 22:6

## H

happy [2] - 12:17, 20:3
hear [4] - 2:19, 2:20, 12:11, 12:14
HEARING [1] - 1:7
heart [2] - 5:13, 17:8
HEISLER [1] - 1:17
helpful [1] - 28:12
HENDERSON [1] - 1:18
Henderson [2] - 2:11, 16:21
hire [1] - 12:24
hollow [1] - 12:7
honestly [1] - 23:7
Honor [24] - 2:5, 2:10, 2:12, 2:24, 3:16, 4:4, 6:17, 12:13, 12:16, 12:17, 13:2, 16:4, 18:9, 19:8, 20:2, 20:4, 20:8, 21:21, 23:7, 24:10, 24:14, 29:8, 30:10, 30:11
HONORABLE [1] - 1:13
hum [1] - 25:11
hundreds [1] - 16:19
hypothetical [1] - 19:15

## I

identified [2] - 11:25, 26:22
ignore [1] - 23:23
iii [1] - 11:11
impede [1] - 24:25
implicate [1] - 16:18
important [6] - 3:17, 7:24, 10:7, 12:2, 13:7, 15:4
improper [1] - 4:19
inaccurate [1] - 17:4
inadmissible [1] - 10:4
inappropriate [1] - 28:24
INC [1] - 1:9
include [2] - 7:1, 9:11
increase [1] - 18:20
increases [1] - 18:22
incumbent [2] - 8:19, 26:5
indeed [1] - 25:22
independent [2] - 10:17, 18:13
independently [1] - 23:11
individually [1] - 1:3
information [12] - 8:6, 9:2, 10:2, 14:20, 15:2, 15:9, 15:17, 20:1, 20:5, 23:23, 26:16, 28:19
initial [2] - 9:12, 15:11
insertion [1] - 11:22
instance [2] - 6:5, 14:11
instead [1] - 26:11
instructed [1] - 5:2
instruction [3] - 8:2, 11:21, 25:5
instructive [1] - 18:8
intended [1] - 18:1
intentionally [1] - 26:17
interest [1] - 20:17
interpretations [1] - 26:23
involve [2] - 14:2, 14:24
issue [15] - 3:8, 4:11, 5:19, 10:9, 14:17, 20:18, 22:24, 23:4, 23:5, 23:17, 25:25, 27:17, 27:18, 28:16, 30:5
issues [2] - 20:14, 28:24, 29:19, 30:4
itself [1] - 9:5

## J

JERSEY [1] - 1:1
Jersey [2] - 1:12, 15:21
job [1] - 7:12
judge [2] - 29:8, 29:18
JUDGE [1] - 1:14
Judge [4] - 2:16, 12:23, 28:18, 28:20

## K

KATE [1] - 1:5
KATZENSTEIN [1] - 1:21
Katzenstein [1] - 2:13
KELLI [1] - 1:3
kind [6] - 6:2, 7:2, 8:20, 14:19, 28:15, 28:21
kinds [1] - 24:4
KORNBLITH [11] - 1:17, 2:9, 2:24, 3:15, 6:17, 8:15, 12:13, 24:14, 25:9, 29:1, 30:10
Kornblith [5] - 2:9, 13:19, 17:3, 18:11, 24:11
KRISSY [1] - 1:21
Krissy [1] - 2:13

## L

language [3] - 15:14, 15:17, 19:16
large [1] - 10:10
latter [1] - 3:19
law [7] - 13:21, 15:7, 15:21, 20:11, 25:16, 26:25, 29:11
lawyer [1] - 22:6
lawyers [4] - 14:3, 15:20, 16:24, 20:15
lead [1] - 20:24
least [1] - 25:18
leave [3] - 9:12, 26:3, 27:20
lenient [1] - 29:10
letter [1] - 4:9
LEWIS [1] - 1:20
likewise [1] - 27:22
limit [1] - 11:14
limitations [2] - 3:22, 25:22
limited [5] - 13:14, 13:20, 13:24, 17:11, 23:3
linked [1] - 15:18
litigation [2] - 17:14, 20:19
live [1] - 22:10
LLP [2] - 1:17, 1:20
log [4] - 22:4, 28:9, 28:11, 28:14
look [4] - 22:13, 29:21, 30:2, 30:3
looked [1] - 23:17
looking [1] - 6:5

