# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KELLI SMITH, KANDICE BROSS, RACHEL MOUNTIS, and KATE WHITMER, individually and on behalf of a class of similarly situated female employees,** | **Hon. Michael A. Shipp, U.S.D.J.** <br> **Hon. Lois H. Goodman, U.S.M.J.** |
| **Plaintiffs,** | |
| **-- against --** | **No. 3:13-cv-02970** |
| **MERCK & CO., INC., MERCK SHARP & DOHME, CORP., and INTERVET, INC.** | *Civil Action* |
| **Defendants.** | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................................1

II.     BACKGROUND ...........................................................................................................2

III.    KEY TERMS OF THE PROPOSED SETTLEMENT ..................................................4

IV.     THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED RULE 23
        CLASS FOR PURPOSES OF SETTLEMENT ...........................................................6

        A.      General Standards ............................................................................................6

        B.      Numerosity Is Satisfied ...................................................................................7

        C.      Commonality Is Satisfied .................................................................................7

        D.      The Class Representatives' Claims Are Typical of the Class............................8

        E.      Rule23(a)(4) And Rule 23(g) Are Satisfied – The Class Representatives and Class
                Counsel Will Fairly and Adequately Protect The Class's Interests.........................8

        F.      The Requirements of Rule 23(b)(3) Are Met .....................................................9

                1. Common Issues Predominate...................................................................9

                2. Class Settlement is Superior to Alternative methods of Adjudication .............10

V.      THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE PROPOSED
        COLLECTIVE ACTION FOR SETTLEMENT PURPOSES .........................................11

        A.      Plaintiffs' Factual and Employment Settings Favor a Collective Action.............12

        B.      There Are No Individualized Defenses Preventing Collective Action Treatment 12

        C.      Fairness and Procedural Considerations Favor Certification...............................13

VI.     THE PROPOSED SETTLEMENT IS PRESUMTIVELY FAIR AND SHOULD BE
        PRELIMINARILY APPROVED UNDER RULE 23(E)..................................................13

        A.      The Settlement is Based on Arm's Length Negotiations Conducted After
                Protracted Litigation Practice ...........................................................................15

        B.      The Parties Conducted the Discovery Necessary to Enable them to Evaluate the
                Merits of the Case, Assess Damages, and Reach a Meaningful Settlement..........16

        C.      Counsel Is Highly Experienced in Similar Litigation and Their Recommendations
                Regarding the Settlement Are Entitled to Significant Weight ..............................16

        D.      The Court Can Only Assess Class Member Objections After the Notice Period..17

        E.      The Settlement Falls Well Within the Range of Possible Approval ....................18

        F.      The Proposed Allocation of Attorneys' Fees and Expenses Is Reasonable and
                Warrants Preliminary Approval..........................................................................19

        G.      The Provision for Reasonable Service Payments Does Not Undermine the
                Fairness of the Settlement...................................................................................21

VII.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT UNDER THE
        EQUAL PAY ACT .......................................................................................................22

VIII.   THE PROPOSED FORM AND METHOD OF NOTICE OF THE CLASS
        SETTLEMENT SHOULD BE APPROVED.................................................................24

IX.     CONCLUSION ...........................................................................................................24

i

## **TABLE OF AUTHORITIES**

**Cases**

*Alfaro v. First Language LNS Screening Solutions*, Civ. No. 15-5813, 2017 WL 3567974 (D.N.J. Aug. 16, 2017) (Shipp, J.) ................................................................................. 6, 9, 10

*Alves v. Main*, Civ. No. 01-789, 2012 WL 603272  (D.N.J. Dec. 4, 2012) .................................... 17

*Anchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................. 6, 11

*Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372 (W.D. Pa. 2011) ........................................ 12, 13

*Aros v. United Rentals, Inc.*, No. 3:10–CV–73, 2012 WL 3060470 (D. Conn. July 26, 2012)..... 23

*Austin v. Pa. Dep't. of Corrs.*, 876 F. Supp. 1437 (E.D. Pa. 1995) ................................................ 17

*Barton v. Constellium Rolled Prods. Ravenswood, LLC*, No. 2:13-cv-03127, 2014 WL 1660388 (S.D. W.Va. Apr. 25, 2014) ........................................................................................... 9

*Bernhard v. TD Bank, N.A.*, Civ. No. 08-4392, 2009 WL 3233541 (D.N.J. Oct. 5, 2009) ..... 15, 24

*Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788, 2015 WL 12661922 (N.D. Cal. Aug. 28, 2015) ............................................................................................... 20

*Bredbenner v. Liberty Travel, Inc.*, 09-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................... ...................................................................................................................16, 21, 22, 23

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) ...................................................................... 7

*Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359 (E.D.N.Y. 2014) ................................................ 21

*Camesi v. Univ. of Pitt. Med. Ctr.*, 729 F.3d 239 (3d Cir. 2013) .................................................... 11

*Campanelli v. Hershey Co.*, No. C 08-1862, 2011 WL 3583597 (N.D. Cal. May 4, 2011) .......... 23

*Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525 (W.D. Pa. 2008) ............................................. 1

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) .......... 21, 22

*Curiale v. Lenox Group, Inc.*, Civ. No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008)... 14

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................... 16

*Demaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-cv-07298, 2016 WL 6089713 (D.N.J. Oct. 18, 2016) ........................................................................................................................... 21

*Dominguez v. Galaxy Recycling, Inc.*, Civ. No. 12-7521, 2017 WL 2495406 (D.N.J. June 9, 2017) ......................................................................................................................................... 20

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) .................................................... 1, 13

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) ............................................. 10

*Erie Cty. Retirees Ass'n v. Cty. of Erie*, 192 F. Supp. 2d 369 (W.D. Pa. 2002) ........................... 19

*Frank v. Eastman Kodak Co*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................................. 20

*Galdo v. PPL Electric Utilities Corp.*, Civ. No. 14-5831, 2016 WL 454416 (E.D. Pa. Feb. 5, 2016) ........................................................................................................................................... 12

*Geis v. Walgreen Co.*, Civ. No. 07-4238, 2010 WL 11570447 (D.N.J. Sept. 30, 2010) ............... 20

*Godshall v. Franklin Mint Co.*, No. 01–CV–6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) .. 22

*Halle v. W. Penn Health Allegheny Health Sys.*, 842 F.3d 215 (3d Cir. 2016) .............................. 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ........................................................... 14

*Harlan v. Transworld Sys., Inc.*, 302 F.R.D 319 (E.D. Pa. 2014) ........................................... 14, 17

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ..................................................... 11, 13

