# Exhibit 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELLI SMITH, et al., individually and on behalf of a class of similarly situated female employees, <br><br> Plaintiffs, <br><br>     v. <br><br> MERCK & CO., INC., MERCK SHARP & DOHME CORP., AND INTERVET, INC., <br><br> Defendants. | Civil No. 3:13-cv-2970-MAS-LHG |

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

## TABLE OF CONTENTS

1.    INTRODUCTION.................................................................................1

2.    NATURE AND RESOLUTION OF THE CASE................................1

3.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT....................4

4.    MONETARY RELIEF ......................................................................9

5.    ALLOCATION AND DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS..................................................................15

6.    SERVICE AWARDS ........................................................................17

7.    ATTORNEYS' FEES, LITIGATION COSTS, AND SETTLEMENT ADMINISTRATION COSTS ........................................18

8.    NOTICE, OBJECTIONS EXCLUSIONS, AND FINAL APPROVAL HEARING ......................................................................20

9.    RELEASES.......................................................................................25

10.   NO ADMISSION, NO DETERMINATION ...................................28

11.   MERCK'S RIGHT TO WITHDRAW OR MODIFY THE AGREEMENT ............29

12.   DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL ...............................29

13.   DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL............30

14.   NOTICES.........................................................................................31

15.   VOIDING THE AGREEMENT ......................................................32

16.   ENFORCEMENT AND GOVERNING LAW................................34

17.   OTHER CONDITIONS OF SETTLEMENT .................................34

18.   PARTIES' AUTHORITY ...............................................................37

# 1.    INTRODUCTION

1.1.    Subject to approval by the United States District Court for the District of New Jersey (the "Court"), this Settlement Agreement ("Settlement Agreement," "Agreement" or "Settlement") sets forth the full and final terms by which the Class Representatives Kelli Smith, Kandice Bross, Rachel Mountis, and Kate Whitmer (collectively, "Class Representatives" or "Named Plaintiffs"), on behalf of themselves and members of the Class defined herein, represented by their attorneys, Sanford Heisler Sharp, LLP ("Class Counsel"), and Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp. and Intervet, Inc. (collectively, "Merck," or "Defendants"), represented by their attorneys, Morgan, Lewis & Bockius LLP, have settled and resolved all class and collective claims in the Civil Action.

# 2.    NATURE AND RESOLUTION OF THE CASE

2.1.    On May 9, 2013, Class Representative Kelli Smith filed a Class Action Complaint against Merck in the United States District Court for the District of New Jersey alleging gender and pregnancy discrimination class claims.  Plaintiff filed an Amended Class Action Complaint on January 16, 2014, *inter alia*, joining Class Representatives Kandice Bross, Rachel Mountis, Kate Whitmer, and Amy Shursky.[1]  On May 4, 2016, Plaintiffs filed a Second Amended Class Action Complaint (the "Complaint").  In their Complaint, Plaintiffs bring claims on behalf of a nationwide class of female sales representatives under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), the Employee Retirement Income and Security Act, 29 U.S.C. § 1140 *et seq*. ("ERISA"), and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (the "Equal Pay Act" or the

---

[1]    On November 4, 2014, Named Plaintiff Amy Shursky stipulated to the dismissal of her individual, collective, and class claims against Merck with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), with each party bearing its own attorneys' fees, costs, and expenses.

"EPA"). On April 27, 2016, the Court conditionally certified a collective action regarding certain claims under the EPA.

2.2.    In an effort to avoid further unnecessary litigation, cost, and expense, the Class Representatives and the Defendants (collectively, the "Parties") entered mediation after more than five years of litigation. The Parties retained a well-known and experienced mediator, Mark Rudy, Esq., skilled in mediation of complex class actions, to assist them in their negotiations. Both Parties and their Counsel recognize that, in the absence of an approved Settlement, they will face a long litigation course, including motions for summary judgment and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties. The Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions of this Agreement.[2] After extensive discovery, analysis, and deliberation, the Parties are of the opinion that the Settlement described in this Agreement is fair, reasonable, and adequate. Class Counsel and the Class Representatives believe that the Settlement set forth in this Settlement Agreement serves the best interest of the Class based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification.

2.3.    It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Civil Action, which exist between them and between the Released Parties and the Settlement Class Members.

---

[2]    Merck has entered into a separate settlement agreement with the Named Plaintiffs to resolve their individual claims. This agreement provides the Named Plaintiffs with monetary relief in addition to that set forth in this Agreement.

2.4.    It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.5.    Defendants expressly deny all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief, and all other forms of relief, as well as the class and collective allegations asserted in the Civil Action.  Defendants have agreed to resolve the Civil Action via this Agreement solely to avoid the time, expense, and burden of litigation, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendants do not waive, but rather expressly reserve, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Civil Action upon all procedural and substantive grounds, including without limitation the ability to challenge class or collective action treatment on any grounds and to assert any and all other potential defenses or privileges.  The Class Representatives and Class Counsel agree that Defendants retain and reserve these rights, and they agree not to take a position to the contrary.  Specifically, and per Section 15.1 below, the Class Representatives and Class Counsel agree that, if the Civil Action were to proceed, they will not argue or present any argument, and hereby waive any argument that, based on this Settlement Agreement, or any Exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this Settlement Agreement, Defendants should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23 on any grounds, pursuing decertification of the conditionally certified EPA collective action, or from asserting any and all other potential defenses and privileges.  This Agreement shall not be deemed an admission by, or a basis for estoppel against, Defendants that class action treatment pursuant to Federal Rule of Civil Procedure 23 or certification of the EPA collective action pursuant to 29 U.S.C. § 216(b)

in the Civil Action is proper or cannot be contested on any grounds.  Additionally, neither the Agreement, nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement:  (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal, or administrative proceeding, or other tribunal, provided, however, that nothing in this sentence negates the validity or effect of any provision in this Settlement Agreement, including but not limited to the provisions in Section 9 below.

2.6.    Neither this Settlement Agreement, nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

## 3.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT

3.1.    **Definitions**.  In addition to the terms identified and defined elsewhere in this Settlement Agreement, the terms described below shall have the meanings defined in this Section wherever used in this Agreement and in all of its Exhibits, including the Notice of Class Action Settlement:

(a)    "CAFA Notice" refers to the notice to be sent to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

4

(b)      "Civil Action" means the class action lawsuit described above and any and all of the class and collective claims that were asserted in the Second Amended Class Action Complaint captioned *Smith, et al. v. Merck & Co., Inc., et al.* pending in the United States District Court for the District of New Jersey, Case No. 3:13-cv-2970.

