# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

KELLI SMITH, individually and on behalf of a class of similarly situated female employees,

    Plaintiffs,

v.

MERCK & CO., INC., et al.,

    Defendants.

Civil Action No. 13-2970 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Plaintiffs Kelli Smith, Kandice Bross, Rachel Mountis, and Kate Whitmer's (collectively, "Plaintiffs") Motion for Preliminary Approval of Class Action Settlement on behalf of themselves and others similarly situated.[1] (ECF No. 420.) Defendants Merck & Co., Inc., Merck Sharp & Dohme, Corp., and Intervet, Inc. (collectively, "Defendants") did not oppose the Motion. The Court has carefully considered Plaintiffs' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Motion is GRANTED.

---

[1] Also before the Court is Plaintiffs' unopposed Motion to Substitute Exhibit (ECF No. 426) and Plaintiffs' Motion for a Status Conference (ECF No. 429). The Court grants Plaintiffs' Motion to Substitute Exhibit (ECF No. 426), and refers to the corrected figures contained within substituted Exhibit A. (*See* ECF No. 426-1.) The Court denies as moot Plaintiffs' Motion for a Status Conference. (ECF No. 429.)

I. **Background**

On May 9, 2013, Plaintiff Kelli Smith filed the instant matter in the United States District Court for the District of New Jersey, alleging class claims resulting from gender discrimination. (ECF No. 1.) On January 16, 2014, Plaintiffs filed an Amended Complaint (ECF No. 22), and on May 4, 2016, Plaintiffs filed a Second Amended Complaint (ECF No. 137), which remains operative. Plaintiffs bring claims on behalf of a nationwide class of female sales representatives pursuant to: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); the Equal Pay Act, 29 U.S.C. § 206(d) ("Equal Pay Act" or "EPA");[2] and the Employee Retirement and Income Security Act, 29 U.S.C. § 1140, *et seq.* ("ERISA").[3] (*See generally* Second Am. Compl. ("SAC"), ECF No. 137.)

On April 27, 2016, the Court granted Plaintiffs' motion for conditional certification under the EPA. (ECF No. 130.) Notice of the EPA collective action was issued to over three thousand female sales representatives nationwide, and 671 representatives joined the collective action. (Marcuse Cert. ¶¶ 24-25, ECF No. 422; *see also* Substitute Ex. 1, ECF No. 426.)

"The Parties engaged in extensive class discovery, exchanging hundreds of thousands of pages of documents, and completing more than [eighty] depositions." (Marcuse Cert ¶ 26.) "Plaintiffs deposed [seventeen of Defendants'] fact witnesses and also deposed [eight of Defendants' Federal Rule of Civil Procedure[4]] 30(b)(6) deponents[,] . . . the four Named Plaintiffs

---

[2] The Equal Pay Act amended the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

[3] The Second Amended Complaint also raised claims under the New Jersey Law Against Discrimination, N.J. Stat. 10:5-1, *et seq.*, and the New Jersey Family Leave Act, N.J. Stat. 34:11B-1, *et seq.* (*See id.*)

[4] All references to Rules hereinafter pertain to the Federal Rules of Civil Procedure.

as well as [sixty-six] Opt-In Plaintiffs from around the country." (*Id.* ¶ 27.) The Parties engaged in mediation before Mark S. Rudy, Esq., and on October 1, 2018, the Parties reached an agreement in principle, and have since finalized the instant Settlement Agreement. (*Id.* ¶¶ 35-37.)

## II. Discussion

### A. Conditional Class Certification for Settlement Purposes

As an initial matter, no objections have been raised with respect to class certification for the purpose of settlement. Notwithstanding, the Court conducts a two-step analysis prescribed by Rule 23 to determine whether to certify the class for settlement purposes. Fed. R. Civ. P. 23(a); *see Sheinberg v. Sorensen*, No. 00-6041, 2016 WL 3381242, at *3 (D.N.J. June 14, 2016) (citing Fed. R. Civ. P. 23(a) advisory committee's note).

> To certify a settlement class, the plaintiffs must satisfy the four threshold requirements of Rule 23(a)—namely numerosity, commonality, typicality, and adequacy—and one of the subparts of Rule 23(b)—in this case, the requirements of Rule 23(b)(3) that the "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Yaeger v. Subaru of Am., Inc.*, No. 14-4490, 2016 WL 4541861, at *5 (D.N.J. Aug. 31, 2016) (quoting Fed. R. Civ. P. 23(b)(3)).

