# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KELLI SMITH, KANDICE BROSS, RACHEL MOUNTIS, and KATE WHITMER, individually and on behalf of a class of similarly situated female employees,** | **Hon. Michael A. Shipp, U.S.D.J.**<br>**Hon. Lois H. Goodman, U.S.M.J.** |
| **Plaintiffs,** | |
| **-- against --** | **No. 3:13-cv-02970** |
| **MERCK & CO., INC., MERCK SHARP & DOHME, CORP., and INTERVET, INC.** | *Civil Action* |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.     BACKGROUND ........................................................................................................ 2

       A.     History of Lawsuit, Discovery, and Settlement......................................... 2

       B.     Preliminary Approval ................................................................................ 4

       C.     The Class Members' Overwhelmingly Favorable Response to the Settlement ........... 5

II.    KEY TERMS OF THE SETTLEMENT .................................................................. 6

       A.     Payments to Class Members...................................................................... 6

       B.     Service Awards .......................................................................................... 6

       C.     Attorneys' Fees and Litigation Costs ........................................................ 7

       D.     Settlement Administration Costs ............................................................... 7

III.   TO EFFECTUATE THE SETTLEMENT, THE COURT SHOULD FINALIZE ITS
       CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS ............................. 7

       A.     The Elements of Rule 23(a) Are Satisfied ................................................ 8

              1. Numerosity of Satisfied........................................................................ 8

              2. Commonality is Satisfied ..................................................................... 8

              3. The Class Representatives' Claims are Typical of the Class................ 9

              4. Rule 23(a)(4) And Rule 23(g) Are Satisfied—The Class Representatives and
                 Class Counsel Will Fairly and Adequately Protect The Class' Interests ......... 10

       B.     The Requirements of Rule 23(b)(3) Are Satisfied.................................. 11

              1. Common Issues Predominate .............................................................. 11

              2. Class Settlement Is Superior to Alternative Methods of Adjudication ................ 12

IV.    TO EFFECTUATE THE SETTLEMENT, THE COURT SHOUD FINALIZE ITS
       CERTIFICATION OF THE EPA COLLECTIVE ACTION............................... 12

       A.     Plaintiffs' Factual and Employment Settings ......................................... 13

       B.     Individualized Defenses .......................................................................... 13

       C.     Fairness and Procedural Considerations.................................................. 14

V.     THE    COURT    SHOULD    APPROVE    THE    SETTLEMENT    UNDER    RULE
       23(E) .................................................................................................................... 14

       A.     The Settlement Is the Product of Non-Collusive, Arm's-Length, and Well-Informed
              Negotiations After More Than Five Years of Litigation ..................................... 15

       B.     The Settlement Adequately Compensates the Class for the Alleged Harm................ 17

              1. The Difficulties of Proof and Strength of the Defenses....................... 17

              2. The Strength of the Case Relative to the Settlement Amount .............. 18

              3. The Likely Duration and Expense of Further Litigation ..................... 19

              4. Class Members' Overwhelming Support for the Settlement ................ 20

       C.     The Class Settlement Payment Process is Fair and Reasonable ............. 21

       D.     The Settlement's Provision for Attorneys' Fees is Reasonable, Fair, and
              Appropriate Under the Circumstances .............................................................. 22

i

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Alfaro v. First Advantage Lns Screening Sols., Inc.*, No. CV155813MASTJB, 2017 WL 3567974 (D.N.J. Aug. 16, 2017) ................................................................................... 12

*Alves v. Main*, No. CV 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) ............................................................................................... 16

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) .......................................................... 12

*Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372 (W.D. Pa. 2011) ............................... 14

*Barton v. Constellium Rolled Prods. Ravenswood, LLC*, No. 2:13-CV-03127, 2014 WL 1660388 (S.D. W.Va. Apr. 25, 2014) ........................................................................... 11

*Bredbenner v. Liberty Travel, Inc.*, No. CV 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................................................................................................................. 16, 23

*Brown v. Nucor Corp.*, 785 F.3d 895 (2015) ..................................................................... 9

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239 (3d Cir. 2013) ......................... 13

*Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525 (W.D. Pa. 2008) ............................. 1

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .......................................................... 20

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ....................................... 1, 14

*Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) .................... 8, 11, 12

*Fulton-Green, et. al. v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019). ..................................................................................................................... 15

*Geis v. Walgreen Co.*, No. CV 07-4238 (KSH), 2010 WL 11570447 (D.N.J. Sept. 30, 2010) ............................................................................................................................. 23

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................... 15

*Haas v. Burlington Cty.*, No. CV 08-1102 (NLH/JS), 2019 WL 413530 (D.N.J. Jan. 31, 2019) ...................................................................................................................... passim

*Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989) ............................................ 14

*Holden v. Burlington N., Inc.*, 665 F. Supp. 1398 (D. Minn. 1987) ............................... 20

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015) ............. 8

*In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658, 2013 WL 396117 (D.N.J. Jan. 30, 2013) ........................................................................... 8, 9, 10, 11

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016). passim

*In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. CV121893MASTJB, 2016 WL 5844319 (D.N.J. Oct. 3, 2016) ............................................................................ passim

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................... 1, 14

*Maddy v. Gen. Elec. Co.*, No. CV 14-490-JBS-KMW, 2017 WL 2780741 (D.N.J. June 26, 2017) ............................................................................................................................ 21

*McReynolds v. Merrill Lynch*, 672 F.3d 482 (7th Cir. 2012) ........................................... 9

*Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013) ............................................... 12

*Nyby v. Convergent Outsourcing, Inc.*, No. CV 15-886 (ES) (MAH), 2017 WL 3315264 (D.N.J. Aug. 3, 2017) ........................................................................................ 16, 19

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .............................. 14, 20

*Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417 (D.N.J. 2016) .......................................... 9

*Rodolico v. Unisys Corp.*, 199 F.R.D. 468 (E.D.N.Y. 2001) .............................................. 14

