**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

KELLI SMITH, et al.,

       Plaintiffs,            CIVIL ACTION NUMBER:

       -vs-

                            3:13-cv-02970-MAS-LHG

MERCK & CO., INC., et al.,

                             FINAL APPROVAL/

       Defendants.            FAIRNESS HEARING
_____

      Clarkson S. Fisher United States Courthouse
      402 East State Street
      Trenton, New Jersey  08608
      December 3, 2019

**B E F O R E**:        HONORABLE MICHAEL A. SHIPP
                   UNITED STATES DISTRICT JUDGE


**A P P E A R A N C E S**:

SANFORD, HEISLER & SHARP, LLC.
BY:  RUSSELL KORNBLITH, ESQUIRE
     and
    NICOLE WIITALA, ESQUIRE
On behalf of the Plaintiffs.

MORGAN LEWIS & BOCKIUS, LLP
BY:  KRISSY A. KATZENSTEIN, ESQUIRE
    MICHAEL S. BURKHARDT, ESQUIRE
     and
    ALI M. KLIMENT, ESQUIRE
On behalf of the Defendants.

      Cathy J. Ford, Official Court Reporter
          cfordccr@gmail.com
          609.367.2777

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

```
1              THE DEPUTY COURT CLERK:  All rise.
2              (PROCEEDINGS held in open court before The Honorable
3    Michael A. Shipp, United States District Judge, at 11:01 a.m.)
4              THE COURT:  Please be seated.  Good morning.
5              ALL COUNSEL:  Good morning.
6              THE COURT:  We are here today and on the record in
7    the matter of Smith v. Merck, et al., Docket Number 13-2970.
8              May I have appearances of counsel, please.
9              MR. KORNBLITH:  Yes, your Honor.
10   Russell Kornblith, Sanford, Heisler & Sharp for the
11   plaintiffs, here with Nicole Wiitala and Kelli Smith.
12             MS. KATENSTEIN:  Good morning, your Honor.
13   Krissy Katenstein with Morgan Lewis on behalf of the
14   defendants.  I'm here with my colleagues, Michael Burkhardt
15   and Ali Kliment, from Morgan Lewis and in-house counsel at
16   Merck, Nicole Stovall.
17             THE COURT:  Good morning to you folks as well.
18             So, on July 19, 2019, the Court granted preliminary
19   approval of the class action settlement.  We are here today
20   for a final hearing on the fairness, reasonableness, and
21   adequacy of the settlement reached between the defendants and
22   the class representatives, Kelli Smith, Kandice Bross, Rachel
23   Mountis, and Kate Whitmer through counsel.
24             Also, pending before the Court is plaintiffs' motion
25   for attorneys' fees, expenses, and service awards.
```

1          Even though the notice was required from any class

2    member who intended to make an appearance at today's hearing,

3    and the Court did not receive any notice of any intention to

4    appear, if there are any class members who are present here

5    today, I'll also allow you the opportunity to speak, in favor

6    or against the class settlement.  So I'm not sure if there

7    will be anyone here.

8          The Court will hear from class counsel on class

9    certification, certification of the Equal Pay Act collective

10   action, and the fairness of the settlement.

11         The Court will then hear from the class

12   representative and defense counsel, as well as any objectors.

13   I'll then turn to class counsel for their motion for

14   attorneys' fees and costs.

15         So, I'll begin by asking class counsel to

16   specifically address why this Court should first officially

17   certify the class under Rule 23, and then, second, certify the

18   Equal Pay Act collective action, and then, third, approve the

19   proposed settlement.

20         So I'm going to allow you to place the -- place on

21   the record the terms of the settlement agreement, the notice

22   that was sent to class members, the response provided by class

23   members, and anything else you believe that the Court ought to

24   know.

25         So, Mr. Kornblith, if you want to go ahead and take

1    the lead on this.

2              MR. KORNBLITH:  Yes, your Honor.

3              Good morning, your Honor, and thank you for hearing

4    us this morning.

5              The settlement before us today would provide $6.2

6    million in relief to 2,900 class members.  These class members

7    are women who were sales representatives at Merck in a variety

8    of roles from late 2010 until October of 2018.

9              This settlement is the product of more than five

10   years of litigation entailing, on the plaintiffs' side alone,

11   more than 23,000 hours of attorney time, hundreds of hours of

12   the named plaintiffs' time, and, ultimately, an arm's length

13   mediation that resulted in the settlement that we have today.

14             No class member has objected to the settlement.  Only

15   18 class members, which is less than 1 percent, it's about

16   .6 percent, have opted out of the settlement.  And of those,

17   none have expressed any disappointment with the settlement

18   that was achieved.

19             In addition, the defense counsel has notified the

20   State's Attorney General of the settlement per the Class

21   Action Fairness Act and no State Attorney General has sought

22   any further inquiry from defense counsel.

23             In this Circuit, there is a presumption of fairness

24   in a settlement when four factors are met.  The first of those

25   factors is that the settlement negotiations were conducted at

1   arm's length; the second is that there was sufficient

2   discovery; the third is that class counsel is experienced in

3   similar litigation; and the fourth is that only a small

4   fraction of the class objected.

5          Here, the case resolved through mediation, after

6   several attempts at negotiations over the course of this

7   five-year litigation, and the mediator was Mark Rudy of Rudy,

8   Exelrod in San Francisco, he's a very respected class action

9   mediator.  In fact, a former plaintiff's employment lawyer.

10  He was deposed by defense counsel, and plaintiff counsel

11  accepted him as a mediator.  He was actively involved in the

12  settlement negotiations, which were conducted over a full day,

13  in 2018, on October 1st.

14         Second, this case has been litigated very heavily by

15  class counsel, who are experienced in this kind of litigation,

16  on both sides.  There have been over 90 depositions in this

17  case, including the depositions of the four-named plaintiffs,

18  the depositions of 66 opt-in plaintiffs scattered across the

19  country, the depositions of four experts, all of whom are very

20  experienced in this kind of litigation, the depositions of 16

21  facts witnesses for Merck and numerous Rule 30(b)(6) witnesses

22  for the three Merck entities.  There's been written discovery

23  conducted on a total of 120 opt-in plaintiffs, in addition to

24  our named plaintiffs, and, of course, substantial document

25  production from Merck.  There are, at this time, five pending

1   motions in this case, each of which has entailed substantial

2   work by the counsel on both sides, the largest being

3   plaintiffs' motion for certification of the Rule 23 class and

4   for the EPA collective action.

5         There is also brought by defendants, a motion to

6   strike certain declarations that the plaintiffs have filed; a

7   Daubert motion filed against plaintiffs' labor economist,

8   Dr. Vekker; a separate Daubert motion filed against

9   plaintiffs' IO expert, Dr. David Friedland; and a motion for

10  summary judgment based on the failure of, in defendants' view,

11  the Rule 23 motion for class certification to conform to

12  theories articulated in the EEOC charges.  Both sides face

13  considerable litigation risks from these motions and that was

14  one of the factors that both sides considered in bringing

15  about the settlement that we have today.

16        We are all aware that even if a class -- if a class

17  is certified or if a class is denied, an appeal is likely down

18  the road, and so both parties face the long road of litigation

19  in the absence of a settlement.

20        With regard to class counsel, your Honor has seen the

21  papers submitted by both parties.  Our firm is very

22  experienced in employment class actions and in discrimination

23  class actions, in particular.  We have the largest Title VII

24  verdict ever was brought against a pharmaceutical company; and

25  the defense counsel, obviously, are very experienced also.  We

1  can be assured that no stone has been left unturned here in

2  the discovery and the litigation of this action.

3          With regard to the final factor, there are no

4  objectors in this case.  Both parties, their counsels, and as

5  we have heard from class members, every member of the class

6  that we have heard from wants this settlement to be approved.

7  Accordingly, we respectfully ask that the Court approve the

8  settlement and allow the class members to receive the relief

9  that's been agreed upon.

10          THE COURT:  I did have one question about the cy pres

11  recipient.

12          MR. KORNBLITH:  Yes, your Honor.

13          THE COURT:  How did you come to this particular cy

14  pres organization?

15          MR. KORNBLITH:  So we have two cy pres recipients.  I

16  believe it's the Employment Center -- the Employee Rights

17  Advocacy Institute For Law and Policy, which is a nonprofit

18  dedicating to helping employees advocate for their rights in

19  the workplace.  And since this is a discrimination case, we

20  believed it was an appropriate recipient of some of the cy

21  pres funds.  The other is the Impact Fund, which is dedicated

22  to impact litigation to bring about change.

23          And so again, because this is a class action case

24  aimed at discrimination in the workplace, we believe it would

25  be an appropriate cy pres recipient.

1          THE COURT:  And I ask, because I always get concerned

2    when I have cases that are brought against New Jersey

3    companies that are litigated in the New Jersey courts and then

4    a cy pres ends up being an organization out in California.

5    That concerns me because, I believe, there are organizations

6    that are located in this particular general area of the

7    country that are doing the same kinds of functions that the

8    organization that you're ultimately selecting here would be

9    doing that might also be, I guess, worthy recipients of this

10   kind of cy pres award.

11         Have you considered companies and groups and advocacy

12   institutes out in this area?

13         MR. KORNBLITH:  Your Honor, I don't know that we

14   considered any New Jersey specific organization in this case,

15   but I would say that this is a nationwide class action.  And

16   although, the --

17         THE COURT:  It's a nationwide class action but the

18   majority of the employees that Merck has are situated on the

19   East Coast, correct?

20         MR. KORNBLITH:  Well, your Honor, this is a case

21   brought on behalf of sales representatives, so there --

22         THE COURT:  Are any of their sales reps are located

23   on the East Coast, correct?

24         MR. KORNBLITH:  I would defer to defense counsel on

25   the locations of where exactly the sales reps are, but our

1    class was diverse across the nation, and I wouldn't say it was

2    weighted heavily towards the East Coast.

3           As the Court may have seen from the signature pages

4    on the plaintiffs' declarations, although Ms. Smith is based

5    in New Jersey, Ms. Bross is in Pennsylvania, Ms. Whitmer is in

6    the Los Angeles area, and Ms. Mountis worked in the Los

7    Angeles area and now works in the South Carolina area.  And so

8    we really have a broad cross-section of people across the

9    nation here.

10           THE COURT:  Counsel, that may very well be, but I

11    think -- I'm concerned.  I'm just letting you know that I'm

12    concerned.  That's the one aspect of this whole thing that I

13    did not like, because it just kind of felt like there were

14    areas and there are organizations that are located over here.

15    Clearly, this litigation has weighed in this Court for almost

16    six years in the District of New Jersey.  You're looking at a

17    company that has its national headquarters here in New Jersey,

18    and, yet, still, it would seem like a cy pres recipient from,

19    not only not Pennsylvania, not New York, but all the way on

20    the other side of the country, seems like there are other

21    entities that might be doing similar work locally.  But it's

22    not something for which I believe that we ought to hold up any

23    kind of resolution, but I wanted to let you know that I didn't

24    particularly find that appealing when I looked at this whole

25    agreement here.

1          Okay.  That's all I have for you.  Thank you.

2          MR. KORNBLITH:  Thank you, your Honor.

3          THE COURT:  From defense counsel, let me hear from

4   you.

5          On behalf of the defendants, first and foremost, do

6   you have full settlement authority to settle this matter.

7          MS. KATENSTEIN:  Yes, your Honor, we do have full

8   settlement authority.

9          THE COURT:  And on behalf of your client, do you

10  approve of the settlement and agree with the terms that have

11  been set forth by plaintiffs' counsel?

12         MS. KATENSTEIN:  Yes, your Honor.  We agree that they

13  are fair terms.

14         THE COURT:  And are you satisfied that all of your

15  clients' concerns have been addressed?

16         MS. KATENSTEIN:  Yes, your Honor.

17         THE COURT:  Okay.  Anything else you want to put on

18  the record?