## M

Magistrate [1] - 2:16
magistrate [7] - 18:25, 21:6, 22:2, 22:5, 22:11, 29:8, 29:18
makers [1] - 18:6
materials [1] - 17:14
matter [2] - 2:6, 2:15

**mean** [5] - 7:9, 7:11, 8:24, 12:21, 12:22
**meaning** [2] - 19:17, 23:11
**means** [2] - 19:13, 19:18
**meant** [1] - 26:17
**meet** [1] - 23:25
**meeting** [1] - 16:6
**Merck** [3] - 2:7, 21:5, 26:2
**MERCK** [1] - 1:9
**Merck's** [1] - 20:23
**merit** [2] - 18:19, 18:22
**methodology** [7] - 6:12, 6:15, 17:8, 19:25, 23:22, 24:2, 25:3
**methods** [1] - 17:13
**Michael** [1] - 2:12
**MICHAEL** [2] - 1:13, 1:20
**might** [4] - 7:8, 16:18, 23:11, 23:12
**mind** [1] - 25:21
**minimized** [1] - 26:15
**minor** [2] - 28:7, 29:5
**Monday** [3] - 29:24, 29:25, 30:5
**MORGAN** [1] - 1:20
**morning** [2] - 2:4, 2:5
**MOTION** [1] - 1:7
**motion** [2] - 2:19, 4:4
**MOUNTIS** [1] - 1:5
**move** [2] - 25:15, 28:23
**moving** [2] - 3:11, 25:24
**MR** [16] - 2:9, 2:12, 2:24, 3:15, 6:17, 8:15, 12:13, 12:16, 13:2, 20:8, 24:10, 24:14, 25:9, 29:1, 30:10, 30:11
**muddies** [1] - 19:1
**multiple** [1] - 16:21
**must** [1] - 15:13

## N

**named** [3] - 20:10, 20:13, 21:2
**narrow** [1] - 26:17
**narrowly** [1] - 6:3
**nearly** [1] - 27:23
**necessarily** [3] - 7:3, 8:3, 27:9
**necessary** [1] - 10:23
**need** [4] - 23:2, 25:3, 25:11, 29:21
**needed** [2] - 17:22, 21:14
**needs** [1] - 8:12
**never** [8] - 19:3, 22:1, 22:3, 23:17, 24:6, 28:8, 28:11
**NEW** [1] - 1:1
**New** [2] - 1:12, 15:21
**Ninth** [2] - 14:15, 18:4

**nontestifying** [1] - 13:12
**normal** [1] - 23:21
**notes** [2] - 17:10, 19:10
**nothing** [4] - 14:9, 17:11, 19:16, 21:23
**notion** [1] - 17:22
**November** [1] - 1:12
**novo** [1] - 29:12
**number** [1] - 4:15
**Number** [3] - 2:7, 6:6, 20:6
**NUMBER** [1] - 1:4
**numbers** [2] - 7:18, 7:19
**numerous** [3] - 14:14, 15:21, 20:20

## O

**objected** [1] - 4:18
**objection** [4] - 18:24, 19:1, 23:9, 23:10
**objections** [2] - 16:16, 16:20
**obligated** [1] - 25:15
**obligation** [1] - 15:8
**obviously** [2] - 14:2, 28:13
**occasionally** [1] - 20:22
**OF** [1] - 1:1
**offer** [1] - 28:12
**offered** [2] - 5:12, 28:10
**offers** [2] - 9:25, 10:1
**one** [13] - 3:22, 6:18, 13:3, 14:5, 16:9, 17:5, 20:8, 20:13, 20:18, 24:1, 24:20, 26:14, 29:5
**ones** [1] - 3:19
**Open** [1] - 2:2
**opined** [1] - 21:16
**opines** [1] - 9:6
**opinion** [16] - 5:12, 6:13, 6:24, 7:18, 8:14, 8:17, 10:1, 11:3, 15:3, 16:2, 21:17, 21:20, 23:24, 26:2, 27:21
**opinions** [12] - 3:21, 9:4, 9:14, 9:17, 11:16, 11:18, 18:15, 24:16, 24:17, 25:22, 27:10, 27:12
**opponent** [1] - 4:8
**opportunity** [2] - 2:25, 19:22
**opposing** [3] - 4:14, 4:19, 5:16
**opposite** [1] - 20:1
**opposition** [2] - 19:7, 20:12
**oral** [2] - 30:4, 30:8
**order** [2] - 25:5, 25:12
**original** [2] - 16:16, 19:9
**originally** [1] - 16:9
**otherwise** [1] - 10:3
**outs** [1] - 23:4
**outset** [2] - 3:3, 12:21
**overwhelming** [1] - 13:21