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015) ... 7, 8, 10

*In re Computron Software, Inc.*, 6 F. Supp. 2d 313 (D.N.J. 1998) ............................................... 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ...... 13, 14, 19

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL2137224 (E.D. Pa. July 16, 2009) .................................................................................................................... 22

*In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ... 21

*In re Lucent Tech., Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004)................................................ 20

*In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658, 2013 WL 396117 (D.N.J. Jan. 30, 2013) .........................................................................................................7, 8, 9, 11

*In re N.J. Tax Sales Certificates Antitrust Litig.*, Civ. No. 12-1893, 2016 WL 5844319 (D.N.J. Sept. 30, 2016) (Shipp, J.) ...................................................................................................... passim

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016) ...................................... 8

*In re Ocean Power Techs., Inc.*, No. 3:14-CV-2016 WL 6778218 (D.N.J. Nov. 16, 2016).......... 15

*In re Phillips/Magnavox Television Litig.*, Civ. No. 09-3072, 2012 WL 1677244 (D.N.J. May 14, 2012) ...................................................................................................................................... 20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997).............. 18

*In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ...................................................................................................................................... 22

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294 (3d Cir. 2005) ...................................................... 21

*In re Safety Components Int'l, Inc.*, 166 F. Supp. 2d 72 (D.N.J. 2001)......................................... 19

*In re Traffic Executive Ass'n -- Eastern Railroads*, 627 F.2d 631 (2d Cir. 1980)........................ 14

*In re ViroPharma, Inc. Secs. Litig.*, Civ. No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ...................................................................................................................................... 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)....................................... 1, 13

*Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324 (1977) .................................................................... 10

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ................................................ 22

*Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013) ............................................................... 10

*Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752 (D.N.J. Mar. 14, 2012) ............. 23

*Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000)........................................................... 12

iv

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..................................... 13

*Pan v. Qualcomm, Inc.*, No.: 16-cv-01885, 2017 WL 3252212 (S.D. Cal. July 31, 2017) .......... 16

*Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F. Supp. 595 (M.D. Pa. 1996)..................... 20

*Pfeifer v. Wawa, Inc.*, Civ. No. 16-497, 2018 WL 2057466 (E.D. Pa. May 1, 2018)................... 22

*Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417 (D.N.J. 2016) .................................................... 7

*Rodolico v. Unisys Corp.*, 199 F.R.D. 468 (E.D.N.Y. 2001)................................................... 12, 13

*Schwartz v. Avis Rent a Car System*, LLC, No. 11-CV-4052, 2016 WL 3457160 (D.N.J. June 21, 2016) ...................................................................................................................................... 8

*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013)........................................... 7, 10

*Sourovelis v. City of Philadelphia*, 320 F.R.D. 12 (E.D. Pa. 2017)................................................ 7

*Speed Shore Corp. v. Denda*, 605 F.2d 469 (9th Cir. 1979)......................................................... 13

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ......................................................... 6, 21

*Thiessen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) ...................................................... 13

*Trewin v. Church & Dwight Co.*, No. 3:12-CV-1475, 2015 WL 12844405 (D.N.J. June 19, 2015) (Shipp, J.) ............................................................................................................................... 15

*Tyson Food, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ............................................................ 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................ 13

*Wellens v. Daiichi Sankyo, Inc.*, No. C 13-00581, 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) 17

*Willix v. Healthfirst, Inc.*, No. 07 Civ 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..... 22, 23

*Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650 (S.D. Ohio May 22, 2006)..... 20

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ......................................................... 20, 22

*Zanes v. Flagship Resort Dev., LLC*, Civ. No. 09-3736, 2012 WL 589556 (D.N.J. Feb. 22, 2012)...
................................................................................................................................................. 12

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012)......................................................... 11

*Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014)............ 9

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................passim

**Statutes**

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ................................................................2, 6

Employee Retirement Income and Security Act, 29 U.S.C. § 1140 *et seq.*...................................2, 4

Equal Pay Act of 1963, 29 U.S.C. § 206(d) .................................................................passim

Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ...............................................................2, 4

**Other Authorities**

Newberg on Class Actions § 11.25 (4th ed. 2002) ...............................................................13, 14

## I.      INTRODUCTION

Plaintiffs and Class Representatives Kelli Smith, Kandice Bross, Rachel Mountis, and Kate Whitmer, on behalf of themselves and members of the Class defined below, and Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp, and Intervet, Inc. (collectively, Merck), have entered into a proposed Settlement of the class and collective action claims in the Second Amended Complaint and executed a Class Action Settlement Agreement. *See* Exhibit 1 to the accompanying Declaration of Deborah K. Marcuse. The Parties also have agreed on a proposed Class Notice, Exhibit B to the Settlement Agreement.[1]

The parties' dispute has been pending for more than seven years. Now, after more than five years of litigation and months of intensive arms' length negotiations, the Parties reached this Settlement to resolve the class and collective claims in exchange for a $6.2 million non-reversionary payment. In accordance with the "overriding public interest in settling class action litigation," *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004),[2] the Court should preliminarily approve the proposed Settlement.

In particular, and as discussed below, the Court should grant the Class Representatives' Unopposed Motion for Preliminary Approval of the Class Settlement and preliminarily approve the proposed settlement, conditionally certify the proposed Class for purposes of settlement, certify the

---

[1] Plaintiffs also pursue individual claims for retaliation and pregnancy discrimination, among other claims, and seek damages for substantial emotional distress. The parties have entered into a separate settlement agreement to resolve the Named Plaintiffs' individual claims. That agreement provides the Named Plaintiffs with monetary relief in addition to that set forth in the class Settlement.

[2] *See also, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (describing the "strong presumption in favor of voluntary settlement agreements": "The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings."); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 530 (W.D. Pa. 2008) ("The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen in class actions . . . .") (citation omitted).

collective action for purposes of settlement, approve the proposed Class Notice, and enter an order setting dates for the fairness hearing and related matters.

## II.     BACKGROUND

On May 9, 2013, Plaintiff Kelli Smith filed a Class Action Complaint against Merck in the United States District Court for the District of New Jersey alleging gender discrimination class claims. Plaintiffs filed an Amended Class Action Complaint on January 16, 2014, and a Second Amended Class Action Complaint (the "Complaint") on May 4, 2016. In their Complaint, Plaintiffs bring claims on behalf of a nationwide class of female sales representatives under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (the "EPA"), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and the Employee Retirement Income and Security Act, 29 U.S.C. § 1140 *et seq.* ("ERISA"). On April 27, 2016, the Court conditionally certified a collective action regarding the class' pay claims under the EPA.