(c)      "Settlement Administrator" means RG/2 Claims Administration, which has been jointly designated by counsel for the Parties to administer the Settlement pursuant to Section 4 below and orders of the Court.

(d)      "Class" and "Class Member(s)" mean the class and collective that the Named Plaintiffs seek to have certified, solely for the purposes of this Settlement Agreement, which is defined as all female employees who are or were employed by Merck Sharp & Dohme Corp. or Intervet, Inc., or any of their affiliates, parents, subsidiaries, predecessors, successors, or assigns, and assigned to a M05, M06, M07, M08, M09, S1 and/or S2 Sales Representative position in the United States for at least one day between December 8, 2010 and October 1, 2018.  Expressly excluded from this definition are women who both (1) did not opt-in to the EPA collective action and (2) signed an agreement releasing Defendants from any and all claims.

(e)      "Class Counsel" means the law firm of Sanford Heisler Sharp, LLP.

(f)      "Class Monetary Awards Settlement Fund" means the monetary amount provided to the Settlement Administrator pursuant to Section 4.2.

(g)      "Class Representatives" or "Named Plaintiffs" mean Kelli Smith, Kandice Bross, Rachel Mountis, and Kate Whitmer.

(h)      "Complaint" means the Second Amended Class Action Complaint filed on May 4, 2016 in the Civil Action captioned *Smith, et al. v. Merck & Co., Inc., et al.*, pending in the United States District Court for the District of New Jersey, Case No. 3:13-cv-2970.

(i)      "Merck's Counsel" or "Defendants' Counsel" means the law firm of Morgan, Lewis & Bockius LLP.

(j)      The "Court" means the United States District Court for the District of New Jersey.

(k)      "Defendants" and/or "Merck" mean Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., and Intervet, Inc.

(l)      "Effective Date" means the date upon which all of the following have occurred: (1) entry of an order by the Court certifying the Settlement Class; (2) entry of an order or orders by the Court granting Final Approval of the Agreement and dismissing the Civil Action with prejudice (but making no findings as to liability or wrongdoing by any party); and (3) if applicable, the time for appeal has expired without an appeal being filed and/or any appeal (including any requests for rehearing *en banc*, petitions for certiorari or appellate review) has been finally resolved.

(m)      "Final Approval Date" or "Final Approval" means the date on which the Court grants final approval of the Settlement.

(n)      "Final Approval Hearing" means the hearing at which the Court will consider final approval of this Settlement Agreements and related matters.

(o)

(p)      "Parties" means the Class Representatives and the Defendants.

(q)      "Person" means an individual, partnership (general or limited), corporation, limited liability company, joint venture, association or other form of business organization (whether or not regarded as a legal entity under applicable law), trust or other entity or organization.

6

(r)        "Preliminary Approval" or "Preliminary Approval Order" means the order entered by the Court preliminarily approving the terms of this Agreement, certifying the Settlement Class, and preliminarily approving the payment of attorneys' fees and costs, as described in this Agreement, scheduling a Final Approval Hearing, and directing the mailing to the Settlement Class of the Notice of Class Action Settlement.

(s)        "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

(t)        "Released Claims" means any and all claims of whatever nature, known or unknown, that the Settlement Class Members may have against the Released Parties, arising out of the same factual predicate as the class and collective claims asserted in the Civil Action, including any and all class and collective claims asserted in the original and subsequently amended complaints filed in the Civil Action.  This release does not include or cover any actions or omissions occurring after the Preliminary Approval Date.  Specifically included in this release are any and all employment discrimination claims or benefits claims that were or could have been asserted arising out of the same transactions, series or connected transactions, occurrences or nucleus of operative facts that form the basis of the class and collective claims asserted in the Civil Action, including but not limited to, claims of alleged gender or pregnancy discrimination in employment or in the provision of employee benefits under Title VII, the EPA, the FMLA, ERISA (except for vested benefits otherwise entitled) and any other federal, state, or local statutes, common law, or regulation that may apply to such discrimination in employment or employee benefit claims.  Furthermore, this Release includes claims that were or could have been asserted for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII, the EPA, the FMLA, ERISA, or any other federal, state, local or

7

common laws or regulations relating to or arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the class and collective claims set forth in the Civil Action.

(u)     "Released Parties" means Merck & Co., Inc., Merck Sharp & Dohme Corp., and Intervet, Inc. and their parents, subsidiaries and affiliated companies, and in the case of all such entities, their respective past and present owners, representatives, officers, directors, attorneys, agents, employees, insurers, predecessors, successors, and assigns.

(v)     "Settlement Agreement" or "Agreement" means this Agreement and all Exhibits attached to it.

(w)     "Settlement Class" and "Settlement Class Members" mean the class that Plaintiffs seek to have certified for the purposes of this Settlement Agreement which is defined above in Section 3.1(d), who do not timely opt-out of the settlement pursuant to the terms of the Preliminary Approval Order.

(x)     "Settlement Class Member" means any person who meets the criteria set forth in the definition of "Settlement Class."

(y)     "Workweeks" means every work week, irrespective of full, part-time, or leave status, worked during the liability period, as applicable.

(z)     In computing any period of time prescribed or allowed by this Settlement Agreement, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a).

3.2.    **Mutual Full Cooperation.**  The Parties agree that they will fully cooperate with each other to effectuate and to implement all terms and conditions of this Settlement Agreement, and to exercise good faith efforts to accomplish the terms and conditions of this Settlement

Agreement.  The Parties agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement Agreement, but are not obligated to accept any changes in the monetary amount of relief provided for herein or to accept any other material substantive change.

## 4.     MONETARY RELIEF

### 4.1.     **The Total Settlement Amount.**

(a)     Defendants shall pay Six Million Two Hundred Thousand Dollars and Zero Cents ($6,200,000.00) to settle and to satisfy the Released Claims in the Civil Action ("Total Settlement Amount").  Upon payment of the Total Settlement Amount, subject to the requirements of Section 4.1(b), Merck will have no further monetary obligation pursuant to this Settlement and Merck shall have no further responsibility or obligation to make any additional payments pursuant to this Settlement, including with respect to attorneys' fees and costs.  The Total Settlement Amount shall be allocated for the Class Member Awards, described in more detail in Sections 4.2 and 5.1, attorneys' fees and costs, described in more detail in Section 7.2, Settlement Administrator's fees and costs, Service Awards, described in more detail in Section 6.1, and all other expenses associated with effectuating this Agreement, if any.

(b)     In addition to the Total Settlement Amount, Merck shall pay the employer's share of applicable payroll taxes or contributions as referenced in Section 5.1(b) and Section 5.1(c).