The proposed class of Plaintiffs ("Settlement Class") is:

> [A]ll female employees who are or were employed by Merck Sharp & Dohme Corp. or Intervet, Inc., or any of their affiliates, parents, subsidiaries, predecessors, successors, or assigns, and assigned to a M05, M06, M07, M08, M09, S1 and/or S2 Sales Representative position in the United States for at least one day between December 8, 2010 and October 1, 2018.

(Class Action Settlement Agreement, Ex. 1 § 3.1(d), ECF No. 422-1.) As discussed below, for settlement purposes only, the Court finds that the proposed Settlement Class meets the requirements of Rule 23, and conditionally certifies the Settlement Class.

1. <u>Numerosity</u>

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Yaeger*, 2016 WL 4541861, at *5. When examining the potential size of a class, "[p]recise enumeration of the members of a class is not necessary . . . [and] [i]t is permissible to estimate class size." *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) (citation omitted). Moreover, "[j]oinder of all members of the class need not be impossible to satisfy Rule 23 . . . [but rather] difficult[] or inconvenien[t]." *Id.* at 405-06. "There is no minimum number needed for a suit to proceed as a class action[,]" but where a class is likely to exceed forty members, the Rule 23(a) numerosity requirement is generally met. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). Here, Plaintiffs contend there are approximately 3,000 sales representatives. (Pls.' Moving Br. 7, ECF No. 421.) The Court, accordingly, finds that estimate sufficient to satisfy the numerosity requirement.

2. <u>Commonality and Predominance</u>

In Rule 23(b)(3) cases, such as this one, the Third Circuit has applied "the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance tests together." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd sub nom.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998); *see, e.g.*, *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 626 (3d Cir. 1996) ("Because [Rule] 23(b)(3)'s predominance requirement incorporates the commonality requirement, [the court] will treat them together."). Commonality requires that the "common contention . . . must be of such a nature that

it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Ultimately, "even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Id.* at 369.

Rule 23(b)(3) then requires that "questions of law or fact common to the class [must] predominate over any questions affecting only individual members[.]" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). Although the predominance requirement is "far more demanding" than Rule 23(a)(2), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997), Rule 23(b)(3) class actions need not be as cohesive as Rule 23(b)(2) class actions because Rule 23(b)(3) class members have an opportunity to opt out, *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998).

Here, the common question is whether Defendants implemented a salary grade structure that disadvantaged female sales representatives. In resolving the merits of Plaintiffs' claims, therefore, the focus is on Defendants' salary grade structure and the resulting harm it caused, and not factual differences among individual class members. The Court, accordingly, finds that the proposed class satisfies the commonality and predominance requirements of Rules 23(a)(2) and 23(b)(3), respectively.

3. <u>Adequacy and Typicality</u>

The adequacy and typicality analyses under Rules 23(a)(3) and 23(a)(4), often merge and may, therefore, be discussed together. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 186 (3d Cir. 2001) (providing that "typicality criteria tend to merge into [the] analysis of adequacy of representation under [Rule] 23(a)").

5

The adequacy prong of Rule 23(a)(4) requires two steps of inquiry. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009). "First, the adequacy inquiry 'tests the qualifications of the counsel to represent the class.'" *Id.* (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)). "The second component of the adequacy inquiry seeks 'to uncover conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532). Additionally, "[t]he burden to prove that the representation is not adequate rests with the party challenging the class representation." *Buzzarro v. Ocean City*, No. 07-5665, 2009 WL 1617887, at *14 (D.N.J. June 9, 2009). Furthermore, "[n]ot every distinction between a class member and a class representative renders the representative inadequate." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016).

The typicality analysis "focuses on the similarity of the legal theory and legal claims; the similarity of the individual circumstances on which those theories and claims are based; and the extent to which the proposed representative may face significant unique or atypical defenses to [the named plaintiffs'] claims." *In re Schering Plough Corp.*, 589 F.3d at 597-98. "[F]actual differences among the claims of the putative class members do not defeat certification." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). In fact, "'[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *In re Prudential*, 148 F.3d at 311 (quoting *Baby Neal*, 43 F.3d at 58).