*Schwartz v. Avis Rent a Car System*, LLC, No. CV 11-4052 (JLL), 2016 WL 3457160 (D.N.J. June 21, 2016) ........................................................................................ 10

*Scott v. Family Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2016 WL 9665158 (W.D.N.C. June 24, 2016) .................................................................................. 11

*Sourovelis v. City of Phila.*, 320 F.R.D. 12 (E.D. Pa. 2017) ............................................ 8

*Speed Shore Corp. v. Denda*, 605 F.2d 469 (9th Cir. 1979) .............................................. 14

*Thiessen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) ......................................... 13

*Trewin v. Church & Dwight Co.*, No. 312CV01475MASDEA, 2015 WL 12844405 (D.N.J. June 19, 2015) ...................................................................................... 7

*Tyson Food, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ............................................... 11

*Velez v. Novartis Pharms. Corp.*, No. 04 CV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .................................................................................................. 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .............................. 14

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) .......................................... 13

*Zolkos v. Scriptfleet, Inc.*, No. 12 CV 8230 GF, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ...................................................................................................... 10

**Statutes**

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ................................................... 2

Employee Retirement Income and Security Act, 29 U.S.C. § 1140 *et seq*. ............................... 2, 6

Equal Pay Act of 1963, 29 U.S.C. § 206(d) ........................................................... 2, 12, 14

Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ................................................... 2, 6

**Rules**

29 U.S.C. § 216(b) ................................................................................ 5, 7, 12

Rule 23(a)(2) ............................................................................................. 8

Rule 23(a)(4) ............................................................................................ 11

Rule 23(b)(3) ..................................................................................... 4, 7, 11, 12

Rule 23(g) .......................................................................................... 10, 11

## INTRODUCTION

This case involves individual, class, and collective claims of gender and pregnancy discrimination brought by Class Representatives Kelli Smith, Kandice Bross, Rachel Mountis, and Kate Whitmer, on behalf of themselves and members of the Class defined below, against Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp, and Intervet, Inc. (collectively, "Merck" or "Defendants"). The Court preliminarily approved the parties' Class Action Settlement Agreement (the "Settlement" or "Agreement") on July 19, 2019. (Dkts. 430, 431.) The Settlement was reached after more than five years of litigation and months of intensive arms' length negotiations. The Settlement requires Merck to make a $6.2 million non-revisionary payment that will benefit approximately 2,900 Class Members.

A detailed Court-approved Notice of Settlement of Class Action ("Notice") that outlined the Settlement terms at length was sent to 2,919 Class Members on August 16, 2019. *The Class response has been overwhelming: Class Members resoundingly approve the Settlement.* Not a single Class Member has objected to the Settlement, and only 18 individuals (approximately 0.62% of potential Class Members) have sought to be excluded. In accordance with the "overriding public interest in settling class action litigation," the Court should endorse the Settlement and grant final approval. [1] *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).[2]

---

[1] Plaintiffs also pursue individual claims for retaliation and pregnancy discrimination, among other claims, and seek damages for substantial emotional distress. The parties have entered into a separate settlement agreement to resolve the Named Plaintiffs' individual claims. That agreement provides the Named Plaintiffs with monetary relief in addition to that set forth in the class Settlement.

[2] *See also, e.g.*, *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 594–95 (3d Cir. 2010) (describing the "strong presumption in favor of voluntary settlement agreements": "The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings."); *Colella v. Univ. of Pittsburgh,* 569 F. Supp. 2d 525, 530 (W.D. Pa. 2008) ("The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen in class actions . . . .") (citation omitted).

## I.     BACKGROUND

### A.     History of Lawsuit, Discovery, and Settlement

On May 9, 2013, Plaintiff Kelli Smith filed a Class Action Complaint against Merck in the United States District Court for the District of New Jersey alleging gender discrimination class claims. (Dkt. 1.) An Amended Class Action Complaint was filed on May January 16, 2014, joining Class Representatives Kandice Bross, Rachel Mountis, and Kate Whitmer. (Dkt. 22.) A Second Amended Complaint was filed on May 4, 2016. (Dkt. 137.) Plaintiffs are represented by Sanford Heisler Sharp, LLP and Feinstein Doyle Payne & Kravec, LLC (together, "Class Counsel"). Defendants are represented by Morgan, Lewis & Bockius LLP.

Plaintiffs brought claims on behalf of a nationwide class of female sales representatives under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (the "EPA"), the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and the Employee Retirement Income and Security Act, 29 U.S.C. § 1140 *et seq.* ("ERISA"). On April 27, 2016, the Court conditionally certified a collective action regarding the class' pay claims under the EPA.

For purposes of the proposed settlement, both the class and the collective action (together, "Class") are defined as:

> All female employees who are or were employed by Merck Sharp & Dohme Corp. or Intervet, Inc., or any of their affiliates, parents, subsidiaries, predecessors, successors, or assigns, and assigned to a M05, M06, M07, M08, M09, S1 and/or S2 Sales Representative position in the United States for at least one day between December 8, 2010 and October 1, 2018.

Kornblith Decl., Ex. A ("Agreement") § 3.1(D).[3]

---

[3] Expressly excluded from this definition are women who both (1) did not opt-in to the EPA collective action and (2) signed an agreement releasing Defendants from any and all claims.

The Parties engaged in extensive formal discovery, including document production, interrogatories, and more than 90 depositions, including depositions of the four Named Plaintiffs; 64 Opt-In Plaintiffs from around the country; 17 Merck fact witnesses; eight Merck Rule 30(b)(6) deponents; and four expert witnesses. (Kornblith Decl. ¶ 60.) In addition, Class Counsel have conducted extensive investigation into the facts, circumstances, and legal issues associated with the litigation. (*Id*. ¶ 37; Marcuse Decl. ¶ 24.) Class Counsel analyzed hundreds of thousands of documents relating to Plaintiffs' allegations and Merck's defenses, and they researched and reviewed the applicable law. (Kornblith Decl. ¶ 60.) Class Counsel and Plaintiffs' experts, labor economist Alexander Vekker, Ph.D. and industrial/organizational psychologist David Friedland, Ph.D., also analyzed extensive personnel data, compensation data, and Merck policies. (*Id*.)