19         MS. KATENSTEIN:  Your Honor, I would just agree with

20  Mr. Kornblith that this was a heavily contested case with

21  extensive litigation, over five plus years, as he said, with

22  the opportunity for both parties to assess both the likelihood

23  of class certification and the merits of the case; and through

24  an arm's length negotiation did arrive at this settlement with

25  both parties believing that it is fair and equitable to both

```
 1   sides.
 2          And I think one thing that defendant would just note
 3   is that pursuant to Rule 23 in the Supreme Court's decision in
 4   Amchem v. Windsor, the Court is not required to find
 5   superiority when ruling on a final settlement.  So there is no
 6   need to determine whether this is in fact the most manageable
 7   way for proceeding.  That would only be if the case were going
 8   through class certification in the ordinary course that
 9   plaintiffs would be required to show manageability, which, as
10   was laid out in defendants' original class certification
11   papers, defendants don't believe they would be able to do.
12   But in the settlement context, it is not a necessary showing.
13          Thank you, your Honor.
14          THE COURT:  Okay.  Let me hear now from the class
15   rep, Ms. Smith.
16          Gina, can you administer the oath, please.
17          THE COURT:  You can remain seated.  You don't have to
18   take the witness stand.
19          Mr. Kornblith, I'm going to ask you to do the
20   questioning.
21          MR. KORNBLITH:  Yes, your Honor.
22   KELLI SMITH, PLAINTIFF, SWORN.
23          THE DEPUTY COURT CLERK:  Please state your name for
24   the record and spell your last name.
25          MS. SMITH:  Kelli Smith, S-M-I-T-H.
```

```
 1          THE COURT:  And Ms. Smith, you can be seated.  I'm
 2   going to ask you to keep your voice up and speak directly into
 3   the microphone.  I'm going to ask your attorney to go through
 4   some necessary questions related to the proposed settlement
 5   and your representation of the class and the amount that
 6   you're receiving as a result of being a class rep.  I'll use
 7   your answers to determine the fairness and reasonableness and
 8   appropriateness of the proposed settlement.
 9          So, with that, Mr. Kornblith, I'm going to turn it
10   over to you.
11          MR. KORNBLITH:  Yes, your Honor.  And I would add, if
12   there are specific questions that I do or don't ask that the
13   Court would like to hear an answer, the Court is of course
14   welcome to interpose them.
15   BY MR. KORNBLITH:
16   Q.   Ms. Smith, good morning.
17   A.   Good morning.
18   Q.   Thank you for being here today.
19        As you understand, we're here in a final fairness hearing
20   on claims that you brought against Merck.
21        Do you understand that?
22   A.   Yes.
23   Q.   And I take it you were at one point employed by Merck.
24   Yes?
25   A.   Yes.
```

```
 1   Q.   Okay.  How did you come to be employed at Merck?

 2   A.   I interviewed with them in 2004, I believe.  I'm sorry.

 3   Yes, 2004.  I was a head hunter prior to that, and I had the

 4   experience of knowing a lot about the pharmaceutical industry.

 5   I thought they were a very reputable company, and they were

 6   known to be first in class in product and that's the company I

 7   wanted to strive to work for.

 8   Q.   And you came to eventually bring litigation against

 9   Merck?

10   A.   Correct.

11   Q.   What is the general nature of the claims that you brought

12   against Merck?

13   A.   Individually, I brought a class of claims of retaliation,

14   as well as having to leave due to the circumstances.

15   Q.   And what about on behalf of the class that are here?

16   A.   It was mainly due to discrimination on pregnancy, as well

17   as payment issues based on tiering.

18   Q.   Okay.  Why did you come to believe that you were

19   experiencing gender discrimination at Merck?

20   A.   It wasn't one reason.  There were a variety of reasons.

21   It just kept on adding to it.  It started when I sat down with

22   my peers, both men who were at the same level as I was but

23   receiving distinct higher increases, significantly higher

24   increases, as well as telling us that they were receiving

25   14 percent increases versus our 1 to 2 in some cases where my
```

1    colleagues were receiving zero, the difference was that I was

2    ranked Number 1 in the company.  My competencies were rated as

3    being great.  So I knew something was up because we were mere

4    images within a territory, so that was kind of when I

5    thought -- when I came back from maternity leave, we were told

6    we were being placed in these new positions specifically on

7    our competencies, nothing else.  Because there was a merger

8    between our companies, Schering-Plough and Merck.

9         My competencies for 2010 said that I had exemplified what

10   great looks like to the region, not just to the district, but

11   to the region, which is what you strive to do.  I was used as

12   an example time and time again.

13        So when I was asked why I was placed at the lowest tier

14   because of my competencies, the rationale I was given was

15   because it was the timing of me having a baby.  I questioned

16   that.  I said, are you saying the timing of me having a baby

17   is why I was placed ...?  Yes, it all came down to timing.  I

18   said, I beg you -- this is my district manager -- you have to

19   give me something more because I knew that that just didn't

20   sound right.  Was it based on anything I wasn't doing out in

21   the field?  Was it based on my skill sets?  No, keep doing

22   what you're doing.  You're great.  I know I'm going to eat

23   crow on this one.  Keep doing what you're doing.

24        So I said, with all due respect, I need to inquire about

25   this.  I have to find out more as to why I'm getting placed at

1   the lowest tier.  Nothing.  Keep doing what you're doing.

2   You're the example of what great looks like.

3       I then pursued it with my regional manager.  I then

4   pursued it with HR.  And in each instance, I said, please give

5   me something to say I approved upon.  Nobody could help me.  I

6   went to our ombudsman.  And as this progressed, I found

7   that -- I was basically being watched over.  I would -- the

8   ombudsman started to come to the meetings.  There would be

9   hundreds of reps there and the ombudsman would sit at my

10  table.  They would go to the lunch table where I would sit.

11  They would sit in my room.

12      Then we went to a team building event, and the HR person

13  that was -- not only my representative -- all the woman that

14  had complained about our manager, our regional manager while

15  they were on maternity leave, it was their representative as

16  well, and she happened to be on the same curling team, which

17  is equivalent to a two-lane bowling room with a bar at the end

18  of it.  And the HR person was on the curling team with my

19  manager.  I said, this is not right.  You know, there's

20  definitely a conflict of interest.

21  Q.  Let me ask you, you mentioned having a baby.  How old is

22  that child today?

23  A.  He'll be 10 in March.

24  Q.  And so, around that time, when did you -- or, excuse me,

25  when did you engage an attorney here?

1    A.   I engaged an attorney in 2000 -- it was either the end of

2    2010 or 2011, right at the beginning.

3    Q.   Okay.  What was the first step that you took -- first,

4    let me ask you, how did you choose Sanford Heisler Sharp as

5    your attorneys in this case?

6    A.   I did some research.  First, I went to friends of family

7    that were attorneys and asked them what they thought.

8    Everybody stood by my side and said that this is no-brainer,

9    and that was part of everything we had heard that was going on

10   from the harassment that was happening to women within our

11   region, being called -- pardon my language -- being called

12   whores, being put in a position to play beer pong, where they

13   were trying to get the ping pong ball into the -- I asked

14   around a lot.  And then when I researched discrimination in

15   pharmaceutical sales with attorneys, I came across Sanford

16   Heisler.

17   Q.   Okay.  And so, what was the first step you took after

18   engaging counsel in pursuing this case?

19   A.   I contacted them through the website.  And shortly after

20   I received a call from David Sanford, who said that he wanted

21   to hear more.  And after a lot of dialog, he very politely

22   said, you know what, I get a ton of these every day.  He said,

23   I get hundreds of these, and I never call.  He said, it's very

24   rare that I call.  He said, I think this is something we need

25   to pursue.

```
 1   Q.   Did there come a time where you filed an EEOC charge in

 2   this case?

 3   A.   Yes.

 4   Q.   How much time would you say you spent in preparing to

 5   file that?

 6   A.   That was very time consuming, because we had to dig up a

 7   lot of the paperwork and policies and procedures from Merck,

 8   feedback that came from my colleagues.  So 50 hours, maybe.

 9   It's tough to say 10 years later, 11 years later.

10   Q.   And what's the next major step in this litigation you

11   recall after filing that EEOC charge?

12   A.   After that was the mediation, which happened well over a

13   year after.

14   Q.   And that mediation was conducted for you alone?

15   A.   Correct.  Merck was there.

16   Q.   And did the case resolve at that mediation?

17   A.   No.

18   Q.   What happened after the mediation in your pursuit of this

19   case?

20   A.   After the mediation, we had to file an amendment, I

21   believe.  I think --

22   Q.   Did you file a case in court?

23   A.   We did.

24   Q.   And tell me about the considerations for you that went

25   into filing a case in court?
```

1    A.   So this was really hard because I knew that this was

2    affecting the bigger picture of my colleagues.   I knew it

3    wasn't just me that was going through this, but everybody was

4    very scared to speak up.   The woman, who was sexually harassed

5    in a bar, would not speak up for herself because she was

6    scared to lose her job, and I was looked at as a leader in

7    this company because I was looked at as a leader to my peers.

8         So my big consideration was, what do I tell my children?

9    When I spoke to my own mother, she said, this is corporate

10   America.   You need that.   I said, well, that's not right.

11   It's not the right thing to do.   It's not -- what am I going

12   to tell my own daughter?   Am I going to tell her it's the

13   right thing to do.   Am I going to tell my son that that's

14   okay.   And so I came to grasp -- I had long conversations with

15   my husband saying, I don't know if I can go to sleep at night

16   knowing that I just walked away from doing the right thing.

17   And so I filed, and I knew it was going to get publicity.   I

18   knew it was going to affect my family.   But I didn't know the

19   exact ... (Witness crying).

20   Q.   Are you okay?

21        After you filed the complaint, what's the next

22   significant step you recall in this litigation?

23   A.   That was the amendment.

24   Q.   Tell me about that process?

25   A.   Again, a lot of paperwork, reviewing procedures,

1  preparing for the next steps, documentation from Merck.  It

2  took a good, another, I don't know, 5 to 10 hours reviewing

3  and going over it all.

4  Q.   And after you filed the amended complaint, what's the

5  next big step you recall in this case?

6  A.   I can't really remember.  I'm sorry.

7  Q.   Do you recall Merck filing a motion to dismiss in this

8  case?

9  A.   Yes, Merck filed a motion to dismiss.

10  Q.   And what do you recall about that?

11  A.   I remember being very upset because I thought, you know

12  it's true and how can this happen.  But it fired me up a lot

13  to say that we need to fight harder, and we need to do the

14  right thing.

15  Q.   And after Merck filed the motion to dismiss, what's the

16  next major step that you recall in this case?

17  A.   At that point, I believe we had to turn in all of our

18  phone records and everything.  Correct?

19  Q.   Right.  So you said you turned over your phone records.

20  Do you recall any other involvement in the discovery process

21  here?

22  A.   The discovery process was not only turning over my phone

23  records but all my email records, my email accounts.  My

24  husband's phone had to get turned over because I once used his

25  phone, so years of his own personal information came about.

1    My personal journals had to get put into play.  So it was very

2    invasive.

3    Q.   Okay.  How much time would you say you spent in that

4    process?

5    A.   That was quite tedious.  So, 30 to 40 hours probably.

6    Q.   Okay.  Did there come a time where you sat for a

7    deposition in this case?

8    A.   Yes.

9    Q.   Do you recall who deposed you?

10   A.   Yes, Michael Burkhardt.

11   Q.   Can you tell me a little bit about the process of

12   preparing for your deposition.  Did you meet with counsel?

13   A.   Met with counsel, spoke with counsel regularly on the

14   phone.  There were many hours involved with that.  Making sure

15   we reviewed pretty much all the documents that came forward.

16   We couldn't possibly have all because there's emails from

17   years ago and a lot of people involved.  But there were

18   definitely many hours put into that preparation.

19   Q.   And the deposition, itself, what do you recall about how

20   that affected you emotionally?

21   A.   That was an awful experience because you knew that every

22   answer that you put out there, the role of the defense

23   attorney is to prove you wrong, so no matter what you say,

24   whether how truthful it is, how valid these things are

25   happening, the next question would make you feel like you're

```
 1   wrong.  You did something wrong.  When all I was doing was
 2   fighting for something that was right.  So it was awful.  You
 3   spent hours preparing for that, years going through it, and
 4   then you set another date just to be humiliated.
 5   Q.   Ms. Smith, after your deposition, do you recall what the
 6   next significant involvement you had in the case was?
 7   A.   I believe, certification or declaration, we had to
 8   present that to -- in the grand scheme of things, it didn't
 9   take as many hours, maybe two to six, but it was two, six
10   hours away from spending with the children that you haven't
11   been able to in the last eight years.  It's hours, more hours.
12   Q.   Do you recall what you did next in pursuit of this
13   litigation?
14   A.   After the declaration, then came the class certification.
15   Q.   Do you recall working with counsel regarding the
16   selection and analysis of their experts?
17   A.   Yes.
18   Q.   How much time would you say you spent on that?
19   A.   Probably another five hours.
20   Q.   And then you mentioned class certification.  Did you
21   assist counsel in the preparation of the class certification
22   papers?
23   A.   Yes.
24   Q.   How much time would you say you spent on that?
25   A.   Again, probably about the same.
```

1    Q.   Do you recall what the next significant step was you took

2    in this litigation?