**own** [1] - 25:3

## P

**p.m** [1] - 30:13
**page** [2] - 6:6, 18:20
**pages** [2] - 16:19
**papers** [7] - 14:24, 16:3, 18:18, 19:7, 20:12, 25:11, 25:23
**parse** [1] - 6:1
**part** [7] - 7:11, 7:15, 10:5, 10:10, 22:22, 23:18, 29:2
**particular** [2] - 17:4, 27:14
**party** [2] - 4:8, 12:24
**party-opponent** [1] - 4:8
**passing** [1] - 18:11
**pattern** [1] - 21:4
**pay** [10] - 7:4, 7:6, 7:10, 7:14, 9:5, 9:7, 9:15, 24:18, 24:20, 25:25
**people** [1] - 26:2
**perform** [4] - 4:17, 18:2, 27:6, 27:7
**performed** [2] - 3:24, 11:21
**perhaps** [1] - 17:16
**period** [1] - 10:21
**permit** [1] - 11:12
**pertain** [2] - 3:20, 24:17
**pertained** [1] - 5:1
**piece** [3] - 11:20, 12:3, 23:20
**plaintiff** [2] - 2:20, 20:13
**Plaintiffs** [2] - 1:7, 1:19
**plaintiffs** [17] - 2:10, 3:12, 4:16, 5:22, 11:5, 11:13, 12:5, 14:23, 18:19, 19:7, 20:6, 21:2, 22:1, 22:24, 24:7, 25:14, 26:11
**plaintiffs'** [6] - 2:16, 2:18, 2:22, 5:18, 5:20, 7:11
**playing** [1] - 20:21
**plus** [1] - 14:18
**point** [12] - 6:20, 13:8, 13:9, 14:5, 14:23, 15:5, 18:5, 21:13, 22:14, 23:19, 27:4, 29:5
**points** [1] - 28:7
**policies** [1] - 20:24
**policy** [1] - 18:20
**portion** [1] - 9:20
**posed** [1] - 4:24
**position** [2] - 12:21, 29:2
**possible** [1] - 2:25
**possibly** [1] - 6:14
**practice** [1] - 21:4
**preclude** [3] - 4:7, 14:19, 17:12
**precludes** [1] - 21:23
**pregnancy** [4] - 9:13, 24:19, 24:22, 27:20

**preliminary** [6] - 3:24, 4:2, 4:11, 8:11, 11:19, 12:18
**preparation** [3] - 4:5, 5:13, 5:18
**present** [2] - 19:23, 23:23
**presentation** [1] - 14:24
**presented** [5] - 22:3, 22:4, 26:25, 27:1, 28:20
**presenting** [1] - 26:7
**pretty** [1] - 25:16
**privilege** [4] - 22:3, 28:9, 28:11, 28:14
**privileged** [2] - 14:10, 16:15
**probe** [2] - 6:15, 10:20
**process** [1] - 10:20
**processes** [1] - 5:23
**produce** [1] - 15:15
**produced** [9] - 10:16, 10:25, 11:25, 22:18, 22:20, 22:24, 26:21, 28:9, 28:10
**product** [6] - 13:10, 13:11, 13:15, 13:22, 25:4, 29:3
**production** [2] - 5:18, 10:22
**program** [1] - 10:14
**programming** [10] - 5:19, 8:8, 9:24, 10:8, 10:9, 11:1, 14:13, 17:2, 19:5, 23:6
**promotions** [2] - 9:12, 27:20
**proper** [2] - 2:17, 23:24
**properly** [3] - 18:25, 19:5, 22:11
**proposed** [2] - 21:6, 22:9
**protected** [4] - 6:14, 14:14, 17:21, 18:3
**protection** [7] - 4:6, 5:14, 13:10, 13:12, 13:15, 13:22, 28:1
**protections** [2] - 11:10, 28:4
**provide** [1] - 28:13
**provides** [1] - 5:16
**purely** [1] - 9:14
**purpose** [1] - 19:20
**purposes** [4] - 3:25, 4:13, 10:3, 28:5
**pursuing** [1] - 20:7
**put** [3] - 7:4, 7:6, 10:17
**putting** [1] - 28:17