For purposes of the proposed settlement, both the class and the collective action (together, "Class") are defined as:

> All female employees who are or were employed by Merck Sharp & Dohme Corp. or Intervet, Inc., or any of their affiliates, parents, subsidiaries, predecessors, successors, or assigns, and assigned to a M05, M06, M07, M08, M09, S1 and/or S2 Sales Representative position in the United States for at least one day between December 8, 2010 and October 1, 2018.

Settlement Agreement § 3.1(d).[3]

The Parties engaged in extensive formal discovery, including document production, interrogatories, and more than 90 depositions, including depositions of 17 Merck fact witnesses and

---

[3] Expressly excluded from this definition are women who both (1) did not opt-in to the EPA collective action and (2) signed an agreement releasing Defendants from any and all claims.

eight Merck Rule 30(b)(6) deponents, the four Named Plaintiffs, 64 Opt-In Plaintiffs from around the country, and four expert witnesses. In addition, Class Counsel have conducted extensive investigation into the facts, circumstances, and legal issues associated with the litigation. This investigation included examining the numerous documents and data relating to the Plaintiffs' allegations and Merck's defenses, and reviewing the law applicable to Plaintiffs' claims and Merck's defenses. Merck's counsel has also conducted a thorough investigation into Plaintiffs' claims and the events and transactions underlying this suit.

To avoid further unnecessary litigation, cost, and expense, the Parties engaged in mediation after more than five years of litigation. The Parties retained a well-known and experienced mediator, Mark Rudy, Esq., who is skilled at mediating complex class actions, to assist them in their negotiations. On October 1, 2018, the Parties participated in a full-day mediation before Mediator Rudy. Marcuse Decl. ¶ 36. After a full day of intense negotiations, the Parties reached an agreement in principle to settle the case and executed a term sheet. The Settlement Agreement (Marcuse Decl. Ex. 1) was finalized by the parties on December 18, 2018 and fully executed on December 19, 2019.

The Parties and their Counsel recognize that, in the absence of an approved settlement, they will face a long litigation course that would consume considerable time and resources and present all Parties with ongoing litigation risks and uncertainties. Marcuse Decl. ¶ 42. The Parties seek to avoid these risks and uncertainties, as well as the consumption of further time and resources in continued litigation. They have therefore achieved a settlement as outlined in the terms and conditions of the Settlement Agreement.

After extensive discovery, analysis, and deliberation, the Parties are of the opinion that the Settlement described in the Settlement Agreement is fair, reasonable, and adequate. Class Counsel and the Class Representatives believe that the Settlement serves the best interest of the Class based

on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification. In reaching this conclusion, Class Counsel has considered, among other things, the risks of litigation (including the risks of establishing Merck's liability and the costs incurred by the Class Members), the time necessary to achieve a final resolution through trial and any appeals, the complexity of Plaintiffs' claims, and the benefits accruing to the Class under the Settlement. Sanford Decl. ¶¶ 18-19.

Although Merck continues to deny all liability with respect to any and all of the claims alleged in the Complaint, Merck nevertheless considers it desirable that the action be conclusively settled and terminated on the terms and conditions set forth below. The settlement of the action and the attendant final dismissal of the action will avoid the substantial expense, inconvenience, and risk of continued litigation and will bring Plaintiffs' claims to an end.

Plaintiffs now seek preliminary approval of the Parties' Settlement. Plaintiffs further request that the Court certify the proposed Class, approve the proposed Class Notice, and establish a date for a fairness hearing before the Court on final approval of the Settlement, as well as dates for objections and responses. A proposed preliminary approval order is included as Exhibit 2 to the Marcuse Declaration.

## III.    KEY TERMS OF THE PROPOSED SETTLEMENT

Under the terms of the proposed settlement, Merck will pay $6,200,000 ("Total Settlement Amount") to settle and satisfy the "Released Claims", as that term is defined in the Settlement Agreement. Marcuse Decl. Ex. 1 § 4.1.[4] The Total Settlement Amount will be allocated for

---

[4] Class members release all potential claims arising from the same factual predicate as the class' allegations asserted in the Second Amended Complaint—including but not limited to possible FMLA and ERISA claims—and all claims that could have been brought in the Second Amended Complaint.

4

payments to Class Members ("Class Member Awards"), service awards, attorneys' fees and costs, and the fees and costs of the Settlement Administrator. *Id.* The Total Settlement Amount will be placed in the Class Monetary Awards Settlement Fund, as specified in the Settlement Agreement. *Id.* §§ 3.1(f), 4.2.

Class members who do not opt out of the Settlement ("Settlement Class Members") will be eligible to receive Class Member Awards as determined by a formula (the "Allocation Formula"). *Id.* § 5.1. The Allocation Formula is based on the total number of weeks worked during the liability period ("Workweeks") by all Settlement Class Members and the number of Workweeks worked by each Settlement Class Member. *Id.* § 5.1(a)

Subject to Court approval, the following Service Awards will be paid from the Class Monetary Awards Settlement Fund: (i) Service Awards of $25,000 for each of the four Class Representatives; (ii) a Service Award of $4,000.00 for each of the sixty-six (66) collective action members who were deposed, provided they do not opt-out of the settlement; (iii) a Service Award of $1,000.00 for each of the fifty-five (55) collective action members who submitted written discovery but who were not deposed, and for the one (1) collective action member who submitted a declaration, but who was not deposed, provided she does not opt-out of the settlement; and (iv) a Service Award of $100.00 for each of the five-hundred and fifty (550) opt-in collective action members who did not participate in discovery, provided they do not opt-out of the settlement. The Service Awards are in addition to the Class Member Awards to which the recipients are entitled pursuant to this Settlement Agreement. *Id.* § 6.1.

The Service Awards are designed to compensate the Class Representatives for their dedicated service in pursuing the class and collective claims. Each of the Class Representatives has undertaken substantial efforts on behalf of the Class Members, without which the Settlement could

not have been achieved. Marcuse Decl. ¶ 47. The Service Awards will also provide smaller awards for opt-in Class Members who assisted the Class by appearing for deposition and responding to written discovery, and still smaller awards for opt-ins who submitted written discovery. *Id*. The Court need not rule on the Service Awards now; a formal application will be filed prior to the Final Approval Hearing.

In addition, Class Counsel will request an award of Class Counsel's attorneys' fees and reasonable litigation expenses in a total amount to be determined by the Court, up to a maximum of Three Million Dollars ($3,000,000.00). Marcuse Decl. Ex. 1 § 7.2. To date, Class Counsel has incurred more than $700,000 in reasonable and necessary litigation costs. Marcuse Decl. ¶ 50. After reimbursement of litigation expenses, the remaining amount sought—no more than approximately $2.3 Million (37% of the Total Settlement Amount)—will compensate Class Counsel for a fraction of the thousands of hours they have expended on behalf of the class. *Id.* ¶ 52. Indeed, the current lodestar of Class Counsel exceeds $11,000,000. *Id.* ¶ 51. The Court need not rule on Class Counsel's fees and expenses now; a formal application will be filed prior to the Final Approval Hearing.