(c)     Under no circumstance will Merck's settlement liability, other than Merck's share of employer payroll taxes, exceed the Total Settlement Amount as set forth in Section 4.1(a).

(d)     No later than forty-five (45) days after the Final Approval Date, Merck shall provide, by wire transfer, to the Settlement Administrator, the Total Settlement Amount.

### 4.2.     **The Class Monetary Award Settlement Fund.**

(a)     The Class Monetary Awards Settlement Fund will be placed in an FDIC insured account (the "Class Settlement Account") approved by Class Counsel with a unique Tax Payer Identification Number.  Any interest accrued prior to the distribution of any monetary awards, net of taxes and fees associated with investing such amount, will be added to the Class Monetary Awards Settlement Amount described in Section 4.1(a).

(b)     The Class Settlement Account is intended to be, and will be, an interest-bearing "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq., and shall be administered by the Settlement Administrator under the Court's supervision.  The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Class Settlement Account.  The Settlement Administrator shall make such elections as necessary or advisable; including the "relation-back election" (as defined in Treas. Reg. Section 1.46B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  To the extent necessary, it shall be the responsibility of the Settlement Administrator to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  The Parties shall cooperate to ensure Qualified Settlement Fund treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.  The Settlement Administrator shall indemnify Defendants, Defendants' Counsel, and Class Counsel for any and all liability associated with the administration of the Class Settlement Account.

(c)     The Settlement Administrator shall have the obligation to return the entire Class Monetary Awards Settlement Fund (including all income and/or interest generated, by the

Class Monetary Awards Settlement Fund) to Merck within five (5) business days in the event of revocation of this Settlement Agreement, or in the event that this Settlement Agreement is modified or reversed on appeal or is otherwise rendered null and void for any reason.

(d)     The Settlement Administrator shall distribute the Class Monetary Awards Settlement Fund (including interest generated by the Class Monetary Awards Settlement Fund) pursuant to the provisions described below, and on the time schedule described herein, and pursuant to the orders of the Court.

4.3.   **Tax Treatment.**

(a)     The Parties recognize that the awards to Settlement Class Members will be subject to applicable tax withholding and reporting.   The Settlement Administrator shall be responsible for withholding and timely remitting and reporting of the Settlement Class Members' share of the payroll taxes from the Class Monetary Awards Settlement Fund.

(b)     The Parties agree that pursuant to Section 5.1(b) below, one hundred percent (100%) of the Class Member Awards will be deemed wages.

(c)     Merck shall be responsible for the employer's share of payroll taxes.   The Settlement Administrator shall inform Merck in writing of the employer's share of all taxes or contributions (*i.e.*, FUTA, SUTA, FICA, and Medicare) within twenty (20) business days after it makes its determinations of awards pursuant to Section 5 below.   If Merck disagrees with the Settlement Administrator's calculation, it shall notify the Settlement Administrator within ten (10) business days setting forth the basis for the disagreement and work with the Settlement Administrator to confirm the correct amount.   If Merck does not notify the Settlement Administrator of any disagreement, Merck shall, before the applicable tax deadline, remit all such payments to the Class Monetary Awards Settlement Fund for payment to appropriate taxing

11

authorities ("Employer Payroll Tax Payment").  This amount shall reflect the maximum amount that would be owed by Merck if all Class Members participate in this Settlement.  Any excess payroll tax funds paid under this Section shall be returned to Merck eight (8) months after the mailing of the last settlement check.

(d)     The Settlement Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to appropriate taxing authorities and shall indemnify Merck for any penalty arising out of any failure to remit taxes to the appropriate taxing authorities, any failure to appropriately withhold taxes, or an incorrect calculation, and/or interest with respect to late payment of the same, unless such failure is the result of Merck's failure to fulfill its obligations in a timely manner.  Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS on Form 1099-INT. The amounts paid for attorneys' fees and costs shall not be subject to withholding and shall be reported to the IRS on Form 1099-MISC.

(e)     Except with respect to the Employer Payroll Tax Payment, the Settlement Administrator shall be responsible to satisfy from the Class Monetary Awards Settlement Fund any and all federal, state, and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, Medicare, and any state employment taxes.  The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs and expenses subject to reporting), and any and all taxes, penalties, and other obligations with respect to the payments or distributions of the Class Monetary Awards Settlement Fund from the Class Monetary Awards Settlement Fund not otherwise addressed herein.  The Settlement

Administrator shall indemnify Merck against any liability relating to the Settlement Administrator's failure to pay timely any taxes, penalties, or other obligations relating to the payments or distributions from the Class Monetary Awards Settlement Fund, other than any failures to make timely payment, penalties, or other obligations caused by Merck's failure to fulfill its obligations in a timely manner.

(f)     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to income earned by the Class Monetary Awards Settlement Fund, including any taxes or tax detriments that may be imposed on Merck with respect to income earned for any period during which the Class Monetary Awards Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Class Monetary Awards Settlement Fund.  Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Class Monetary Awards Settlement Fund.  The Parties will cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Paragraph.

(g)     Class Counsel and Defendants' Counsel do not intend this Settlement Agreement to constitute legal or tax advice regarding any federal, state or local tax issue.  To the extent that this Settlement Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or

13

written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.  The tax issues for each Settlement Class Member are unique to her, and each Settlement Class Member is advised to obtain tax advice from her own tax advisor with respect to payment resulting from this Settlement.

      4.4.   **Merck Has No Further Obligation, Liability or Responsibility.**   Other than Merck's responsibility for the Employer Payroll Tax Payment as discussed in Section 4.3(c) above, Merck shall have no withholding, reporting or any other tax or reporting or payment responsibilities with regard to the Class Monetary Awards Settlement Fund or its distribution to the Settlement Class Members unless otherwise required by law.  Moreover, Merck shall have no liability, obligation, or responsibility for the administration of the Class Monetary Awards Settlement Fund, or the disbursement of any monies from the Class Monetary Awards Settlement Fund except for (1) its obligation to transfer the amounts to the Class Monetary Awards Settlement Fund as set forth in Section 4.2 above; (2) its obligation related to the Employer Payroll Tax Payment as set forth in Section 4.3(c) above; and (3) its agreement to cooperate in providing information which is necessary for Settlement administration set forth herein.

## 5.   ALLOCATION AND DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS

      5.1.   **Allocation Formula.**

      (a)   Settlement Class Members will be eligible to receive individual monetary awards as determined by a formula (the "Allocation Formula") based on the total Workweeks, as applicable, of all Settlement Class Members and the number of Workweeks, as applicable, worked by each Settlement Class Member.