Here, Plaintiffs' claims are based on the same policy and conduct of Defendants, *i.e.*, that Defendants implemented a salary grade structure that disadvantaged female sales representatives. Further, Class Counsel has presented sufficient information demonstrating their qualifications (*see*

Sanford Decl. ¶¶ 9-16 (presenting significant support for Class Counsels' qualifications, including their recognition in *Hernandez et al. v. C&S Wholesale Grocers, Inc.*, No. 06-2675, 2008 U.S. Dist. LEXIS 118666 (S.D.N.Y. July 31, 2008), and *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014)), and have zealously advocated for their clients, represented in part by the numerous years this matter has been actively litigated (*see e.g.*, Marcuse Cert. ¶¶ 11-37). Moreover, the Class Representatives have spent significant time assisting Class Counsel, including "helping to plan and organize the litigation, and consulting with Class Counsel to the benefit of their fellow Class Members, as well as participating in written discovery and depositions." (Marcuse Cert. ¶ 47.) Finally, there does not appear to be any "conflict or antagonism" between Plaintiffs and the settlement class members. (Pls.' Moving Br. 9 (citing *Alfaro v. First Advantage Screening Sols., Inc.*, No. 15-5813, 2017 WL 3567974, at *3 (D.N.J. Aug. 16, 2017).) The Court, accordingly, finds the proposed class satisfies the adequacy and typicality requirements of Rules 23(a)(3) and 23(a)(4).

    4.    <u>Superiority</u>

Finally, as discussed above, the Court finds that common questions of fact and law predominate over questions affecting individual Settlement Class members. "Fairness is an explicit criterion for a superiority determination, and . . . must be balanced against any disincentive for class action litigation which might result from denying class certification." *In re N.J. Tax Sales Certificates Antitrust Litig.*, No. 12-1893, 2016 WL 5844319, at *5 (D.N.J. Oct. 3, 2016) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 761 (3d Cir. 1974)). The Settlement Class contains approximately three-thousand members, "and, absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals." *Alfaro*, 2017 WL 3567974, at *4. Further, individual actions would burden the Court. *See e.g., id.* The Court, accordingly,

concludes that a class action is a superior method to other available methods for fairly and efficiently adjudicating the controversy. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D 207, 233 (D.N.J. 2005) (finding that class satisfied the superiority requirement where it was "unlikely that individual [c]lass [m]embers would have the resources to pursue successful litigation on their own").

### B. Final Certification of the EPA Collective Action

"[P]laintiffs must demonstrate by a preponderance of the evidence that members of a proposed collective action are similarly situated in order to obtain final certification and proceed with the case as a collective action." *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012). The Third Circuit approves the ad-hoc approach for determining whether proposed collective plaintiffs are similarly situated. *Id.* Relevant factors for the Court to consider under that approach include, but are not limited to: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.* at 536-37.

The Court finds the Named Plaintiffs and the Opt-In Plaintiffs are similarly situated. "All Plaintiffs pursue the same claim of being underpaid, and seek the same relief: pay owed to them as a result." (Pls.' Moving Br. 12 (citing *Galdo v. PPL Elec. Utils. Corp.*, No. 14-5831, 2016 WL 454416, at *2 (E.D. Pa. Feb. 5, 2016)).) As stated, Plaintiffs allege Defendants implemented a salary grade structure that disadvantaged female sales representatives. Here, although there may be differences between each plaintiff, the common issues predominate over those differences. Thus, "the claims of the Class Representatives and class members all arise from the same alleged course of conduct," and the Court finds Plaintiffs have demonstrated by a preponderance of the

8

evidence that the members of the EPA collective action are similarly situated. (Pls.' Moving Br. 13.)

### C. Preliminary Approval of Class Settlement

Judicial policy strongly favors settlement, particularly in class action matters. *See Erheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). "Review of a proposed class action settlement is a two-step process: (1) preliminary approval[,] and (2) a subsequent fairness hearing." *Atis v. Freedom Mortg. Corp.*, No. 15-3424, 2018 WL 5801544 at *2 (D.N.J. Nov. 6, 2018). "At the first stage, the parties submit the proposed settlement to the court, which makes a preliminary fairness evaluation." *Id.* At the second stage, "the Court directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard on, object to, and opt out of the settlement." *Id.* (citing *Shapiro v. All. MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018); Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5)).

"Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Id.* (quoting *Shapiro*, 2018 WL 3158812, at *2). Typically, courts will grant preliminary approval when "the proposed settlement appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class[,] and falls within the range of possible approval." *Shapiro*, 2018 WL 3158812, at *2 (alteration in original) (quoting *In re Nasdaq Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). "A settlement is presumed fair when it results from 'arms-length negotiations between experienced, capable counsel after meaningful discovery.'" *Atis*, 2018 WL 5801544, at *2 (quoting *Rudel Corp. v. Heartland Payment Sys., Inc.*, No. 16-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017)). Further, "[t]he

participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *In re Ocean Power Techs., Inc.*, No. 14-3799, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) (citing *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

Here, after years of litigation and substantial motion practice, the parties retained mediator Mark S. Rudy, Esq. to facilitate settlement discussions. (Marcuse Cert. ¶ 35.) The parties also engaged in significant discovery, including exchanging "hundreds of thousands of pages of documents," conducting extensive written discovery, and deposing over eighty individuals nationwide. (*Id.* ¶¶ 26-27.) Thus, Plaintiffs have sufficiently demonstrated "the parties[] were armed with enough information to assess the strengths and weaknesses of their case and strike a deal relative to the risks of prolonged litigation." *Atis*, 2018 WL 5801544, at *2; *see also In re N.J. Tax Sales Certificates*, 2016 WL 5844319 at *7. Further, in light of the parties' active litigation, and Class Counsels' recognition as experienced in the field, the Court is satisfied that the parties' counsel are experienced and capable. *See e.g.*, *Pan v. Qualcomm Inc.*, No. 16-1885, 2017 WL 3252212, at *5 (S.D. Cal. July 31, 2017) ("Class Counsel has significant class action litigation experience—especially regarding gender discrimination—in state and federal court.").)

Finally, "[a]t the preliminary approval stage, the court cannot say that [Plaintiffs' proposed] distribution, negotiated at arm's length, is obviously deficient" or that the "evidence suggests that the proposed settlement unreasonably favors Representative Plaintiffs or any class segment." *See Atis*, 2018 WL 5801544, at *8; *see also Shapiro*, 2018 WL 3158812, at *2. Because the Court finds no obvious deficiency, the Court preliminarily approves Plaintiffs' class settlement, but emphasizes that it will address the fairness and reasonableness of Plaintiffs' proposed service

awards and attorneys' fees and expenses prior to final approval.[5] *See e.g., Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 2057466, at *6 (E.D. Pa. May 1, 2018) ("Although I will consider arguments as to the fairness of the proposed compensation before final approval, these amounts are not facially unreasonable.").

### D. Plan for Notice and Fairness Hearing

Lastly, "[i]n approving a class settlement, a district court must also 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Shapiro*, 2018 WL 3158812, at *7. The class notice must clearly state in easily understood language:

> (i) The nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment . . . .

Fed. R. Civ. P. 23(c)(2)(B). The Court has reviewed the Notice of Settlement of Class Action, and finds Plaintiffs' proposed class notice provides, in plain language, the aforementioned requirements, including a detailed description of the nature of the class action and a definition of the class, as well as instructions on how a class member may enter appearance or exclude herself

---

[5] Because the Court preliminarily approves the settlement under the stricter Rule 23(e), the Court also approves the settlement under the Equal Pay Act. *See Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 WL 754862, at *5 (E.D.N.Y. Feb. 11, 2011) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."). Nonetheless, the Court finds the settlement agreement "reflects a fair and reasonable resolution of a bona fide dispute of Plaintiffs' [EPA] claims and that the [s]ettlement [a]greement will not prejudice the rights of any other putative class members." *Morales v. PepsiCo, Inc.*, No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012); *see also Bredbenner*, 2011 WL 1344745, at *18 ("The institution of a federal court litigation followed by aggressive prosecution and strenuous defense demonstrates the palpable bona fides of this dispute."); *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012) ("[T]he [s]ettlement [a]greement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore appropriate for approval.").

from the class, and a class judgment's binding effect. (*See* Ex. B, ECF No. 422-3.) The Court, accordingly, approves the Notice of Settlement of Class Action, and sets a Final Approval hearing for December 3, 2019 at 11:00 a.m.

### III. Conclusion

For the reasons set forth above, the Court grants Plaintiffs' Motion for Preliminary Approval of Class Settlement. (ECF No. 421.) The Court will enter an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 7/17/19