To avoid further unnecessary litigation, cost, and expense, the parties engaged in mediation after more than five years of litigation. The parties retained a well-known and experienced mediator, Mark Rudy, Esq., who is skilled at mediating complex class actions, to assist them in their negotiations. On October 1, 2018, the parties participated in a full-day mediation before mediator Rudy. (*Id*. ¶ 39.) After a full day of intense negotiations, the parties reached an agreement in principle to settle the case and executed a term sheet. The settlement agreement was finalized by the parties on December 18, 2018 and fully executed on December 19, 2019. (*Id*. ¶ 40.)

The Parties and their Counsel recognize that, in the absence of an approved settlement, they will face a long litigation course that would consume considerable time and resources and present all Parties with ongoing litigation risks and uncertainties. (Kornblith Decl. ¶ 68; Marcuse Decl. ¶ 16; Sanford Decl. ¶ 29.) The Parties wish to avoid these risks and uncertainties, as well as delay and the consumption of further resources, through a settlement pursuant to the terms and conditions of the Settlement Agreement.

After extensive discovery, analysis, and deliberation, the Parties and Class Counsel are of the opinion that the Settlement described in the Settlement Agreement is fair, reasonable, and adequate. Class Counsel and the Class Representatives believe that the Settlement serves the best interest of the Class based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification. In reaching this conclusion, Class Counsel has considered, among other things, the risks of litigation (including the risks involved in establishing Merck's liability and the costs incurred by the Class Members), the time necessary to achieve a final resolution through trial and any appeals, the complexity of Plaintiffs' claims, and the benefits accruing to the Class under the Settlement. (Kornblith Decl. ¶ 68; Marcuse Decl. ¶ 17; Sanford Decl. ¶ 30.)

Although Merck continues to deny all liability with respect to any and all of the claims alleged in the Complaint, Merck nevertheless considers it desirable that the action be conclusively settled and terminated on the terms and conditions set forth below. The settlement of the action and the attendant final dismissal of the action will avoid the substantial expense, inconvenience, and risk of continued litigation and will bring Plaintiffs' claims to an end.[4]

## B.    <u>Preliminary Approval</u>

Plaintiffs moved for preliminary approval of the Class Settlement Agreement on December 19, 2018. (*See* Dkts. 420–426.) On July 19, 2019, this Court granted Plaintiffs' Motion and preliminarily approved the Settlement. *See Smith v. Merck & Co., Inc.*, No. CV132970MASLHG, 2019 WL 3281609 (D.N.J. July 19, 2019) and Dkts. 430, 431. Pursuant to Rule 23(b)(3) and 29

---

[4] Merck has entered into separate settlement agreements with each of the Class Representatives to resolve their individual claims. These agreements provide the Class Representatives with monetary relief in addition to that set forth in this Agreement.

U.S.C. § 216(b), the Court also preliminarily certified the following class and collective for settlement purposes:

> All female employees who are or were employed by Merck Sharp & Dohme Corp. or Intervet, Inc., or any of their affiliates, parents, subsidiaries, predecessors, successors, or assigns, and assigned to a M05, M06, M07, M08. M09, S1 and/or S2 Sales Representative position in the United States for at least one day between December 8, 2010 and October 1, 2018.

(Dkt. 431 at ¶ 1.)

Finally, the Court appointed Class Counsel, appointed a Claims Administrator, and ordered issuance of the class-wide Notice detailing the terms of the Settlement. (*Id*. ¶¶ 4, 5, 6.)

### C.   The Class Members' Overwhelmingly Favorable Response to the Settlement

Following preliminary approval, the Claims Administrator sent the Court-approved Notice (Declaration of Melissa Baldwin Regarding Dissemination of Notice to Class ("Baldwin Decl."), Ex. A) to 2,919 female employees who came within the Settlement Class definition. (*Id*. ¶ 5; Kornblith Decl. ¶ 64.) The Notice comprehensively advised employees of the terms of the Settlement, including the method of computing payments, the claims that would be released, and the provision for attorneys' fees, costs, and service awards for the Plaintiffs and Opt-In Plaintiffs who participated in discovery. (*See* Dkt. 422-3.)

The Class response has been nearly universal support for the Settlement. Not a single individual objected to the Settlement. (Baldwin Decl. ¶ 8; Kornblith Decl. ¶ 61.) There have been only 18 exclusion requests, amounting to a mere 0.62% of the Class. (Baldwin Decl. ¶ 7; Kornblith Decl. ¶ 62.) Given the Court's preliminary approval of the Settlement and the overwhelming endorsement of Class Members, the Settlement should be approved in its entirety.

## II.      KEY TERMS OF THE SETTLEMENT

Under the terms of the Class Settlement, Merck will make a total, non-reversionary payment of $6,200,000 ("Total Settlement Amount") to settle and satisfy the "Released Claims" as that term is defined in the Settlement Agreement. (Agreement § 4.1.)[5] The Total Settlement Amount will be allocated for payments to Class Members ("Class Member Awards"), service awards, attorneys' fees and costs, and the fees and costs of the Settlement Administrator. (*Id.*) The Total Settlement Amount will be placed in the Class Monetary Awards Settlement Fund, as specified in the Settlement Agreement. (*Id.* §§ 3.1(f), 4.2.)

### A.      Payments to Class Members

Class members who do not opt out of the Settlement ("Settlement Class Members") will be eligible to receive Class Member Awards as determined by a formula (the "Allocation Formula"). (*Id.* § 5.1.) The Allocation Formula is based on the total number of weeks worked during the liability period ("Workweeks") by all Settlement Class Members and the number of Workweeks worked by each Settlement Class Member. (*Id.* § 5.1(a).)