3    A.   At that point, we may have -- I believe Merck then came

4    back to us and said that they were willing to settle.

5    Q.   Okay.  Tell me how the settlement process happened in

6    your recollection?

7    A.   In the big picture, it happened pretty fast considering

8    the amount of months and years that had gone by.  This

9    happened in September.  And by October, we were to, on our own

10   time, fly out to San Francisco and get a hotel and meet them

11   prior to.  There was a lot of conversation and dialog that

12   transpired between us and the -- my peers that were involved

13   with the case.  And then we had to go to San Francisco, meet

14   with my attorneys, and then the next day we would sit down for

15   the mediation.

16   Q.   Okay.  And the mediation, do you recall about how long

17   that took?

18   A.   That was a whole day, yeah.

19   Q.   Can you tell me about the emotions that you had during

20   that day?

21   A.   So, I was very calm and confident and tried to hold it

22   all in.  As it goes back and forth, the numbers started at a

23   very high number, representing a lot of women, and you would

24   see it dwindle down, and it would make you feel as if you

25   weren't worth anything and everything you fought for wasn't

1    worth it.  While you don't go for the end goal of the dollar

2    amount, you go to make a difference for all these women that

3    are there, and so at the very end, that was when we finally

4    came to a settlement, and I cried.

5         But you're alone.  You're alone out there because you're

6    told you're not allowed to say anything.  You're not allowed

7    to talk to anybody.  You're not supposed to celebrate this.

8    It wasn't an exciting thing.

9         My family wasn't there because I had to pay for my own

10   flight back and forth.  I needed somebody to take care of my

11   children and life back home.  So you're there at the end of

12   this 10-year journey just saying, okay, it's over.

13        I don't know any of the other women that were a part of

14   this lawsuit.  I know that they went through what I went

15   through, so it's not if I can celebrate with them.

16   Q.  Ms. Smith, do you believe that the settlement that we

17   have, as a result of that mediation, is a good settlement for

18   the class?

19   A.  Yes.

20   Q.  Okay.  Do you recommend that the Court approve it today?

21   A.  Yes, please.

22        MR. KORNBLITH:  Your Honor, I believe that's all I

23   have at this time.

24        THE COURT:  Okay.  Counsel, and perhaps you can

25   answer this.  How much will Ms. Smith receive from the

```
 1   settlement agreement as the class representative?
 2            MR. KORNBLITH:  There is a service payment for
 3   Ms. Smith of $25,000.  And then there will be an allocation
 4   based on the number of work weeks that she had in the
 5   applicable class period.  I actually don't know that number.
 6            THE COURT:  Ms. Smith, do you believe that this
 7   number is fair?
 8            MS. SMITH:  Yes.
 9            THE COURT:  Are there any additional incentives or
10   bonuses that she will have beyond what you just indicated?
11            MR. KORNBLITH:  Well, there is the individual
12   settlement agreement that we disclosed, but that is not an
13   incentive or a bonus, that's a separate agreement based on her
14   individual claims.
15            THE COURT:  Okay.  Ms. Smith, are you satisfied with
16   your counsel's representation and services provided to you in
17   this case?
18            MS. SMITH:  Yes, sir.
19            THE COURT:  Do you have any concerns relating to the
20   proposed settlement at all?
21            MS. SMITH:  No.
22            THE COURT:  Okay.  Thank you.
23            And just out of fairness, I want to turn it over to
24   defense counsel to ask if you have anything that you need to
25   add for this Court's consideration at this time?
```

1          MS. KATENSTEIN:  No, your Honor.

2          THE COURT:  Okay.  And I received the declarations

3    from other class representatives that are not here to attend

4    in person, and the Court has considered those.

5          I did not receive any objections or notices of

6    intentions to appear, but, nonetheless, the Court would like

7    to open the floor if there are any class members that are

8    present.

9          Are there any class members present?  Seeing none.  I

10   see one gentleman in the back --

11         MR. KORNBLITH:  That's Mr. Smith, your Honor.

12         THE COURT:  I kind of surmised that.

13         So, with that, I guess we move into the class counsel

14   attorneys' fees and expenses.

15         Having reviewed the proposed settlement agreement and

16   counsel's request for attorneys' fees and expenses, it is this

17   Court's understanding that the settlement agreement permits

18   class counsel to seek no more than $3 million in attorneys'

19   fees and expenses and $50,000 in settlement administration

20   costs.  Class counsel seeks $727,154.62 for reasonable

21   litigation expenses and $2,272,845.38 in attorneys' fees.  In

22   total, the attorneys' fees amount to 36.7 percent of the

23   common fund.  And that's exclusive of the litigation expenses.

24         Counsel, just finally, if you can go through the fees

25   for me and just explain to me how the fees will be paid, what

1   the timing is, what the services included.  Anything else you

2   want to put on the record as to the costs and expenses.  How

3   many attorneys worked on the matter, the hourly rates, and any

4   other issues that the Court might need for resolving the issue

5   of the attorneys' fees in this matter.

6            MR. KORNBLITH:  Yes, your Honor.

7            Let me start by saying this case, if the Court looks

8   at the docket, has been litigated now for, in this court, more

9   than six years or approximately six years.  And in addition to

10  that, there was obviously a substantial lead up of two years

11  representing Ms. Smith before a class action was filed.  So

12  the total trajectory of this litigation is approximately eight

13  years, which is a very long time.

14           We have an immense number of depositions, nearly 100,

15  many of which were scattered across the country, entailing

16  significant travel time.  Speaking for Sanford Heisler alone

17  -- or, excuse me, speaking largely on the expenses, we have

18  over $200,000 that was expended in pursuit of those

19  depositions across the country.  We have over $200,000 in

20  expert fees, between two experts and of course critiquing the

21  experts retained by defense counsel, and we've got over

22  $150,000 of e-discovery costs comprising substantial docket

23  maintenance, docket searching, and docket processing needs,

24  including the documents of a 120 opt-in plaintiffs that had to

25  be collected, processed, reviewed and produced.  We have

1    mediation costs that were in excess of $20,000 in this case.

2          In terms of the hours, your Honor, we have over

3    23,000 hours expended by class counsel in pursuit of this

4    case.  The hours per lawyer and the exact hourly rate appear

5    in the Sanford and Marcuse declarations, which were filed in

6    support of class certification, and the Court can see the

7    hourly rates there range from $275 or $295 for our legal

8    assistance at the low end to over $800 for experienced

9    partners at the high end.

10         We have -- there are a few firms, I believe, in the

11   country that could have undertaken a litigation and a

12   discovery process this vast and this lengthy with no risk of

13   any payment at the end.

14         So, your Honor, we would respectfully ask that the

15   Court award the attorneys' fees and expenses as requested.

16   The attorneys' fees that we have requested represent, I

17   believe, approximately 17 percent of our total lodestar.  So

18   we are no recouping over 100 cents on the dollar here.

19         THE COURT:  Thank you, Counsel.

20         Let me hear from defense counsel.  Any issue or

21   response to that?

22         MS. KATENSTEIN:  Your Honor, we don't take any

23   position on plaintiffs' petition.

24         THE COURT:  Okay.  Anything else that the Court needs

25   to consider before making a final determination here?

1          From the plaintiffs' counsel?

2          MR. KORNBLITH:  Not from plaintiffs' counsel, your

3     Honor.

4          THE COURT:  Anything else from defense counsel?

5          MS. KATENSTEIN:  No, your Honor.

6          THE COURT:  Thank you.

7          Counsel, thank you for your testimony here today.

8          After considering plaintiffs' briefing, declarations

9     and correspondence of class counsel, class representatives,

10    and the claims administrator, as well as the testimony here

11    today, I am prepared to enter my findings and conclusions on

12    the record.  Having reviewed plaintiffs' motion for final

13    approval of the class action settlement and all other

14    pleadings, documents, and testimony set forth on the record,

15    this Court is satisfied that the terms of the settlement

16    agreement are fair, reasonable, and adequate.  Fed. R. Civ. P.

17    23(e)(2).

18         Specifically, this Court finds that the settlement

19    class meets all the necessary Rule 23(a) and (b) requirements

20    for certification and settlement purposes.  The Court finds

21    that: (1) the proposed class is so numerous that joinder of

22    all members of the class is impracticable, Fed. R. Civ. P.

23    23(a)(1); (2) there are questions of law or fact that are

24    common to the class, Fed. R. Civ. P. 23(a)(2); (3) class

25    representatives Kelli Smith, Kandice Bross, Rachel Mountis,

1   and Kate Whitmer's claims are typical of the claims of the

2   other class members and they will fairly and adequately

3   protect class members' interests, Fed. R. Civ. P. 23(a)(3),

4   (4); (4) questions of law and fact common to class members

5   predominate over any questions affecting only individual

6   members, Fed. R. Civ. P. 23(b)(3); (5) this class action is

7   the superior method for efficiently adjudicating the claims

8   asserted, *id.*; (6) counsel have demonstrated that they are

9   qualified to serve as class counsel; and (7) notice to the

10  class has been properly and adequately provided to potential

11  class members in accordance with this Court's Preliminary

12  Approval Order and Rule 23, *see* Fed. R. Civ. P. 23(c)(2).  The

13  Court, accordingly, certifies this class for the purposes of

14  settlement.

15          Additionally, the Court finds that final

16  certification of the Equal Pay Act Collective Action is

17  appropriate.  The Court finds that the named plaintiffs are

18  similarly situated with the opt-in plaintiffs because they all

19  share similar employment settings and faced common employer

20  action.  *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527,

21  53637 (3d Cir. 2012).

22          As for the proposed settlement, the Court is

23  satisfied that the settlement agreement, as outlined by

24  counsel on the record, is fair, reasonable, and adequate to

25  the class members in light of the complexity, expense, and

1   duration of this litigation and the risks involved with going

2   to trial and demonstrating liability and damages.  As

3   supported by counsel's showing on the record and in briefing,

4   the proposal was negotiated at arm's length, *see* Fed. R. Civ.

5   P. 23(e)(2)(B); there would be significant costs, risks, and

6   delay if this case were taken to trial, *see* Fed. R. Civ. P.

7   23(e)(2)(C)(i); the proposed settlement treats class members

8   equitably relative to each other by paying class members based

9   on weeks worked, *see* Fed. R. Civ. P. 23(e)(2)(D); the proposed

10  settlement automatically distributes funds to the class

11  members without requiring an onerous claims process, *see* Fed.

12  R. Civ. P. 23(e)(2)(C)(ii); and agreements made with class

13  representatives in connection with the proposal do not raise

14  concerns that the proposed settlement was improperly

15  negotiated or agreed to, *see* Fed. R. Civ. P. 23(e)(2)(C)(iv).

16  The Court also finds that $50,000 for the purpose of claims

17  administration and distribution of class funds is fair and

18  reasonable.

19        Moreover, this Court finds that the following service

20  awards are fair and reasonable based on the surrounding

21  circumstances and complexity of this matter:

22        1.  $25,000 each to class representatives Ms. Smith,

23  Ms. Bross, Ms. Mountis, and Ms. Whitmer;

24        2.  $4,000 each to the 66 collective action members who

25  were deposed;

1      3.  $1,000 each to the 55 collective action members who

2  submitted written discovery but who were not deposed;

3      4.  $1,000 to the collective action member who

4  submitted a declaration but who was not deposed; and

5      5.  $100 each to the 547 opt-in collective action

6  members who did not participate in discovery and did not opt

7  out of the settlement.

8      Likewise, based on Class counsel's request for an award

9  of attorneys' fees and reimbursement of expenses, as well as

10  the testimony heard by this Court today, the Court finds that

11  the requested $727,154.62 in expenses and $2,272,845.38 in

12  attorneys' fees are also fair and reasonable.  Fed. R. Civ. P.

13  23(e)(2)(C)(iii).  The Court notes, and finds persuasive, the

14  absence of objections from the class to the settlement terms

15  or attorneys' fees, the complexity and duration of the

16  litigation, the risk of nonpayment faced by class counsel, and

17  the amount of time devoted to the case by class counsel.  *See*

18  *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1

19  (3d Cir. 2000).  Class counsel devoted over 23,000 hours to

20  this litigation and requested attorneys' fees amount to 17.1%

21  of the lodestar.  (Sanford Decl. ¶ 24, ECF No. 437; Marcuse

22  Decl. ¶ 25, ECF No. 438; Kornblith Decl. ¶ 60, ECF No. 436);

23  *see In re New Jersey Tax Sales Certificates Antitrust Litig.*,

24  No. 12-1893, 2016 WL 5844319, at *11 (D.N.J. Oct. 3, 2016).

25      Accordingly, the Court approves the Class Settlement

1   Agreement and grants Class counsel's Motion for Attorneys'

2   Fees, Costs, and Service Awards.  An order consistent with

3   this opinion will issue later today.