## Q

**quagmire** [1] - 28:22
**questioned** [1] - 6:25
**questioning** [2] - 5:17, 26:8
**questions** [22] - 2:21, 3:8, 3:10, 3:12, 3:18, 3:20, 4:15, 4:18, 4:20, 4:24, 4:25, 6:2, 6:7, 6:19, 12:9, 12:10, 12:17, 12:18, 12:20, 14:6, 20:4, 26:12
**quite** [1] - 11:19

**quote** [3] - 6:9, 6:11, 16:9
**quote/unquote** [1] - 20:16

## R

**RACHEL** [1] - 1:5
**raise** [1] - 24:25
**raised** [2] - 25:10, 30:4
**ran** [3] - 6:9, 7:18, 11:2
**rationale** [2] - 14:18, 18:9
**reach** [1] - 29:23
**reaching** [1] - 8:13
**reads** [1] - 15:25
**real** [1] - 22:15
**reality** [1] - 13:20
**realize** [1] - 13:7
**really** [6] - 6:2, 16:9, 17:24, 21:18, 28:19, 28:21
**reason** [2] - 18:13, 25:19
**rebuttal** [2] - 3:1, 12:12
**recognizes** [1] - 27:4
**redefine** [1] - 8:24
**reference** [2] - 13:4, 18:11
**referenced** [1] - 17:3
**referring** [1] - 9:21
**refers** [1] - 27:23
**reflected** [1] - 6:10
**reflects** [1] - 15:25
**regard** [5] - 3:19, 3:23, 5:2, 7:25, 27:18
**regarding** [1] - 2:17
**regression** [4] - 7:7, 7:15, 9:5, 24:21
**regressions** [1] - 24:23
**rejected** [1] - 16:6
**related** [2] - 21:15, 24:4
**relates** [1] - 21:17
**relating** [2] - 9:5, 13:3
**relevance** [1] - 26:1
**relevant** [10] - 3:10, 9:13, 9:17, 21:21, 22:14, 22:15, 23:23, 24:13, 26:5
**reliable** [1] - 23:25
**relied** [5] - 8:13, 8:16, 8:21, 11:17, 21:12
**remember** [3] - 9:4, 12:3, 19:8
**render** [1] - 30:1
**reply** [1] - 19:9
**report** [22] - 3:21, 5:1, 5:12, 8:3, 9:4, 9:11, 9:14, 9:17, 10:18, 12:1, 14:22, 15:6, 17:20, 17:23, 20:23, 21:18, 21:24, 22:3, 24:16, 24:17, 26:22
**reports** [6] - 4:3, 4:7, 13:16, 13:25, 15:19, 22:19
**represent** [1] - 20:17
**representative** [1] - 20:16

**representatives** [1] - 20:10
**Republic** [2] - 18:4, 27:22
**request** [4] - 5:4, 10:5, 21:7, 25:4
**required** [1] - 1:23
**requirements** [3] - 15:11, 20:9, 25:7
**reserve** [1] - 29:22
**resources** [1] - 13:1
**respect** [1] - 21:19
**response** [2] - 4:23, 21:10
**responses** [1] - 28:9
**rest** [1] - 11:4
**restrict** [1] - 18:6
**result** [4] - 7:13, 10:10, 18:20, 20:24
**results** [3] - 4:1, 4:13, 10:14
**reveal** [3] - 5:19, 5:21, 6:21
**revealed** [2] - 8:7, 8:9
**review** [1] - 29:11
**reviewed** [1] - 29:12
**reviews** [1] - 15:25
**rise** [2] - 2:1, 30:12
**roughly** [2] - 3:16, 11:8
**RPR** [1] - 1:24
**rule** [7] - 13:6, 13:14, 14:18, 17:25, 18:1, 18:6, 22:22
**Rule** [9] - 4:5, 5:16, 12:7, 15:10, 20:9, 25:8, 25:23, 27:25, 28:4
**Rules** [2] - 5:14, 11:11
**rules** [7] - 14:25, 17:17, 19:20, 21:23, 22:13, 23:14, 26:15
**run** [3] - 4:20, 6:22, 8:1
**running** [4] - 7:7, 24:3, 24:20, 24:22
**Russell** [1] - 2:9
**RUSSELL** [1] - 1:17