Finally, Class Counsel will ask the Court to authorize payment of the Settlement Administrator's fees and costs, which may not exceed $50,000. Marcuse Decl. Ex. 1 § 7.6.

## IV. THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED RULE 23 CLASS FOR PURPOSES OF SETTLEMENT

### A.  General Standards

The Court may certify a class for settlement purposes. Certifying a class for settlement purposes satisfies the Rule 23 requirements more easily than a contested motion for class certification. *See, e.g.*, *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302-304 (3d Cir. 2011); *see also Alfaro v. First Language LNS Screening Solutions*, Civ. No. 15-5813, 2017 WL 3567974 (D.N.J. Aug. 16, 2017) (Shipp, J.); *In*

*re N.J. Tax Sales Certificates Antitrust Litig.*, Civ. No. 12-1893, 2016 WL 5844319, at *3-6 (D.N.J. Sept. 30, 2016) (Shipp, J.). Further, the parties' settlement supports certification because it demonstrates that class members will benefit from a fair process that efficiently resolves their claims and obviates any manageability concerns.

### B.  Numerosity Is Satisfied

A class of 40 members generally satisfies numerosity. *E.g. In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658, 2013 WL 396117, at *3 (D.N.J. Jan. 30, 2013). The class here consists of approximately 3,000 female Reps.

### C.    Commonality Is Satisfied

There are also questions common to the Class. The commonality bar "is not high": Class members need not suffer actual injury, have identical claims, or even have viable claims—but must only be subjected to the same alleged harmful conduct. *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015); *Sourovelis v. City of Philadelphia*, 320 F.R.D. 12, 21 (E.D. Pa. 2017). A single common issue will suffice. *In re Merck*, 2013 WL 396117, at *4.

Here, there is a common question around the way in which Merck implemented a new salary grade structure in 2011 that Plaintiffs contend disadvantaged female Reps. These common questions satisfy Rule 23(a)(2). *See, e.g., Brown v. Nucor Corp.*, 785 F.3d 895, 916-17 (4th Cir. 2015); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110, 116-17 (4th Cir. 2013); *Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417, 429 (D.N.J. 2016) (noting common question as to whether employer's wage plan violated state law).

Accordingly, "resolving the merits of [Plaintiffs'] claims will depend upon common answers to legal and factual questions." *In re Merck*, 2013 WL 396117, at *5. Plaintiffs' claims

target the same alleged misconduct by Merck, alleged to result in the same type of harm across the class. *Id.* at 4; *In re Cmty. Bank*, 795 F.3d at 397-99.

### D.  The Class Representatives' Claims Are Typical of the Class

Typicality "tends to merge with the concept of commonality." *In re Merck*, 2013 WL 396117, at *5. Plaintiffs need only "show [their] claims [arise] from the same event or practice or course of conduct that gives rise to the claims of the class members and are based on the same legal theory." *Id.* Here, Plaintiffs pursue the same claims as the class based on the same course of conduct and the same legal theories: that the implementation of a new salary grade structure in 2011 disadvantaged female Reps. Any nuances in Plaintiffs' allegations "do not destroy the fundamental similarity" between their claims and those of the class members. *Id.* at *7.[5]

### E.  Rule 23(a)(4) and Rule 23(g) Are Satisfied—The Class Representatives and Class Counsel Will Fairly and Adequately Protect the Class's Interests

Adequacy is also satisfied. The Class Representatives and Class Counsel have actively and intensively investigated and prosecuted this case. Throughout the pendency of this action, the Class Representatives have adequately and vigorously represented their fellow female employees. They have spent significant time assisting their counsel, providing information regarding Merck's policies and practices, providing pertinent documents, and assisting in settlement negotiations. Marcuse Decl. ¶ 47. Class Counsel is highly experienced and well-versed in complex class litigation. *Id.* ¶ 10; Sanford Decl. ¶¶ 9-16. Sanford Heisler Sharp, LLP is recognized as "very

---

[5] "[F]actual differences will not render [Plaintiffs'] claim[s] atypical if [the claims are] based on the same legal theory as the claims of the class." *Schwartz v. Avis Rent a Car System*, LLC, No. 11-CV-4052, 2016 WL 3457160 at *5 (D.N.J. June 21, 2016) (citations omitted). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).

experienced in complex class and collective litigation" in employment cases, *e.g. Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *5 (N.D. Ill. Dec. 12, 2014), and has a significant and unparalleled knowledge in gender discrimination class actions. Similarly, Feinstein Doyle Payne & Kravec has often been appointed as well-qualified class counsel in employment actions. *See, e.g.*, *Barton v. Constellium Rolled Prods. Ravenswood, LLC*, No. 2:13-cv-03127, 2014 WL 1660388, at *5 (S.D. W.Va. Apr. 25, 2014). Thus, Counsel is "qualified, experienced and generally able to conduct the proposed litigation." *In re Merck*, 2013 WL 396117, at *8 (citation omitted).

As this Court has emphasized, "[t]he burden to prove that the representation is not adequate rests with the party's challenging the class' representation." *Alfaro*, 2017 WL 3567974, at *3 (internal quotation marks omitted). There is no sign of "conflict or antagonism" between Plaintiffs and the class members and no other indication of an adequacy problem. *See id.* at *4 (internal quotation marks omitted).

Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied. The Court should designate the Named Plaintiffs as Class Representatives and appoint their Counsel as Class Counsel for the settlement class.

### F. The Requirements of Rule 23(b)(3) Are Met

#### 1. Common Issues Predominate

As the Supreme Court recently stated:

> The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. . . . [This] asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be

> tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Food, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations omitted). *See also In re Cmty. Bank*, 795 F.3d at 399-408 (Common issues outweighed individual inquiries.). "Rule 23(b)(3) class actions need not be as cohesive as Rule 23(b)(2) class actions because Rule 23(b)(3) class members have an opportunity to opt out." *Alfaro*, 2017 WL 3567974, at *3 (citation omitted).