      (b)   One hundred percent (100%) of the payments made to each Settlement Class Member ("Class Member Awards") will be deemed wages and contingent upon the Class

Member negotiating the payments, shall be reported to the appropriate tax authorities on an IRS Form W-2 issued to the Settlement Class Member with her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law.

(c)     In the event that it is subsequently determined by a tax authority that any Settlement Class Member owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the Settlement Class Member(s) and the tax authorities, and that Merck will not be responsible for the payment of such taxes, including any interest and penalties. The Settlement Class Member agrees to indemnify Merck for any such taxes, interest, and penalties owed by her. Notwithstanding the foregoing, Merck is responsible for paying the employer's share of payroll taxes, and Settlement Class Members do not agree to defend, indemnify or hold Merck harmless for any determination by any taxing authority that Merck failed to fully pay the employer's share of applicable payroll taxes.

(d)     No payments made to Settlement Class Members in this Agreement will be considered wages for purposes of calculating, or recalculating, benefits provided by Merck or any Released Party under the terms or conditions of any employee benefit plan.

5.2.     **Settlement Checks and Release.**

(a)     The Settlement Administrator shall mail all Class Member Awards as defined in Section 5.2(a) within sixty (60) days of the Effective Date. The face of each check sent to Settlement Class Members shall clearly state that the check must be cashed within six (6) months. All payments distributed by the Settlement Administrator must be accompanied by a cover letter stating words in bold to the effect that "the check must be cashed within six (6) months

or it will become void."  The back of each check will contain a legend stating: "I have received and read the Class Notice in *Smith, et al. v. Merck & Co., Inc., et al*.  By negotiating this check and accepting payment, I (1) consent to join this lawsuit and the Equal Pay Act collective action, (2) elect to participate in the Settlement, and (3) agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this lawsuit.  This Release will be effective as of the Effective Date."  Except for Merck's share of payroll taxes, Settlement Class Members will be responsible for any tax liability, penalties, and interest arising from the allocation of the Class Monetary Awards Settlement Fund.

  5.3. **Uncashed Checks and Unused Funds.**

    (a) If any Settlement Class Member fails to negotiate her check within six (6) months following distribution of said check as defined in Section 5.2, the checks will be void.  To the extent necessary, the Settlement Administrator may request a tax refund for the funds associated with any check that is not timely negotiated.

    (b) Should a Class Member not negotiate her check within six (6) months of the original mailing of the checks, she will be deemed to have waived irrevocably any right or claim to a Class Member Award.

    (c) Subject to Court approval of The Employee Rights Advocacy Institute for Law and Policy and the Impact Fund as *cy pres* beneficiaries, the funds associated with any checks that are issued by the Settlement Administrator and not timely negotiated will be paid to those organizations, in equal shares, as a *cy pres* award.

## 6. SERVICE AWARDS

  6.1. The Settlement Administrator will pay the following service awards from the Class Monetary Awards Settlement Fund:  (i) a Court-approved Service Award of $25,000.00 for each

of the four (4) Class Representatives; (ii) a Court-approved Service Award of $4,000.00 for each of the sixty-six (66) collective action members who were deposed, provided they do not opt-out of the settlement; (iii) a Court-approved Service Award of $1,000.00 for each of the fifty-five (55) collective action members who submitted written discovery but who were not deposed and for the one (1) collective action member who submitted a declaration, but did not submit written discovery and was not deposed, provided they do not opt-out of the settlement; and (iv) a Court-approved Service Award of $100.00 for each of the 550 collective action members who did not participate in discovery, provided they do not opt-out of the settlement.  The Service Awards are in addition to the Class Member Awards to which the Service Representatives are entitled pursuant to this Settlement Agreement.

6.2.    The Settlement Administrator will pay the aforementioned Service Awards within sixty (60) days after the Effective Date.  Attached hereto as Exhibit A is the Service Award List containing the names of the individuals referenced in this Section ("Service Representatives"). The face of each Service Award check shall clearly state that the check must be cashed within six (6) months. All payments distributed by the Settlement Administrator must be accompanied by a cover letter stating words in bold to the effect that "the check must be cashed or deposited within six months or it will become void."

6.3.    The Service Awards will be deemed non-wage income, and contingent upon a Service Representative negotiating her Service Award, the payment shall be reported to the appropriate tax authorities and the Service Representative on an IRS Form 1099. Service Representatives will be responsible for any individual tax liability, penalties, and interest arising from the allocation of the Service Awards. Class Counsel and Defendants' Counsel do not intend this Settlement Agreement to constitute legal or tax advice regarding any federal, state or local tax

17

issue. To the extent that this Settlement Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties. The tax issues for each Service Representative are unique to her, and each Service Representative is advised to obtain tax advice from her own tax advisor with respect to any payments resulting from this Settlement.

6.4.     Class Counsel will submit paperwork in support of the Service Awards prior to the Final Approval Hearing. Any reduction by the Court in the Service Awards will not be a basis for rendering the entire Settlement Agreement voidable or unenforceable.

## 7.     ATTORNEYS' FEES, LITIGATION COSTS, AND SETTLEMENT ADMINISTRATION COSTS.

7.1.     Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel will request an award of Class Counsel's attorneys' fees and reasonable litigation expenses, including the fees and costs in connection with seeking Court approval of the Settlement on the class' behalf, the claims process, and monitoring the Settlement Agreement.

7.2.     A total gross amount to be determined by the Court, up to a maximum of Three Million Dollars and Zero Cents ($3,000,000.00), shall be awarded from the Total Settlement Amount to pay Class Counsel's attorneys' fees and litigation expenses.

7.3.     Any reduction by the District Court in the attorneys' fees and expenses awarded to Class Counsel will not be a basis for rendering the entire Settlement Agreement voidable or unenforceable.

7.4.     Prior to the payment of attorneys' fees and costs, Class Counsel will provide the Settlement Administrator with Tax Payer Identification Numbers for Class Counsel and executed

Form W-9s. Form 1099s shall be provided to Class Counsel for the payments made to Class Counsel.

      7.5.    At least five (5) business days prior to the Final Approval Hearing, the Settlement Administrator shall provide the Court and Counsel for the Parties with a statement detailing its costs of administration.  The Parties and the Settlement Administrator agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.

      7.6.    Prior to the Final Approval Hearing, Class Counsel will apply to the Court for payment from the Total Settlement Amount for the Settlement Administrator's fees and costs, which shall not exceed Fifty Thousand Dollars and Zero Cents ($50,000.00).  Any reduction by the District Court in the award for the Settlement Administrator's fees and costs will not be a basis for rendering the entire Settlement Agreement voidable or unenforceable.