### B.      Service Awards

Subject to Court approval, the following Service Awards will be paid from the Class Monetary Awards Settlement Fund: (i) Service Awards of $25,000 for each of the four Class Representatives; (ii) a Service Award of $4,000.00 for each of the sixty-six (66) collective action members who were deposed; (iii) a Service Award of $1,000.00 for each of the fifty-five (55) collective action members who submitted written discovery but who were not deposed, and for the one (1) collective action member who submitted a declaration, but who was not deposed; and (iv)

---

[5] Class members release all potential claims arising from the same factual predicate as the Class' allegations asserted in the Second Amended Complaint—including but not limited to possible FMLA and ERISA claims—and all claims that could have been brought in the Second Amended Complaint. (*See* Agreement § 3.1.)

a Service Award of $100.00 for each of the five-hundred and forty-seven (547) opt-in collective action members who did not participate in discovery and did not opt out of the settlement. (Kornblith Decl., Ex. B at ¶ 7 (listing service award recipients).)  The Service Awards are in addition to the Class Member Awards to which the recipients are entitled pursuant to this Settlement Agreement. (*Id*. § 6.1.)

> ### C.   <u>Attorneys' Fees and Litigation Costs</u>

The Class Settlement permits Class Counsel to seek up to $3,000,000 in attorneys' fees and reimbursement of reasonable litigation expenses. (*Id*. § 7.2.)

> ### D.   <u>Settlement Administration Costs</u>

Finally, Class Counsel will ask the Court to authorize payment of the Settlement Administrator's fees and costs, which may not exceed $50,000. (*Id*. § 7.6.)

## III.   TO EFFECTUATE THE SETTLEMENT, THE COURT SHOULD FINALIZE ITS CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS

On July 19, 2019, the Court preliminarily certified the Class for settlement purposes pursuant to Rule 23(b)(3) and 29 U.S.C. § 216(b). (Dkt. 430); *see also Smith*, 2019 WL 3281609, at *2. **Nothing has changed since the preliminary approval order that would alter the propriety of certification of the settlement Class.** Accordingly, the Court should grant final certification of the Class for settlement purposes. *See Trewin v. Church & Dwight Co.*, No. 312CV01475MASDEA, 2015 WL 12844405 (D.N.J. June 19, 2015) (Shipp, J.) (granting final certification of settlement classes on final approval after conditionally certifying on preliminary approval). Plaintiffs briefly recap the relevant analysis here.

## A.     The Elements of Rule 23(a) Are Satisfied

### 1.     Numerosity Is Satisfied

This Class includes approximately 2,900 female Reps. (Kornblith Decl. ¶ 46.) Numerosity is thus satisfied. *See, e.g.*, *In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, MDL No. 1658, 2013 WL 396117, at *3 (D.N.J. Jan. 30, 2013) (a class exceeding 40 members generally satisfies numerosity).

### 2.     Commonality Is Satisfied

The commonality bar "is not high": Class members need not suffer actual injury, have identical claims, or even have viable claims—but must only be subjected to the same alleged harmful conduct. *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015); *Sourovelis v. City of Philadelphia*, 320 F.R.D. 12, 21 (E.D. Pa. 2017). A single common issue will suffice. *In re Merck*, 2013 WL 396117, at *4.

Here, there is a common question around the way in which Merck implemented a new salary grade structure in 2011 that Plaintiffs contend disadvantaged female Reps. *See also* Second Amended Complaint (Dkt. 137) at ¶¶ 177, 178 (detailing common questions). Accordingly, "resolving the merits of [Plaintiffs'] claims will depend upon common answers to legal and factual questions." *In re Merck*, 2013 WL 396117, at *5. Plaintiffs' claims target the same alleged misconduct by Merck, alleged to result in the same type of harm across the class. *Id.* at *4; *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d at 397–99.

These common questions are sufficient to satisfy Rule 23(a)(2) for settlement purposes. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012); *Velez v. Novartis Pharms. Corp.*, No. 04 CV 09194 CM, 2010 WL 4877852, at *9 (S.D.N.Y. Nov. 30, 2010) (finding commonality established where "[a]ll Class Members bring the common claim that Novartis

8

discriminated against female sales employees with respect to wages, promotion and pregnancy."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CV 2207 JGK, 2010 WL 3119374 at *1 (S.D.N.Y. Aug. 6, 2010) ("The commonality requirement is met because the Named Plaintiffs' claims involve allegations of common pay and promotion claims arising from the same alleged policies and practices of the company."); *see also Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417, 429 (D.N.J. 2016) (noting common question as to whether employer's wage plan violated state law); *McReynolds v. Merrill Lynch,* 672 F.3d 482, 488–90 (7th Cir. 2012) (finding that the policies in question were specific employment practices that were "practices of Merrill Lynch, rather than practices that local managers can choose or not at their whim. Therefore challenging those policies in a class action is not forbidden by the *Wal-Mart* decision"); *cf. Brown v. Nucor Corp.*, 785 F.3d 895, 917 (4th Cir. 2015) (noting that anecdotal evidence of discrimination "provide[s] a critical nexus" between a company's culture of discrimination and employment decisions: "[U]sing *Wal-Mart*'s language, the evidence of pervasive [gender] hostility in the working environment provides a 'common mode of exercising discretion that pervaded the entire company.'") (citation omitted).