4          With that, Counsel, all I can say is that, I have been

5   on this bench as a district court judge for seven years.  This

6   is one of my first cases that I had when I came on the bench.

7   I was a magistrate judge for five years prior to that, so

8   suffice it to say that this Court is equally happy to see this

9   matter resolve and to see this -- to see everyone move on with

10  their lives.

11         So, Ms. Smith, certainly, I don't know that we say

12  congratulations, but I'm certainly happy that you will move on

13  with your life and put this matter behind you.

14         And to the parties, both counsel, I just think you all

15  did a great job at least professionally trying to bring this

16  about -- some kind of closure as early as you possible could.

17  I understood you kind of lived with this matter through

18  motions and through many of the litigation phases that you

19  went through, so I certainly know that the numbers here are

20  appropriate and that in fact they probably could have been a

21  lot different.  But due to the professionalism of the

22  attorneys here, I believe that you folks were able to bring

23  this in and get it resolved as best you could on both sides.

24         So, with that, congratulations, and that's all we have.

25  I'll issue an order, and we'll try and get this wrapped up.

1          MR. KORNBLITH:  Thank you, your Honor.

2          MS. KATENSTEIN:  Thank you, your Honor.

3          THE DEPUTY COURT CLERK:  All rise.

4          (Court concludes at 11:43 a.m.)

5

6          FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE

7     - - - - - - - - - - - - - - - - - - - - - - - - - - -

8

9

10     I certify that the foregoing is a correct transcript from

11   the record of proceedings in the above-entitled matter.

12

13

14

15

16

17

18   **/S/ CATHY J. FORD, CCR, CRR, RPR          January 15, 2020**

19       Court Reporter                    Date

20

21

22

23

24

25

## $

**$1,000** [2] - 30:25, 31:2
**$100** [1] - 31:4
**$150,000** [1] - 26:22
**$2,272,845.38** [2] - 25:21, 31:10
**$20,000** [1] - 27:1
**$200,000** [2] - 26:18, 26:19
**$25,000** [2] - 24:3, 30:21
**$275** [1] - 27:7
**$295** [1] - 27:7
**$4,000** [1] - 30:23
**$50,000** [2] - 25:19, 30:15
**$727,154.62** [2] - 25:20, 31:10
**$800** [1] - 27:8

## /

**/S** [1] - 33:17

## 0

**08608** [1] - 1:10

## 1

**1** [5] - 4:15, 13:25, 14:2, 28:21, 30:21
**10** [1] - 15:23, 17:9, 19:2
**10-year** [1] - 23:12
**100** [2] - 26:14, 27:18
**11** [2] - 17:9, 31:23
**11:01** [1] - 2:3
**11:43** [1] - 33:3
**12-1893** [1] - 31:23
**120** [2] - 5:23, 26:24
**13-2970** [1] - 2:7
**14** [1] - 13:25
**15** [1] - 33:17
**16** [1] - 5:20
**17** [1] - 27:17
**17.1%** [1] - 31:19
**18** [1] - 4:15
**19** [1] - 2:18
**190** [1] - 31:17
**195** [1] - 31:17
**1st** [1] - 5:13

## 2

**2** [3] - 13:25, 28:23, 30:23
**2,900** [1] - 4:6
**2000** [1] - 16:1
**2000)** [1] - 31:18
**2004** [2] - 13:2, 13:3
**2010** [3] - 4:8, 14:9, 16:2
**2011** [1] - 16:2
**2012)** [1] - 29:21

**2016** [1] - 31:23
**2016)** [1] - 31:23
**2018** [2] - 4:8, 5:13
**2019** [2] - 1:10, 2:18
**2020** [1] - 33:17
**223** [1] - 31:17
**23** [5] - 3:17, 6:3, 6:11, 11:3, 29:12
**23(a** [1] - 28:19
**23(a)(1** [1] - 28:23
**23(a)(2** [1] - 28:24
**23(a)(3** [1] - 29:3
**23(b)(3** [1] - 29:6
**23(c)(2)** [1] - 29:12
**23(e)(2)** [1] - 28:17
**23(e)(2)(B** [1] - 30:5
**23(e)(2)(C)(i** [1] - 30:7
**23(e)(2)(C)(ii** [1] - 30:11
**23(e)(2)(C)(iii)** [1] - 31:12
**23(e)(2)(C)(iv)** [1] - 30:15
**23(e)(2)D** [1] - 30:8
**23,000** [3] - 4:11, 27:3, 31:18
**24** [1] - 31:20
**25** [1] - 31:21

## 3

**3** [5] - 1:10, 25:18, 28:24, 30:25, 31:23
**30** [1] - 20:5
**30(b)(6** [1] - 5:21
**36.7** [1] - 25:22
**3:13-cv-02970-MAS-LHG** [1] - 1:6
**3d** [1] - 29:21, 31:18

## 4

**4** [3] - 29:4, 31:2
**40** [1] - 20:5
**402** [1] - 1:9
**436** [1] - 31:21
**437** [1] - 31:20
**438** [1] - 31:21

## 5

**5** [3] - 19:2, 29:6, 31:4
**50** [1] - 17:8
**527** [1] - 29:20
**53637** [1] - 29:21
**547** [1] - 31:4
**55** [1] - 30:25
**5844319** [1] - 31:23

## 6

**6** [2] - 4:16, 29:8
**6.2** [1] - 4:5
**60** [1] - 31:21

**609.367.2777** [1] - 1:23
**66** [2] - 5:18, 30:23
**691** [1] - 29:20

## 7

**7** [1] - 29:9

## 9

**90** [1] - 5:16

## A

**a.m** [2] - 2:3, 33:3
**able** [3] - 11:11, 21:11, 32:21
**above-entitled** [1] - 33:10
**absence** [2] - 6:19, 31:13
**accepted** [1] - 5:11
**accordance** [1] - 29:11
**Accordingly** [1] - 31:24
**accordingly** [2] - 7:7, 29:13
**accounts** [1] - 19:23
**achieved** [1] - 4:18
**Act** [4] - 3:9, 3:18, 4:21, 29:16
**ACTION** [1] - 1:5
**action** [17] - 2:19, 3:10, 3:18, 5:8, 6:4, 7:2, 7:23, 8:15, 8:17, 26:11, 28:13, 29:6, 29:20, 30:23, 30:25, 31:2, 31:4
**Action** [2] - 4:21, 29:16
**actions** [2] - 6:22, 6:23
**actively** [1] - 5:11
**add** [2] - 12:11, 24:25
**adding** [1] - 13:21
**addition** [3] - 4:19, 5:23, 26:9
**additional** [1] - 24:9
**Additionally** [1] - 29:15
**address** [1] - 3:16
**addressed** [1] - 10:15
**adequacy** [1] - 2:21
**adequate** [2] - 28:16, 29:24
**adequately** [2] - 29:2, 29:10
**adjudicating** [1] - 29:7
**administer** [1] - 11:16
**administration** [2] - 25:19, 30:16
**administrator** [1] - 28:10
**advocacy** [1] - 8:11
**Advocacy** [1] - 7:17
**advocate** [1] - 7:18
**affect** [1] - 18:18
**affected** [1] - 20:20
**affecting** [2] - 18:2, 29:5
**ago** [1] - 20:17
**agree** [3] - 10:10, 10:12, 10:19
**agreed** [2] - 7:9, 30:14

**agreement** [9] - 3:21, 9:25, 24:1, 24:12, 24:13, 25:15, 25:17, 28:16, 29:23
**Agreement** [1] - 31:25
**agreements** [1] - 30:11
**ahead** [1] - 3:25
**aided** [1] - 1:25
**aimed** [1] - 7:24
**al** [3] - 1:4, 1:7, 2:7
**ALI** [1] - 1:20
**Ali** [1] - 2:15
**ALL** [1] - 2:5
**allocation** [1] - 24:3
**allow** [3] - 3:5, 3:20, 7:8
**allowed** [1] - 23:6
**almost** [1] - 9:15
**alone** [5] - 4:10, 17:14, 23:5, 26:16
**Amchem** [1] - 11:4
**amended** [1] - 19:4
**amendment** [2] - 17:20, 18:23
**America** [1] - 18:10
**amount** [6] - 12:5, 22:8, 23:2, 25:22, 31:16, 31:19
**analysis** [1] - 21:16
**Angeles** [2] - 9:6, 9:7
**answer** [3] - 12:13, 20:22, 23:25
**answers** [1] - 12:7
**Antitrust** [1] - 31:22
**appeal** [1] - 6:17
**appealing** [1] - 9:24
**appear** [3] - 3:4, 25:6, 27:4
**appearance** [1] - 3:2
**appearances** [1] - 2:3
**applicable** [1] - 24:5
**appropriate** [4] - 7:20, 7:25, 29:17, 32:19
**appropriateness** [1] - 12:8
**APPROVAL** [1] - 1:7
**approval** [2] - 2:19, 28:13
**Approval** [1] - 29:12
**approve** [4] - 3:18, 7:7, 10:10, 23:20
**approved** [2] - 7:6, 15:5
**approves** [1] - 31:24
**area** [5] - 8:6, 8:12, 9:6, 9:7
**areas** [1] - 9:14
**arm's** [4] - 4:12, 5:1, 10:24, 30:4
**arrive** [1] - 10:24
**articulated** [1] - 6:12
**aspect** [1] - 9:12
**asserted** [1] - 29:8
**assess** [1] - 10:22
**assist** [1] - 21:21
**assistance** [1] - 27:8
**assured** [1] - 7:1

attempts [1] - 5:6
attend [1] - 25:3
attorney [5] - 4:11, 12:3,
  15:25, 16:1, 20:23
Attorney [2] - 4:20, 4:21
attorneys [6] - 16:5, 16:7,
  16:15, 22:14, 26:3, 32:21
Attorneys' [1] - 31:25
attorneys' [14] - 2:25, 3:14,
  25:14, 25:16, 25:18, 25:21,
  25:22, 26:5, 27:15, 27:16,
  31:8, 31:11, 31:14, 31:19
authority [2] - 10:6, 10:8
automatically [1] - 30:9
award [3] - 8:10, 27:15, 31:7
awards [2] - 2:25, 30:19
Awards [1] - 32:1
aware [1] - 6:16
awful [2] - 20:21, 21:2

**B**

baby [3] - 14:15, 14:16,
  15:21
ball [1] - 16:13
bar [2] - 15:17, 18:5
based [10] - 6:10, 9:4, 13:17,
  14:20, 14:21, 24:4, 24:13,
  30:8, 30:19, 31:7
beer [1] - 16:12
beg [1] - 14:18
begin [1] - 3:15
beginning [1] - 16:2
behalf [7] - 1:17, 1:20, 2:13,
  8:21, 10:5, 10:9, 13:15
behind [1] - 32:12
bench [2] - 32:4, 32:5
best [1] - 32:22
between [4] - 2:21, 14:8,
  22:12, 26:20
beyond [1] - 24:10
big [3] - 18:8, 19:5, 22:7
bigger [1] - 18:2
bit [1] - 20:11
BOCKIUS [1] - 1:18
bonus [1] - 24:13
bonuses [1] - 24:10
bowling [1] - 15:17
brainer [1] - 16:8
briefing [2] - 28:8, 30:3
bring [4] - 7:22, 13:8, 32:14,
  32:21
bringing [1] - 6:14
broad [1] - 9:8
Bross [4] - 2:22, 9:5, 28:25,
  30:22
brought [7] - 6:5, 6:24, 8:2,
  8:21, 12:20, 13:11, 13:13
building [1] - 15:12