## S

**S1** [1] - 7:12
**S2** [1] - 7:12
**salient** [1] - 7:19
**SANFORD** [1] - 1:17
**saw** [1] - 17:6
**scope** [3] - 2:18, 15:12, 26:18
**seated** [1] - 2:3
**second** [3] - 6:7, 9:23, 18:20
**secondary** [1] - 23:20
**section** [2] - 15:14, 19:9
**Section** [2] - 1:24, 13:11
**see** [7] - 17:1, 19:5, 19:15, 19:18, 28:22, 29:23
**seeing** [1] - 11:6
**seeking** [4] - 5:10, 8:7, 10:4, 12:4

**send** [1] - 22:25
**sends** [2] - 17:20, 17:21
**separated** [2] - 3:7, 21:14
**sequence** [1] - 5:20
**series** [2] - 10:8, 10:10
**set** [2] - 13:14, 23:1
**settlement** [2] - 9:25, 10:3
**SHARP** [1] - 1:17
**shell** [1] - 12:8
**shift** [2] - 26:16, 26:17
**SHIPP** [1] - 1:13
**showed** [2] - 7:19, 20:1
**SHURSKY** [1] - 1:5
**sides** [1] - 2:21
**significant** [1] - 9:7
**similarly** [1] - 1:4
**simply** [5] - 5:8, 9:13, 11:19, 14:7, 27:24
**single** [1] - 7:14
**situated** [1] - 1:4
**situation** [1] - 16:11
**SMITH** [1] - 1:3
**Smith** [1] - 2:7
**solely** [4] - 3:25, 4:12, 5:3, 28:5
**somewhat** [2] - 27:4, 28:21
**sort** [1] - 13:7
**sought** [2] - 4:19, 26:11
**sound** [3] - 13:19, 18:15, 19:25
**soundness** [2] - 6:13, 6:16
**sounds** [1] - 17:23
**specific** [1] - 17:18
**specifically** [1] - 6:19
**square** [1] - 12:21
**standard** [8] - 16:12, 16:13, 22:6, 23:14, 23:25, 29:6, 29:11, 29:14
**standards** [1] - 24:1
**standing** [1] - 23:10
**standpoint** [1] - 15:24
**start** [2] - 2:22, 12:18
**starting** [6] - 13:8, 13:9, 14:5, 15:5, 22:13, 23:18
**starts** [1] - 17:20
**State** [1] - 1:11
**state** [2] - 29:7, 29:13
**STATES** [2] - 1:1, 1:14
**states** [1] - 28:8
**States** [1] - 1:11
**statistical** [1] - 11:24
**statistically** [1] - 9:6
**status** [1] - 24:22
**step** [1] - 13:7
**still** [6] - 14:4, 21:20, 22:10, 22:23, 23:2, 25:2
**straightforward** [1] - 29:17
**Street** [1] - 1:11
**studies** [1] - 24:6

**stuff** [1] - 24:12
**subject** [2] - 18:24, 23:9
**subjects** [1] - 9:10
**submit** [1] - 20:11
**subpoena** [1] - 28:10
**substance** [4] - 4:8, 5:17, 11:4, 12:4
**sufficiency** [1] - 25:7
**suggest** [3] - 19:17, 22:4, 26:5
**support** [2] - 22:8, 24:7
**supposed** [1] - 18:12