Predominance is met here because the determination of whether the criteria used to implement a new salary grade structure disadvantaged female Reps is a common question. *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540, 2016 WL 9665158, at *2, *8 (W.D.N.C. June 24, 2016). It "resolve[s] significant issues with respect to the class as a whole, and this dwarfs individualized issues as to particular employment decisions." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 538 (N.D. Cal. 2012). In short, to prove class liability under the *Teamsters* model (*see Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324 (1977), Plaintiffs "would have to focus on [Merck's] conduct rather than on any individual factual differences in the class members' conduct." *Alfaro*, 2017 WL 3567974, at *3.

### 2.    Class Settlement is Superior to Alternative Methods of Adjudication

Under the factors set forth in Rule 23 (b)(3), class treatment is superior to other methods of adjudication. *See, e.g.*, *Ellis*, 285 F.R.D. at 539-40; *see Moore v. Napolitano*, 926 F. Supp. 2d 8, 34 (D.D.C. 2013). As in *Alfaro*, "the Settlement Class contains thousands of members, and, absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals. Additionally, given the estimated size of the class, individual cases would be excessively burdensome for the Court." 2017 WL 3567974, at *4; *see also In re Cmty. Bank*, 795 F.3d at 409. Class treatment thus avoids the "enormous inefficienc[ies]" of individual suits, "the needless waste of both private and judicial resources," and "the risk of inconsistent adjudications."

10

*In re Merck*, 2013 WL 396117, at *13. It also ensures that litigation costs and burdens will not force class members to forfeit their claims and be left without relief. *See id.*

Notably, the manageability factor under Rule 23(b)(3) need not be satisfied in the context of a voluntary settlement. *Cf. Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Accordingly, the Court should grant certification for settlement purposes.

## V. THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE PROPOSED COLLECTIVE ACTION FOR SETTLEMENT PURPOSES

Under 29 U.S.C. § 216(b), an EPA plaintiff may pursue claims on behalf of "other employees similarly situated." As stated by the Supreme Court, in enacting § 216(b):

> Congress has stated its policy that [EPA] plaintiffs should have the opportunity to proceed collectively. [This] allows [EPA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Here, the Court granted stage-one certification and issued notice to the EPA collective action; 699 Reps filed consent to join forms to pursue their EPA claims in this litigation. At final certification, the question is whether the Named Plaintiffs and Opt-Ins are "similarly-situated" for purposes of their EPA claims. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 535-36 (3d Cir. 2012); *Camesi v. Univ. of Pitt. Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). At heart, "[b]eing similarly situated . . . means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the [EPA]." *Zavala*, 691 F.3d at 538.

Courts apply an "*ad hoc*" balancing test, *id.* at 535, that typically considers: (1) plaintiffs' factual and employment settings; (2) the employer's defenses; and (3) fairness and procedural

considerations. *See, e.g.*, *Halle v. W. Penn. Health Allegheny Health Sys. Inc.*, 842 F.3d 215, 226 (3d Cir. 2016). "A common, allegedly unlawful policy 'weighs heavily against decertification even if some disparate factual and employment settings do exist.'" *Galdo v. PPL Elec. Utils. Corp.*, Civ. No. 14-5831, 2016 WL 454416, at *2 (E.D. Pa. Feb. 5, 2016) (citation omitted); *see also, e.g.*, *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409-10 (W.D. Pa. 2000) (finding the standard generally satisfied by "substantial evidence of a single decision, policy or plan") (citation omitted).

### A. Plaintiffs' Factual and Employment Settings Favor a Collective Action

The Named and Opt-In Plaintiffs share "substantially similar" employment settings. *Galdo*, 2016 WL 454416, at *2. "Irrespective of [any] differences," all Reps were part of the same sales force governed by common policies and procedures—including Merck's methods for setting pay. *See Moss*, 201 F.R.D. at 410. All Plaintiffs pursue the same claim of being underpaid, and seek the same relief: pay owed to them as a result. *See Galdo*, 2016 WL 454416, at *2; *Zanes v. Flagship Resort Dev., LLC*, Civ. No. 09-3736, 2012 WL 589556, at *4 (D.N.J. Feb. 22, 2012) ("All Plaintiffs had similar job duties, responsibilities and compensation structures. All Plaintiffs assert common claims . . . . Although differences . . . exist, [they] are outweighed by the similarities."). And, as discussed above, their claims rest on common contentions about Merck's implementation of a new salary grade structure. *Cf. Galdo*, 2016 WL 454416, at *2 (certifying claims premised on the "same company-wide policy"); *Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372, 379-82 (W.D. Pa. 2011) (certifying challenge to "common and allegedly unlawful" pay practice); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 482-83 (E.D.N.Y. 2001) (upholding stage-two certification of ADEA challenge to defendant's common course of conduct in implementing discriminatory layoff).

### B. There Are No Individualized Defenses Preventing Collective Action Treatment

Plaintiffs challenge Merck's implementation of a new salary grade structure in 2011 and argue that female Reps were disadvantaged in their pay as a result. As set forth above, common

issues predominate over any minor individual differences between employees and the claims of the Class Representatives and class members all arise from the same alleged course of conduct. *See Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105-1108 (10th Cir. 2001); *Rodolico*, 199 F.R.D. at 483-84; *cf. Andrako*, 788 F. Supp. 2d at 381-83 (holding that individualized damages defenses do not preclude certification of class liability issues).

### C. Fairness and Procedural Considerations Favor Certification

Without the benefit of a collective action, the members of the EPA Collective Action would be required to hire their own lawyers and expend resources bringing duplicative individual suits. Many employees would simply be unable to litigate their claims due to the costs and time necessary to litigate a lawsuit. *Cf. Hoffmann-La Roche* 493 U.S. at 170. The Settlement fairly and efficiently resolves the claims of the members of the proposed EPA Collective Action and avoids any potential manageability issues.

### VI. THE PROPOSED SETTLEMENT IS PRESUMPTIVELY FAIR AND SHOULD BE PRELIMINARILY APPROVED UNDER RULE 23(e)

Courts strongly favor the settlement of complex class action litigation. *E.g. Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin,* 391 F.3d at 535; *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).[6] Accordingly, in

---

[6] *See also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

exercising its discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Here, Plaintiffs seek preliminary approval of the settlement. At this stage, the Court's role is to conduct an initial screening to "ensure that no obvious problems exist" with the settlement. In making this assessment, "the preliminary approval inquiry asks whether (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." If these factors are met, "an initial presumption of fairness" is established and the settlement is submitted to the class members for their approval and feedback. *Harlan v. Transworld Sys., Inc.*, 302 F.R.D 319, 324 (E.D. Pa. 2014) (internal quotation marks omitted); *In re GMC*, 55 F.3d at 785; *see also* NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) ("If the preliminary evaluation of the settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should authorize notice to the class.).[7] Preliminary approval may be likened to a finding that there is "probable cause" to submit the agreement to the class members and hold a full-scale fairness hearing. *E.g. In re Traffic Executive Ass'n -- Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980); *see also Bernhard v. TD Bank, N.A.*, Civ. No. 08-4392, 2009 WL

---

[7] Then, at the final approval stage, the Court ultimately considers: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Harlan*, 302 F.R.D. at 324-25. Additional factors may also favor approval, "such as the ability of Class members to opt out of the settlement[]." *In re N.J. Tax Sales Certificates*, 2016 WL 5844319, at *9. The Court need not address the final approval factors as the standard here is "far less demanding." *Curiale v. Lenox Group, Inc.*, Civ. No. 07-1432, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008).