## 8.    NOTICE, OBJECTIONS, EXCLUSIONS AND  FINAL APPROVAL HEARING.

      8.1.    **Settlement Administrator's Duties.**

      (a)    The Settlement Administrator shall (1) mail the Notice of Class Action Settlement (the "Notice" or "Class Notice") to Class Members; (2) seek additional information from Class Members or Class Counsel, when appropriate; (3) respond to questions from Class Members; (4) receive the amounts to be paid to Settlement Class Members per application of the Allocation Formula and distribute awards to Settlement Class Members; (5) maintain a toll-free number for communicating with Settlement Class Members; (6) mail checks to Settlement Class Members and Class Counsel; and (7) any other duties necessary to carry out its responsibilities described in this Agreement.

      8.2.    **Notice**.

(a)     Within ten (10) business days of the Preliminary Approval Date, Merck shall provide to the Settlement Administrator a list of all Class Members, including name, employee ID, job title, last known address and telephone number.  Merck will provide this information in a format reasonably acceptable to the Settlement Administrator.  The Settlement Administrator will maintain this list in the strictest confidence and shall not disclose it to anyone.

(b)     No later than ten (10) business days after the date that Merck provides the list of all Class Members described in Section 8.2(a), the Settlement Administrator shall mail the Notice in substantively the form attached hereto as Exhibit B, and as approved by the Court, to Class Members, by United States first class mail, postage prepaid.  The Parties intend to provide actual notice to each Class Member, to the extent practicable.

(c)     In order to provide the best notice practicable, the Settlement Administrator will do the following before mailing the Notice: (1) run the list of all Class Members through the United States Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

(d)     If envelopes from the mailing of the Notice are returned with forwarding addresses, the Settlement Administrator will re-mail the Notice to the new address within three (3) business days.

(e)     In the event that a Notice is returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender," the Settlement Administrator shall perform a standard skip trace in an effort to ascertain the current address of the particular Class Member in question and,

20

if such an address is ascertained, the Settlement Administrator will re-send the Notice within three (3) business days of receiving the newly ascertained address; if no updated address is obtained for that Class Member, the Notice shall be sent again to the Class Member's last known address.  In either event, the Notice shall be deemed received once it is mailed for the second time unless the Class Member can demonstrate good reason why she did not receive it.

(f)     With respect to envelopes marked "Return to Sender," the Settlement Administrator may also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Class Members to obtain their current addresses.

(g)     The Settlement Administrator shall provide to Merck's Counsel and Class Counsel, at least ten (10) business days prior to the Final Approval Hearing, a list of Class Members to whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

(h)     Class Counsel shall provide the Court, at least five (5) calendar days prior to the Final Approval Hearing, a declaration by the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice of Class Action Settlement and Claim Form to Class Members.

8.3.    **Objections.**

(a)     Settlement Class Members, except for Named Plaintiffs, may object to the Settlement.  Settlement Class Member objections to this Settlement Agreement must be submitted in writing, and must include a detailed description of the basis of the objection.  Any Class Member who has submitted a valid, timely and unrescinded request to be excluded from the Settlement may not object to the Settlement.

21

(b)      Objections must be mailed to the Settlement Administrator within forty-five (45) days after the Notice was originally mailed by the Settlement Administrator.  The postmark date of the objection shall be the exclusive means for determining that an objection is timely. Settlement Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

(c)      Upon receipt of an objection, the Settlement Administrator will stamp a received date on the objection, retain the original envelope, and shall serve copies of both the objection and envelope it came in on Class Counsel and Defendants' Counsel no later than three (3) business days after receipt thereof.

(d)      No one may appear at the Final Approval Hearing for the purpose of objecting to the Settlement Agreement without first having served her objection(s) in writing within forty-five (45) days after the Notice was mailed to her.  Any lawyer representing a Settlement Class Member for the purpose of making objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to Counsel for the Parties.

(e)      A Class Member who submits a timely objection shall be permitted to rescind it by submitting a signed statement withdrawing the objection to Class Counsel—who shall provide a copy to Defendants' Counsel—so as to be received no later than eight (8) days prior to the Final Approval Hearing, or as otherwise ordered by the Court.

(f)      At least seven (7) days prior to the Final Approval Hearing, Class Counsel shall file with the Court all valid, timely, and non-rescinded objections.

8.4.   **Exclusions.**

(a)      Class Members, except for the Named Plaintiffs, may exclude themselves, or opt-out of the Settlement by mailing to the Settlement Administrator a signed, written request for exclusion, post-marked not more than forty-five (45) days after the Notice was originally mailed by the Settlement Administrator.   To be valid, the written request for exclusion must contain the name, address and telephone number of the person requesting exclusion.   The opt-out request must be personally signed by the Class Member who seeks to opt-out.   No opt-out request may be made on behalf of a group of Class Members.   The request for exclusion must clearly express the Class Member's intent to be excluded from the Settlement.   The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted.   Any person who timely submits such a request for exclusion shall be barred from participation in the Settlement, shall receive no benefit from the Settlement and shall be barred from objecting to the Settlement.

(b)      Upon receipt of a request for exclusion, the Settlement Administrator will stamp a received date on the request, retain the original envelope, and shall serve copies of both the request for exclusion and envelope it came in on Class Counsel and Defendants' Counsel no later than three (3) business days after receipt thereof.   Further, the Settlement Administrator shall each calendar week notify Merck's Counsel and Class Counsel by fax or email of the number of individuals who have to that date submitted valid and timely requests for exclusion.

(c)      A Class Member who submits a valid and timely request for exclusion shall be permitted to rescind by submitting a signed statement withdrawing the opt-out request to Class Counsel—who shall provide a copy to Defendants' Counsel—so as to be actually received not later than eight (8) days prior to the Final Approval Hearing or as otherwise ordered by the Court.

(d)     At least seven (7) days prior to the Final Approval Hearing, Class Counsel shall file with the Court all valid, timely, and non-rescinded opt-out requests. The Settlement Class will not include those individuals who file and serve a timely opt-out statement, and individuals who opt-out are not entitled to any monetary award under this Settlement Agreement.

8.5.     **Final Approval Hearing.**

(a)     Upon Preliminary Approval, a briefing schedule and Final Approval Hearing date will be set at the Court's convenience. Named Plaintiffs' Motion for Final Approval and for Certification of the Class and Collective will be due no earlier than thirty (30) calendar days following the close of the objection and opt-out period, and the Final Approval Hearing will be held no earlier than forty-five (45) calendar days following the close of the objection and opt-out period.