### 3. The Class Representatives' Claims Are Typical of the Class

To satisfy the typicality requirement, Plaintiffs need only "show [their] claims 'arise from the same event or practice or course of conduct that gives rise to the claims of the class members' and are 'based on the same legal theory.'" *In re Merck*, 2013 WL 396117, at *5 (citation omitted). Here, the Class Representatives' claims and those of the Class Members arose from the same alleged course of conduct and the same legal theories. Indeed, as this Court recognized at the preliminary approval stage, "Plaintiffs' claims are based on the same policy and conduct of Defendants, *i.e.*, that Defendants implemented a salary grade structure that disadvantaged female sales representatives." *Smith*, 2019 WL 3281609, at *3. Any nuances in Plaintiffs' allegations "do

not destroy the fundamental similarity" between their claims and those of the class members. *In re Merck*, 2013 WL 396117, at *7.[6] Accordingly, the Class Representatives' claims are typical of the class for settlement purposes.

> ### 4. Rule 23(a)(4) And Rule 23(g) Are Satisfied—The Class Representatives and Class Counsel Will Fairly and Adequately Protect The Class' Interests

Adequacy is also satisfied. The Class Representatives and Class Counsel have actively and intensively investigated this case. Throughout the pendency of this action, the Class Representatives have adequately and vigorously represented their fellow female employees. They "have spent significant time assisting Class Counsel, including helping to plan and organize the litigation, and consulting with Class Counsel to the benefit of their fellow Class Members, as well as participating in written discovery and depositions." *Smith*, 2019 WL 3281609, at *3 (quotations omitted); *see also* Kornblith Decl. ¶ 60.

Class Counsel is highly experienced and well-versed in complex class litigation. (Sanford Decl. ¶¶ 8–15.) Sanford Heisler Sharp, LLP is recognized as "very experienced in complex class and collective litigation" in employment cases, *e.g. Zolkos v. Scriptfleet, Inc.*, No. 12 CV 8230 GF, 2014 WL 7011819, at *5 (N.D. Ill. Dec. 12, 2014), and has a significant and unparalleled knowledge in gender discrimination class actions. Likewise, Feinstein Doyle Payne & Kravec has often been appointed as well-qualified class counsel in complex class actions. (Marcuse Decl. Ex. B); *see,*

---

[6] "Factual differences among the claims of the putative class members do not defeat certification. In fact, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Smith*, 2019 WL 3281609, at *3 (citing and quoting *Baby Neal v. Casey*, 43 F.3d 48, 56, 58 (3d Cir. 1994)) (alterations and quotations omitted); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) ("Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct.") (citation omitted); *Schwartz v. Avis Rent a Car System*, LLC, No. CV 11-4052 (JLL), 2016 WL 3457160 at *5 (D.N.J. June 21, 2016) ("[F]actual differences will not render [Plaintiffs'] claim[s] atypical if [the claims are] based on the same legal theory as the claims of the class.") (citations omitted).

*e.g.*, *Barton v. Constellium Rolled Prods.-Ravenswood, LLC*, No. 2:13-CV-03127, 2014 WL 1660388, at *5 (S.D. W.Va. Apr. 25, 2014). Thus, Class Counsel here is "qualified, experienced and generally able to conduct the proposed litigation." *In re Merck*, 2013 WL 396117, at *8 (citation omitted).

Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied.

**B.    The Requirements of Rule 23(b)(3) Are Satisfied**

**1.    Common Issues Predominate**

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and quotation omitted). So long as "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citation omitted).

Here, predominance is met because the determination of whether the criteria used to implement a new salary grade structure disadvantaged female Reps is a common question. *Scott v. Family Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2016 WL 9665158, at *2, *8 (W.D.N.C. June 24, 2016). For purposes of this Settlement, "[r]esolution of Plaintiffs' challenge to [alleged discriminatory employment] practices will resolve significant issues with respect to the class as a whole, and this dwarfs individualized issues as to particular employment decisions." *Ellis*, 285 F.R.D. at 538. *See also, e.g.*, *Bellifemine*, 2010 WL 3119374, at *2 ("For purposes of this settlement, the Named Plaintiffs' claims meet [the requirements of Rule 23(b)(3)] because they are unified by common factual allegations that [Defendant] allegedly disfavored female sales force

employees compared to males in terms of compensation and promotion."). Thus, the common questions far outweigh any individualized issues.

### 2. Class Settlement Is Superior to Alternative Methods of Adjudication

Under the factors set forth in Rule 23(b)(3), class treatment is superior to other methods of adjudication. *See, e.g.*, *Ellis*, 285 F.R.D. at 539–40; *see Moore v. Napolitano*, 926 F. Supp. 2d 8, 34 (D.D.C. 2013). As this Court recognized, "[t]he Settlement Class contains approximately three-thousand members, 'and, absent certification, they would have to conduct individual trials, which would likely prove too costly for individuals.' Further, individual actions would burden the Court." *Smith*, 2019 WL 3281609, at *4 (quoting *Alfaro v. First Advantage Lns Screening Sols., Inc.*, No. CV155813MASTJB, 2017 WL 3567974, at *4 (D.N.J. Aug. 16, 2017)). Notably, the manageability factor strongly favors class treatment because there is hardly a form of adjudication more manageable than a voluntary settlement. *Cf. Amchem Prods. v. Windsor*, 521 U.S. 591, 610 (1997). Accordingly, the Court should grant certification for settlement purposes.

## IV.   TO EFFECTUATE THE SETTLEMENT, THE COURT SHOUD FINALIZE ITS CERTIFICATION OF THE EPA COLLECTIVE ACTION

Certification of an EPA collective action under 29 U.S.C. § 216(b) typically proceeds under a two-stage procedure. *Galdo v. PPL Elec. Utilities Corp.*, No. CV 14-5831, 2016 WL 454416, at *1 (E.D. Pa. Feb. 5, 2016). Here, the Court granted stage-one certification and issued notice to the EPA collective action; 687 Reps filed consent to join forms to pursue their EPA claims in this litigation.

The Parties now seek final (stage-two) certification of an EPA collective action for settlement purposes. At final certification, the question is whether the Named Plaintiffs and Opt-Ins are "similarly-situated" for purposes of their EPA claims. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 535–36 (3d Cir. 2012); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir.