Burkhardt [2] - 2:14, 20:10
BURKHARDT [1] - 1:19
BY [3] - 1:15, 1:18, 12:15

**C**

California [1] - 8:4
calm [1] - 22:21
care [1] - 23:10
Carolina [1] - 9:7
case [31] - 5:5, 5:14, 5:17,
  6:1, 7:4, 7:19, 7:23, 8:14,
  8:20, 10:20, 10:23, 11:7,
  16:5, 16:18, 17:2, 17:16,
  17:19, 17:22, 17:25, 19:5,
  19:8, 19:16, 20:7, 21:6,
  22:13, 24:17, 26:7, 27:1,
  27:4, 30:6, 31:16
cases [3] - 8:2, 13:25, 32:5
CATHY [1] - 33:17
Cathy [1] - 1:22
CCR [1] - 33:17
celebrate [2] - 23:7, 23:15
Center [1] - 7:16
cents [1] - 27:18
certain [1] - 6:6
certainly [3] - 32:10, 32:11,
  32:18
CERTIFICATE [1] - 33:5
Certificates [1] - 31:22
certification [14] - 3:9, 6:3,
  6:11, 10:23, 11:8, 11:10,
  21:7, 21:14, 21:20, 21:21,
  27:6, 28:20, 29:16
certified [1] - 6:17
certifies [1] - 29:13
certify [3] - 3:17, 33:9
cfordccr@gmail.com [1] -
  1:23
change [1] - 7:22
charge [2] - 17:1, 17:11
charges [1] - 6:12
child [1] - 15:22
children [3] - 18:8, 21:10,
  23:11
choose [1] - 16:4
Cir [2] - 29:21, 31:18
Circuit [1] - 4:23
circumstances [2] - 13:14,
  30:20
Civ [12] - 28:16, 28:22, 28:24,
  29:3, 29:6, 29:12, 30:4,
  30:6, 30:8, 30:11, 30:14,
  31:11
CIVIL [1] - 1:5
claims [10] - 12:20, 13:11,
  13:13, 24:14, 28:10, 29:1,
  29:7, 30:10, 30:16
Clarkson [1] - 1:9
Class [5] - 4:20, 31:7, 31:18,

31:24, 31:25
class [85] - 2:19, 2:22, 3:1,
  3:4, 3:6, 3:8, 3:11, 3:13,
  3:15, 3:17, 3:22, 4:6, 4:14,
  4:15, 5:2, 5:4, 5:8, 5:15,
  6:3, 6:11, 6:16, 6:17, 6:20,
  6:22, 6:23, 7:5, 7:8, 7:23,
  8:15, 8:17, 9:1, 10:23,
  11:8, 11:10, 11:14, 12:5,
  12:6, 13:6, 13:13, 13:15,
  21:14, 21:20, 21:21, 23:18,
  24:1, 24:5, 25:3, 25:7,
  25:9, 25:13, 25:18, 25:20,
  26:11, 27:3, 27:6, 28:9,
  28:13, 28:19, 28:21, 28:22,
  28:24, 29:2, 29:3, 29:4,
  29:6, 29:9, 29:10, 29:11,
  29:13, 29:25, 30:7, 30:10,
  30:12, 30:16, 30:21, 31:13,
  31:15, 31:16
clearly [1] - 9:15
CLERK [3] - 2:1, 11:23, 33:2
client [1] - 10:9
clients' [1] - 10:15
closure [1] - 32:15
CO [1] - 1:7
Coast [3] - 8:19, 8:23, 9:2
colleagues [4] - 2:14, 14:1,
  17:8, 18:2
collected [1] - 26:25
Collective [1] - 29:16
collective [7] - 3:9, 3:18, 6:4,
  30:23, 30:25, 31:2, 31:4
common [4] - 25:23, 28:24,
  29:4, 29:19
companies [3] - 8:3, 8:11,
  14:8
company [6] - 6:24, 9:17,
  13:5, 13:6, 14:2, 18:7
competencies [4] - 14:2,
  14:7, 14:9, 14:14
complained [1] - 15:14
complaint [2] - 18:21, 19:4
complexity [3] - 29:25,
  30:20, 31:14
comprising [1] - 26:22
computer [1] - 1:25
computer-aided [1] - 1:25
concerned [3] - 8:1, 9:11,
  9:12
concerns [4] - 8:5, 10:15,
  24:19, 30:13
concludes [1] - 33:3
conclusions [1] - 28:11
conducted [4] - 4:25, 5:12,
  5:23, 17:14
confident [1] - 22:21
conflict [1] - 15:20
conform [1] - 6:11
congratulations [2] - 32:11,

32:23
connection [1] - 30:12
consider [1] - 27:25
considerable [1] - 6:13
consideration [2] - 18:8,
  24:25
considerations [1] - 17:24
considered [4] - 6:14, 8:11,
  8:14, 25:4
considering [2] - 22:7, 28:8
consistent [1] - 32:1
consuming [1] - 17:6
contacted [1] - 16:19
contested [1] - 10:20
context [1] - 11:12
conversation [1] - 22:11
conversations [1] - 18:14
Corp [1] - 31:17
corporate [1] - 18:9
correct [6] - 8:19, 8:23,
  13:10, 17:15, 19:18, 33:9
correspondence [1] - 28:9
Costs [1] - 32:1
costs [6] - 3:14, 25:20, 26:2,
  26:22, 27:1, 30:5
COUNSEL [1] - 2:5
Counsel [3] - 9:10, 27:19,
  32:3
counsel [46] - 2:8, 2:15,
  2:23, 3:8, 3:12, 3:13, 3:15,
  4:19, 4:22, 5:2, 5:10, 5:15,
  6:2, 6:20, 6:25, 8:24, 10:3,
  10:11, 16:18, 20:12, 20:13,
  21:15, 21:21, 23:24, 24:24,
  25:13, 25:18, 25:20, 25:24,
  26:21, 27:3, 27:20, 28:1,
  28:2, 28:4, 28:7, 28:9,
  29:8, 29:9, 29:24, 31:15,
  31:16, 31:18, 32:13
counsel's [5] - 24:16, 25:16,
  30:3, 31:7, 31:25
counsels [1] - 7:4
country [6] - 5:19, 8:7, 9:20,
  26:15, 26:19, 27:11
course [5] - 5:6, 5:24, 11:8,
  12:13, 26:20
COURT [33] - 1:1, 2:1, 2:4,
  2:6, 2:17, 7:10, 7:13, 8:1,
  8:17, 8:22, 9:10, 10:3,
  10:9, 10:14, 10:17, 11:14,
  11:17, 11:23, 12:1, 13:24,
  24:6, 24:9, 24:15, 24:19,
  24:22, 25:2, 25:12, 27:19,
  27:24, 28:4, 28:6, 33:2,
  33:5
Court [38] - 1:22, 2:18, 2:24,
  3:3, 3:8, 3:11, 3:16, 3:23,
  7:7, 9:3, 9:15, 11:4, 12:13,
  23:20, 25:4, 25:6, 26:4,
  26:7, 27:6, 27:15, 27:24,

28:15, 28:18, 28:20, 29:13, 29:15, 29:17, 29:22, 30:15, 30:18, 31:9, 31:12, 31:24, 32:7, 33:3, 33:18
**court** [5] - 2:2, 17:22, 17:25, 26:8, 32:4
**Court's** [4] - 11:3, 24:25, 25:17, 29:11
**Courthouse** [1] - 1:9
**courts** [1] - 8:3
**cried** [1] - 23:4
**critiquing** [1] - 26:20
**cross** [1] - 9:8
**cross-section** [1] - 9:8
**crow** [1] - 14:23
**CRR** [1] - 33:17
**crying** [1] - 18:19
**curling** [2] - 15:16, 15:18
**cy** [8] - 7:10, 7:13, 7:15, 7:20, 7:25, 8:4, 8:10, 9:18

### D

**D.N.J** [1] - 31:23
**damages** [1] - 30:2
**date** [1] - 21:4
**Date** [1] - 33:18
**Daubert** [2] - 6:7, 6:8
**daughter** [1] - 18:12
**David** [2] - 6:9, 16:20
**December** [1] - 1:10
**decision** [1] - 11:3
**Decl** [3] - 31:20, 31:21
**declaration** [3] - 21:7, 21:14, 31:3
**declarations** [5] - 6:6, 9:4, 25:2, 27:5, 28:8
**dedicated** [1] - 7:21
**dedicating** [1] - 7:18
**defendant** [1] - 11:2
**defendants** [5] - 2:14, 2:21, 6:5, 10:5, 11:11
**Defendants** [2] - 1:8, 1:20
**defendants'** [2] - 6:10, 11:10
**defense** [12] - 3:12, 4:19, 4:22, 5:10, 6:25, 8:24, 10:3, 20:22, 24:24, 26:21, 27:20, 28:4
**defer** [1] - 8:24
**definitely** [2] - 15:20, 20:18
**delay** [1] - 30:6
**demonstrated** [1] - 29:8
**demonstrating** [1] - 30:2
**denied** [1] - 6:17
**deposed** [5] - 5:10, 20:9, 30:24, 31:1, 31:3
**deposition** [4] - 20:7, 20:12, 20:19, 21:5
**depositions** [7] - 5:16, 5:17, 5:18, 5:19, 5:20, 26:14,

26:19
**DEPUTY** [3] - 2:1, 11:23, 33:2
**determination** [1] - 27:25
**determine** [2] - 11:6, 12:7
**devoted** [2] - 31:16, 31:18
**dialog** [2] - 16:21, 22:11
**difference** [2] - 14:1, 23:2
**different** [1] - 32:20
**dig** [1] - 17:6
**directly** [1] - 12:2
**disappointment** [1] - 4:17
**disclosed** [1] - 24:12
**discovery** [9] - 5:2, 5:22, 7:2, 19:20, 19:22, 26:22, 27:12, 31:1, 31:5
**discrimination** [6] - 6:22, 7:19, 7:24, 13:16, 13:19, 16:14
**dismiss** [3] - 19:7, 19:9, 19:15
**distinct** [1] - 13:23
**distributes** [1] - 30:9
**distribution** [1] - 30:16
**district** [3] - 14:10, 14:18, 32:4
**District** [2] - 2:3, 9:16
**DISTRICT** [3] - 1:1, 1:2, 1:12
**diverse** [1] - 9:1
**docket** [4] - 26:8, 26:22, 26:23
**Docket** [1] - 2:7
**document** [1] - 5:24
**documentation** [1] - 19:1
**documents** [3] - 20:15, 26:24, 28:14
**dollar** [2] - 23:1, 27:18
**down** [5] - 6:17, 13:21, 14:17, 22:14, 22:24
**Dr** [2] - 6:8, 6:9
**due** [4] - 13:14, 13:16, 14:24, 32:20
**duration** [2] - 30:1, 31:14
**during** [1] - 22:19
**dwindle** [1] - 22:24

### E

**e-discovery** [1] - 26:22
**early** [1] - 32:15
**East** [4] - 1:9, 8:19, 8:23, 9:2
**eat** [1] - 14:22
**ECF** [3] - 31:20, 31:21
**economist** [1] - 6:7
**EEOC** [3] - 6:12, 17:1, 17:11
**efficiently** [1] - 29:7
**eight** [2] - 21:11, 26:12
**either** [1] - 16:1
**email** [1] - 19:23

**emails** [1] - 20:16
**emotionally** [1] - 20:20
**emotions** [1] - 22:19
**employed** [2] - 12:23, 13:1
**Employee** [1] - 7:16
**employees** [2] - 7:18, 8:18
**employer** [1] - 29:19
**employment** [3] - 5:9, 6:22, 29:19
**Employment** [1] - 7:16
**end** [5] - 15:17, 16:1, 23:1, 23:3, 23:11, 27:8, 27:9, 27:13
**ends** [1] - 8:4
**Energy** [1] - 31:17
**engage** [1] - 15:25
**engaged** [1] - 16:1
**engaging** [1] - 16:18
**entailed** [1] - 6:1
**entailing** [2] - 4:10, 26:15
**enter** [1] - 28:11
**entities** [2] - 5:22, 9:21
**entitled** [1] - 33:10
**EPA** [1] - 6:4
**Equal** [3] - 3:9, 3:18, 29:16
**equally** [1] - 32:7
**equitable** [1] - 10:25
**equivalent** [1] - 15:17
**ESQUIRE** [5] - 1:15, 1:16, 1:18, 1:19, 1:20
**et** [3] - 1:4, 1:7, 2:7
**event** [1] - 15:12
**eventually** [1] - 13:8
**exact** [2] - 18:19, 27:4
**exactly** [1] - 8:25
**example** [2] - 4:12, 15:2
**excess** [1] - 27:1
**exciting** [1] - 23:8
**exclusive** [1] - 25:23
**excuse** [2] - 15:24, 26:17
**Exelrod** [1] - 5:8
**exemplified** [1] - 14:9
**expended** [2] - 26:18, 27:3
**expense** [1] - 29:25
**expenses** [11] - 2:25, 25:14, 25:16, 25:19, 25:21, 25:23, 26:2, 26:17, 27:15, 31:8, 31:10
**experience** [2] - 13:4, 20:21
**experienced** [5] - 5:15, 5:20, 6:22, 6:25, 27:8
**experiencing** [2] - 5:2, 13:19
**expert** [2] - 6:9, 26:20
**experts** [4] - 5:19, 21:16, 26:20, 26:21
**explain** [1] - 25:25
**expressed** [1] - 4:17
**extensive** [1] - 10:21