## T

**Table** [1] - 6:10
**tainted** [1] - 7:5
**talks** [3] - 15:24, 18:9, 19:10
**telephone** [3] - 10:10, 10:11, 29:25
**telephonic** [1] - 30:6
**Tenth** [2] - 14:15, 18:4
**terms** [3] - 6:3, 15:1, 21:7
**test** [3] - 18:14, 18:16, 23:22
**tested** [1] - 17:9, 24:2, 24:3
**testified** [5] - 5:8, 7:3, 7:16, 8:5, 10:15
**testifies** [1] - 8:15
**testifying** [15] - 12:25, 13:4, 13:9, 13:13, 13:21, 14:14, 16:10, 17:14, 18:2, 18:7, 19:12, 19:20, 23:21, 27:7, 27:10
**testimony** [3] - 8:20, 8:22, 19:1
**testing** [3] - 17:13, 19:11
**THE** [18] - 1:1, 2:1, 2:3, 2:6, 2:15, 3:2, 5:25, 8:10, 12:10, 12:14, 12:20, 20:5, 24:9, 24:11, 25:6, 28:15, 29:15, 30:12
**themselves** [1] - 4:10
**theories** [1] - 24:6
**theory** [1] - 17:24
**thereby** [1] - 5:23
**they've** [1] - 8:23
**thinking** [1] - 15:23
**THOMAS** [1] - 1:18
**Thomas** [1] - 2:10
**thorough** [1] - 10:23
**three** [3] - 10:21, 14:15, 25:18
**throughout** [1] - 16:16
**Title** [1] - 1:23
**today** [4] - 2:6, 29:22, 30:5, 30:9
**took** [1] - 28:11
**topics** [1] - 5:11
**total** [1] - 20:23
**transcript** [2] - 6:20, 17:5

**translated** [1] - 23:10
**transmission** [2] - 11:22, 28:5
**transmit** [1] - 10:14
**transmitting** [2] - 4:1, 4:13
**Trenton** [1] - 1:12
**trial** [3] - 4:5, 5:13, 5:18
**trial-preparation** [2] - 4:5, 5:13
**True** [1] - 1:23
**trying** [1] - 6:1
**turn** [1] - 4:3
**two** [10] - 3:4, 3:8, 7:23, 8:6, 9:1, 13:15, 13:24, 21:14, 22:16, 28:7
**types** [1] - 13:16

## U

**U.S.C** [1] - 1:24
**ultimate** [1] - 15:18
**ultimately** [3] - 8:12, 17:24, 19:23
**under** [7] - 16:14, 19:24, 21:22, 23:3, 23:14, 24:1, 25:7
**undercut** [1] - 28:4
**underlying** [2] - 14:12, 15:1
**UNITED** [2] - 1:1, 1:14
**United** [1] - 1:11
**unless** [3] - 12:9, 21:24, 22:22
**up** [2] - 27:3, 28:11
**uses** [1] - 16:1

## V

**variable** [1] - 7:5
**variables** [1] - 24:20
**Vekker** [42] - 4:14, 4:15, 4:23, 5:12, 5:20, 5:22, 6:8, 6:10, 6:21, 7:2, 7:15, 8:1, 8:25, 9:3, 9:6, 9:18, 9:25, 10:6, 10:12, 10:13, 10:15, 10:24, 10:25, 11:21, 14:7, 16:23, 19:14, 20:21, 22:2, 22:7, 23:5, 23:8, 24:15, 24:19, 24:21, 24:22, 24:24, 26:6, 26:7, 26:8, 26:24, 27:21
**Vekker's** [8] - 6:13, 12:1, 18:15, 23:24, 25:2, 25:3, 25:21, 26:22
**verified** [1] - 21:10
**versus** [1] - 2:7
**vs** [1] - 1:8

## W

**wants** [1] - 26:4

**welcome** [1] - 9:18
**WHITMER** [1] - 1:6
**who've** [1] - 26:3
**whole** [2] - 17:22, 19:20
**willing** [2] - 21:7, 22:10
**women** [1] - 9:7
**words** [7] - 5:1, 5:21, 7:5, 8:4, 11:6, 11:9, 12:25
**wrote** [2] - 16:24, 16:25

## Y

**years** [3] - 10:21, 20:19, 29:19
**Yeda** [3] - 16:3, 27:2, 27:3