3233541, at *1 (D.N.J. Oct. 5, 2009) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient.").

Here, the proposed settlement resulted from the parties' arms-length negotiations after extensive litigation and full class discovery. The proposed settlement is procedurally fair; it is not collusive, but rather represents the result of negotiations between highly-experienced counsel based upon a clear-eyed assessment of comprehensive information regarding liability and damages. There are no obvious deficiencies and the settlement comes well within the range of possible approval. *See In re N.J. Tax Sales Certificates Antitrust Litig*., No. 12-CV-1893, 2015 WL 12910923, at *1-2 (D.N.J. Jan. 23, 2015) (Shipp, J.); *see also Trewin v. Church & Dwight Co*., No. 3:12-CV-1475, 2015 WL 12844405, at *2-3, ¶¶ 3, 12 (D.N.J. June 19, 2015) (Shipp, J.) (discussing final approval of settlement).

### A. The Settlement is Based on Arm's Length Negotiations Conducted After Protracted Litigation Practice

The parties have vigorously litigated this action for approximately five years and engaged in extensive motion practice and discovery disputes, culminating in several pending motions—Plaintiffs' motion for class certification and Defendants' related motions to strike Plaintiffs' class certification evidence and for summary judgment on the class's claims. In light of this posture, the parties engaged in private mediation with experienced and renowned mediator Mark S. Rudy, Esq., as a result of which they reached the proposed settlement. These circumstances strongly support preliminary settlement approval under the first factor. As this Court explained in *In re Ocean Power Techs., Inc*., No. 3:14-CV-2016 WL 6778218, at *11 (D.N.J. Nov. 16, 2016) (emphasis added):

> Importantly, the parties only reached an agreement in principle to settle after a full-day formal mediation session followed by a number of telephonic negotiation sessions with Mr. Bruce Friedman, Esq. . . . "'[T]he participation of an independent mediator in settlement negotiations virtually insures** [sic] that the negotiations were conducted at arm's length and without collusion between the parties.'" [*In re ViroPharma, Inc. Secs.*

*Litig.*, Civ. No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016)] (citation omitted); *Bredbenner v. Liberty Travel, Inc.*, 09-905, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) [same]; *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] ... mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

**B.  The Parties Conducted the Discovery Necessary to Enable them to Evaluate the Merits of the Case, Assess Damages, and Reach a Meaningful Settlement**

The parties have engaged in substantial discovery and analysis of the claims. They have completed class discovery, during which they conducted comprehensive written discovery and extensive depositions. Merck has taken written discovery from the Named Plaintiffs and 121 representative Opt-In Plaintiffs from across the country. Merck also deposed the Named Plaintiffs and 66 representative Opt-Ins nationwide. Plaintiffs have taken the depositions of eight Rule 30(b)(6) witnesses—on topics such as compensation, promotions, performance management—as well as 17 individual managers and executives. The parties have exchanged hundreds of thousands of pages of written discovery, including reams of electronically stored information and data. They have also completed expert discovery and employed their competing expert analyses to support their respective positions in this action. As part of this process, the parties' experts performed assessments of the class' claims and damages that informed the settlement discussions. It cannot be doubted that the parties were "well prepared and informed to engage in robust settlement negotiations." *In re N.J. Tax Sales Certificates*, 2016 WL 5844319, at *7.

**C.  Counsel Is Highly Experienced in Similar Litigation and Their Recommendations Regarding the Settlement Are Entitled to Significant Weight**

Plaintiffs' Counsel Sanford Heisler Sharp, LLP has extensive experience and expertise litigating and settling gender discrimination class and collective actions under Title VII, the EPA, and corresponding state and local law. *See, e.g., Pan v. Qualcomm, Inc.*, No.: 16-cv-01885, 2017 WL 3252212, at *5 (S.D. Cal. July 31, 2017) ("Class Counsel has significant class action litigation

16

experience—especially regarding gender discrimination—in state and federal court."); *Wellens v. Daiichi Sankyo, Inc.*, No. C 13-00581, 2016 WL 8115715, at *2 (N.D. Cal. Feb. 11, 2016) ("The Court confirms its previous finding that the Settlement Agreement is the result of arms-length negotiations between experienced counsel representing the interests of Plaintiffs and Defendant, after thorough factual and legal investigation."); *Velez*, 2010 WL 4877852, at *10 ("[Sanford Heisler] has just the sort of established record contemplated by the Rules."); *id.* at *16 ("Both Parties were represented by experienced counsel with substantial experience in employment class action litigation. Class Counsel has been recognized by numerous courts for their work in securing similar class action settlements."); *Bellifemine*, 2010 WL 3119374, at *1 (recognizing Sanford Heisler as having "an established record of competent and successful prosecution of large . . . class actions") (internal quotation marks omitted).

Accordingly, Counsel's recommendation that the settlement is favorable to the Plaintiffs and class under the circumstances is entitled to significant weight and supports a preliminary presumption of fairness. *See, e.g., Harlan*, 302 F.R.D. at 328; *Austin v. Pa. Dep't. of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("[T]he Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class . . . the recommendation of counsel is entitled to great weight following arm's-length negotiations by counsel who have the experience and ability . . . necessary [for] effective representation of the class's interests.") (citations omitted); *Alves v. Main*, Civ. No. 01-789, 2012 WL 603272, at *22 (D.N.J. Dec. 4, 2012).

### D. The Court Can Only Assess Class Member Objections After the Notice Period

The fourth factor, the level of objections by the class members, cannot be assessed until formal settlement notice is distributed to the class. Nevertheless, at this point, it may be noted that the Named Plaintiffs support the settlement and no class member has expressed any opposition.

17

### E.  The Settlement Falls Well Within the Range of Possible Approval

In addition, the Court should preliminarily conclude that the settlement benefits are fair, reasonable, and adequate. At final approval, the Court will assess the settlement amount in light of the potential recovery as well as the strength of the case and the burdens and risks of further litigation. At present, it is clear that the settlement comes within the range of possible approval.