## 9.     RELEASES

9.1.     Following the Effective Date, each Settlement Class Member will release the Released Parties from the Released Claims. Specifically, every Settlement Class Member releases any and all claims of whatever nature, known or unknown, that the Settlement Class Member may have against the Released Parties, arising out of the same factual predicate as the class and collective claims asserted in the Civil Action, including any and all class and collective claims asserted in the original and subsequently amended complaints filed in the Civil Action. This release does not include or cover any actions or omissions occurring after the Preliminary Approval Date. Specifically included in this release are any and all employment discrimination claims or benefits claims that were or could have been asserted arising out of the same transactions, series or connected transactions, occurrences or nucleus of operative facts that form the basis of the class and collective claims set forth in the Civil Action, including but not limited to, claims of

24

alleged gender or pregnancy discrimination in employment or in the provision of employee benefits under Title VII, the EPA, the FMLA, ERISA (except for vested benefits otherwise entitled) and any other federal, state, or local statutes, common law, or regulation that may apply to such discrimination in employment or employee benefit claims. Furthermore, this Release includes claims that were or could have been asserted for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII, the EPA, the FMLA, ERISA, or any other federal, state, local or common laws or regulations relating to or arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the class and collective claims set forth in the Civil Action.

9.2. Every Settlement Class Member, as defined above, shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed the Released Claims, as applicable, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.

9.3. **Waiver of Unknown Claims (California-Only).** Settlement Class Members residing in California acknowledge there is a risk that subsequent to the execution of this Agreement, they may incur or suffer damage, loss, or injury to their person or property that is unknown or unanticipated at the time of the execution of this Agreement. The releases contained herein shall and do apply to all unknown and unanticipated results or any and all matters caused by or connected with the Released Claims. Accordingly, Settlement Class Members acknowledge that they have read the provisions of the California Civil Code Section 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

25

TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members acknowledge that Section 1542 gives them (the "Creditor" in the capitalized text quoted above) the right not to release existing claims against Merck (the "Debtor" in the capitalized text quoted above) of which they are not now aware, unless they voluntarily choose to waive this right.  By participating in this Settlement, Settlement Class Members voluntarily and knowingly waive the rights described in Section 1542, and elect to release all Released Claims that now exist in their favor, whether known or unknown.

9.4.    The Parties and Settlement Class Members acknowledge that the covenants and promises made by Merck herein constitute adequate consideration in exchange for the Released Claims as defined in Section 3.1(s) above.

9.5.    **Reports to Government Entities.**  Nothing in this Agreement, including the Release of Claims, restricts or prohibits any Settlement Class Member from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission ("EEOC"), the Department of Labor ("DOL"), the National Labor Relations Board ("NLRB"), the Department of Justice ("DOJ"), the Securities and Exchange Commission ("SEC"), Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation.

However, Settlement Class Members are waiving their right to receive any individual monetary relief resulting from any such claims that would otherwise be released under the terms

26

of this Agreement, regardless of whether they or another party have filed them, and in the event any Settlement Class Member obtains such monetary relief, the Defendants will be entitled to an offset for the payments made pursuant to this Agreement, except where such limitations are prohibited as a matter of law. Whistleblower awards from the SEC are specifically exempted from this provision.

9.6.    Nothing in this Settlement Agreement shall be construed to bar any claims of Settlement Class Members based on or arising out of events occurring after the Preliminary Approval Date.

## 10.    NO ADMISSION, NO DETERMINATION

10.1.    This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity or accuracy of any of the allegations, claims or defenses of any party in this case. The Named Plaintiffs, on behalf of themselves and the Class, continue to assert the merits and validity of their claims under Title VII and the EPA. By entering into this Agreement, Merck does not admit or concede, expressly or impliedly, but denies that it has in any way violated Title VII, the EPA, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity or accuracy of any of the allegations, claims or defenses in this case.

10.2.    Nothing in this Settlement Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement, is intended by the Parties to, nor shall any of the foregoing constitute, be

introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature as evidence (unless another version of the same materials or information is otherwise properly obtained through valid means including discovery, investigation or public records otherwise properly obtained through valid means including discovery, investigation or public records) that tends to prove or disprove the existence of discrimination or any violation of Title VII, the EPA, the FMLA, ERISA or any parallel state and local laws, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.  Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered into in connection herewith.

## 11.    MERCK'S RIGHT TO WITHDRAW OR MODIFY THE AGREEMENT

11.1.   If a total of thirty (30) or more Class Members submit valid, timely, and unrescinded requests for exclusion pursuant to the provisions described in the Notice, Merck shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel.  If Merck does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether Merck is entitled to withdraw from the Agreement and has validly done so.  Merck shall have thirty (30) days after the expiration of Class Members' deadline to seek exclusion from the Settlement to withdraw from (or modify through negotiation) this Agreement on the basis that a total of thirty (30) or more Class Members have submitted valid,

timely, and unrescinded requests for exclusion.  If Merck does withdraw in conformity with the provisions and time limits of this Section, any expenses incurred by the Settlement Administrator prior to or in connection with this withdrawal shall be borne by Merck.

## 12.   DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

12.1.   Promptly upon execution of this Agreement, but by no later than thirty (30) days thereafter, Class Counsel shall apply to the Court for the entry of an order (the "Preliminary Approval Order"):

(a)     Scheduling a Final Approval Hearing as soon as practicable on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the members of the class;

(b)     Approving as to form and content the proposed Notice;

(c)     Directing the mailing of the Notice by first class mail to the Class Members;

(d)     Preliminarily approving the Settlement; and

(e)     Certifying the Rule 23 Class and EPA Collective Action for settlement purposes.

12.2.   In moving for the entry of the Preliminary Approval Order, Class Counsel will submit to the Court for its approval this Settlement Agreement and attachments, and supporting papers, which shall describe the terms of this Settlement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

12.3.   Within ten (10) business days following the filing of this Agreement with the Court, Merck shall serve upon the appropriate State Official in which any Class Member resides, as determined by Merck's records, a notice of the proposed Settlement in compliance with the requirements of CAFA, 28 U.S.C. §1715.

**13.     DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL**

13.1.   In connection with the Final Approval by the Court of the Agreement, Class Counsel will submit a proposed final order and judgment:

(a)     Granting Final Approval to the Agreement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(b)     Granting final certification of the Rule 23 Class and EPA Collective Action for settlement purposes;

(c)     Approving the Service Awards in accordance with this Settlement Agreement, unless otherwise directed by the Court;

(d)     Approving Class Counsel's application for an award of attorneys' fees and expenses in accordance with this Settlement Agreement, unless otherwise directed by the Court;

(e)     Approving an award for the Settlement Administrator's fees and costs fees in accordance with this Settlement Agreement, unless otherwise directed by the Court; and

(f)     Dismissing the Civil Action with prejudice and permanently barring all Settlement Class Members, including the Class Representatives from prosecuting against any Released Parties any of the Released Claims.