2013). At heart, "[b]eing similarly situated . . . means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the [EPA]." *Zavala*, 691 F.3d at 538. "Relevant factors for the Court to consider under that approach include, but are not limited to: 'whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.'" *Smith*, 2019 WL 3281609, at *4 (quoting *Zavala*, 691 F.3d at 536–37). "A common, allegedly unlawful policy 'weighs heavily against decertification even if some disparate factual and employment settings do exist.'" *Galdo*, 2016 WL 454416, at *2 (citation omitted).

### A.      Plaintiffs' Factual and Employment Settings

The Named and Opt-In Plaintiffs share "substantially similar" employment settings. *Galdo*, 2016 WL 454416, at *2. They were part of the same sales force, performed similar job duties, and were governed by common policies and procedures—including Merck's methods for setting pay. (Dkt. 129 at 10.) As this Court previously found, the "Named Plaintiffs and the Opt-In Plaintiffs are similarly situated" because "[a]ll Plaintiffs pursue the same claim of being underpaid, and seek the same relief: pay owed to them as a result." *Smith*, 2019 WL 3281609, at *4.

### B.      Individualized Defenses

Plaintiffs challenge Merck's implementation of a new salary grade structure in 2011 and argue that female Reps were disadvantaged in their pay as a result. As set forth above, common issues predominate over any minor individual differences between employees and the claims of the Class Representatives and class members all arise from the same alleged course of conduct. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105–08 (10th Cir. 2001); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483–84 (E.D.N.Y. 2001); *cf. Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d

372, 381–83 (W.D. Pa. 2011) (holding that individualized damages defenses do not preclude certification of class liability issues).

### C.   Fairness and Procedural Considerations

The final factor weighs heavily in favor of certification. Without the benefit of a collective action, the members of the EPA Collective Action would be required to hire their own lawyers and expend resources bringing duplicative individual suits. Many employees would simply be unable to litigate their claims due to the costs and time necessary to litigate a lawsuit. *Cf. Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Settlement fairly and efficiently resolves the claims of the members of the proposed EPA Collective Action and avoids any potential manageability issues.

## V.   THE COURT SHOULD APPROVE THE SETTLEMENT UNDER RULE 23(e)

Courts strongly favor the settlement of complex class action litigation. *E.g. Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010); *In re Warfarin,* 391 F.3d at 535; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).[7] Accordingly, in exercising its discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988). Pursuant to Federal Rule of Civil Procedure 23(e), a settlement agreement that would bind Class Members must be approved by the Court and "only on finding that [the settlement] is fair,

---

[7] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation omitted); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation.") (citation omitted); NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

reasonable, and adequate. . . ." Fed. R. Civ. P. 23(e)(2). At the final approval stage, the Third Circuit

considers nine factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016)

(quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). **All of these considerations weigh**

**heavily in favor of final approval.** *See infra* § V(B)(3) (first factor); § V(B)(4) (second factor); §

V(A) (third factor); § V(B)(1) (fourth, fifth, and sixth factors); § V(B)(2) (seventh, eighth, and ninth

factors).[8]

### A.    The Settlement Is the Product of Non-Collusive, Arm's-Length, and Well-Informed Negotiations After More Than Five Years of Litigation

In the Third Circuit, there is a *presumption of fairness* where (1) the negotiations were

conducted at arms' length, (2) there was sufficient discovery, (3) class counsel in experienced in

similar litigation, and (4) only a small fraction of the class objected. *In re Nat'l Football League*

---

[8] In addition, "[t]he Court must also consider Amended Rule 23(e) as well as any traditional approaches prior to
approving a proposed settlement of a class action." *Fulton-Green, et. al. v. Accolade, Inc.*, No. CV 18-274, 2019 WL
4677954, at *7 (E.D. Pa. Sept. 24, 2019). Under Rule 23(e), courts should consider whether:

> **(A)** the class representatives and class counsel have adequately represented the class; **(B)** the proposal was
> negotiated at arm's length; **(C)** the relief provided for the class is adequate, taking into account: **(i)** the costs,
> risks, and delay of trial and appeal; **(ii)** the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims; **(iii)** the terms of any proposed award of
> attorney's fees, including timing of payment; and **(iv)** any agreement required to be identified under Rule 23
> (e)(3); and **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23 (e)(2). As discussed herein, all of these factors favor final approval. *See* Section V.B (adequacy);
Section V.A (arm's length negotiations); Section V.B.3 (the risks, costs, and delays associated with continued
litigation); Section V.C (the effectiveness of distributing relief and the treatment of class members equitably relative to
each other); Section V.D (the provisions for attorneys' fees); and n.4 (other agreements).

*Players Concussion Injury Litig.*, 821 F.3d at 436; *Haas v. Burlington Cty.*, No. CV 08-1102 (NLH/JS), 2019 WL 413530, at *5 (D.N.J. Jan. 31, 2019) (presumption of fairness where "negotiations were conducted at 'arms' length by experienced counsel after adequate discovery") (citation omitted). These criteria are met here.

The Settlement is the product of a full day of intense negotiations during private mediation with Mark Rudy, Esq., who is skilled at mediating complex class actions. (Kornblith Decl. ¶ 39.) This process entitles the Settlement to a presumption of fairness and arm's length negotiations: **"The participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'"** *Alves v. Main*, No. CV 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) (quoting *Bredbenner v. Liberty Travel, Inc.*, No. CV 09-1248 MF, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011)); *see also Haas*, 2019 WL 413530, at *5 n.5 (the presumption of fairness was "doubly warranted" because the settlement was the result of private mediation); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) ("Importantly, the parties only reached an agreement in principle to settle after a full-day formal mediation session followed by a number of telephonic negotiation[s] . . . . [T]he participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.") (citation and quotations omitted).