### F

**F.3d** [2] - 29:20, 31:17
**face** [2] - 6:12, 6:18
**faced** [2] - 29:19, 31:15
**fact** [5] - 5:9, 11:6, 28:23, 29:4, 32:19
**factor** [1] - 7:3
**factors** [3] - 4:24, 4:25, 6:14
**facts** [1] - 5:21
**failure** [1] - 6:10
**fair** [8] - 10:13, 10:25, 24:7, 28:16, 29:24, 30:17, 30:19, 31:11
**fairly** [1] - 29:2
**fairness** [6] - 2:20, 3:10, 4:23, 12:7, 12:19, 24:23
**Fairness** [1] - 4:21
**FAIRNESS** [1] - 1:8
**family** [3] - 16:6, 18:18, 23:9
**fast** [1] - 22:7
**favor** [1] - 3:5
**Fed** [12] - 28:16, 28:22, 28:24, 29:3, 29:6, 29:12, 30:4, 30:6, 30:8, 30:11, 30:14, 31:11
**FEDERAL** [1] - 33:5
**feedback** [1] - 17:8
**fees** [17] - 2:25, 3:14, 25:14, 25:16, 25:19, 25:21, 25:22, 25:24, 25:25, 26:5, 26:20, 27:15, 27:16, 31:8, 31:11, 31:14, 31:19
**Fees** [1] - 32:1
**felt** [1] - 9:13
**few** [1] - 27:10
**field** [1] - 14:21
**fight** [1] - 19:13
**fighting** [1] - 21:2
**file** [3] - 17:5, 17:20, 17:22
**filed** [11] - 6:6, 6:7, 6:8, 17:1, 18:17, 18:21, 19:4, 19:9, 19:15, 26:11, 27:5
**filing** [3] - 17:11, 17:25, 19:7
**FINAL** [1] - 1:7
**final** [7] - 2:20, 7:3, 11:5, 12:19, 27:25, 28:12, 29:15
**finally** [2] - 23:3, 25:24
**findings** [1] - 28:11
**fired** [1] - 19:12
**firm** [1] - 6:21
**firms** [1] - 27:10
**first** [9] - 3:16, 4:24, 10:5, 13:6, 16:3, 16:6, 16:17, 32:5
**Fisher** [1] - 1:17
**five** [6] - 4:9, 5:7, 5:25, 10:21, 21:19, 32:6
**five-year** [1] - 5:7

**flight** [1] - 23:10
**floor** [1] - 25:7
**fly** [1] - 22:10
**folks** [2] - 2:17, 32:21
**following** [1] - 30:18
**FOR** [1] - 1:2
**Ford** [1] - 1:22
**FORD** [1] - 33:17
**foregoing** [1] - 33:9
**foremost** [1] - 10:5
**former** [1] - 5:9
**forth** [4] - 10:11, 22:22, 23:10, 28:14
**forward** [1] - 20:15
**fought** [1] - 22:25
**four** [3] - 4:24, 5:17, 5:19
**four-named** [1] - 5:17
**fourth** [1] - 5:3
**fraction** [1] - 5:4
**Francisco** [3] - 5:8, 22:10, 22:13
**Friedland** [1] - 6:9
**friends** [1] - 16:6
**full** [3] - 5:12, 10:6, 10:7
**functions** [1] - 8:7
**fund** [2] - 7:21, 25:23
**funds** [3] - 7:21, 30:9, 30:17

**G**

**gender** [1] - 13:19
**General** [2] - 4:20, 4:21
**general** [2] - 8:6, 13:11
**gentleman** [1] - 25:10
**Gina** [1] - 11:16
**given** [1] - 14:14
**goal** [1] - 23:1
**grand** [1] - 21:8
**granted** [1] - 2:18
**grants** [1] - 31:25
**grasp** [1] - 18:14
**great** [5] - 14:3, 14:10, 14:22, 15:2, 32:14
**groups** [1] - 8:11
**guess** [2] - 8:9, 25:13
**Gunter** [1] - 31:17

**H**

**happy** [2] - 32:7, 32:11
**harassed** [1] - 18:4
**harassment** [1] - 16:10
**hard** [1] - 18:1
**harder** [1] - 19:13
**head** [1] - 13:3
**headquarters** [1] - 9:17
**hear** [7] - 3:8, 3:11, 10:3, 11:14, 12:13, 16:21, 27:20
**heard** [4] - 7:5, 7:6, 16:9,

31:9
**HEARING** [1] - 1:8
**hearing** [4] - 2:20, 3:2, 4:3, 12:19
**heavily** [3] - 5:14, 9:2, 10:20
**HEISLER** [1] - 1:15
**Heisler** [4] - 2:10, 16:4, 16:16, 26:16
**held** [1] - 2:2
**help** [1] - 15:5
**helping** [1] - 7:18
**herself** [1] - 18:5
**high** [2] - 22:23, 27:9
**higher** [1] - 13:23
**hold** [2] - 9:22, 22:21
**home** [1] - 23:11
**Honor** [27] - 2:9, 2:12, 4:2, 4:3, 6:20, 7:12, 8:13, 8:20, 10:2, 10:7, 10:12, 10:16, 10:19, 11:13, 11:21, 12:11, 23:22, 25:1, 25:11, 26:6, 27:2, 27:14, 27:22, 28:3, 28:5, 32:25, 33:1
**HONORABLE** [1] - 1:11
**Honorable** [1] - 2:2
**hotel** [1] - 22:10
**hourly** [3] - 26:3, 27:4, 27:7
**hours** [17] - 4:11, 17:8, 19:2, 20:5, 20:14, 20:18, 21:3, 21:9, 21:10, 21:11, 21:19, 27:2, 27:3, 27:4, 31:18
**house** [1] - 2:15
**HR** [3] - 15:4, 15:12, 15:18
**humiliated** [1] - 21:4
**hundreds** [3] - 4:11, 15:9, 16:23
**hunter** [1] - 13:3
**husband** [1] - 18:15
**husband's** [1] - 19:24

**I**

**Id** [1] - 29:8
**images** [1] - 14:4
**immense** [1] - 26:14
**impact** [1] - 7:21, 7:22
**impracticable** [1] - 28:22
**improperly** [1] - 30:14
**in-house** [1] - 2:15
**Inc** [1] - 29:20
**INC** [1] - 1:7
**incentive** [1] - 24:13
**incentives** [1] - 24:9
**included** [1] - 26:1
**including** [2] - 5:17, 26:24
**increases** [3] - 13:23, 13:24, 13:25
**indicated** [1] - 24:10
**individual** [3] - 24:11, 24:14, 29:5

**individually** [1] - 13:13
**industry** [1] - 13:4
**information** [1] - 19:25
**inquire** [1] - 14:24
**inquiry** [1] - 4:22
**instance** [1] - 15:4
**Institute** [1] - 7:17
**institutes** [1] - 8:12
**intended** [1] - 3:2
**intention** [1] - 3:3
**intentions** [1] - 25:6
**interest** [1] - 15:20
**interests** [1] - 29:3
**interpose** [1] - 12:14
**interviewed** [1] - 13:2
**invasive** [1] - 20:2
**involved** [5] - 5:11, 20:14, 20:17, 22:12, 30:1
**involvement** [2] - 19:20, 21:6
**IO** [1] - 6:9
**issue** [4] - 26:4, 27:20, 32:2, 32:24
**issues** [2] - 13:17, 26:4
**itself** [1] - 20:19

**J**

**January** [1] - 33:17
**JERSEY** [1] - 1:2
**Jersey** [8] - 1:10, 8:2, 8:3, 8:14, 9:5, 9:16, 9:17, 31:22
**job** [2] - 18:6, 32:14
**joinder** [1] - 28:21
**journals** [1] - 20:1
**journey** [1] - 23:12
**judge** [2] - 32:4, 32:6
**Judge** [1] - 2:3
**JUDGE** [1] - 1:12
**judgment** [1] - 6:10
**July** [1] - 2:18

**K**

**Kandice** [2] - 2:22, 28:25
**Kate** [2] - 2:23, 29:1
**KATENSTEIN** [9] - 2:12, 10:7, 10:12, 10:16, 10:19, 25:1, 27:22, 28:5, 33:1
**Katenstein** [1] - 2:13
**KATZENSTEIN** [1] - 1:18
**keep** [4] - 12:2, 14:21, 14:23, 15:1
**Kelli** [4] - 2:11, 2:22, 11:25, 28:25
**KELLI** [2] - 1:4, 11:22
**kept** [1] - 15:21
**kind** [9] - 5:15, 5:20, 8:10, 9:13, 9:23, 14:4, 25:12, 32:15, 32:16
**kinds** [1] - 8:7

**Kliment** [1] - 2:15
**KLIMENT** [1] - 1:20
**knowing** [2] - 13:4, 18:16
**known** [1] - 13:6
**Kornblith** [6] - 2:10, 3:25, 10:20, 11:19, 12:9, 31:21
**KORNBLITH** [19] - 1:15, 2:9, 4:2, 7:12, 7:15, 8:13, 8:20, 8:24, 10:2, 11:21, 12:11, 12:15, 23:22, 24:2, 24:11, 25:11, 26:6, 28:2, 32:25
**Krissy** [1] - 2:13
**KRISSY** [1] - 1:18

**L**

**labor** [1] - 6:7
**laid** [1] - 11:10
**lane** [1] - 15:17
**language** [1] - 16:11
**largely** [1] - 26:17
**largest** [2] - 6:2, 6:23
**last** [2] - 11:24, 21:11
**late** [1] - 4:8
**law** [2] - 28:23, 29:4
**Law** [1] - 7:17
**lawsuit** [1] - 23:14
**lawyer** [2] - 5:9, 27:4
**lead** [2] - 4:1, 26:10
**leader** [2] - 18:6, 18:7
**least** [1] - 32:14
**leave** [3] - 13:14, 14:5, 15:15
**left** [1] - 7:1
**legal** [1] - 27:7
**length** [4] - 4:12, 5:1, 10:24, 30:4
**lengthy** [1] - 27:12
**less** [1] - 4:15
**letting** [1] - 9:11
**level** [1] - 13:22
**LEWIS** [1] - 1:18
**Lewis** [2] - 2:13, 2:15
**liability** [1] - 30:2
**life** [2] - 23:11, 32:12
**light** [1] - 29:25
**likelihood** [1] - 10:22
**likely** [1] - 6:17
**Likewise** [1] - 31:7
**Litig** [1] - 31:22
**litigated** [3] - 5:14, 8:3, 26:8
**litigation** [24] - 4:10, 5:3, 5:7, 5:15, 5:20, 6:13, 6:18, 7:2, 7:22, 9:15, 10:21, 13:8, 17:10, 18:22, 21:13, 22:2, 25:21, 25:23, 26:12, 27:11, 30:1, 31:15, 31:19, 32:17
**lived** [1] - 32:16
**lives** [1] - 32:9
**LLC** [1] - 1:15

**LLP** [1] - 1:18
**locally** [1] - 9:21
**located** [3] - 8:6, 8:22, 9:14
**locations** [1] - 8:25
**lodestar** [2] - 27:17, 31:20
**looked** [3] - 9:24, 18:6, 18:7
**looking** [1] - 9:16
**looks** [3] - 14:10, 15:2, 26:7
**Los** [2] - 9:6
**lose** [1] - 18:6
**low** [1] - 27:8
**lowest** [2] - 14:13, 15:1
**lunch** [1] - 15:10