Ultimately, "in assessing the fairness of a proposed settlement, the Court should be careful not to substitute its image of an ideal settlement for the compromising parties' views: The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential Ins. Co. of Am. Sales Practices Litig*., 962 F. Supp. 450, 534 (D.N.J. 1997) (internal quotation marks omitted) "Thus, the issue is whether the settlement is adequate and reasonable, not whether one could conceive of a better settlement." *Id*. Moreover, the Court need not be able to "predict the precise value of the damages that Plaintiffs would recover if successful." *In re N.J. Tax Sales Certificates*, 2016 WL 5844319, at *8.

The class recovery here is substantial in relation to potential damages and exceeds settlements routinely approved in other cases. Plaintiffs estimate the class' economic back pay losses during this period at approximately $21.9 million. The total class settlement of $6.2 million represents more than 28% of this calculation. Notably, this Court recently approved a settlement of 2.5% of the class' highest possible single damages in a case where treble damages were available. *See id*. at *9 (citing law noting that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

The Settlement here provides significant relief to the class members and will be distributed to them in a matter of months, rather than after years of further litigation and appeals. The class members should be given notice and an opportunity to weigh in on the Settlement.

### F. The Proposed Allocation of Attorney's Fees and Expenses Is Reasonable and Warrants Preliminary Approval

Class Counsel will apply for fees and reimbursement of expenses in connection with final approval, after Class Members have an opportunity to opt out or object, including to object with respect to Class Counsel's fees and expenses. Here, the Settlement's provisions regarding fees and costs do not take the Agreement out of the range of possible approval. The Settlement Agreement permits Counsel to seek combined fees and costs of up to $3,000,000.

First, in connection with final approval, Counsel will seek reimbursement of its reasonable out-of-pocket litigation costs and expenses. Counsel currently estimates that its reimbursable costs—which largely include expert fees, discovery costs, and mediation expenses—exceed $700,000. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components Int'l, Inc.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citation omitted). Courts have held that items such as photocopying expenses, telephone and facsimile charges, postage, and expert witness fees are all reasonably incurred in the prosecution of a large litigation. *See id.* (citing cases).

The resulting attorney's fee request is expected to total no more than $2,300,000—or a maximum of 37% of the total class settlement. This percentage is within the established norms of class litigation,[8] and is amply supported by Counsel's lodestar in this case, which is estimated to

---

[8] *In re GMC*, 55 F.3d at 822 (among cases in Third Circuit recognizing that percentage fee awards generally range up to 45% of the settlement); *Erie Cty. Retirees Ass'n v. Cty. of Erie*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002) ("Fee awards ranging from thirty to forty-three percent have been

exceed $11,000,000. In short, Plaintiffs expect to seek approximately 20% or less of Counsel's accumulated lodestar, not accounting for the substantial work to be performed going forward. A negative lodestar multiplier of this magnitude strongly supports the reasonableness of the proposed award. *Cf. In re N.J. Tax Sales Certificates*, 2016 WL 5844319, at *11 (fact that counsel would receive 76.7% of its lodestar confirmed the reasonableness of the fee). *See also, e.g., Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 983 F. Supp. 595, 608 (M.D. Pa. 1996) (in case where counsel sought fees of 50% of total available settlement fund but a small fraction of its lodestar, requesting information about the lodestar calculation in relation to the claims and observing that "counsel who wrangle a judicially-approved settlement should be fairly compensated for their labor").

In sum, "Counsel should receive appropriate compensation for the extraordinary efforts extended in generating the Settlement Fund from which members of the Plaintiff Class will benefit." *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998). Because the fee is well within established bounds, the class should have the opportunity to weigh in before the Court evaluates the proper, adequate fee award. The class members' reaction to the settlement will provide

---

awarded in cases with funds ranging from $400,000 to $6.5 million"); *In re Lucent Tech., Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) (observing that "the customary contingent fee would likely range between 30% and 40% of the recovery."). *See, e.g., Geis v. Walgreen Co.*, Civ. No. 07-4238, 2010 WL 11570447, at *20 (D.N.J. Sept. 30, 2010) (awarding 43% of the value of the recovery as appropriate under Third Circuit law); *Dominguez v. Galaxy Recycling, Inc.*, Civ. No. 12-7521, 2017 WL 2495406, at *6-8 (D.N.J. June 9, 2017) (awarding 37% fee, approximately 90% of counsel's lodestar); *Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) (granting request for 38 and 1/3% fee, in addition to costs, "solidly within the typical 20 to 50 percent range."); *Wright v. Stern*, 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008) (awarding an $8 million fee in employment case, representing over 38% of total relief, in addition to $999,999.79 in litigation expenses); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188-89 (W.D.N.Y. 2005) (awarding 38.26% of fund in wage class action); *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788, 2015 WL 12661922, at *9 (N.D. Cal. Aug. 28, 2015) (noting that a fee of 37.5% of the gross settlement "falls within the range of possible approval"); *In re Phillips/Magnavox Television Litig.*, Civ. No. 09-3072, 2012 WL 1677244, at *17 (D.N.J. May 14, 2012) (awarding 39% of cash fund portion of settlement).

meaningful information to the Court on whether they approve the anticipated fee request. *See, e.g.,*

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (absence of substantial objection

by class members supported fee request).

### G.  The Provision for Reasonable Service Payments Does Not Undermine the Fairness of the Settlement

Pursuant to the Settlement, Plaintiffs anticipate seeking the following Service Awards: (i)

$25,000 for each of the four Class Representatives; (ii) $4,000 for each of the 66 Opt-in Plaintiffs

who were deposed; (iii) $1,000 for each of the 55 Opt-in Plaintiffs who submitted written discovery

responses but who were not deposed and for the one collective action member who submitted a

declaration, but who was not deposed, provided she does not opt-out of the settlement; and (iv)

$100 each for the remaining Opt-in Plaintiffs. The proposed Class Notice advises Class Members

of the proposed Service Awards. *See* Ex. B to the Settlement Agreement, attached to the Marcuse

Declaration as Ex. 1.

As stated in *Bredbenner*, 2011 WL 1344745, at *22-23 (citations omitted):

> Service payments are fairly common in class action lawsuits involving a common fund for distribution to the class. The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws. . . . Courts have ample authority to award [such] payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation.