**14.     NOTICES**

14.1.   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To the Class Representatives or to any Class Member:

David W. Sanford
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019

To the Defendants:

Michael S. Burkhardt
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

## 15.   VOIDING THE AGREEMENT

15.1.   In the event this Settlement Agreement, or any amended version agreed upon by the Parties (except for a modification of the attorneys' fees and costs, the fees and costs for Settlement Administrator, and/or the Service Awards as set forth in this Agreement), does not obtain judicial approval for any reason or fails to become effective in accordance with its terms (or, if following approval by the Court, such approval is reversed or substantively modified by an appellate court) this Settlement Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.  In the event this Agreement becomes null and void for any reason, Merck's Counsel, Merck, Class Counsel, and Class Representatives will proceed as follows:

(a)   Merck's Counsel, Merck, Class Counsel, and Class Representatives agree that they shall from the date that judicial approval is denied, and going forward, keep strictly confidential any non-public information concerning the Agreement or any of the discussions and or negotiations regarding the Agreement, to the fullest extent permitted by law.

(b)   The Parties shall be restored to their respective positions that existed in this Civil Action prior to entering into this Settlement Agreement, and the Civil Action will resume unless the Parties jointly agree to attempt to renegotiate the Settlement and seek Court approval of

the renegotiated settlement or Plaintiffs seek reconsideration or appellate review of the applicable decision denying judicial approval.

(c)     In the event any reconsideration and/or appellate review is sought and thereafter denied, or the Parties do not renegotiate the Settlement and obtain Court approval of the renegotiated settlement, the Parties shall have no further rights or obligations under this Agreement.

(d)     If judicial approval never occurs, the Parties will retain all rights and defenses in the Civil Action, including without limitation Merck's right to contest whether this Civil Action should be certified as a class and/or collective action and to contest the merits of the claims being asserted by Plaintiffs in this Civil Action, and Plaintiffs shall be precluded from attempting to offer as evidence in any subsequent proceedings that the stipulated class for settlement purposes is a basis to support class certification for any purpose.  All negotiations and information and materials pertaining in any way to this Agreement or to the settlement of the Civil Action will be inadmissible and remain confidential to the fullest extent permitted by law.

(e)     Notwithstanding the foregoing, if any order entered in this Civil Action results in materially modifying, setting aside, or vacating any portion of the Agreement, with the exception of any modification of the amount of attorneys' fees and costs to be paid to Class Counsel, the amount of fees and costs to be paid to the Settlement Administrator or the amount of the Service Awards to be paid to the Service Representatives, each party adversely impacted by the order shall have the absolute right, at its sole discretion, to treat such order as an event permanently preventing judicial approval.  To exercise this right, the party must inform the other party, in writing, of the exercise of this right, within fourteen (14) days of receiving notice of any order modifying, setting aside, or vacating any portion of this Agreement.  Before either party

elects to exercise its right to treat such order as an event permanently preventing judicial approval, that party must meet and confer in good faith with the other party to determine if an agreement can be reached modifying this settlement to the mutual satisfaction of the Parties.

(f)     If the Class Notice was previously distributed, a notice will be provided to Class Members that the Settlement did not receive final judicial approval and that, as a result, no payments will be made to Class Members under the Settlement. Such notice shall be mailed by the Settlement Administrator via First Class United States Mail, postage prepaid, to the last address used in mailing the Class Notice.  Except pursuant to Section 11.1 above, the Parties shall jointly bear all expenses incurred by the Settlement Administrator.

## 16.     ENFORCEMENT AND GOVERNING LAW

16.1.    The Parties will work diligently and in good faith to resolve all disputes that may arise between them concerning the rights, obligations, and duties of the Parties to this Agreement. In the event that the Parties cannot agree, any breach of contract claim concerning this Agreement shall be brought in the United States District Court for the District of New Jersey, and the Parties shall comply with the Local Rules of the District of New Jersey to relate the action to the Civil Action and request that the Court assign the matter to Judge Shipp.

Enforcement of this Agreement shall be prosecuted by Class Counsel or Defendants' counsel only, not third parties.  In any action brought to enforce this Agreement, the Court may, in its discretion, award reasonable attorneys' fees and expenses to the prevailing party.

16.2.    Federal law shall govern the validity, construction and enforcement of this Settlement Agreement.   To the extent that the validity, construction or enforcement of this Settlement Agreement is governed by state law, the law of the State of New Jersey shall apply.

## 17.     OTHER CONDITIONS OF SETTLEMENT

17.1.   **Public Comment.**  The parties and their counsel will not make or cause to made any statement in a public forum, including social media, or issue any communication, written or otherwise, to the press or other public outlet relating to the Civil Action, the claims asserted in the Civil Action, or this Agreement except for a mutually agreed upon joint statement regarding the settlement.  Nothing however precludes Class Counsel from posting on their website any publicly filed document or Court-issued communication relating to the settlement to effectuate their fiduciary responsibilities.

17.2.   **Non-Disparagement.**  As a material inducement for Merck to enter into this Agreement, each Plaintiff agrees that she will not make any material, public (such as on Facebook, Twitter, other social media sites or any other news or media outlets), negative or disparaging comments about Merck or any of its products, directors, officers, or employees.  However, nothing in this Settlement shall prevent the Plaintiffs from testifying truthfully under oath in any legal proceeding or from cooperating in any governmental investigation.

17.3.   **Tolling Agreement.**  Any and all tolling agreements executed by Named Plaintiffs or Settlement Class Members and Defendants relating to any claim that Named Plaintiffs or Settlement Class Members may have against Defendants shall terminate as of the Effective Date.

17.4.   **Entire Agreement.**  The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.  This Agreement, including its Exhibits constitute the entire agreement between the Parties and Settlement Class Members concerning the subject matter hereof.  No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement.  In the event of any conflict between this Agreement and any other Settlement-related document, the Parties and Settlement Class Members intend that this Agreement shall be controlling.

17.5.   **Modification.**   This Agreement and its attachments may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

17.6.   **Failure to Insist on Strict Compliance.**   The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

17.7.   **Settlement Agreement Binding**.   This Settlement Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors and assigns; provided, however, that this Settlement Agreement shall not inure to the benefit of any third party.