Nor can there be any question that the Parties reached the Settlement only after engaging in extensive investigation and substantial discovery and with an "adequate appreciation of the merits of the case. . . ." *See Nyby v. Convergent Outsourcing, Inc.*, No. CV 15-886 (ES) (MAH), 2017 WL 3315264, at *7–8 (D.N.J. Aug. 3, 2017) (The "stage of the proceedings and the amount

16

of discovery completed" factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.") (citation and quotation omitted). The parties have vigorously litigated this action for over five years and engaged in extensive motion practice and discovery disputes, culminating in several pending motions— Plaintiffs' Motion for Class Certification and Defendants' related motions to strike Plaintiffs' class certification evidence and for summary judgment on the class's claims. During this time, the Parties have taken and defended more than 90 depositions nationwide and exchanged hundreds of thousands of pages of written discovery. (Kornblith Decl. ¶ 29.) Thus, negotiations were well informed by the parties' extensive and diligent investigation.

Finally, Class Counsel has a wealth of experience in similar litigation (*see infra* Section III(A)(4) and Sanford Decl. ¶¶ 8–15) and there has not been a single objection to the Settlement (Kornblith Decl. ¶ 63). Accordingly, the Settlement is presumptively fair and should be approved. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 436; *Haas*, 2019 WL 413530, at *5.

### B. The Settlement Adequately Compensates the Class for the Alleged Harm

#### 1. The Difficulties of Proof and Strength of the Defenses

Courts also consider the risks of establishing liability, damages, and maintaining the class action through trial. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 437. In evaluating these factors, courts consider the risks involved with continued litigation and "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re New Jersey Tax Sales Certificates Antitrust Litig.*, No. CV121893MASTJB, 2016 WL 5844319, at *8 (D.N.J. Oct. 3, 2016) (citation omitted).

Here, Plaintiffs face considerable risks in establishing class-wide liability and in obtaining certification of the proposed class and collective action. If liability is established, Plaintiffs will also have to establish damages to obtain monetary relief. But for the Settlement, this Court would have to rule on Plaintiffs' pending Motion for Class Certification and Defendants' Motion for Summary Judgment. Even if the Court were to grant certification and deny summary judgment, maintaining certification through trial could continue to present challenges. Defendants would likely move for decertification, which would result in further expense and delay. (Kornblith Decl. ¶ 69; Sanford Decl. ¶ 31.) Further, Merck might file a Rule 23(f) appeal, necessitating further briefing and attendant delays. Finally, the manageability of a class trial could pose additional challenges. These factors weigh in favor of final approval. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 439 (issues with overcoming affirmative defenses and proving the elements of plaintiffs' claims weighed in favor of final approval); *In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *8 (these factors weighed in favor of final approval where class counsel cited difficulties in certifying the class and overcoming a summary judgment motion).

### 2.     The Strength of the Case Relative to the Settlement Amount

Courts also consider "the range of reasonableness of the settlement fund in light of the best possible recovery . . . [and] all the attendant risks of litigation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 437.[9]

---

[9] The seventh factor—"the ability of the defendants to withstand a greater judgment"—is not relevant where, as here, Merck has professed no inability to pay. *See In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *8 ("The Defendants' ability to withstand a greater judgment is relevant to approval of the settlement where, as here, Defendant's professed inability to pay is used to justify the amount of the settlement.") (quotations and alterations omitted).

18

The class recovery here is substantial in relation to potential damages and exceeds settlements routinely approved in other cases. Plaintiffs estimate the class's economic back pay losses during this period at approximately $21.9 million. The total class settlement of $6.2 million represents more than 28% of this calculation. **"But [the Court] must take seriously the litigation risks inherent in pressing forward with the case."** *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 440. Here, Plaintiffs face considerable risks in establishing class-wide liability and in obtaining certification of the proposed class and collective action. *See supra* Section V(B)(1). Weighing the benefits of settlement against the strengths of the case—and the risks of litigation described further above—the settlement amount is fair and reasonable. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 440 ("[T]he settlement represents a fair deal for the class when compared with a risk-adjusted estimate of the value of plaintiffs' claims.").

Notably, this Court recently approved a settlement of 2.5% of the class's highest possible single damages in a case where treble damages were available. *In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *9 (citing law noting that "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") (citation and quotations omitted); *see also Nyby*, 2017 WL 3315264, at *9 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation and quotation omitted).

### 3.     The Likely Duration and Expense of Further Litigation

Courts in the Third Circuit also look at "the complexity, expense and likely duration of the litigation," which "captures the probable costs, in both time and money, of continued litigation." *In*

*re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 437. This factor clearly favors final approval. Discrimination class actions are particularly complex, "[a]nd the duration of litigation in such cases often rivals that of even the most notorious antitrust cases." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1405 (D. Minn. 1987); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 629 (9th Cir. 1982) ("The track record for large class action employment discrimination cases demonstrates that many years may be consumed by trial(s) and appeal(s) before the dust finally settles.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

This observation is every bit as true in this case. This action involves approximately 2,900 employees who allege gender-based discrimination in pay and promotion. (Kornblith Decl. ¶ 46.) This complex case is already over five years old, and would likely continue for additional years. (*Id*. ¶ 67.) If the Court grants class certification and denies summary judgment, the Parties would likely have to litigate decertification motions as well as dispositive motions, and would then face proceeding to trial and pursuing appeals. (*Id*. ¶¶ 67, 69; Sanford Decl. ¶ 29.) There would be no guarantee of a more favorable result. These facts strongly support final approval of the Settlement.

### 4.   Class Members' Overwhelming Support for the Settlement

Courts also consider "the reaction of the class to the settlement," which "attempts to gauge whether members of the class support the settlement." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 437–38 (citation omitted). "This factor requires the Court to consider the objections (or lack thereof) of the class members to the settlement. **When no class members, or only a small portion, object to the settlement, that fact 'strongly favors' settlement.**" *Haas*, 2019 WL 413530, at *6 (emphasis added) (citation omitted); *see also In re New*

*Jersey Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *7 ("In evaluating the reaction of the class, courts look primarily to the 'objection rate.'") (citation omitted).