## M

**magistrate** [1] - 32:6
**maintenance** [1] - 26:23
**major** [2] - 17:10, 19:16
**majority** [1] - 8:18
**manageability** [1] - 11:9
**manageable** [1] - 11:6
**manager** [5] - 14:18, 15:3, 15:14, 15:19
**March** [1] - 15:23
**Marcuse** [2] - 27:5, 31:20
**Mark** [1] - 5:7
**Mart** [1] - 29:20
**maternity** [2] - 14:5, 15:15
**matter** [10] - 2:7, 10:6, 20:23, 26:3, 26:5, 30:20, 32:8, 32:12, 32:16, 33:10
**mechanical** [1] - 1:24
**mediation** [11] - 4:13, 5:5, 17:12, 17:14, 17:16, 17:18, 17:20, 22:15, 22:16, 23:17, 27:1
**mediator** [3] - 5:7, 5:9, 5:11
**meet** [3] - 20:12, 22:10, 22:13
**meetings** [1] - 15:8
**meets** [1] - 28:19
**member** [4] - 3:2, 4:14, 7:5, 31:2
**members** [21] - 3:4, 3:22, 3:23, 4:6, 4:15, 7:5, 7:8, 25:7, 25:9, 28:22, 29:2, 29:4, 29:6, 29:11, 29:25, 30:7, 30:10, 30:23, 30:25, 31:5
**members'** [1] - 29:3
**men** [1] - 13:22
**mentioned** [2] - 15:21, 21:20
**MERCK** [1] - 1:7
**Merck** [21] - 2:7, 2:16, 4:7, 5:21, 5:22, 5:25, 8:18, 12:20, 12:23, 13:1, 13:9, 13:12, 13:19, 14:8, 17:7, 17:15, 19:1, 19:7, 19:9, 19:15, 22:3

**mere** [1] - 14:3
**merger** [1] - 14:7
**merits** [1] - 10:23
**met** [2] - 4:24, 20:13
**method** [1] - 29:7
**MICHAEL** [2] - 1:11, 1:19
**Michael** [3] - 2:3, 2:14, 20:10
**microphone** [1] - 12:3
**might** [3] - 8:9, 9:21, 26:4
**million** [2] - 4:6, 25:18
**months** [1] - 22:8
**Moreover** [1] - 30:18
**MORGAN** [1] - 1:18
**Morgan** [2] - 2:13, 2:15
**morning** [8] - 2:4, 2:5, 2:12, 2:17, 4:3, 4:4, 12:16, 12:17
**most** [1] - 11:6
**mother** [1] - 18:9
**Motion** [1] - 31:25
**motion** [12] - 2:24, 3:13, 6:3, 6:5, 6:7, 6:8, 6:9, 6:11, 19:7, 19:9, 19:15, 28:12
**motions** [3] - 6:1, 6:13, 32:17
**Mountis** [4] - 2:23, 9:6, 28:25, 30:22
**move** [3] - 25:13, 32:8, 32:11
**MR** [18] - 2:9, 4:2, 7:12, 7:15, 8:13, 8:20, 8:24, 10:2, 11:21, 12:11, 12:15, 23:22, 24:2, 24:11, 25:11, 26:6, 28:2, 32:25
**MS** [12] - 2:12, 10:7, 10:12, 10:16, 10:19, 11:25, 24:8, 24:18, 24:21, 25:1, 27:22, 28:5, 33:1

## N

**n.1** [1] - 31:17
**name** [2] - 11:23, 11:24
**named** [4] - 4:12, 5:17, 5:24, 29:17
**nation** [2] - 9:1, 9:9
**national** [1] - 9:17
**nationwide** [2] - 8:15, 8:17
**nature** [1] - 13:11
**nearly** [1] - 26:14
**necessary** [3] - 11:12, 12:4, 28:19
**need** [8] - 11:6, 14:24, 16:24, 18:10, 19:13, 24:24, 26:4
**needed** [1] - 23:10
**needs** [2] - 26:23, 27:24
**negotiated** [2] - 30:4, 30:14
**negotiation** [1] - 10:24
**negotiations** [3] - 4:25, 5:6, 5:12
**never** [1] - 16:23
**new** [1] - 14:6
**NEW** [1] - 1:2

**New** [9] - 1:10, 8:2, 8:3, 8:14, 9:5, 9:16, 9:17, 9:19, 31:22
**next** [10] - 17:10, 18:21, 19:1, 19:5, 19:16, 20:25, 21:6, 21:12, 22:1, 22:14
**NICOLE** [1] - 1:16
**Nicole** [2] - 2:11, 2:16
**night** [1] - 18:15
**no-brainer** [1] - 16:8
**nobody** [1] - 15:5
**none** [2] - 4:17, 25:9
**nonetheless** [1] - 25:6
**nonpayment** [1] - 31:15
**nonprofit** [1] - 7:17
**note** [1] - 11:2
**notes** [1] - 31:12
**nothing** [2] - 14:7, 15:1
**notice** [4] - 3:1, 3:3, 3:21, 29:9
**notices** [1] - 25:5
**notified** [1] - 4:19
**Number** [2] - 2:7, 14:2
**number** [5] - 22:23, 24:4, 24:5, 24:7, 26:14
**NUMBER** [1] - 1:5
**numbers** [2] - 22:22, 32:18
**numerous** [2] - 5:21, 28:21

## O

**oath** [1] - 11:16
**objected** [2] - 4:14, 5:4
**objections** [2] - 25:5, 31:13
**objectors** [2] - 3:12, 7:4
**obviously** [2] - 6:25, 26:10
**Oct** [1] - 31:23
**October** [3] - 4:8, 5:13, 22:9
**OF** [1] - 1:2
**Official** [1] - 1:22
**OFFICIAL** [1] - 33:5
**officially** [1] - 3:16
**old** [1] - 15:21
**ombudsman** [3] - 15:6, 15:8, 15:9
**once** [1] - 19:24
**one** [9] - 6:14, 7:10, 9:12, 11:2, 12:23, 13:20, 14:23, 25:10, 32:5
**onerous** [1] - 30:10
**open** [2] - 2:2, 25:7
**opinion** [1] - 32:2
**opportunity** [2] - 3:5, 10:22
**opt** [6] - 5:18, 5:23, 26:24, 29:18, 31:4, 31:5
**opt-in** [5] - 5:18, 5:23, 26:24, 29:18, 31:4
**opted** [1] - 4:16
**order** [2] - 32:1, 32:24
**Order** [1] - 29:12

**ordinary** [1] - 11:8
**organization** [4] - 7:14, 8:4, 8:8, 8:14
**organizations** [2] - 8:5, 9:14
**original** [1] - 11:10
**ought** [2] - 3:23, 9:22
**outlined** [1] - 29:23
**own** [5] - 18:9, 18:12, 19:25, 22:9, 23:9

## P

**pages** [1] - 9:3
**paid** [1] - 25:25
**papers** [3] - 6:21, 11:11, 21:22
**paperwork** [2] - 17:7, 18:25
**pardon** [1] - 16:11
**part** [2] - 16:9, 23:13
**participate** [1] - 31:5
**particular** [3] - 6:23, 7:13, 8:6
**particularly** [1] - 9:24
**parties** [6] - 6:18, 6:21, 7:4, 10:22, 10:25, 32:13
**partners** [1] - 27:9
**pay** [1] - 23:9
**Pay** [2] - 3:9, 3:18, 29:16
**payment** [3] - 13:17, 24:2, 27:13
**peers** [3] - 13:22, 18:7, 22:12
**pending** [2] - 2:24, 5:25
**Pennsylvania** [2] - 9:5, 9:19
**people** [2] - 9:8, 20:17
**per** [2] - 4:20, 27:4
**percent** [5] - 4:15, 4:16, 13:25, 25:22, 27:17
**perhaps** [1] - 23:24
**period** [1] - 24:5
**permits** [1] - 25:17
**person** [3] - 15:12, 15:18, 25:4
**personal** [2] - 19:25, 20:1
**persuasive** [1] - 31:12
**petition** [1] - 27:23
**pharmaceutical** [3] - 6:24, 13:4, 16:15
**phases** [1] - 32:17
**phone** [6] - 19:18, 19:19, 19:22, 19:24, 19:25, 20:14
**picture** [2] - 18:2, 22:7
**ping** [1] - 16:13
**place** [2] - 3:20
**placed** [4] - 14:6, 14:13, 14:17, 14:25
**PLAINTIFF** [1] - 11:22
**plaintiff** [1] - 5:10
**plaintiff's** [1] - 5:9
**plaintiffs** [10] - 2:11, 5:17,

5:18, 5:23, 5:24, 6:6, 11:9, 26:24, 29:17, 29:18
**Plaintiffs** [2] - 1:5, 1:17
**plaintiffs'** [13] - 2:24, 4:10, 4:12, 6:3, 6:7, 6:9, 9:4, 10:11, 27:23, 28:1, 28:2, 28:8, 28:12
**play** [2] - 16:12, 20:1
**pleadings** [1] - 28:14
**Plough** [1] - 14:8
**plus** [1] - 10:21
**point** [3] - 12:23, 19:17, 22:3
**policies** [1] - 17:7
**Policy** [1] - 7:17
**politely** [1] - 16:21
**pong** [2] - 16:12, 16:13
**position** [2] - 16:12, 27:23
**positions** [1] - 14:6
**possible** [1] - 32:15
**possibly** [1] - 20:16
**potential** [1] - 29:10
**predominate** [1] - 29:5
**pregnancy** [1] - 13:16
**preliminary** [1] - 2:18
**Preliminary** [1] - 29:11
**preparation** [2] - 20:18, 21:21
**prepared** [1] - 28:11
**preparing** [4] - 17:4, 19:1, 20:12, 21:3
**pres** [8] - 7:10, 7:14, 7:15, 7:21, 7:25, 8:4, 8:10, 9:18
**present** [4] - 3:4, 21:8, 25:8, 25:9
**presumption** [1] - 4:23
**pretty** [2] - 20:15, 22:7
**procedures** [2] - 17:7, 18:25
**proceeding** [1] - 11:7
**proceedings** [1] - 33:10
**Proceedings** [1] - 1:24
**PROCEEDINGS** [1] - 2:2
**process** [8] - 18:24, 19:20, 19:22, 20:4, 20:11, 22:5, 27:12, 30:10
**processed** [1] - 26:25
**processing** [1] - 26:23
**produced** [2] - 1:25, 26:25
**product** [2] - 4:9, 13:6
**production** [1] - 5:25
**professionalism** [1] - 32:20
**professionally** [1] - 32:14
**progressed** [1] - 15:6
**properly** [1] - 29:10
**proposal** [2] - 30:4, 30:12
**proposed** [10] - 3:19, 12:4, 12:8, 24:20, 25:15, 28:21, 29:22, 30:7, 30:9, 30:13
**protect** [1] - 29:3
**prove** [1] - 20:23

**provide** [1] - 4:5
**provided** [3] - 3:22, 24:16, 29:10
**publicity** [1] - 18:17
**purpose** [1] - 30:16
**purposes** [2] - 28:20, 29:13
**pursuant** [1] - 11:3
**pursue** [1] - 16:25
**pursued** [2] - 15:3, 15:4
**pursuing** [1] - 16:18
**pursuit** [4] - 17:18, 21:12, 26:18, 27:3
**put** [7] - 10:17, 16:12, 20:1, 20:18, 20:22, 26:2, 32:12

## Q

**qualified** [1] - 29:9
**questioned** [1] - 14:15
**questioning** [1] - 11:20
**questions** [5] - 12:4, 12:12, 28:23, 29:4, 29:5
**quite** [1] - 20:5

## R

**Rachel** [2] - 2:22, 28:25
**raise** [1] - 30:13
**range** [1] - 27:7
**ranked** [1] - 14:2
**rare** [1] - 16:24
**rate** [1] - 27:4
**rated** [1] - 14:2
**rates** [2] - 26:3, 27:7
**rationale** [1] - 14:14
**re** [1] - 31:22
**reached** [1] - 2:21
**really** [3] - 9:8, 18:1, 19:6
**reason** [1] - 13:20
**reasonable** [6] - 25:20, 28:16, 29:24, 30:17, 30:19, 31:11
**reasonableness** [2] - 2:20, 12:7
**reasons** [1] - 13:20
**receive** [4] - 3:3, 7:8, 23:25, 25:5
**received** [2] - 16:20, 25:2
**receiving** [4] - 12:6, 13:23, 13:24, 14:1
**recipient** [4] - 7:11, 7:20, 7:25, 9:18
**recipients** [2] - 7:15, 8:9
**recollection** [1] - 22:6
**recommend** [1] - 23:20
**record** [10] - 2:6, 3:21, 10:18, 11:24, 26:2, 28:12, 28:14, 29:24, 30:3, 33:10
**recorded** [1] - 1:24
**records** [4] - 19:18, 19:19,