*See also, e.g., Sullivan*, 667 F.3d at 333 n.65; *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL

84928, at *13 (M.D. Pa. Jan. 7, 2013) (emphasizing the risk of retaliation in employment cases).[9]

---

[9] The amounts sought here are well within or below the range of awards approved as reasonable. *See, e.g., Craig*, 2013 WL 84928, at *13 (indicating that awards in the Third Circuit range up to $30,000); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004) ("[T]he amount requested, $25,000, is comparable to incentive awards granted by courts in this district and in other circuits"; citing cases awarding from $20,000 to $90,000);

The Court need not rule on the proposed awards now. Because they are "not facially unreasonable," the Court should preliminarily approve the settlement and authorize notice to the class. *See Pfeifer v. Wawa, Inc.*, Civ. No. 16-497, 2018 WL 2057466 at *6 (E.D. Pa. May 1, 2018) ($25,000 awards). At the final approval stage, class members will have had an opportunity to weigh in on the settlement and object to any provisions with which they disagree. *See, e.g., Craig*, 2013 WL 84928, at *13 (lack of class member objection supported awards); *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007, 2005 WL 2230314, at *32-33 (D.N.J. Sept. 13, 2005) (same).

## VII.  THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT UNDER THE EQUAL PAY ACT

While an FLSA/EPA settlement does not involve the rights of absent class members and is not subject to Rule 23(e), courts nonetheless review the settlement to ensure that it is fair and reasonable. *See, e.g., Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Bredbenner*, 2011 WL 1344745, at *18. "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011); *Bredbenner*, 2011 WL 1344745, at *18 (noting that "the Court does not assume the same 'fiduciary' role to protect absent class members"). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the

---

*Demaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-cv-07298, 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) ($45,000 award to each plaintiff); *Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 364 (E.D.N.Y. 2014) (discrimination case with five awards of $35,000 each); *Bellifemine*, 2010 WL 3119374, at *7 ($75,000 each to named plaintiffs and $25,000 to $60,000 to individual class members for "the time and energy that they have devoted to this case, and the benefit conferred on the Class."); *Wright*, 553 F. Supp. 2d at 342 ($50,000 awards to each of 11 named plaintiffs in discrimination action); *Godshall v. Franklin Mint Co.*, No. 01–CV–6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) ($20,000 awards in wage and hour case); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL2137224, at *12 (E.D. Pa. July 16, 2009) (same).

fairness of the settlement." *Willix*, 2011 WL 754862, at *5. As set forth in cases such as these, an FLSA/EPA settlement need only reflect a reasonable compromise of contested litigation involving a *bona fide* dispute between the parties. *E.g. Bredbenner*, 2011 WL 1344745, at *18; *Morales v. PepsiCo, Inc.,* Civ. No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012). The Court should remain "mindful of the strong presumption in favor of settlement." *Morales*, 2012 WL 870752, at *1 (citing *Farris v. J.C. Penney, Inc.,* 176 F.3d 706, 711 (3d Cir. 1999)).

Here, because the Settlement meets the stricter Rule 23(e) standard, *a fortiori* it also easily passes muster under the FLSA/EPA. First, the parties plainly have *bona fide* disputes over (i) Merck's liability under the EPA, including whether collective action members were paid less than their male counterparts for performing equivalent work; (ii) the applicable statute of limitations under the willfulness standard of 29 U.S.C. § 255, as well as the availability of liquidated damages under 29 U.S.C. § 260; and (iii) whether, absent settlement, collective action certification is appropriate. The parties would continue to contest these issues absent a settlement. The "aggressive prosecution and strenuous defense" of a federal litigation concerning wages owed under the EPA "clearly establishes a bona fide dispute." *Bredbenner,* 2011 WL 1344745, at *18

Second, under the circumstances, the Settlement potentially represents a fair and reasonable compromise of contested claims. *See, e.g.*, *Morales*, 2012 WL 870752, at *1 ("the Court finds that the settlement reflects good faith negotiations between the parties as to the reasonable valuation of Plaintiff s underlying claims."); *Aros v. United Rentals, Inc.*, No. 3:10–CV–73, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012) ("the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore appropriate for approval."); *Campanelli v. Hershey Co*., No. C 08-1862, 2011 WL 3583597, at *1

23

(N.D. Cal. May 4, 2011) ("substantial" payments achieved through arm's length negotiations); *Willix,* 2011 WL 754862, at *5. The Court should advance the agreement to the final approval stage.

## VIII. THE PROPOSED FORM AND METHOD OF NOTICE OF THE CLASS SETTLEMENT SHOULD BE APPROVED

The proposed Class Notice (Exhibit B to the Settlement Agreement) fully comports with the requirements of Rules 23(c)(2)(B) and 23(e)(1) and due process.

The Notice clearly sets forth (i) the nature of the action; (ii) the definition of the certified class; (iii) the class claims, issues, or defenses; (iv) class members' rights to make an appearance in the action; (v) their right to opt out of the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment. Further, the Notice adequately puts Class Members on notice of the proposed settlement by providing the details of the agreement, including proposed attorney's fees and costs and service payments. The Notice apprises Class Members of their rights to object to or opt-out of the settlement and to appear at the final fairness hearing, and notifies them of the deadlines and procedures for doing so. Notice will be made by United States first class mail to the last known addresses in Defendants' records.

Accordingly, the Notice is more than adequate and should be approved. *See, e.g., Bernhard*, 2009 WL 3233541, at *5.

### CONCLUSION

The Settlement Agreement is fair, adequate and reasonable and meets the criteria for approval of class action settlements. The Settlement Agreement is the product of arm's-length negotiation between Counsel for the Parties, and the benefits of the settlement outweigh the uncertainty and added time and expense that continued litigation of this matter would entail. Plaintiffs therefore respectfully request that the Court preliminarily approve the Settlement

Agreement and enter the proposed preliminary approval order attached as Exhibit 1 to the Marcuse Declaration.

Date: December 19, 2018                     Respectfully Submitted,

Russell Kornblith (*pro hac vice*)
Andrew Melzer (*pro hac vice*)
David Tracey (N.J. ID No. 081062013)
**Sanford Heisler Sharp, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
rkornblith@sanfordheisler.com
amelzer@sanfordheisler.com
dtracey@sanfordheisler.com

David Sanford (*pro hac vice*)
Thomas J. Henderson (*pro hac vice*)
Aimee Krause Stewart (*pro hac vice*)
**Sanford Heisler Sharp, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
dsanford@sanfordheisler.com
thenderson@sanfordheisler.com
astewart@sanfordheisler.com

Deborah K. Marcuse (*pro hac vice*)
**Sanford Heisler Sharp, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
Telephone: (410) 834-7420
Facsimile: (410) 834-7425
dmarcuse@sanfordheisler.com

*Attorneys for Plaintiffs and the Class*

25