17.8.   **No Drafting Presumption**.   All Parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

17.9.   **Dispute as to Meaning of Agreement Terms**.   In the event of any dispute or disagreement with respect to the meaning, effect or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the Parties agree that such dispute will be resolved and adjudicated only in accordance with Section 16 of this Settlement Agreement.

17.10.   **Interpretation of Terms.**   Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

17.11.   **Paragraph and Section Headings.**   Paragraph and Section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

17.12.  **Counterparts and Electronic Signatures.**  This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties and Settlement Class Members.  A facsimile signature or signature scanned and sent by electronic mail shall have the same force and effect as an original signature.

## 18.     PARTIES' AUTHORITY

18.1.   The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties and the Settlement Class Members to the terms and conditions hereof.

18.2.   All of the Parties acknowledge that through this Settlement Agreement and its attachments, they and the Settlement Class Members are being advised that they may consult an attorney regarding their participation in this Agreement, and the Parties acknowledge that they in fact have been represented by competent, experienced Counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of Counsel who have jointly prepared this Agreement.

18.3.   All of the Parties and Settlement Class Members acknowledge that they are participating voluntarily and knowingly in exchange for the consideration described herein. The Parties and Settlement Class Members further acknowledge that they were provided with a reasonable period of time within which to consider this Agreement.

*[Remainder of this page intentionally left blank.]*

Dated: _12/19/18_                              Dated: _____

BY: _____                        BY: _____
David W. Sanford                                   Michael S. Burkhardt
Andrew Melzer                                      **MORGAN LEWIS & BOCKIUS LLP**
Russell Kornblith                                  1701 Market Street
**SANFORD HEISLER SHARP, LLP**                     Philadelphia, PA 19103
1350 Avenue of the Americas, 31st Floor            michael.burkhardt@morganlewis.com
New York, NY 10019
dsanford@sanfordheisler.com                        Blair J. Robinson
amelzer@sanfordheisler.com                         **MORGAN LEWIS & BOCKIUS LLP**
rkornblith@sanfordheisler.com                      101 Park Avenue
                                                   New York, NY 10178
                                                   blair.robinson@morganlewis.com

Deborah Marcuse                                    Krissy A. Katzenstein
**SANFORD HEISLER SHARP, LLP**                     **MORGAN, LEWIS & BOCKIUS LLP**
111 South Calvert Street, Suite 1950               1111 Pennsylvania Ave, NW
Baltimore, MD 21202                                Washington, DC 20004
dmarcuse@sanfordheisler.com                        krissy.katzenstein@morganlewis.com

Dated: _____          Dated:  December 19, 2018


BY: _____          BY: _Michael S. Burkhardt_

    David W. Sanford
    Andrew Melzer
    Russell Kornblith
    **SANFORD HEISLER SHARP, LLP**
    1350 Avenue of the Americas, 31st Floor
    New York, NY 10019
    dsanford@sanfordheisler.com
    amelzer@sanfordheisler.com
    rkornblith@sanfordheisler.com

    Michael S. Burkhardt
    **MORGAN LEWIS & BOCKIUS LLP**
    1701 Market Street
    Philadelphia, PA 19103
    michael.burkhardt@morganlewis.com

    Blair J. Robinson
    **MORGAN LEWIS & BOCKIUS LLP**
    101 Park Avenue
    New York, NY 10178
    blair.robinson@morganlewis.com

    Deborah Marcuse
    **SANFORD HEISLER SHARP, LLP**
    111 South Calvert Street, Suite 1950
    Baltimore, MD 21202
    dmarcuse@sanfordheisler.com

    Krissy A. Katzenstein
    **MORGAN, LEWIS & BOCKIUS LLP**
    1111 Pennsylvania Ave, NW
    Washington, DC 20004
    krissy.katzenstein@morganlewis.com

DATE: _____          BY: _____
                                        Kelli Smith


DATE: _____          BY: _____
                                        Kandice Bross


DATE: _____          BY: _____
                                        Rachel Mountis


DATE: _____          BY: _____
                                        Kate Whitmer


DATE:  December 19, 2018           BY: _____

                                        Jennifer Zachary
                                        Merck & Co., Inc., Merck Sharp & Dohme
                                        and Intervet, Inc.
                                        Executive Vice President and General
                                        Counsel Legal, Security, Safety &
                                        Environment

DATE: _12/18/18_                       BY: *Kelli Smith*
                                          Kelli Smith (Dec 18, 2018)
                                          Kelli Smith

DATE: _____      BY: _____
                                          Kandice Bross

DATE: _____      BY: _____
                                          Rachel Mountis

DATE: _____      BY: _____
                                          Kate Whitmer

DATE: _____      BY: _____
                                          Jennifer Zachary
                                          Merck & Co., Inc., Merck Sharp & Dohme and Intervet, Inc.
                                          Executive Vice President and General Counsel
                                          Legal, Security, Safety & Environment

DATE: _____   BY: _____
                                     Kelli Smith

DATE: **Dec 19, 2018**              BY: _____
                                     Kandice Bross (Dec 19, 2018)
                                     Kandice Bross

DATE: _____   BY: _____
                                     Rachel Mountis

DATE: _____   BY: _____
                                     Kate Whitmer

DATE: _____   BY: _____
                                     Jennifer Zachary
                                     Merck & Co., Inc., Merck Sharp & Dohme
                                     and Intervet, Inc.
                                     Executive Vice President and General
                                     Counsel
                                     Legal, Security, Safety & Environment

DATE: _____     BY: _____
                                      Kelli Smith

DATE: _____     BY: _____
                                      Kandice Bross

DATE: _____     BY: _____
                                      Rachel Mountis

DATE:   Dec 19, 2018             BY: _____
        _____          K.Whitmer Whitmer (Dec 19, 2018)
                                      Kate Whitmer

DATE: _____     BY: _____
                                      Jennifer Zachary
                                      Merck & Co., Inc., Merck Sharp & Dohme
                                      and Intervet, Inc.
                                      Executive Vice President and General
                                      Counsel
                                      Legal, Security, Safety & Environment

DATE: _____     BY: _____
                                       Kelli Smith


DATE: _____     BY: _____
                                       Kandice Bross


Dec 18, 2018

DATE: _____     BY: _____
                                       Rachel Mountis (Dec 18, 2018)
                                       Rachel Mountis


DATE: _____     BY: _____
                                       Kate Whitmer


DATE: _____     BY: _____
                                       Jennifer Zachary
                                       Merck & Co., Inc., Merck Sharp & Dohme
                                       and Intervet, Inc.
                                       Executive Vice President and General
                                       Counsel
                                       Legal, Security, Safety & Environment