Here, the Class Members have overwhelmingly affirmed the Court's judgment at preliminary approval that the amended settlement is fair, reasonable, and adequate. Out of the 2,919 Notices sent, there have been **zero objections** and only 18 exclusion requests. (Kornblith Decl. ¶ 70.) In endorsing the Settlement, Class Members had easy access to information regarding the Settlement, including a summary of the settlement terms and an explanation of the claims being released. (Baldwin Decl., Ex. A.) Class Members' unqualified response to the Notice demonstrates their support for the Settlement, including the benefits to the Class, the service awards, and proposed attorney's fees and costs.

The lack of objections supports a finding that the Settlement is fair, reasonable, and adequate, and should be approved. *See Haas*, 2019 WL 413530, at *6 (the fact that only one person objected "strongly favor[ed]" final approval); *Maddy v. Gen. Elec. Co.*, No. CV 14-490-JBS-KMW, 2017 WL 2780741, at *4 (D.N.J. June 26, 2017) (finding the "reaction of the class" prong favored final approval where there were no objections); *In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *7 (where only two members objected, "the Court finds that the low objection rate in this litigation weighs in favor of approving settlement").

### C.   The Class Settlement Payment Process is Fair and Reasonable

Under Federal Rule 23(e), courts should also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," Fed. R. Civ. P. 23(e)(2)(C)(ii), and evaluate whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This factor, too, strongly favors final approval.

All Class Members who did not opt out of the Settlement will receive Class Member Awards

based upon the number of Workweeks she worked for Merck during the liability period. (Agreement § 5.1.) This method of distribution is designed to ensure that Class Members who have worked more Workweeks—and thus are likely to have more valuable claims—will receive a larger share of the Settlement. As set forth in the Notice, a Class Member need not take any action to participate in the Settlement and receive a Class Member Award. (Baldwin Decl., Ex. A at 2.) Accordingly, employees who may be reluctant to take affirmative action to claim payment from Merck do not face that barrier to recovery. Moreover, no settlement funds will revert to Merck; instead, any checks that are issued by the Settlement Administrator and not cashed or deposited by Class Members will be paid to the Settlement's designated *cy pres* recipient, The Employee Rights Advocacy Institute for Law and Policy (the "Institute"), a non-profit organization that works to advocate for employees' rights in the American workplace. (Agreement ¶ 5.3(c).) The Institute's mission is thus consistent with the purpose of this lawsuit.

### D.   The Settlement's Provision for Attorneys' Fees is Reasonable, Fair, and Appropriate Under the Circumstances

Finally, "the terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), do not undermine the adequacy of the relief provided to the Class. The Settlement Agreement permits Counsel to seek *combined* fees and costs of up to $3,000,000. (Agreement § 7.2.) As discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (filed concurrently with this Motion), Plaintiffs' request for attorneys' fees is reasonable, fair, and appropriate under the circumstances. After deductions for reasonable and necessary litigation expenses, the resulting attorney's fee request is $2,272,845.38—or 36.7% of the total class settlement. (Sanford Decl. ¶ 22.) This percentage is within the established norms of class

litigation,[10] and is amply supported by Counsel's lodestar in this case, which exceeds $13,000,000. (*Id.* ¶ 24; Marcuse Decl. ¶ 25.) In short, Plaintiffs seek less than 18% of Counsel's accumulated lodestar. A negative lodestar multiplier of this magnitude strongly supports the reasonableness of the proposed award. *See Haas*, 2019 WL 413530, at *9 ("A negative lodestar suggests the fees requested are reasonable"); *cf. In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *11 (the fact that counsel would receive 76.7% of its lodestar confirmed the reasonableness of the fee).

## CONCLUSION

The Settlement Agreement is fair, adequate and reasonable and meets the criteria for approval of class action settlements. The Settlement Agreement is the product of arm's-length negotiation between Counsel for the Parties, and the benefits of the settlement outweigh the uncertainty and added time and expense that continued litigation of this matter would entail. Plaintiffs therefore respectfully request that the Court grant Plaintiffs' unopposed application for final approval of the Settlement Class and Collective and enter the proposed final approval order attached as Exhibit B to the Declaration of Russell L. Kornblith.

Dated: October 30, 2019                   Respectfully Submitted,

Russell L. Kornblith (*Pro Hac Vice*)
David W. Sanford (*Pro Hac Vice*)
Andrew Melzer (*Pro Hac Vice*)
David Tracey
Nicole E. Wiitala (*Pro Hac Vice*)

---

[10] Courts in the Third Circuit routinely recognize that percentage fee awards generally range up to 45% of the settlement amount. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d at 822; *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *29; *Bredbenner*, 2011 WL 1344745, at *21; *Geis v. Walgreen Co.*, No. CV 07-4238 (KSH), 2010 WL 11570447, at *20 (D.N.J. Sept. 30, 2010) (awarding 43% of the value of the recovery as appropriate under Third Circuit law).

**Sanford Heisler Sharp, LLP**
1350 Avenue of the Americas, Suite 3100
New York, NY 10019
Tel: (646) 402-5650
Fax: (646) 402-5651
rkornblith@sanfordheisler.com
dsanford@sanfordheisler.com
amelzer@sanfordheisler.com
dtracey@sanfordheisler.com
nwiitala@sanfordheisler.com

Thomas J. Henderson (*Pro Hac Vice*)
**Sanford Heisler Sharp, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Fax: (202) 499-5199
thenderson@sanfordheisler.com

Deborah K. Marcuse
**Sanford Heisler Sharp, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
Tel: (410) 834-7420
Fax: (410) 834-7425
dmarcuse@sanfordheisler.com

*Attorneys for Plaintiffs and the Class*

24