19:23
**recouping** [1] - 27:18
**regard** [2] - 6:20, 7:3
**regarding** [1] - 21:15
**region** [3] - 14:10, 14:11, 16:11
**regional** [1] - 15:3, 15:14
**regularly** [1] - 20:13
**reimbursement** [1] - 31:8
**related** [1] - 12:4
**relating** [1] - 24:19
**relief** [2] - 4:6, 7:8
**remain** [1] - 11:17
**remember** [2] - 19:6, 19:11
**rep** [2] - 11:15, 12:6
**Reporter** [1] - 1:22, 33:18
**REPORTER'S** [1] - 33:5
**represent** [1] - 27:16
**representation** [2] - 12:5, 24:16
**representative** [4] - 3:12, 15:13, 15:15, 24:1
**representatives** [8] - 2:22, 4:7, 8:21, 25:3, 28:9, 28:25, 30:12, 30:21
**representing** [2] - 22:23, 26:11
**reps** [3] - 8:22, 8:25, 15:9
**reputable** [1] - 13:5
**request** [2] - 25:16, 31:7
**requested** [4] - 27:15, 27:16, 31:10, 31:19
**required** [3] - 3:1, 11:4, 11:9
**requirements** [1] - 28:19
**requiring** [1] - 30:10
**research** [1] - 16:6
**researched** [1] - 16:14
**resolution** [1] - 9:23
**resolve** [2] - 17:16, 32:8
**resolved** [2] - 5:5, 32:22
**resolving** [1] - 26:4
**respect** [1] - 14:24
**respected** [1] - 5:8
**respectfully** [2] - 7:7, 27:14
**response** [2] - 3:22, 27:21
**result** [2] - 12:6, 23:17
**resulted** [1] - 4:13
**retained** [1] - 26:21
**retaliation** [1] - 13:13
**reviewed** [4] - 20:15, 25:15, 26:25, 28:12
**reviewing** [2] - 18:25, 19:2
**Ridgewood** [1] - 31:17
**Rights** [1] - 7:16
**rights** [1] - 7:18
**rise** [2] - 2:1, 33:21
**risk** [2] - 27:12, 31:15
**risks** [3] - 6:13, 30:1, 30:5
**road** [2] - 6:18

**role** [1] - 20:22
**roles** [1] - 4:8
**room** [2] - 15:11, 15:17
**RPR** [1] - 33:17
**Rudy** [2] - 5:7
**Rule** [7] - 3:17, 5:21, 6:3, 6:11, 11:3, 28:19, 29:12
**ruling** [1] - 11:5
**RUSSELL** [1] - 1:15
**Russell** [1] - 2:10

## S

**S-M-I-T-H** [1] - 11:25
**Sales** [1] - 31:22
**sales** [5] - 4:7, 8:21, 8:22, 8:25, 16:15
**San** [3] - 5:8, 22:10, 22:13
**Sanford** [7] - 2:10, 16:4, 16:15, 16:20, 26:16, 27:5, 31:20
**SANFORD** [1] - 1:15
**sat** [2] - 13:21, 20:6
**satisfied** [4] - 10:14, 24:15, 28:15, 29:23
**scared** [2] - 18:4, 18:6
**scattered** [2] - 5:18, 26:15
**scheme** [1] - 21:8
**Schering** [1] - 14:8
**Schering-Plough** [1] - 14:8
**searching** [1] - 26:23
**seated** [3] - 2:4, 11:17, 12:1
**second** [3] - 3:17, 5:1, 5:14
**section** [1] - 9:8
**See** [3] - 29:12, 29:20, 31:16
**see** [12] - 22:24, 25:10, 27:6, 30:4, 30:6, 30:8, 30:10, 30:14, 31:22, 32:7, 32:8
**seeing** [1] - 25:9
**seek** [1] - 25:18
**seeks** [1] - 25:20
**seem** [1] - 9:18
**selecting** [1] - 8:8
**selection** [1] - 21:16
**sent** [1] - 3:22
**separate** [2] - 6:8, 24:13
**September** [1] - 22:9
**serve** [1] - 29:9
**service** [3] - 2:25, 24:2, 30:18
**Service** [1] - 32:1
**services** [2] - 24:16, 26:1
**set** [3] - 10:11, 21:4, 28:14
**sets** [1] - 14:21
**settings** [1] - 29:19
**settle** [2] - 10:6, 22:4
**Settlement** [1] - 31:24
**settlement** [50] - 2:19, 2:21, 3:6, 3:10, 3:19, 3:21, 4:5,

4:9, 4:13, 4:14, 4:16, 4:17, 4:20, 4:24, 4:25, 5:12, 6:15, 6:19, 7:6, 7:8, 10:6, 10:8, 10:10, 10:24, 11:5, 11:12, 12:4, 12:8, 22:5, 23:4, 23:16, 23:17, 24:1, 24:12, 24:20, 25:15, 25:17, 25:19, 28:13, 28:15, 28:18, 28:20, 29:14, 29:22, 29:23, 30:7, 30:9, 30:13, 31:6, 31:13
**seven** [1] - 32:4
**several** [1] - 5:6
**sexually** [1] - 18:4
**share** [1] - 29:19
**SHARP** [1] - 1:15
**Sharp** [2] - 2:10, 16:4
**SHIPP** [1] - 1:11
**Shipp** [1] - 2:3
**shortly** [1] - 16:19
**show** [1] - 11:9
**showing** [2] - 11:12, 30:3
**side** [3] - 4:10, 9:20, 16:8
**sides** [6] - 5:16, 6:2, 6:12, 6:14, 11:1, 32:22
**signature** [1] - 9:3
**significant** [6] - 18:22, 21:6, 22:1, 26:16, 30:5, 30:13
**significantly** [1] - 13:23
**similar** [3] - 5:3, 9:21, 29:19
**similarly** [1] - 29:18
**sit** [4] - 15:9, 15:10, 15:11, 22:14
**situated** [2] - 8:18, 29:18
**six** [5] - 9:16, 21:9, 26:9
**skill** [1] - 14:21
**sleep** [1] - 18:15
**small** [1] - 5:3
**Smith** [19] - 2:7, 2:11, 2:22, 9:4, 11:15, 11:25, 12:1, 12:16, 21:5, 23:16, 23:25, 24:3, 24:6, 24:15, 25:11, 26:11, 28:25, 30:21, 32:10
**SMITH** [6] - 1:4, 11:22, 11:25, 24:8, 24:18, 24:21
**son** [1] - 18:13
**sorry** [2] - 13:2, 19:6
**sought** [1] - 4:21
**sound** [1] - 14:20
**South** [1] - 9:7
**speaking** [2] - 26:16, 26:17
**specific** [2] - 8:14, 12:12
**specifically** [2] - 3:16, 14:6
**Specifically** [1] - 28:18
**spell** [1] - 11:24
**spending** [1] - 21:10
**spent** [5] - 17:4, 20:3, 21:3, 21:18, 21:24
**stand** [1] - 11:18
**start** [1] - 26:7

**started** [3] - 13:21, 15:8, 22:22
**state** [1] - 11:23
**State** [2] - 1:9, 4:21
**State's** [1] - 4:20
**STATES** [2] - 1:1, 1:12
**States** [2] - 1:9, 2:3
**stenography** [1] - 1:24
**step** [7] - 16:3, 16:17, 17:10, 18:22, 19:5, 19:16, 22:1
**steps** [1] - 19:1
**still** [1] - 9:18
**stone** [1] - 7:1
**stood** [1] - 16:8
**Stores** [1] - 29:20
**Stovall** [1] - 2:16
**Street** [1] - 1:9
**strike** [1] - 6:6
**strive** [2] - 3:7, 14:11
**submitted** [3] - 6:21, 31:1, 31:3
**substantial** [4] - 5:24, 6:1, 26:10, 26:22
**suffice** [1] - 32:7
**sufficient** [1] - 5:1
**summary** [1] - 6:10
**superior** [1] - 29:7
**superiority** [1] - 11:5
**support** [1] - 27:6
**supported** [1] - 30:3
**supposed** [1] - 23:7
**Supreme** [1] - 11:3
**surmised** [1] - 25:12
**surrounding** [1] - 30:19
**SWORN** [1] - 11:22

## T

**table** [2] - 15:10
**Tax** [1] - 31:22
**team** [3] - 15:12, 15:16, 15:18
**tedious** [1] - 20:5
**terms** [6] - 3:21, 10:10, 10:13, 27:2, 28:15, 31:13
**territory** [1] - 14:4
**testimony** [4] - 28:7, 28:10, 28:14, 31:9
**THE** [32] - 1:2, 2:1, 2:4, 2:6, 2:17, 7:10, 7:13, 8:1, 8:17, 8:22, 9:10, 10:3, 10:9, 10:14, 10:17, 11:14, 11:17, 11:23, 12:1, 23:24, 24:6, 24:9, 24:15, 24:19, 24:22, 25:2, 25:12, 27:19, 27:24, 28:4, 28:6, 33:2
**theories** [1] - 6:12
**third** [2] - 3:18, 5:2
**three** [1] - 5:22
**tier** [2] - 14:13, 15:1

**tiering** [1] - 13:17
**timing** [4] - 14:15, 14:16, 14:17, 26:1
**Title** [1] - 6:23
**today** [13] - 2:6, 2:19, 3:5, 4:5, 4:13, 6:15, 12:18, 15:22, 23:20, 28:7, 28:11, 31:9, 32:2
**today's** [1] - 3:2
**ton** [1] - 16:22
**took** [5] - 16:3, 16:17, 19:2, 22:1, 22:17
**total** [4] - 5:23, 25:22, 26:12, 27:17
**tough** [1] - 17:9
**towards** [1] - 9:2
**trajectory** [1] - 26:12
**transcript** [2] - 1:24, 33:9
**transcription** [1] - 1:25
**transpired** [1] - 22:12
**travel** [1] - 26:16
**treats** [1] - 30:7
**Trenton** [1] - 1:10
**trial** [2] - 30:2, 30:6
**tried** [1] - 22:21
**true** [1] - 19:12
**truthful** [1] - 20:24
**try** [1] - 32:24
**trying** [2] - 16:13, 32:14
**turn** [4] - 3:13, 12:9, 19:17, 24:23
**turned** [2] - 19:19, 19:24
**turning** [1] - 19:22
**two** [6] - 7:15, 15:17, 21:9, 26:10, 26:20
**two-lane** [1] - 15:17
**typical** [1] - 29:1

## U

**ultimately** [2] - 4:12, 8:8
**under** [1] - 3:17
**understood** [1] - 32:16
**undertaken** [1] - 27:11
**UNITED** [2] - 1:1, 1:12
**United** [2] - 1:9, 2:3
**unturned** [1] - 7:1
**up** [10] - 8:4, 9:22, 12:2, 14:3, 17:6, 18:4, 18:5, 19:12, 26:10, 32:24
**upset** [1] - 19:11

## V

**valid** [1] - 20:24
**variety** [2] - 4:7, 13:20
**vast** [1] - 27:12
**Vekker** [1] - 6:8
**verdict** [1] - 6:24
**versus** [1] - 13:25

**view** [1] - 6:10
**VII** [1] - 6:23
**voice** [1] - 12:2
**vs** [1] - 1:6

## W

**Wal** [1] - 29:20
**walked** [1] - 18:16
**wants** [1] - 7:6
**watched** [1] - 15:7
**website** [1] - 16:19
**weeks** [2] - 24:4, 30:8
**weighed** [1] - 9:15
**weighted** [1] - 9:2
**welcome** [1] - 12:14
**Whitmer** [3] - 2:23, 9:5, 30:22
**Whitmer's** [1] - 29:1
**whole** [3] - 9:12, 9:24, 22:18
**whores** [1] - 16:12
**Wiitala** [1] - 2:11
**WIITALA** [1] - 1:16
**willing** [1] - 22:4
**Windsor** [1] - 11:4
**Witness** [1] - 18:19
**witness** [1] - 11:18
**witnesses** [2] - 5:21
**woman** [2] - 15:13, 18:4
**women** [5] - 4:7, 16:10, 22:23, 23:2, 23:13
**workplace** [2] - 7:19, 7:24
**works** [1] - 9:7
**worth** [2] - 22:25, 23:1
**worthy** [1] - 8:9
**wrapped** [1] - 32:24
**written** [2] - 5:22, 31:1

## Y

**year** [2] - 5:7, 17:13
**years** [16] - 4:10, 9:16, 10:21, 17:9, 19:25, 20:17, 21:3, 21:11, 22:8, 26:9, 26:10, 26:13, 32:4, 32:6
**York** [1] - 9:19

## Z

**Zavala** [1] - 29:20
**zero** [1] - 14:1

## ¶

**¶** [3] - 31:20, 31:21